1  HOBSON, BERNARDINO & DAVIS, LLP
   RAFAEL BERNARDINO, JR. (118690)
2  JASON A. HOBSON (184134)
   725 South Figueroa Street, Suite 3230
3  Los Angeles, CA  90017
   Telephone:  213/235-9190
4  213/235-9197 (fax)
   rbernardino@hbdlegal.com
5  jhobson@hbdlegal.com

6  ROBBINS GELLER RUDMAN
     & DOWD LLP
7  PATRICK W. DANIELS (190715)
   655 West Broadway, Suite 1900
8  San Diego, CA  92101
   Telephone:  619/231-1058
9  619/231-7423 (fax)
   patrickd@rgrdlaw.com
10
   Attorneys for Plaintiff and the Proposed Class
11
   [Additional counsel appear on signature page.]
12
                    UNITED STATES DISTRICT COURT
13
                  NORTHERN DISTRICT OF CALIFORNIA
14
                       SAN FRANCISCO DIVISION
15

| | |
|---|---|
| 16  FAITH BAUTISTA, Individually and on Behalf of All Others Similarly Situated, ) | Case No. |
| 17                              Plaintiff, ) | CLASS ACTION |
| 18            v. ) | COMPLAINT FOR INJUNCTIVE RELIEF, DECLARATORY RELIEF, DAMAGES AND RESTITUTION |
| 19  VALERO ENERGY CORPORATION, CST BRANDS, INC., VALERO MARKETING AND SUPPLY COMPANY and CST MARKETING AND SUPPLY COMPANY, ) | |
| 21                              Defendants. ) | |
| 22 ) | DEMAND FOR JURY TRIAL |

23

24

25

26

27

28

1    Plaintiff Faith Bautista ("Plaintiff"), individually and on behalf of all others similarly

2    situated, brings this class action Complaint for Injunctive Relief, Declaratory Relief, Damages and

3    Restitution against defendants Valero Energy Corporation ("Valero Energy"), Valero Marketing and

4    Supply Company ("Valero M&S"), CST Brands, Inc. ("CST Brands") and CST Marketing and

5    Supply Company ("CST M&S") (collectively, "Defendants" or "Valero") and, upon information and

6    belief, except as to the allegations within Plaintiff's personal knowledge, alleges as follows:

7                                    **SUMMARY OF THE ACTION**

8        1.    Defendant Valero Energy is a Fortune 500 international manufacturer and marketer of

9    transportation fuels, other petrochemical products and power based in San Antonio, Texas.

10       2.    Before 2013, Valero Energy was one of the United States' largest retail operators

11   with approximately 6,800 retail and branded wholesale outlets worldwide.  In May 2013, Valero

12   Energy completed the spinoff of its retail operations into its subsidiary, CST Brands, which now

13   owns retail operations using the Valero, Diamond Shamrock, Shamrock, Beacon, Ultramar and

14   Texaco brands.  Valero Energy continues to supply Valero-branded fuel to CST Brands retail

15   locations.

16       3.    For more than the previous four years, each of the Defendants named herein has

17   induced consumers, including Plaintiff and the members of the proposed class (the "Class," as

18   defined below), to buy gasoline from one of Defendants' many wholly-owned, leased, franchised or

19   contractually branded retail gas stations through the use of deceptive, unfair and false advertisements

20   and misrepresentations, in violation of California law.

21       4.    Like most gas stations, Defendants' Valero-branded stations advertise the price of

22   gasoline on large signs that are visible to passing motorists.  In order to lure motorists into Valero-

23   branded gas stations, which can be located directly across the street from one or more competing

24   stations, Defendants generally advertise two different prices for gasoline: a "credit" price for

25   purchases made with a credit card and a lower "cash" price for purchases made with cash.

26       5.    Defendants' advertised "cash" price is false and misleading to reasonable consumers

27   like Plaintiff and the members of the Class in violation of the Consumers Legal Remedies Act,

28   California Civil Code §1750, *et seq.* (the "CLRA"), the False Advertising Law, California Business

& Professions Code §17500, *et seq.* (the "FAL"), and California's Unfair Competition Law, California Business & Professions Code §17200, *et seq.* (the "UCL"), because Defendants charge the "credit" price for purchases made by California consumers using a debit card, which is the equivalent of cash and which reasonable consumers believe is the equivalent of cash.

6.     In contrast to a credit card payment that is charged to the cardholder's line of credit and paid at a later date, a debit card payment results in an immediate cash withdrawal from the cardholder's bank account.  This is especially true of "prepaid" debit cards, which function as a debit card except that the cardholder prepays a specific amount of money that can later be spent using the prepaid debit card.  Therefore, reasonable consumers, including Plaintiff and the members of the Class, reasonably and correctly believe that a debit card is the equivalent of cash and not a credit card.

7.     Debit cards are frequently used as a safer cash-equivalent by lower income Americans who lack sufficient positive credit history to obtain a credit card or who perhaps cannot afford the annual fees and interest rates charged by credit card companies.  Indeed, the number of debit card transactions have overtaken the number of cash, check and credit card transactions combined and now account for more than **50%** of all gasoline purchases in the State of California.

