# EXHIBIT A



# EXHIBIT B



# What merchant surcharge rules mean to you

Pursuant to a settlement of the U.S. merchant class litigation, MasterCard will modify certain rules and business practices to permit U.S. merchants to apply an extra checkout fee, also known as a surcharge, to customers who pay with MasterCard-branded credit cards. The rule change permitting such surcharging will go into effect on January 27, 2013. These fees are not allowed on Debit MasterCard or MasterCard prepaid cards.

A summary of the rules changes required by the settlement that MasterCard acquirers will provide to their merchant can be accessed here (/content/dam/mccom/en-us/documents/Merchant-Surcharge-Rules.pdf). The details regarding the terms under which merchants may impose a surcharge (/content/dam/mccom/en-us/documents/Merchant%20Surcharge_FAQ_02.14.13.pdf) on MasterCard credit transactions can be found in the specific No Surcharge Rule modification that can be accessed via clicking here (/content/dam/mccom/en-us/documents/Merchant-Surcharge-Rules.pdf).

Below is a summary of key provisions of the no surcharge rule change. Merchants should review the actual rule change and complete the required notification process before implementing a surcharge on MasterCard credit cards.

## Merchant registration with MasterCard and acquirer

A merchant's ability to apply a surcharge is conditioned on the merchant's satisfaction of certain disclosure requirements. These disclosure requirements include advance notice to both MasterCard and the merchant's acquirer of the merchant's intention to impose a surcharge no less than thirty days before the merchant implements a surcharge. A merchant can satisfy its disclosure obligation to MasterCard by clicking here (/en-us/surcharge-disclosure-webform.html#contentpar_text) and providing the following information:

- Merchant Name
- Merchant Contact Information (address, phone and email)
- Number of Locations Surcharging
- Type of Channel (face-to-face, eCommerce, mail order or phone order)
- Type of Surcharge (brand or product)

Merchants should contact their acquirers with regard to the acquirer notification requirements.

## Type of permissible surcharges

Merchants are permitted to apply either a brand-level surcharge or a product-level surcharge to MasterCard credit cards. A brand level surcharge is one where the merchant charges the same percentage on all MasterCard credit cards. A product level surcharge is one where the merchant imposes a surcharge on a particular MasterCard credit product. In both circumstances, the level of the surcharge is subject to a cap.

## Cap on the level of the surcharge

The level of the fee that a merchant may charge a cardholder is capped in relation to the merchant's cost for MasterCard credit acceptance. For merchants who choose to impose a brand level surcharge, a merchant may only surcharge a MasterCard cardholder at the lesser of the merchant's average effective merchant discount rate that the merchant pays its acquirer for MasterCard credit acceptance or the Maximum Surcharge Cap, which can be found below. For merchants that impose a product level surcharge, the surcharge must not be more than the merchant's cost to accept the particular MasterCard credit product, minus the Durbin Amendment's cap on debit interchange fees.

# Merchant disclosure to consumer

A merchant must provide clear disclosure to the merchant's customers of the merchant's surcharging practices at the point of interaction which shall include the amount of the surcharge and the dollar amount of the surcharge on the transaction receipt provided by the merchant to its customers. Merchants should refer to the specific rule for additional consumer disclosure obligations.

Nothing in the MasterCard rules affects any obligation of a merchant to comply with applicable state or federal laws, including but not limited to state laws that may prohibit or restrict surcharging of credit transactions, and federal and state laws regarding deceptive or misleading disclosures.

# Other requirements should the merchant accept competing credit networks

For merchants that accept other brands of credit payment networks, such as American Express, Discover or PayPal, there are other requirements around the circumstances in which such a merchant could surcharge MasterCard cards that depend on the costs of those brands to the merchant and those brands' surcharging restrictions. A merchant should refer to the specific rules and/or contact their acquirer for greater detail concerning those requirements.