8.     In light of the ever-increasing price of gasoline, consumers, including Plaintiff and the members of the Class, many of whom are lower income Americans seeking to save money on high-priced gasoline, are lured into Valero-branded gas stations over other competing stations by Defendants' promise of a lower price for gasoline purchased with cash.  Based on their reasonable and accurate belief that a debit card is the equivalent of cash, reasonable consumers, including Plaintiff and the members of the Class, believe that they will be charged the cash price on gasoline purchased with a debit card.

9.     Contrary to Defendants' advertised cash price, which constitutes a legal offer to enter into a contract for the sale of gasoline at the specifically advertised price that Plaintiff accepted by entering a Valero-branded gas station over competing gas stations, consumers who choose to purchase gasoline with a debit card are charged the higher **credit** price.

10.     Defendants' practice of advertising a lower cash price but charging debit cards customers the higher credit price is misleading to reasonable consumers, including Plaintiff and the members of the Class, who reasonably and correctly believe that a debit card is the equivalent of cash, and therefore, Defendants' practice violates the CLRA, FAL and UCL.

11.     Defendants have also breached a legally binding contract that they entered into with consumers, including Plaintiff and the members of the Class, by failing to sell gasoline at the advertised cash price to consumers who accepted Defendants' offer by entering a Valero-branded gas station to purchase gasoline with a debit card – a cash equivalent.

12.     By this action, Plaintiff respectfully seeks injunctive relief and damages, individually and on behalf of the members of the Class, in order to remedy Defendants' misleading, deceptive and unfair business practices as alleged herein.

**PARTIES**

**Plaintiff**

13.     Plaintiff Faith Bautista is an individual consumer residing in San Mateo County, California and is a citizen of the State of California.  At all relevant times, Plaintiff reasonably believed that a debit card was the equivalent of cash.  Throughout the proposed class period, Plaintiff purchased gasoline at Valero-branded gas stations with a MasterCard-branded debit card in reliance on Defendants' advertised "cash" price for gasoline that was lower than the advertised "credit" price. Despite Defendants' advertised "cash" price, Defendants charged Plaintiff the higher "credit" price on gasoline purchased with Plaintiff's debit card.  Plaintiff would not have entered Valero-branded gas stations to purchase gasoline were it not for Defendants' false advertisement and contractual offer of a lower "cash" price for gasoline.

**Valero Energy Defendants**

14.     Defendant Valero Energy is a Fortune 500 international manufacturer and marketer of transportation fuels, other petrochemical products and power.  Valero Energy is based in San Antonio, Texas and does substantial business within this District.  Before May 2013, Valero Energy was one of the United States' largest retail operators with approximately 6,800 retail and branded

wholesale outlets in the United States, Canada, the United Kingdom and the Caribbean under the Valero, Diamond Shamrock, Shamrock, Ultramar, Beacon and Texaco brands.

15.    Defendant Valero M&S is a subsidiary of defendant Valero Energy founded in 1981 and based in San Antonio, Texas.  Defendant Valero M&S refines and markets crude oil in the United States and internationally, including within this District.  Its activities include refining operations, wholesale marketing, product supply and distribution, and transportation operations, primarily in the Gulf Coast, Mid-Continent, West Coast and northeast regions.

16.    At all relevant times prior to May 2013, defendant Valero Energy committed the acts complained of herein individually and/or acting through its subsidiary, defendant Valero M&S.

17.    Defendant Valero Energy is responsible for its own acts, as well as the acts of its subsidiary, defendant Valero M&S.

18.    Defendants Valero Energy and Valero M&S are collectively referred to herein as "Valero Energy."

19.    At all relevant times prior to May 2013, Valero Energy owned, franchised, leased or entered into contractual relationships with gas stations in California that sold Valero-branded gasoline.

20.    At all relevant times prior to May 2013, Valero Energy controlled the signage, including the advertised "credit" and "cash" prices, at all Valero-branded gas stations, regardless of the station's ownership structure.  At all relevant times prior to May 2013, Valero Energy advertised a "credit" price and a "lower" cash price at Valero-branded gas stations.

21.    At all relevant times prior to May 2013, Valero Energy owned the gasoline dispensers at Valero-branded gas stations, which, like the signage controlled by Valero Energy, also advertised the "credit" price and the "lower" cash price.

22.    At all relevant times prior to May 2013, Valero Energy owned the payment processing hardware and software utilized by Valero-branded gas stations to collect credit card and debit card payments and, therefore, Valero Energy had actual knowledge that debit card purchases were charged at the higher "credit" price.

23.     At all relevant times prior to May 2013, Valero Energy (individually or through a subsidiary) provided the payment processing service for credit and debit card payments at most if not all of its Valero-branded gas stations.  Through its payment processing service, Valero Energy (individually or through a subsidiary) collected credit card and debit card payments on behalf of station owners.  Valero Energy retained the cost of its gasoline, as well the processing fee charged to both credit cards *and* debit cards, and then remitted the remainder back to the individual Valero-branded gas station owner.  Valero Energy, therefore, had actual knowledge that debit card purchases were charged at the higher "credit" price.

24.      At all relevant times prior to May 2013, Valero Energy had access to all of its Valero-branded gas stations' bank records, as well as real-time access to all of the financial transactions at Valero-branded gas stations and, therefore, had actual knowledge that debit card purchases were charged at the higher "credit" price.