# Relevant data for merchants who surcharge

The Maximum Surcharge Cap – 4%

## MasterCard cost of acceptance

**BY MERCHANT CATEGORY**
**(/CONTENT/DAM/MCCOM/EN-US/DOCUMENTS/MASTERCARD-COST-OF-ACCEPTANCE-BRAND-LEVEL.PDF)**

**BY PRODUCT TYPE**
**(/CONTENT/DAM/MCCOM/EN-US/DOCUMENTS/MASTERCARD-COST-OF-ACCEPTANCE-PRODUCT-LEVEL.PDF)**

© 1994–2015 MasterCard. MasterCard is an Equal Opportunity Employer.

# EXHIBIT C

# Surcharging Credit Cards – Q&A for Merchants

**Q. What is a payment card surcharge?**
A payment card surcharge, also known as a checkout fee, is an additional fee that a merchant adds to a consumer's bill when he or she uses a card for payment.

**Q. Can I add a surcharge to card transactions?**
As a result of a legal settlement to resolve claims brought by a group of U.S. merchants, merchants in the U.S. and U.S. territories may add a surcharge to certain credit card transactions, starting January 27, 2013. Merchants who choose to surcharge must follow consumer disclosure and other requirements agreed to as part of the settlement.

**Q. When can I begin to surcharge?**
U.S. merchants must first notify Visa and their acquirer of their intent to surcharge at least 30 days prior to implementing surcharging. Merchants can submit a notification form to Visa at www.visa.com/merchantsurcharging. Merchants may not begin surcharging until January 27, 2013.

**Q. What should I consider when determining whether or not to assess a surcharge on card transactions?**
Before choosing to surcharge, U.S. merchants may want to consider a number of factors, including:
- the potential impact on your customers' experience
- what your competitors might be doing
- what information must be disclosed to your customers, and how
- cost of credit cards and other forms of payment

**Q. I am a merchant who intends to surcharge. What is the process I need to follow?**
U.S. merchants that intend to surcharge are required to:
- *Notify* Visa and your acquirer at least 30 days in advance of beginning to surcharge; a notification form to Visa can be submitted at www.visa.com/merchantsurcharging.
- *Limit* surcharging to credit cards only (no surcharging debit and prepaid cards) and limit the amount to your merchant discount rate for the applicable credit card surcharged*.
- *Disclose* the surcharge as a merchant fee and clearly alert consumers to the practice at the point of sale – both in store and online – and on every receipt.

Merchants should also consider whether they comply with all applicable state or federal laws. Currently, 10 U.S. states have surcharging restrictions including California, Colorado, Connecticut, Florida, Kansas, Maine, Massachusetts, New York, Oklahoma and Texas.

More information on rules and requirements related to surcharging can be found at www.visa.com/merchantsurcharging.

**Q. Can I assess a surcharge on both credit and debit card purchases?**
No. The ability to surcharge only applies to credit card purchases, and only under certain conditions. U.S. merchants cannot surcharge debit card or prepaid card purchases.

**Q. Can I assess a surcharge on debit card transactions for which the cardholder using a debit card chooses "credit" on the point of sale terminal?**
No. The ability to surcharge only applies to purchases made with a credit card, and only under certain conditions.

**Q. Are there limits to the amount I can surcharge?**
Yes. U.S. merchants may assess a surcharge on credit card purchases that does not exceed the merchant discount rate for the applicable credit card surcharged*. More information can be found at www.visa.com/merchantsurcharging.

**Q. Can I choose to surcharge Visa credit cards and not surcharge other card brands?**
Yes, however, merchants must surcharge Visa on the same terms and conditions as any equal or higher cost competitor that imposes limits on surcharging.

**Q. Am I required to disclose the surcharge to my customers?**
Yes. U.S. merchants that surcharge must disclose the surcharge dollar amount on every receipt. In addition, disclosures that a merchant outlet assesses a surcharge on credit card purchases must be posted at the point-of-entry and point-of-sale. Disclosure requirements and sample compliant signage can be found at www.visa.com/merchantsurcharging.