25.     At all relevant times prior to May 2013, Valero Energy routinely had representatives on-site at its Valero-branded gas stations who observed the prices advertised and charged and discussed pricing policies and specific information regarding actual gasoline sales with managers of the individual Valero-branded gas stations and, therefore, had actual knowledge that debit card purchases were charged at the higher "credit" price.

**CST Brands Defendants**

26.     Defendant CST Brands is a subsidiary of Valero Energy based in San Antonio, Texas that was created on or about May 1, 2013 as a spinoff of Valero Energy's retail operations.  CST Brands is now the second-largest publicly traded fuel and convenience retailer in North America, with 1,900 outlets in the United States and Canada.  CST Brands sells fuel under the Valero brand within this District.

27.     Defendant CST M&S was incorporated in or about May 2013 and operates as a subsidiary of defendant CST Brands.  CST M&S is headquartered in San Antonio, Texas and distributes Valero-branded gasoline and diesel products in the United States, including within this District.

28.     At all relevant times after May 2013, defendant CST Brands committed the acts complained of herein individually and/or acting through its subsidiary, defendant CST M&S.

29.     Defendant CST Brands is responsible for its own acts, as well as the acts of its subsidiary, defendant CST M&S.[1]

30.     Defendants CST Brands and CST M&S are collectively referred to herein as "CST Brands."

31.     At all relevant times after May 2013, CST Brands owned, franchised, leased or entered into contractual relationships with gas stations in California that sold Valero-branded gasoline.

32.     At all relevant times after May 2013, CST Brands controlled the signage, including the advertised "credit" and "cash" prices, at all Valero-branded gas stations, regardless of the station's ownership structure.  At all relevant times after May 2013, CST Brands advertised a "credit" price and a "lower" cash price at Valero-branded gas stations.

33.     At all relevant times subsequent to May 2013, CST Brands owned the gasoline dispensers at Valero-branded gas stations, which, like the signage controlled by CST Brands, also advertised the "credit" price and the "lower" cash price.

34.     At all relevant times after May 2013, CST Brands owned the payment processing hardware and software utilized by Valero-branded gas stations to collect credit card and debit card payments and, therefore, CST Brands had actual knowledge that debit card purchases were charged at the higher "credit" price.

35.     At all relevant times after May 2013, CST Brands (individually or through a subsidiary) provided the payment processing service for credit and debit card payments at most if not all of its Valero-branded gas stations.  Through its payment processing service, CST Brands (individually or through a subsidiary) collected credit card and debit card payments on behalf of station owners.  CST Brands retained the cost of its gasoline, as well the processing fee charged to both credit cards **and** debit cards, and then remitted the remainder back to the individual Valero-

---

[1]     Defendant Valero Energy is responsible for all acts of its subsidiaries, including defendants Valero M&S, CST Brands and CST M&S.

COMPLAINT FOR INJUNCTIVE RELIEF, DECLARATORY RELIEF, DAMAGES AND RESTITUTION                                                                                                    - 6 -

1  branded gas station owner. CST Brands, therefore, had actual knowledge that debit card purchases

2  were charged at the higher "credit" price.

3      36.    At all relevant times after May 2013, CST Brands had access to all of its Valero-

4  branded gas stations' bank records, as well as real-time access to all of the financial transactions at

5  Valero-branded gas stations and, therefore, had actual knowledge that debit card purchases were

6  charged at the higher "credit" price.

7      37.    At all relevant times after May 2013, CST Brands routinely had representatives on-

8  site at its Valero-branded gas stations who observed the prices advertised and charged and discussed

9  pricing policies and specific information regarding actual gasoline sales with managers of the

10  individual Valero-branded gas stations and, therefore, had actual knowledge that debit card

11  purchases were charged at the higher "credit" price.

12  **INTRADISTRICT ASSIGNMENT**

13      38.    A substantial part of the events or omissions which give rise to the claims in this

14  action occurred in the county of San Mateo, and as such this action is properly assigned to the San

15  Francisco division of this Court.

16  **JURISDICTION AND VENUE**

17      39.    This Court has jurisdiction pursuant to 28 U.S.C. §1332(d)(2)(A) as modified by the

18  Class Action Fairness Act of 2005 because at least one member of the Class is a citizen of a different

19  state than Defendants, there are more than 100 members of the Class, and the aggregate amount in

20  controversy exceeds $5 million exclusive of interest and costs.

21      40.    Venue is proper before this Court pursuant to 28 U.S.C. §1391 in that many of the

22  acts and transactions giving rise to this action occurred in this District and because: (a) Defendants

23  are authorized to conduct business in this District and have intentionally availed themselves of the

24  laws and markets within this District through the promotion, marketing, distribution and sale of

25  Valero-branded gasoline; (b) Defendants conduct substantial business in this District; and (c)

26  Defendants are subject to personal jurisdiction in this District.

27

28

## SUBSTANTIVE ALLEGATIONS

**Reasonable Consumers Believe That**
**a Debit Card Is the Equivalent of Cash**

41.     Due to high interest rates and the difficulty of building positive credit history for many Americans, the use of debit cards has increased dramatically over the past several years. Indeed, the number of debit card transactions have overtaken the number of cash, check and credit card transactions combined and now account for more than ***50%*** of all gasoline purchases in the State of California.