**Q. What laws exist that may relate to surcharging?**
Currently, 10 U.S. states have surcharging restrictions including California, Colorado, Connecticut, Florida, Kansas, Maine, Massachusetts, New York, Oklahoma and Texas. Please consult with legal counsel to determine whether your practices comply with relevant state law.

**Q. I operate stores in multiple states. I understand that state laws prohibit me from surcharging in some states where I operate, but not others – does that mean I can't surcharge in any of the states where I operate?**
No. If a merchant is prohibited from surcharging in one state, Visa's rules do not prevent the merchant from surcharging in other states that allow the practice.

**Q. Can I pick and choose what types of Visa cards I add a surcharge to?**
U.S. merchants have the option to add a surcharge at the "brand level" to all Visa credit card transactions, or to particular types of Visa credit card transactions at the "product level" (e.g., Visa Traditional, Visa Traditional Rewards, Visa Signature), but not both.

**Q. Does the ability to surcharge apply to merchants globally?**
No. The settlement agreement impacts Visa's rules related to the surcharging of credit card purchases made in the U.S. and U.S. territories only. Surcharging remains prohibited outside the U.S. unless there is a local law or variance that requires merchants be permitted to engage in the practice.

**Q. Where can I get more information about Visa's rules related to surcharging, requirements for surcharging and other related information?**
Merchants can access this and other information by visiting www.visa.com/merchantsurcharging.

*In cases where the applicable merchant discount rate exceeds 4% of the underlying transaction amount, in no event can the merchant assess a surcharge above 4%.

*Information provided here is subject to Visa's final operating regulations relating to surcharging, which will be provided online in early 2013.*

# EXHIBIT D

# Merchant Surcharging Considerations and Requirements





VISA

# EXHIBIT E

December 20, 2012


To:     Merchants in the U.S. and U.S. Territories

From:  Visa Inc.

Re:     Merchant Class Action Litigation Settlement – Important Changes to Merchant
         Acceptance Practices


In November 2012, the federal district court overseeing *In re Payment Card Interchange Fee
and Merchant Discount Antitrust Litigation (MDL 1720)*, the merchant class action interchange
litigation against Visa and other defendants, preliminarily approved a class settlement agreement
that resolves antitrust claims involving Visa's interchange and merchant acceptance rules in the
U.S. and its territories.  We are writing to inform you of the changes Visa is making to its rules,
effective January 27, 2013, applicable to transactions at merchants in the U.S. and U.S. territories
[1] ("U.S. merchants").  This letter describes certain merchant acceptance practices that will be
permitted.  The text of Visa's revised rules will be available at www.visa.com in mid-January.

Visa's Operating Regulations already allow merchants to engage in certain practices to steer
customers to forms of payment other than Visa cards, including offering discounts to customers
that initially present a Visa card to steer to another payment type or to a different type of Visa
card.  Following this settlement, U.S. merchants may surcharge Visa Credit card transactions
(not debit or pre-paid card transactions) at the Visa "brand level" or at the "product level," but
not both, subject to the following requirements:

**First, a U.S. merchant's surcharges on Visa Credit card transactions cannot exceed certain
levels.**  U.S. merchants who surcharge at the "brand level" may impose a surcharge on Visa
Credit card transactions if the surcharge:

- is the same for all Visa Credit card transactions, regardless of the card's Issuer or product
  type (e.g., Visa Traditional, Visa Traditional Rewards, Visa Signature, Visa Signature
  Preferred);

- is no greater than the merchant's average discount rate for Visa Credit card transactions
  for the preceding one month or 12 months; and

---

[1] This includes American Samoa, Guam, Commonwealth of the Northern Mariana Islands, Puerto Rico, U.S.
Outlying Islands, and U.S. Virgin Islands.

- does not in any event exceed 4% (even in cases where the merchant's average discount rate exceeds 4%).