42.     Debit cards and credit cards function differently and are used differently by consumers.  The fundamental difference between a debit card and a credit card is in how the cardholder's funds are obtained and transferred to merchants.

43.     In contrast to a credit card payment that is charged to the cardholder's line of credit based on the cardholder's promise to pay at a later date, a debit card payment results in an immediate cash withdrawal from the cardholder's bank account.  This is especially true of "prepaid" debit cards, which function like a debit card except that the cardholder prepays a specific amount of money that can later be spent using the prepaid debit card.  Therefore, reasonable consumers, including Plaintiff and the members of the Class, reasonably and correctly believe that a debit card is the equivalent of cash.  Indeed, consumer surveys reveal that as many as ***75%*** of California consumers believe that a debit card is the equivalent of cash.

44.     To be sure, virtually all Visa and MasterCard debit card applications and cardholder agreements contain express language stating that "***this is <u>not</u> a credit card***."

**Defendants Deceive Reasonable Consumers Regarding**
**the True Price of Gasoline In Violation of California Law**

45.     Defendants are major suppliers of gasoline throughout the United States and the State of California.  Like most gas stations, Defendants' Valero-branded gas stations advertise the price of gasoline on large signs that are visible to passing motorists.  In order to lure motorists into Valero-branded gas stations, which can be located directly across the street from one or more competing gas stations, Defendants advertise two different prices for gasoline: a  "credit" price for purchases made with a credit card and a lower "cash" price for purchases made with cash.  As an example, attached

1    hereto as **Exhibit A** is a photograph of a street sign displaying Defendants' trademark and the prices

2    for all grades of gasoline and diesel fuel sold by Defendants, advertising a lower "cash" and higher

3    "credit" price.

4          46.     Gasoline purchases by consumers are a significant part of the California economy.

5    The cost of gasoline is a substantial economic burden, and the steady and oftentimes dramatic and

6    unprecedented increase in the price of gasoline has made consumers especially cost-conscious.

7    Indeed, consumers, including Plaintiff and the members of the Class, many of whom are lower

8    income Americans seeking to save money on high-priced gasoline, are lured into Valero-branded gas

9    stations over other competing stations by Defendants' promise of a lower price for gasoline

10   purchased with cash.

11         47.     Based on their reasonable and accurate belief that a debit card is the equivalent of

12   cash, reasonable consumers, including Plaintiff and the members of the Class, believe that

13   Defendants will charge them the lower cash price on gasoline purchased with a debit card.  In fact,

14   Defendants' advertised "cash" price constitutes a legal offer to enter into a contract for the sale of

15   gasoline at the specifically advertised "cash" price without further negotiation.  By entering a

16   Valero-branded gas station over competing stations to purchase gasoline at the advertised cash price,

17   Plaintiff and other members of the Class accepted Defendants' offer, thereby creating a legally

18   binding contract for the sale of gasoline by Defendants *at that same advertised cash price*.

19         48.     Contrary to Defendants' advertised "cash" price, which forms part of the terms of the

20   contract for the sale of gasoline between Defendants and Plaintiff and the members of the Class,

21   Defendants actually charge the higher "*credit*" price to consumers who pay for Valero-branded

22   gasoline with a debit card.

23         49.     Defendants' practice of advertising a lower cash price but charging debit cards

24   customers the higher credit price is misleading to reasonable consumers, including Plaintiff and the

25   members of the Class, who reasonably and correctly believe that a debit card is the equivalent of

26   cash.  Therefore, Defendants' practice violates the CLRA, FAL and UCL.  Defendants' failure to sell

27   gasoline to Plaintiff and the other members of the Class at the agreed "cash" price is also a breach of

28

COMPLAINT FOR INJUNCTIVE RELIEF, DECLARATORY RELIEF, DAMAGES AND
RESTITUTION                                       - 9 -

the contract for the sale of gasoline at a specific price entered into between Defendants and Plaintiff and the other members of the Class.

50.     Plaintiff and the other members of the Class would not have entered Valero-branded gas stations to purchase gasoline over competing gas stations were it not for Defendants' false, deceptive and misleading offer and advertisement of a lower "cash" price for gasoline.

**Defendants Are Prohibited from Charging
a "Surcharge" on Debit Card Transactions**

51.     Due to transaction fees charged by financial institutions, some merchants choose to pass on the amount of the fee to consumers who make purchases on credit.

52.     Credit card issuers typically charge merchants like Defendants a fee for each credit card transaction of approximately 1%-4% of the transaction's value.

53.     By contrast, the maximum amount of a transaction fee on debit card transactions is capped by federal law.

54.     Pursuant to the Durbin Amendment to the Dodd-Frank Wall Street Reform and Consumer Protection Act of 2010 (the "Dodd-Frank Act"), 15 U.S.C. §1693o-2, the Federal Reserve Board capped debit card transaction fees at $0.21 per transaction, plus five basis points multiplied by the value of the entire transaction.

55.     The "credit" price that Defendants charge to consumers who purchase gasoline with a debit card, including Plaintiff and the members of the Class, results in a surcharge on their debit card transactions that is substantially more than the amount allowed by federal law.