U.S. merchants who surcharge at the "product level" may impose a surcharge on Visa Credit card transactions if the surcharge:

- is the same for all transactions on the particular product type (e.g., Visa Traditional, Visa Traditional Rewards, Visa Signature, Visa Signature Preferred), regardless of Issuer;

- is no greater than the merchant's average discount rate associated with the Visa Credit card product type transactions being surcharged for the preceding one month or 12 months, minus the regulated debit cap established by the Board of the Governors of the Federal Reserve System;

- does not in any event exceed 4% (even in cases where the merchant's average discount rate exceeds 4%).

**Second, for U.S. merchants that accept credit or charge cards of other payment network brands, surcharging practices are subject to a competitive "level playing field" limitation that depends on whether those payment network brands impose surcharge restrictions on credit cards and the merchants' costs of accepting those credit cards:**

- If the merchant accepts a competing payment network brand that is as or more expensive to the merchant than Visa, and that competing payment network limits the merchant's ability to surcharge credit cards, the merchant may surcharge Visa Credit cards only in the same way as the merchant would be allowed to surcharge the competing payment network's credit card (or on the terms on which the merchant actually surcharges the competing payment network's credit cards).

- If the merchant accepts a competing payment network brand of credit card that prohibits or effectively prohibits the merchant from surcharging in a particular channel of commerce (i.e. either face-to-face or non-face-to-face), the merchant may not surcharge Visa Credit cards unless it also surcharges the competing payment network's credit cards regardless of the cost of that card to the merchant. The amount of the surcharge on the competing payment network brand must equal at least the lesser of: the cost to accept the competing brand's credit cards or the surcharge imposed on Visa Credit cards.

This cost-based comparison is performed by comparing the merchant's Visa Credit card cost of acceptance (the average effective interchange rate plus the average of all network fees imposed on merchants or acquirers applicable to Visa credit card transactions at the merchant for the preceding one or twelve months), with the merchant's cost of acceptance for other credit card networks (the average merchant discount rate for the preceding one or twelve months).  If the

merchant cannot determine its Visa Credit card cost of acceptance, a merchant may use the Visa Credit card cost of acceptance for its merchant category, which is available on www.visa.com/merchantsurcharging, to compare its Visa Credit card cost of acceptance in the merchant's category to the cost of accepting competing payment network credit cards.

A U.S. merchant can "contract out" of these competitive "level playing field" provisions by entering into an individually negotiated agreement with another payment network in which the merchant waives or limits its ability to surcharge transactions on the competitive credit card brand, as long as the agreement is for a fixed duration, the merchant's acceptance of the competitive credit card brand is unrelated to and not conditioned on the merchant's entry into the agreement, the agreement is supported by independent consideration, and the agreement expressly specifies a price at which the merchant may accept transactions on the competitive payment network credit card brand and surcharge those transactions up to the merchant's discount rate for the other credit card brand.

**Third, a U.S. merchant that chooses to surcharge Visa Credit card transactions must satisfy notification and disclosure requirements.** A U.S. merchant that intends to surcharge must provide advance written notice to both Visa and the merchant's acquirer at least 30 days prior to surcharging, which must identify whether the merchant intends to impose surcharges at the brand or product level. Merchants can easily provide this notification to Visa through the www.visa.com/merchantsurcharging site. While notifications may be provided beginning December 20, 2012, actual surcharging of Visa Credit transactions may not commence until January 27, 2013. Please contact your acquirer for their notification requirements.

In addition, a U.S. merchant who surcharges must provide clear disclosure to the merchant's customers (1) **at the point of store entry**, or in an online environment on the first page that references credit card brands, that the merchant imposes a surcharge that is not greater than its applicable merchant discount rate for Visa Credit card transactions; (2) **at the point of interaction** or sale with the customer, of the merchant's surcharging practices (including the amount of any surcharges that the merchant imposes and a statement that the surcharge is being imposed by the merchant), in a manner that does not disparage the brand, network, issuing bank, or the payment card product being used; and (3) of the dollar amount of the surcharge **on the transaction receipt** provided by the merchant to its customers.