56.     Furthermore, both Visa and MasterCard prohibit ***any*** surcharge on debit card transactions, *i.e.*, anything over the cash price, unless the merchant clearly discloses the surcharge, the amount of which, of course, is capped by federal law.  Attached hereto as **Exhibit B** is a true and correct copy of MasterCard's policy prohibiting surcharges on debit cards.  Attached hereto as **Exhibit C** is a true and correct copy of a "Q&A" by Visa to its network of merchants informing them that they may not charge consumers any additional fee or surcharge on debit card purchases. Attached hereto as **Exhibit D** is a true and correct copy of Visa infographic informing merchants

1   that they may not charge any additional fee or surcharge on debit card purchases.  The overwhelming

2   majority of debit cards are issued by Visa and MasterCard.

3         57.     Notably, in December 2013, United States District Court Judge John Gleeson

4   approved a settlement in the largest antitrust class action lawsuit in American history, *In re Payment*

5   *Card Interchange Fee and Merchant Discount Antitrust Litig.*, MDL No. 1720 (E.D.N.Y.), which

6   resulted in a *$5.7 billion* payment to consumers who were overcharged fees on debit card purchases.

7   As part of the settlement, Visa and MasterCard also agreed not to charge additional fees on debit

8   card purchases.  Attached hereto as **Exhibit E** is a true and correct copy of correspondence from

9   Visa to its network of merchants informing them of the aforementioned settlement and instructing

10  them not to charge additional fees or surcharges on debit card purchases.

11  **Plaintiff's Experiences**

12        58.     Plaintiff is a resident of South San Francisco, California.

13        59.     Plaintiff regularly purchases $30 to $40 of gasoline per week.

14        60.     Plaintiff is sensitive to the price of gasoline and regularly purchases gasoline from

15  stations advertising the lowest price.

16        61.     At various times throughout the class period, Plaintiff was exposed to Defendants'

17  Valero-branded advertisements of a "credit" price and a lower "cash" price for gasoline, including at

18  a specific Valero-branded gas station located at 6989 Mission Street, Daly City, California.

19  Attached hereto as **Exhibit A** is a true and correct example of the advertisements to which Plaintiff

20  was exposed.

21        62.     Plaintiff understood Defendants' advertised "cash" price to be an offer to purchase

22  gasoline with cash at the specifically advertised price.

23        63.     Like all reasonable consumers, Plaintiff considers her MasterCard-branded debit card

24  the equivalent of cash because a charge on her debit card results in an immediate cash withdrawal

25  from cash available in Plaintiff's bank account.

26        64.     Based on Defendants' advertised offer to purchase gasoline with cash at the

27  specifically advertised price, Plaintiff entered Valero-branded gas stations at various times

28

throughout the class period in order to purchase gasoline with her debit card at the advertised lower "cash" price.

65.     At each Valero-branded gas station, Plaintiff paid with her MasterCard-branded debit card and was charged the higher "***credit***" price for gasoline.  Attached hereto as **Exhibit F** is true and correct copy of receipt for gasoline purchased by Plaintiff from a Valero-branded gas station.

66.     Plaintiff would not have entered Valero-branded gas stations to purchase gasoline over competing gas stations were it not for Defendants' falsely advertised "cash" price.

67.     As a result of Defendants' false and misleading practices, Plaintiff suffered damages in an amount to be proved at trial, but no less than the jurisdictional minimum of this Court.

**CLASS ACTION ALLEGATIONS**

68.     Plaintiff brings this action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf the following proposed Class:

> ***All persons who paid for Valero-branded gasoline with a debit card in California between July 2011 and the present***.

69.     Subject to additional information obtained through further investigation and discovery, the foregoing definition of the Class may be expanded or narrowed by amendment or amended complaint.

70.     Specifically excluded from the Class are Defendants, their officers, directors, agents, trustees, parents, children, corporations, trusts, representatives, employees, principals, servants, partners, joint venturers or entities controlled by Defendants, and their heirs, successors, assigns or other persons or entities related to or affiliated with Defendants and/or their officers and/or directors, the judge assigned to this action, and any member of the judge's immediate family.

71.     ***Numerosity***.  The members of the Class are so numerous that individual joinder is impracticable.  Upon information and belief, Plaintiff alleges that the Class contains many hundreds of thousands of members.  The precise number of Class members is unknown to Plaintiff.  The true number of Class members is known by Defendants, however, and thus may be notified of the pendency of this action by first class mail, electronic mail or published notice.

COMPLAINT FOR INJUNCTIVE RELIEF, DECLARATORY RELIEF, DAMAGES AND RESTITUTION                                                                                                          - 12 -

72.    ***Existence and predominance of common questions of law and fact***.    Common questions of law and fact exist as to all members of the Class and predominate over any questions affecting only individual Class members.  These common legal and factual questions include, but are not limited to, the following:

(a)    whether Defendants charged debit cards as credit cards;

(b)    whether Defendants' advertised "cash" price is misleading to reasonable consumers;

(c)    whether Defendants' advertised "cash" price is unlawful;

(d)    whether Defendants advertised a "cash" price for gasoline with the intent to not sell it as advertised;

(e)    whether Defendants' failure to inform consumers the amount charged as a debit card fee was unlawful;

(f)    whether the amount Defendants' charged as a debit card fee was unlawful;

(g)    whether Defendants violated the CLRA;

(h)    whether Defendants violated the FAL;

(i)    whether Defendants violated the UCL;

(j)    whether Defendants' advertised "cash" price constitutes an offer to enter into a contract for the sale of gasoline at the advertised price;

(k)    whether Defendants breached a contract for the sale of gasoline;

(l)    whether Defendants' acts were committed knowingly;

(m)    whether Plaintiff and the members of the Class are entitled to an accounting;

(n)    whether Plaintiff and the members of the Class have sustained monetary loss and the proper measure of that loss;

(o)    whether Plaintiff and the members of the Class are entitled to punitive damages; and

(p)    whether Plaintiff and the members of the Class are entitled to declaratory and injunctive relief.