Merchants must continue to respect a cardholder's decision to pay with Visa: the settlement does not impact merchants' existing obligation to accept for payment properly presented Visa cards, including rewards cards. In addition, the rule changes that Visa is implementing under the settlement do not affect any obligation of a U.S. merchant to comply with all applicable state or federal laws, including state laws regarding surcharging of credit or debit card transactions, and federal and state laws regarding deceptive or misleading disclosures.

**Additional Practices and Policies**

- Visa will meet with merchant buying groups that meet certain criteria and that seek to negotiate proposals that provide reasonable commercial benefits to both parties
- A merchant will be permitted to decline acceptance of Visa products at all of its merchant outlets that operate under the same trade name or banner in the United States

If you have any questions regarding merchant surcharging, please contact your acquirer or visit www.visa.com/merchantsurcharging.

EXHIBIT F

```
DALY CITY GAS        , L306847489001
6389 MISSION ST
DALY CITY   , CA
94014

10/26/2015 01:11:21 PM 827965298

XXXX XXXX XXXX 2360 Mastercard

INVOICE 001445
AUTH 256352

PUMP# 3
REGULAR CR                      10.875C
PRICE/GAL                        2.939

FUEL TOTAL                   $  31.96
                             --------
                Subtotal = $  31.96
                     Tax = $   0.00
                             --------
                   Total = $  31.96


CREDIT                       $  31.96
================================================
APPROVED  266352
================================================
```

# EXHIBIT G

HOBSON, BERNARDINO & DAVIS, LLP
RAFAEL BERNARDINO, JR. (SBN 118690)
JASON A. HOBSON (SBN 184134)
725 South Figueroa Street, Suite 3230
Los Angeles, California 90017
Telephone: 213/235-9190
rbernardino@hbdlegal.com
jhobson@hbdlegal.com

ROBBINS GELLER RUDMAN & DOWD LLP
PATRICK DANIELS (SBN 190715)
655 West Broadway, Suite 1900
San Diego, California 92101
Telephone: 619/231-1058
619/ 231-7423 (fax)
patrickd@rgrdlaw.com

Attorneys for Plaintiff and the Class

[Additional Counsel Appear on Signature Block]

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| FAITH BAUTISTA, Individually and on Behalf of All Others Similarly Situated,<br><br>          Plaintiff,<br><br>    v.<br><br>VALERO ENERGY CORPORATION, CST BRANDS, INC., VALERO MARKETING AND SUPPLY COMPANY, CST MARKETING AND SUPPLY COMPANY<br><br>          Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) )<br><br>**DECLARATION OF FAITH BAUTISTA PURSUANT TO CAL. CIV. CODE §1780(d)** |

I, Faith Bautista, declare as follows:

1.     I am the Plaintiff in the above-styled action, and if called as a witness, I could and would competently testify regarding all facts within my personal knowledge.

2.     I am making this declaration pursuant to California *Civil Code* §1780(d).

3.     I understand that the Complaint that my attorneys filed on my behalf, and on behalf of those similarly situated, includes claims against Valero Energy Corporation, Valero Marketing and Supply Company, CST Brands, Inc.; and CST Marketing and Supply Company for violations of, *inter alia*, the *California Consumer Legal Remedies Act*, California *Civil Code* §1750, *et seq.*

4.     My Attorneys filed this action in the Northern District of California because I reside in San Mateo County, and based upon my belief, Defendants conduct substantial business within this Federal Judicial District. Upon information and belief, this Federal Judicial District is a proper place for a trial of this action.

5.     I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this _11_ day of November 2015 in San Mateo County, California.