73.   **Typicality**.  Plaintiff's claims are typical of the claims of the members of the Class in that Defendants deceived Plaintiff in the very same manner that they deceived each member of the Class.

74.   **Adequacy of representation**.  Plaintiff will fairly and adequately protect the interests of the Class.  Plaintiff has retained counsel highly experienced in complex consumer class action litigation, and Plaintiff intends to vigorously prosecute this action.  Further, Plaintiff has no interests that are antagonistic to those of the members of the Class.

75.   **Superiority**.  A class action is superior to all other available means for the fair and efficient adjudication of this controversy.  The damages or other financial detriment suffered by individual Class members is relatively small compared to the burden and expense that would be involved in individual litigation of their claims against Defendants.  It would, thus, be virtually impossible for the Class, on an individual basis, to obtain effective redress for the wrongs committed against them.  Furthermore, even if Class members could afford such individualized litigation, the court system could not.  Individualized litigation would create the danger of inconsistent or contradictory judgments arising from the same set of facts.  Individualized litigation would also increase the delay and expense to all parties and the court system from the issues raised by this action.  By contrast, the class action device provides the benefits of adjudication of these issues in a single proceeding, economies of scale, and comprehensive supervision by a single United States District Court, and presents no unusual management difficulties under the circumstances here.

76.   In the alternative, the Class may also be certified because:

(a)   the prosecution of separate actions by individual Class members would create a risk of inconsistent or varying adjudication with respect to individual Class members that would establish incompatible standards of conduct for the Defendants;

(b)   the prosecution of separate actions by individual Class members would create a risk of adjudications with respect to them that would, as a practical matter, be dispositive of the interests of other Class members not parties to the adjudications, or substantially impair or impede their ability to protect their interests; and

COMPLAINT FOR INJUNCTIVE RELIEF, DECLARATORY RELIEF, DAMAGES AND
RESTITUTION                                                                          - 14 -

(c)     Defendants have acted or refused to act on grounds generally applicable to the Class as a whole, thereby making appropriate final declaratory and injunctive relief with respect to the members of the Class as a whole.

77.     Moreover, certain issues relating to Defendants' liability may be certified pursuant to Rule 23(c)(4).

## COUNT I

### Violation of the CLRA, Cal. Civ. Code §1750, *et seq.*

78.     Plaintiff refers to and incorporates herein by reference the allegations in the preceding paragraphs as though fully set forth herein.

79.     The CLRA "shall be liberally construed and applied to promote its underlying purposes, which are to protect consumers against unfair and deceptive business practices and to provide efficient and economical procedures to secure such protection."  California Civil Code §1760.

80.     Plaintiff and the other Class members are consumers as defined by California Civil Code §1761(d).

81.     Gasoline is a good as defined by California Civil Code §1761(a).

82.     Defendants violated and continue to violate the CLRA by engaging in the following practices proscribed by California Civil Code §1770(a) in transactions that were intended to result in, and did result in, the sale of goods to consumers, including Plaintiff and members of the Class:

(a)     representing that gasoline has quantities that it does not have (§1770(a)(5));

(b)     advertising gasoline with intent not to sell it as advertised (§1770(a)(9)); and

(c)     making false or misleading statements of fact concerning the existence of, or amounts of, price reductions for gasoline (§1770(a)(13)).

83.     Specifically, Defendants advertised a lower "cash" price for gasoline sold at their Valero-branded gas stations when they knew, or should have known, that their representations and advertisements regarding the price of gasoline were false and misleading because Defendants charged a higher "credit" price to consumers who paid for gasoline with a debit card, which is a cash

1   equivalent and which Plaintiff and members of the Class reasonably and correctly believe is a cash

2   equivalent.

3       84.     Defendants' false and misleading advertisement regarding the price of gasoline is

4   likely to deceive, and in fact, did deceive, reasonable members of the public, including Plaintiff and

5   the other Class members, who reasonably and correctly believe that a debit card is the equivalent of

6   cash and, thus, are induced to enter Defendants' Valero-branded gas stations through Defendants'

7   false and misleading statements of fact concerning the existence of, or amounts of, price reductions

8   on gasoline.

9       85.     Pursuant to California Civil Code §1782(d), Plaintiff seeks an order enjoining the

10  above-described wrongful acts and practices of Defendants and for restitution and disgorgement.

11      86.     Pursuant to California Civil Code §1780(d), Plaintiff has prepared and attached an

12  affidavit stating facts showing that this action has been commenced in a county described as a proper

13  place for the trial.  *See* **Exhibit G**.