_Faith Bautista_
Faith Bautista

Declaration of Faith Bautista

- 2 -

# EXHIBIT H

# Robbins Geller
# Rudman & Dowd LLP

| Atlanta | Chicago | Melville | Philadelphia | San Francisco |
|---|---|---|---|---|
| Boca Raton | Manhattan | Nashville | San Diego | Washington, DC |

Stuart A. Davidson
sdavidson@rgrdlaw.com

December 3, 2015

VIA CERTIFIED MAIL

Joseph W. Gorder
Chief Executive Officer
Valero Energy Corporation
One Valero Way
San Antonio, TX 78249

Jay Browning
General Counsel
Valero Marketing & Supply Co.
One Valero Way
San Antonio, TX 78249

Kimberly S. Lubel
Chief Executive Officer
CST Brands, Inc.
CST Marketing & Supply Co.
One Valero Way, Suite 200, Bldg. D
San Antonio, TX 78249-1616

Re:  *Faith Bautista, Individually and on Behalf of All Others Similarly Situated v. Valero Energy Corp., CST Brands, Inc., Valero Marketing & Supply Co., and CST Marketing & Supply Co.*

Dear Messrs. Gorder and Browning and Ms. Lubel:

This firm represents Faith Bautista ("Plaintiff"), who purchased Valero-branded gasoline in California using a debit card, but was charged the credit card price instead of the cash price.

We write on behalf of Plaintiff and other similarly situated consumers who purchased Valero-branded gasoline to make a demand for damages pursuant to California Civil Code §1782 of the California Consumers Legal Remedies Act ("CLRA"). The CLRA prohibits "unfair or deceptive acts or practices ... in the sale ... of good or services to any consumer."

Plaintiff alleges that defendants Valero Energy Corp., CST Brands, Inc., Valero Marketing & Supply Co., and CST Marketing & Supply Co. ("Defendants") violated the CLRA by advertising both a "cash" and a "credit" price for Valero-branded gasoline, but illegally charging consumers the credit price for gasoline purchased with a debit card, which is the equivalent of cash. This systemic conduct constitutes unfair methods of competition and unlawful, unfair and fraudulent acts or

**Robbins Geller**
**Rudman & Dowd** LLP

December 3, 2015
Page 2

practices, undertaken by Defendants, for the purpose of luring consumers into purchasing Valero-branded gasoline.

Plaintiff was one of the many consumers across the State of California that suffered damages in the payment of the higher credit card price for Valero-branded gasoline purchased with a debit card. Plaintiff's full claims, including the facts and circumstances surrounding those claims, are detailed in the Complaint, a copy of which is enclosed and incorporated by this reference.

Defendants' alleged conduct and practices constitute a violation of California Civil Code §1770(a) under, *inter alia*, the following subdivisions:

(5) Representing that [the products have] ... characteristics, ... uses [or] benefits ...which they do not have.

(9) Advertising goods ...with [the] intent not to sell them as advertised.

(13) making false or misleading statements of fact concerning the existence of, or amounts of, price reductions for gasoline.

While the Complaint constitutes sufficient notice of the claims asserted, pursuant to California Civil Code §1782, we hereby demand on behalf of our client and all others similarly situated in the State of California that Defendants immediately correct and rectify the violation of California Civil Code §1770 by: (i) ceasing the charging of debit cards the credit card price advertised for Valero-branded gasoline; and (ii) ceasing the use and dissemination of false and misleading advertising regarding the price of Valero-branded gasoline paid with a debit card.

In addition, we hereby demand that Defendants provide complete monetary relief to Plaintiff and all similarly situated consumers, plus reimbursement for interest, costs, and fees.

Plaintiff will, after 30 days from the date of this letter, amend the Complaint without leave of Court, as permitted by Civil Code §1782, to include claims for actual and punitive damages (as may be appropriate) if a full and adequate response to this letter is not received. Thus, to avoid further litigation, it is in the interest of all parties concerned that Defendants address this problem immediately.

Very truly yours,

STUART A. DAVIDSON

**Robbins Geller**
**Rudman & Dowd** LLP

December 3, 2015
Page 3

SAD:jd
Enclosure

cc:     Rafael Bernardino, Jr., Esq.
        Patrick W. Daniels, Esq.
        Roxana Pierce, Esq.
        Christopher C. Martins, Esq.