14      87.     Pursuant to California Civil Code §1782, on December 3, 2015, Plaintiff's counsel

15  sent a notice and demand letter by certified mail to Valero Energy Corporation, c/o its Chief

16  Executive Officer, Joseph W. Gorder, One Valero Way, San Antonio, TX 78249; Valero Marketing

17  & Supply Co., c/o its General Counsel, Jay Browning, One Valero Way, San Antonio, TX 78249;

18  and CST Brands, Inc. and CST Marketing & Supply Co., c/o their Chief Executive Officer,

19  Kimberly S. Lubel, One Valero Way, Suite 200, Bldg. D, San Antonio, TX 78249-1616.  *See*

20  Demand Letter, attached as **Exhibit H**.

21      88.     Pursuant to Plaintiff's Demand Letter, Defendants have 30 days from the date of the

22  filing of this Complaint to rectify or agree to rectify their violations of the CLRA.

23      89.     If Defendants fail to rectify or agree to correct, repair, replace or otherwise rectify

24  their violations of the CLRA within 30 days, Plaintiff will seek to amend this Complaint to seek

25  actual, punitive and statutory damages, as appropriate.

26      90.     Plaintiff further seeks costs and attorney's fees pursuant to Cal. Civ. Code §1780(e)

27  and Cal. Civ. Code §1021.5

28

COMPLAINT FOR INJUNCTIVE RELIEF, DECLARATORY RELIEF, DAMAGES AND
RESTITUTION                                                              - 16 -

## COUNT II

### False and Misleading Advertising in Violation of the FAL, Cal. Bus. & Prof. Code §17500, *et seq.*

91.     Plaintiff refers to and incorporates herein by reference the allegations in ¶¶1-77 as though fully set forth herein.

92.     The FAL makes it unlawful for:

(a)     "any person, firm, corporation or association, or any employee thereof with intent directly or indirectly to dispose of real . . . property . . . or to induce the public to enter into any obligation relating thereto, to make or disseminate or cause to be made or disseminated before the public in this state, . . . in any . . . advertising device, or . . . in any other manner or means whatever, . . . any statement, concerning that real . . . property . . . , or concerning any circumstance or matter of fact connected with the proposed . . . disposition thereof, which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading," or for

(b)     "any person, firm, or corporation to so make or disseminate or cause to be so made or disseminated any such statement as part of a plan or scheme with the intent not to sell that . . . property . . . , professional or otherwise, so advertised at the price stated therein, or as so advertised."

93.     Through the conduct alleged herein, Defendants violated the FAL by advertising a lower "cash" price for gasoline sold at their Valero-branded gas stations with the intent of inducing the public to enter into an obligation with respect to the purchase of gasoline from Defendants. Defendants' advertisement of a lower cash price was untrue and misleading, and Defendants knew, or through the exercise of reasonable care should have known, that such advertisement was untrue and misleading, because Defendants routinely charged a higher "credit" price to consumers who paid for gasoline with a debit card, which is a cash equivalent.

94.     Moreover, Defendants made such false advertisements as part of a plan or scheme with the intent to sell gasoline at higher than the advertised price, in further violation of the FAL.

95.     Defendants' false and misleading advertisements regarding the true "cash" price of gasoline are likely to deceive, and in fact, did deceive, members of the public, including Plaintiff and the other Class members, who reasonably and correctly believe that debit cards are the equivalent of cash and, thus, were induced to enter Defendants' gas stations through Defendants' false and misleading representations regarding the true price of gasoline sold at Defendants' Valero-branded gas stations.

96.     Pursuant to Cal. Bus. & Prof. Code §17203, Plaintiff seeks an order enjoining the above-described wrongful acts and practices of Defendants and for restitution and disgorgement.

**COUNT III**

**Violations of the UCL, Cal. Bus. & Prof. Code §17200,** *et seq.*

97.     Plaintiff refers to and incorporates by reference the allegations in ¶¶1-77 as though fully set forth herein.

98.     The UCL prohibits unfair competition, which the statute defines as any business act or practice that is either: (1) unlawful, (2) unfair, or (3) fraudulent.

99.     Defendants' business acts and practices alleged herein were unfair and fraudulent within the meaning of the UCL because Defendants' conduct is substantially injurious to consumers, offends public policy, and is immoral, unethical, oppressive, and unscrupulous, as the gravity of the conduct outweighs any alleged benefits attributable to such conduct, and there were reasonably available alternatives to further Defendants' legitimate business interests, other than the conduct described herein.

100.    Defendants' business acts and practices as alleged herein were also unlawful, in further violation of the UCL, because Defendants' business acts and practices constituted the following:

            (a)     violations of the CLRA;

            (b)     violations of the FAL;

            (c)     conversion; and

            (d)     breach of contract.

COMPLAINT FOR INJUNCTIVE RELIEF, DECLARATORY RELIEF, DAMAGES AND
RESTITUTION                                                                                          - 18 -

101.    Plaintiff reserves the right to allege other violations of law by Defendants, which constitute other unlawful or unfair business acts or practices in violation of the UCL.

102.    Defendants' unlawful, unfair and fraudulent business acts and practices in violation of the UCL were likely to deceive, and in fact, did deceive, members of the consuming public, including Plaintiff and the members of the Class.

103.    Pursuant to the UCL, Plaintiff seeks an order enjoining Defendants' unlawful, unfair and fraudulent business acts and practices in violation of the UCL and for restitution and disgorgement of Defendants' ill-gotten proceeds.

**COUNT IV**

**Breach of Contract**

104.    Plaintiff refers to and incorporates herein by reference the allegations in ¶¶1-77 as though fully set forth herein.

105.    Defendants' advertisement of a specific "cash" price for gasoline sold at their Valero-branded gas stations constituted an offer to the public to purchase gasoline at the advertised price in exchange for the public's act of entering such Valero-branded gas stations.

106.    Plaintiff and the members of the Class accepted Defendants' offer to purchase gasoline at the advertised price by entering Defendants' gas stations, and such action constitutes sufficient consideration, thereby forming a binding contract for the sale of gasoline at the price advertised by Defendants.

107.    Defendants breached the contract for the sale of gasoline entered into between Defendants and Plaintiff and the other members of the Class by charging Plaintiff and the other members of the Class a higher price for gasoline than the price advertised and agreed to and Plaintiff and the other Class members were damaged thereby in an amount to be proven at trial but in no event less than the jurisdictional minimum of this Court.

108.    Plaintiff seeks expectation damages arising from Defendants' breach of contract.

## COUNT V

### Accounting

109.    Plaintiff refers to and incorporates herein by reference the allegations in ¶¶1-77 as though fully set forth herein.

110.    A relationship exists between Plaintiff and the members of the Class on the one hand, and Defendants on the other hand, that requires an accounting.

111.    Specifically, Defendants are merchants of gasoline and Plaintiff and the members of the Class are customers of Defendants.

112.    Through the acts alleged herein, Defendants unlawfully overcharged Plaintiff and the members of the Class in the sale of gasoline.

113.    Therefore, Defendants possess money belonging to Plaintiff and the members of the Class that Defendants must return.

114.    The exact balance owed by Defendants to Plaintiff and the members of the Class is unknown to Plaintiff and cannot be ascertained without an accounting of the amounts paid to Defendants during the class period for all Debit Card charges and the amount of gasoline purchased with a debit card by Plaintiff and the members of the Class.

115.    Such accounting will facilitate restitution to Plaintiff and the members of the Class of all funds obtained by Defendants' unlawful acts.

116.    Therefore, Plaintiff seeks an accounting of Defendants' ill-gotten proceeds and to recover such sums owed to Plaintiff and the members of the Class.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully prays for a judgment as follows:

A.    Certifying the Class as requested herein, appointing Plaintiff as Class Representative, and appointing Robbins Geller Rudman & Dowd LLP and Hobson, Bernardino & Davis, LLP as Class counsel;

B.    Declaring that Defendants committed the violations alleged herein;

C.    Awarding Plaintiff and the members of the Class damages, including punitive damages and interest thereon;

1     D.     Awarding restitution and disgorgement of Defendants' revenues to Plaintiff and the

2 members of the Class;

3     E.     Awarding declaratory, injunctive and other equitable relief as permitted by law or

4 equity, including enjoining Defendants from continuing the unlawful practices described herein, and

5 directing Defendants to identify, with this Court's supervision, victims of their conduct and pay them

6 restitution and disgorge all monies Defendants acquired through any act or practice declared by this

7 Court to be wrongful or unlawful;

8     F.     Awarding Plaintiff attorneys' fees and costs; and

9     G.     Providing any and all further legal and equitable relief as this Court may deem just

10 and proper.

11 **JURY DEMAND**

12     Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, and Local Rules of this

13 Court, Plaintiff respectfully demands trial by jury on all issues so triable.

14 DATED:  December 3, 2015          HOBSON, BERNARDINO & DAVIS, LLP
RAFAEL BERNARDINO, JR.
15                            JASON A. HOBSON

16

17                            *s/ Rafael Bernardino, Jr.*

18                          RAFAEL BERNARDINO, JR.

19                        725 South Figueroa Street, Suite 3230
Los Angeles, CA  90017
20                        Telephone:  213/235-9190
213/235-9197 (fax)

21                        ROBBINS GELLER RUDMAN
  & DOWD LLP
22                        PATRICK W. DANIELS
23                        655 West Broadway, Suite 1900
San Diego, CA  92101
24                        Telephone:  619/231-1058
619/231-7423 (fax)

25

26

27

28

COMPLAINT FOR INJUNCTIVE RELIEF, DECLARATORY RELIEF, DAMAGES AND
RESTITUTION                                                    - 21

1

2                                                       ROBBINS GELLER RUDMAN
                                                         & DOWD LLP

3 STUART A. DAVIDSON
MARK J. DEARMAN

4 CHRISTOPHER C. MARTINS
120 East Palmetto Park Road, Suite 500

5 Boca Raton, FL  33432
Telephone:  561/750-3000

6 561/750-3364 (fax)

7 ROBBINS GELLER RUDMAN
     & DOWD LLP

8 ROXANA PIERCE
1701 K Street NW, Suite 350

9 Washington, DC  20036
Telephone:  202/822-6762

10 202/828-8528 (fax)

11 Attorneys for Plaintiff and the Proposed Class

12 I:\Admin\CptDraft\Consumer\Cpt Gasoline Debit VALERO.docx

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COMPLAINT FOR INJUNCTIVE RELIEF, DECLARATORY RELIEF, DAMAGES AND
RESTITUTION                                                      - 22 -