1  GLYNN & FINLEY, LLP
   ADAM FRIEDENBERG, Bar No. 205778
2  ROBERT C. PHELPS, Bar No. 106666
   LAUREN E. WOOD, Bar No. 280096
3  One Walnut Creek Center
   100 Pringle Avenue, Suite 500
4  Walnut Creek, CA 94596
   Telephone: (925) 210-2800
5  Facsimile: (925) 945-1975

6  Attorneys for Defendant
   Valero Marketing and Supply Company

7

8                  UNITED STATES DISTRICT COURT

9                  NORTHERN DISTRICT OF CALIFORNIA

10
                                          )   **Case No.** 15-cv-05557 RS
11  FAITH BAUTISTA, Individually and on    )
    Behalf of All Others Similarly Situated, )  **DEFENDANT VALERO MARKETING**
12                                         )   **AND SUPPLY COMPANY'S NOTICE**
                         Plaintiff,        )   **OF MOTION AND MOTION TO**
13                                         )   **DISMISS PLAINTIFF'S COMPLAINT**
         vs.                               )   **FOR FAILURE TO STATE A CLAIM**
14                                         )   **(RULE 12(B)(6)) AND SUPPORTING**
    VALERO ENERGY CORPORATION, CST )         **MEMORANDUM OF POINTS AND**
15  BRANDS, INC., VALERO MARKETING )        **AUTHORITIES**
    AND SUPPLY COMPANY and CST      )
16  MARKETING AND SUPPLY COMPANY, )          Date:    April 21, 2016
                                          )   Time:    1:30 p.m.
17                       Defendants.        )   Place:   San Francisco Courthouse,
                                          )            Courtroom 3 - 17th Floor
18                                         )   Judge:   Hon. Richard Seeborg
                                          )
19                                         )   **Accompanying Documents:**
                                          )     1)  **Declaration of Adam Friedenberg**
20  _____ )         2)  **[Proposed] Order**

21

22  TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD

23          NOTICE IS HEREBY GIVEN that on April 21, 2016, at 1:30 P.M., or as soon thereafter

24  as the matter may be heard by the above-entitled court, located at 450 Golden Gate Avenue, 17th

25  Floor, Courtroom 3, San Francisco, California, Valero Marketing and Supply Company

26  ("Valero") will bring on for hearing this motion to dismiss the Complaint.  This motion is made

27  pursuant to Federal Rule of Civil Procedure, Rule 12(b)(6) on the ground that the Complaint, and

28  each purported claim for relief set forth therein, fails to allege facts sufficient to state a claim

                                    - 1 -

upon which relief can be granted.

Specifically, Plaintiff's claims fail as a matter of law and must be dismissed for the following reasons:

- As to Plaintiff's first claim for relief for violation of the California Consumers Legal Remedies Act, California Civil Code, section 1770, *et seq*, Plaintiff fails to allege facts to establish the essential elements of: (1) a false or deceptive statement of material fact by Valero; (2) actual or detrimental reliance; or (3) economic injury.

- Plaintiff's second claim for relief for violation of the California False Advertising Law, California Business and Professions Code section 17500*, et seq*., fails to allege facts to establish an actionable false advertisement on which Plaintiff actually and reasonably relied.

- Plaintiff's third claim for relief for violation of the California Unfair Competition Law, California Business and Professions Code section 17200, *et seq.*, is derivative of the first and second claims for relief and thus fails on the same grounds.  In addition, Plaintiff fails to allege an injury that she could not have reasonably avoided.

- Plaintiff's fourth claim for relief for breach of contract fails to allege facts to establish the essential elements of contract formation, consideration, Plaintiff's performance or breach.

- Plaintiff's fifth claim for relief for accounting fails as a matter of law as Plaintiff does not allege a sufficient relationship between the parties or seek recovery of an amount that is not certain or cannot be made certain by calculation.

This motion is based upon this Notice of Motion and Motion, the below Memorandum of Points and Authorities, the Declaration of Adam Friedenberg (and attached exhibits) submitted herewith, all exhibits, pleadings and papers on file in this action, and upon such other matters as may be presented to the Court in reply or at the time of the hearing.

/ / /

1

**TABLE OF CONTENTS**

2

Page

3

TABLE OF AUTHORITIES .................................................................................. iii

4

MEMORANDUM OF POINTS AND AUTHORITIES ..................................................1

5

I.      INTRODUCTION..................................................................................1

6

II.     FACTUAL BACKGROUND ..................................................................2

7

        A.      The Station ..................................................................................2

8

        B.      The Alleged Misrepresentation .....................................................3

9

        C.      Plaintiff's Purchase .....................................................................3

10

        D.      PIN and Signature Debit ..............................................................4

11

        E.      Debit Card Transactions Do Not Cause Immediate Payment to Merchants ...........5

12

III.    LEGAL STANDARD ............................................................................7

13

IV.     ARGUMENT ........................................................................................8

14

        A.      Plaintiff Has Failed to State A Claim for Violation
                of the California Consumers Legal Remedies Act (Count I) ..................8

15

                1.  Plaintiff has failed to allege a misrepresentation by Valero..........................9

16

                2.  Plaintiff has failed to allege specific facts establishing
                    an actionable misrepresentation ................................................10

17

18

                    a.  As a matter of law, a debit card payment is not "cash" ...........10

19

                    b.  Plaintiff fails to allege facts to establish she was reasonably deceived .....12

20

                3.  Plaintiff has failed to allege specific facts establishing actual and
                    reasonable reliance on the alleged misrepresentation .....................13

21

                    a.  Plaintiff has failed to allege actual reliance ...............................13

22

23

                    b.  Plaintiff has failed to allege that her reliance on the street
                        sign was reasonable, in light of the information given to her
                        at the pump ...........................................................14

24

                4.  Plaintiff fails to allege specific facts establishing economic injury ..............16

25

        B.      Plaintiff Fails to State A Claim for Violation of the California
                False Advertising Law (Count II) ....................................................16

26

27

        C.      Plaintiff Fails to State A Claim for Violation of the California
                Unfair Competition Law (Count III) ................................................16

28

VALERO'S MOTION TO DISMISS COMPLAINT

1

**TABLE OF CONTENTS**
Continued

2

3   D.   Plaintiff Fails to State A Claim for Breach of Contract (Count IV) .....................17

4      1.  Plaintiff fails to allege formation of a valid contract .......................................17

5         a.  Plaintiff fails to allege any agreement with Valero....................................17

6         b.  Plaintiff fails to allege offer and acceptance of the
            same essential terms..................................................................................18

7

8      2.  Plaintiff fails to allege consideration ................................................................18

9      3.  Plaintiff fails to allege her performance or Valero's breach ............................19

10   E.   Plaintiff Fails to State A Claim for Accounting (Count V) ...................................19

11      1.  Plaintiff fails to allege a relationship that requires an accounting .................19

12      2.  Plaintiff fails to allege a balance that can only be ascertained
            by an accounting ................................................................................................20

13   V.   CONCLUSION..................................................................................................................20

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

VALERO'S MOTION TO DISMISS COMPLAINT

1

## **TABLE OF AUTHORITIES**

2

3

## **CASES**

4

*Apablasa v. Merritt & Co.*
5
  176 Cal. App. 2d 719 (1959) ........................................................................ 18

6
*Ashcroft v. Iqbal*
  556 U.S. 662 (2009)....................................................................................... 7
7

*Balistreri v. Pacifica Police Dep't*
8
  901 F.2d 696 (9th Cir. 1990) ......................................................................... 7

9
*Bell Atl. Corp. v. Twombly*
  550 U.S. 544 (2007)....................................................................................... 7
10

*Bly–Magee v. California*
11
  236 F.3d 1014 (9th Cir. 2001) ....................................................................... 7

12
*Brea v. McGlashan*
  3 Cal. App. 2d 454 (1934) .......................................................................... 19
13

*Buckland v. Threshold Enterprises, Ltd.*
14
  155 Cal.App.4th 798, 66 Cal.Rptr.3d 543 (2007)......................................... 8

15
*Cafasso, United States ex. rel. v. Gen. Dynamics C4 Sys., Inc.*
  637 F.3d 1047 (9th Cir. 2011) .................................................................. 8, 9
16

17
*California Pub. Employees' Ret. Sys. v. Moody's Investors Servs.*
  226 Cal. App. 4th 643 (2014) ...................................................................... 15
18

*Clemens v. Daimler Chrysler Corp.*
19
  534 F.3d 1017 (9th Cir. 2008) ..................................................................... 17

20
*Colgan v. Leatherman Tool Grp., Inc.*
  135 Cal. App. 4th 663 (2006) ........................................................................ 8
21

*Daniels–Hall v. Nat'l Educ. Ass'n*
22
  629 F.3d 992 (9th Cir. 2010) ......................................................................... 6

23
*Daugherty v. Am. Honda Motor Co.*
  144 Cal. App. 4th 824 (2006) ...................................................................... 17
24

25
*Davis v. Ford Motor Credit Co.*
  179 Cal. App. 4th 581 (2009) ........................................................................ 9
26

*Durell v. Sharp Healthcare*
27
  183 Cal. App. 4th 1350 (2010) ................................................................. 9, 16

28

VALERO'S MOTION TO DISMISS COMPLAINT

1

## TABLE OF AUTHORITIES
Continued

2

3   *Emery v. Visa Int'l Serv. Ass'n*
        95 Cal. App. 4th 952 (2002) ............................................................... 9
4

5   *Estate of Chamberlain*
        46 Cal. App. 2d 16 (1941) ................................................................ 10
6
    *Gilbrook v. City of Westminster*
7        177 F.3d 839 (9th Cir.1999) .............................................................. 3

8   *Gustavson v. Wrigley Sales Co.*
        961 F. Supp. 2d 1100 (N.D. Cal. 2013) ............................................... 6
9
    *Gutierrez v. Wells Fargo Bank, N.A.*
10       730 F. Supp. 2d 1080 (N.D. Cal. 2010), *reversed on other grounds
         and remanded*, 704 F.3d 712 (9th Cir. 2012) ............................... 5, 6
11
    *Hansen Beverage Co. v. Innovation Ventures, LLC*
12       2009 WL 6597891 (S.D. Cal. Dec. 23, 2009)....................................... 6

13  *Hartong v. Partake, Inc.*
        266 Cal. App. 2d 942 (1968) ............................................................ 14
14

15  *Holomaxx Techs. v. Microsoft Corp.*
        783 F. Supp. 2d 1097 (N.D. Cal. 2011) ............................................. 17
16
    *In re Actimmune Marketing Litigation*
17       2009 WL 3740648 (N.D. Cal. 2009) ............................................ 8, 13

18  *In re GlenFed, Inc. Sec. Litig.*
        42 F.3d 1541 (9th Cir. 1994) ............................................................. 8
19
    *In re Tobacco II Cases*
20       46 Cal.4th 298 (2009) ..................................................................... 13

21  *Jones v. ConAgra Foods, Inc.*
        912 F. Supp. 2d 889 (N.D. Cal. 2012) ................................................ 8
22

23  *Kearns v. Ford Motor Co.*
        567 F.3d 1120 (9th Cir. 2009) ........................................................ 7, 8
24

25  *Keegan v. Am. Honda Motor Co., Inc.*
        838 F. Supp. 2d 929 (C.D. Cal. 2012) .......................................... 8, 12

26  *Keen v. Am. Home Mortgage Servicing, Inc.*
        664 F. Supp. 2d 1086 (E.D. Cal. 2009).............................................. 16
27
    *Kelly v. BP West Coast Products, LLC*
28       2014 WL 7409220 (E.D. Cal. Dec. 29, 2014) ................................ 14, 15, 17

VALERO'S MOTION TO DISMISS COMPLAINT

1

**TABLE OF AUTHORITIES**
Continued

2

3

*Kwikset Corp. v. Sup. Ct.*
    51 Cal.4th 310 (2011) ............................................................................ 16

4

5

*Lee v. City of L.A.*
    250 F.3d 668 (9th Cir. 2001) *impliedly overruled on other grounds
    by Galbraith v. County of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002) ............................ 3

6

7

*Mattei v. Hopper*
    51 Cal.2d 119 (1958) ............................................................................ 18

8

*NACS v. Bd. of Governors of Fed. Reserve Sys.*
    746 F.3d 474 (D.C. Cir. 2014) ............................................................ *passim*

9

10

*Neubronner v. Milken*
    6 F.3d 666 (9th Cir. 1993) ..................................................................... 8

11

*OCM Principal Opportunities Fund v. CIBC World Markets Corp.*
    157 Cal. App. 4th 835 (2007) .............................................................. 14

12

13

*Panagotacos v. Bank of Am.*
    60 Cal. App. 4th 851 (1998) ................................................................ 18

14

15

*People v. Toomey*
    157 Cal. App. 3d 1 (1984) ..................................................................... 9

16

*Richman v. Hartley*
    224 Cal. App. 4th 1182 (2004) ............................................................ 17

17

18

*Rosado v. eBay Inc.*
    53 F. Supp. 3d 1256 (N.D. Cal. 2014) ............................................. *passim*

19

*St. James Church of Christ Holiness v. Superior Court*
    135 Cal. App. 2d 352 (1955) ................................................................ 20

20

21

*Sw. Concrete Prods. v. Gosh Constr. Corp.*
    51 Cal.3d 701 (1990) ...................................................................... 10, 11

22

23

*Teselle v. McLoughlin*
    173 Cal. App. 4th 156 (2009) ........................................................ 19, 20

24

*Vess v. Ciba-Geigy Corp. USA*
    317 F.3d 1097 (9th Cir. 2003) ............................................................. 7

25

26

27

28

VALERO'S MOTION TO DISMISS COMPLAINT

1

## TABLE OF AUTHORITIES
Continued

2

3   *W. Fed. Sav. & Loan Ass'n v. Heflin Corp.*
        797 F. Supp. 790 (N.D. Cal. 1992) ...................................................... 3

4

5   *Washington Mut. Bank v. Superior Court*
        95 Cal. App. 4th 606 (2002) ................................................... 10, 11

6

7   **STATUTES**

8   California Business and Professions Code
        Section 12107 ........................................................................... 12
9       Section 13404 ........................................................................... 12
        Section 13404.5 ........................................................................ 12
10      Section 13470(a) ................................................................ 4, 12
        Section 17200, *et seq.* ............................................................... 1
11      Section 17500, *et seq* ................................................................ 1

12  California Civil Code
        Section 1550(4) ........................................................................ 18
13      Section 1585 ............................................................................. 18
        Section 1770 ......................................................................... 1, 9
14      Section 1770(a) .......................................................................... 8
        Section 1780, subdivision (a) ................................................... 8
15
    Federal Rules of Civil Procedure
16      Rule 8 ..................................................................................... 13
        Rule 8(a) .................................................................................... 7
17      Rule 9 ...................................................................................... 16
        Rule 9(b) ............................................................................. 7, 13
18      Rule 12(b)(6) ........................................................................ 6, 7

19  Federal Rules of Evidence 201 .......................................................... 3

20

21  **OTHER AUTHORITES**

22
    5 Witkin, Cal. Procedure (5th Ed. 2008) Pleading, § 819 ...................... 19
23
    Judicial Council of California Civil Jury Instructions (2016 Ed.) ......... 14, 17
24
    October 2013 Official Report of the Federal Reserve Bank of Philadelphia
25      ("Philadelphia Federal Reserve Tutorial") .................................... 6

26

27

28

VALERO'S MOTION TO DISMISS COMPLAINT

1   **MEMORANDUM OF POINTS AND AUTHORITIES**

2   **I.     INTRODUCTION**

3          Plaintiff alleges that a street-corner sign at a Valero-branded gas station in Daly City,

4   California was deceptive for failing to state which of two posted gasoline prices (cash or credit)

5   would apply to a purchase made with her "MasterCard-branded debit card." (*E.g.*, Compl. ¶¶ 61-

6   65.)  A "MasterCard-branded debit card" is manifestly—and, as discussed below, legally—not

7   cash.  Plaintiff nonetheless contends that she reasonably believed that it "is the equivalent of

8   cash," and therefore entitled to the posted cash discount. (Compl. ¶ 5.)  Plaintiff alleges that she

9   consequently decided to "enter the station" with the assumption that her electronic payment

10  would receive a cash discount, but instead the credit price was charged.

11         Plaintiff nowhere alleges that the street-corner sign—or any other posting at the station—

12  affirmatively stated that the cash discount would apply to purchases made with a "MasterCard-

13  branded debit card."  The gravamen of Plaintiff's suit is her allegation that she reasonably

14  *assumed* that the cash discount would apply when she decided to "enter the station."  Plaintiff,

15  however, does not allege that she was unaware of the correct price at the time of her *purchase*.  If

16  the fuel dispenser clearly stated the price to be charged before Plaintiff began dispensing fuel, no

17  deception occurred.  But the Complaint artfully omits any allegations to establish whether the

18  price displayed on the fuel pump clarified Plaintiff's mistaken assumption *before* she made her

19  purchase decision.  Indeed, the Complaint includes no facts at all about the purchase.

20         Based on these limited factual allegations, Plaintiff alleges claims for relief for violation

21  of the California Consumers Legal Remedies Act ("CLRA"—Cal. Civ. Code, §1770, *et seq.*), the

22  California False Advertising Law ("FAL"—Cal. Bus & Prof. Code, § 17500, *et seq.*) and the

23  California Unfair Competition Law ("UCL"—Cal. Bus. Prof. Code, § 17200, *et seq.*), as well as

24  common law claims for breach of contract and accounting.  These claims fail as a matter of law

25  and should be dismissed for the following independent reasons.

26  • The Complaint fails to allege a misrepresentation *by Valero*.  Valero does not own the

27     Daly City station at issue.  Thus, Plaintiff did business with an independent retailer, and

28     not Valero; Plaintiff has alleged no facts to establish that Valero in any way participated

- 1 -

**VALERO'S MOTION TO DISMISS COMPLAINT**

1    in the alleged misrepresentation.

2    • Plaintiff fails as a matter of law to allege an actionable misrepresentation.  The gravamen
3    of Plaintiff's suit is the allegation that the station falsely advertised the "cash" price
4    because it did not apply to a "MasterCard-branded debit card."  Under well-settled
5    California law, "cash" payment occurs only where there is an immediate transfer of ready
6    funds to the payee.  Payment by "MasterCard-branded debit card" does not cause such an
7    immediate transfer *to the merchant* and thus does not constitute "cash."  Plaintiff
8    misunderstands how credit and debit transactions work.

9    • This fundamental misunderstanding also means Plaintiff's assumption that debit and cash
10    are synonymous was by definition not reasonable.  Moreover, Plaintiff does not allege
11    any facts to establish that her *purchase* was made under false pretenses.

12    • Plaintiff fails to allege facts to establish actual or reasonable reliance linked to the loss of
13    money or property, as is required.  As noted, Plaintiff alleges that the ambiguous street-
14    corner sign caused her to "enter the station."  But she does not address at all the essential
15    threshold question:  did the fuel dispenser provide notice of the applicable price, and
16    thereby remove any ambiguity, *before* Plaintiff began dispensing fuel?

17    • The claim for breach of contract fails to allege facts to establish:  (1) an agreement by
18    Valero; (2) offer and acceptance of the same material terms; (3) consideration; (4)
19    Plaintiff's performance; or (5) breach by Valero.

20    • Plaintiff fails to allege facts sufficient to establish either of the essential elements of the
21    claim for accounting:  (1) a sufficient relationship between the parties; or (2) a balance
22    due that can only be ascertained by an accounting.

23    As each of Plaintiff's five claims is legally defective, the Court should grant this motion
24 and dismiss the Complaint.

25   **II.    FACTUAL BACKGROUND**

26      **A.    The Station**

27      Plaintiff alleges that she purchased gasoline from a Valero-branded gas station located at
28 6989 Mission Street, Daly City, California (the "Daly City Station") using a "MasterCard-

1    branded debit card." (Compl. ¶ 63.) She alleges that the street-corner sign at the Daly City

2    Station stated a "falsely advertised 'cash' price," and that she "entered Valero-branded gas

3    stations" after viewing the street-corner sign. (*Id*. ¶ 66.)

4        Plaintiff does not allege that Valero (or, for that matter, either of the CST defendants)

5    owns the Daly City Station. (*See* Compl. ¶¶ 58-67.) In fact, a non-party owns the location.

6    (Declaration of Adam Friedenberg ("Friedenberg Decl.") ¶ 2, Ex. 1.[1]) The Complaint does not

7    allege that Plaintiff made a purchase at any retail facility owned by Valero. To the contrary, the

8    Complaint on its face describes only a single transaction at a single retail location—the Daly City

9    Station, which Valero does not own.

10       **B.    The Alleged Misrepresentation**

11       Plaintiff attaches to her Complaint a photograph of a gasoline station street sign bearing

12   Valero trade dress. (Compl. ¶ 45, Ex. A.) It is unclear whether the photograph was taken at the

13   Daly City Station. Plaintiff does not affirmatively allege that she took the photograph, or that it

14   is a photograph of the Daly City Station. Instead, the Complaint refers to the photograph as an

15   example of the advertisements to which Plaintiff was "exposed." (Compl. ¶ 61.) At any rate, the

16   photographed sign includes two price tiers: one for credit, the other for cash. (*Id*. Ex. A.) The

17   cash price reflects a per-gallon discount of four cents, applicable to each grade of gasoline. (*Id*.)

18       **C.    Plaintiff's Purchase**

19       Plaintiff alleges throughout the Complaint that the cash price posted on the street sign

20   "induced [her] to enter Defendant[']s[] Valero-branded gas stations." (Compl. ¶ 84; *Id*. ¶¶ 3, 95.)

21   Plaintiff's claims are based not on an allegation that the cash price was untruthfully or

22   inaccurately stated. Rather, the gravamen of her suit is that the street-corner sign did not specify

23

24       [1] Exhibit 1 to the Friedenberg Declaration is a certified copy of a Grant Deed recorded in 2010 by the San Mateo County Recorder's Office. It identifies non-party "NGEP Investments

25   LLC" as the owner of the Daly City Station property. As this document is in the public record, the Court may take judicial notice of the record and the facts set forth therein, and it is therefore

26   properly submitted in support of this motion. *See* Fed. R. Evid. 201; *Lee v. City of L.A.*, 250 F.3d 668, 688-89 (9th Cir. 2001) *impliedly overruled on other grounds by Galbraith v. County of*

27   *Santa Clara*, 307 F.3d 1119, 1125-26 (9th Cir. 2002); *Gilbrook v. City of Westminster*, 177 F.3d 839, 858 (9th Cir.1999); *see also W. Fed. Sav. & Loan Ass'n v. Heflin Corp.*, 797 F. Supp. 790,

28   792 (N.D. Cal. 1992) (taking judicial notice of public records, including deeds of trust).

1    which price (cash or credit) would apply to "MasterCard-branded debit cards," so she assumed

2    the cash price would apply.  (*See id.* ¶¶ 6-9.)  However, Plaintiff alleges no facts to establish

3    whether that information was in fact provided to her once she entered the stations (*e.g.*, at the

4    fuel pump).  Although virtually all modern gas stations utilize some form of electronic payment

5    terminal and display "at the pump," Plaintiff makes no allegation regarding whether that display

6    correctly apprised her of the price to be charged.[2]  Put another way, Plaintiff alleges it was

7    reasonable to assume the cash price would apply, but fails to allege whether she was in fact told

8    that the credit price would apply.

9            Plaintiff provides no other details regarding her purchase.  She does not describe in any

10   way the steps she took to complete the electronic transaction.  (Compl. ¶¶ 64-66.)  She does not

11   say whether she pressed the "Debit" button and entered her personal identification number

12   ("PIN").  She does not even allege whether the electronic display at the fuel dispenser disclosed

13   which price would be charged before she began dispensing fuel.  She does not allege that she

14   commenced or completed her purchase without clear notice of the applicable price.  This is a

15   crucial omission.  If Plaintiff had notice of the applicable price before making her purchase, then

16   she was not deceived at the time of her purchase and the street sign caused her no injury.

17       **D.     PIN and Signature Debit**

18           Plaintiff's factual omissions are material for another reason:  not all debit card

19   transactions are alike.  "Virtually all debit card transactions fall into one of two categories:

20   personal identification number (PIN) or signature."  *NACS v. Bd. of Governors of Fed. Reserve*

21   *Sys.*, 746 F.3d 474, 477 (D.C. Cir. 2014).  "Signature networks employ infrastructure used to

22   process credit card payments, while PIN networks employ infrastructure used by ATMs."  *Id.* at

23   478.  "Merchants who do accept both PIN and signature debit often allow customers to select

24   whether to process particular transactions on a PIN network or a signature network."  *Id.*

25           In a PIN transaction, the consumer generally takes the initial step of pressing a clearly-

26   labeled "Debit card" button on the fuel dispenser.  The cardholder then enters her PIN into the

27   _____

28       [2] California law requires retailers to post the actual price being charged on the gasoline
     dispenser/pump itself.  Cal. Bus. & Prof. Code, §13470(a).

1   terminal.  *Id.*  In a "signature" transaction, the consumer need not enter her PIN; she effectively

2   identifies the "MasterCard-branded debit card" as a credit card and thereby uses the "signature

3   network" (*i.e.*, the credit card network infrastructure).  *Id.*  Another significant difference is a

4   signature transaction involves additional steps that may further delay payment to the merchant.

5   *Id.* at 478-79; *Gutierrez v. Wells Fargo Bank, N.A.*, 730 F. Supp. 2d 1080, 1100-01 (N.D. Cal.

6   2010), *reversed on other grounds and remanded*, 704 F.3d 712 (9th Cir. 2012).  Either

7   transaction method involves a significant transaction cost to the merchant that would not apply to

8   a cash sale; indeed "merchants end up paying most of the costs" associated with debit-card

9   transactions.[3] *NACS*, 746 F.3d at 479.

10      **E.      Debit Card Transactions Do Not Cause Immediate Payment to Merchants**

11          The transaction fees incurred by the merchant are not the only distinction between cash

12   and debit-card transactions.  Another crucial difference is that debit-card transactions do not

13   cause immediate payment to the merchant.  Plaintiff's whole case is based on her assumption that

14   "cash" and "debit" transactions are essentially identical.  As noted above, Plaintiff does *not*

15   allege that the signs at the Daly City Station (or any other station) represented that "MasterCard-

16   branded" debit card transactions would be given a cash discount.  Nor does Plaintiff allege that

17   the street-corner sign, or any other writing at the Daly City Station, made any such

18   representation.  (*Id.* ¶¶ 58-67.)  To the contrary, Plaintiff concedes that the sign posted only

19   prices for "cash" and "credit" transactions.  (*Id.* ¶ 61.)

20          Thus, Plaintiff's assertion that the "cash" price is "false" is premised entirely on her belief

21   that payment with a "MasterCard-branded debit card" should qualify for the cash discount.  (*E.g.*,

22   Compl. ¶¶ 6-9.)  Again, Plaintiff does not allege observing such a representation.  Rather,

23   Plaintiff alleges that her belief is "reasonable" because "reasonable consumers . . . believe that a

24   debit card is the equivalent of cash and not a credit card."  (Compl. ¶ 6.)  This, Plaintiff contends,

25

26          [3] The receipt attached to Plaintiff's Complaint (Exhibit F) identifies her purchase as a
        "CREDIT" transaction, which indicates that Plaintiff opted *not* to identify her card as a debit
27      card, instead completing a "signature" transaction over the credit card network.  As noted, this is
        entirely the consumer's choice.  *NACS*, 746 F.3d at 478.  Further, we understand that when a
28      consumer at the Daly City Station presses the "Debit" button, the station charges only the *cash*
        price.

1    is because: "[i]n contrast to a credit card payment that is charged to the cardholder's line of credit

2    and paid at a later date, a debit card payment results in an immediate cash withdrawal from the

3    cardholder's bank account." (*Id.*)

4         Plaintiff, however, looks only at one side of the debit transaction—the withdrawal of

5    funds from her account. (*E.g.,* Compl. ¶ 6 ("a debit card payment results in an immediate cash

6    withdrawal *from the cardholder's bank account*") (emphasis added).) Plaintiff does not allege

7    that a "MasterCard-branded debit card" payment results in an immediate transfer of ready cash *to*

8    *the merchant*. In fact, that is not at all what occurs. Rather, debit-card transactions do not cause

9    immediate payment to a merchant (such as the Daly City Station). (Friedenberg Decl., Ex. 2

10   (Philadelphia Federal Reserve Tutorial);[4] *see also NACS*, 746 F.3d at 478-79; *Gutierrez*, 730 F.

11   Supp. 2d at 1100.) This fact is critical and dispositive, as addressed in detail below.

12        Unlike a traditional "cash" purchase, in a debit transaction the process of crediting money

13   to the merchant—known as "settlement"—is not instantaneous. "The timing of when a

14   merchant's account is credited for settled funds is determined by contractual arrangement with

15   the acquirer."[5] (Friedenberg Decl., Ex. 2 (Philadelphia Federal Reserve Tutorial) at p. 14.) In

16   some instances, funds are only transferred to the merchant within two days after the retail

17   transaction. (*Id.* at Fig. 1.) Even where transactions are "settled" on the same day as the

18   purchase, the transfer of funds is still not instantaneous. (*Id.*) Banks settle debit-card

19   transactions during a once daily "settlement window." It is only after the settlement window

20   "closes" that funds are credited to the merchant. (*Id.* at pp. 6-10; *Gutierrez*, 730 F. Supp. 2d at

21   _____

22        [4] Exhibit 2 to the Friedenberg Declaration is an October 2013 official report of the Federal
     Reserve Bank of Philadelphia (referred to herein as "Philadelphia Federal Reserve Tutorial").
23   Accordingly, it is a government publication of which the Court may take judicial notice and that
     may be considered in support of a Rule 12(b)(6) motion. *See Gustavson v. Wrigley Sales Co.*,
24   961 F. Supp. 2d 1100, 1113 n. 1 (N.D. Cal. 2013) (citing *Hansen Beverage Co. v. Innovation
     Ventures, LLC*, No. 08–1166, 2009 WL 6597891, at *2 (S.D. Cal. Dec. 23, 2009)); *see also
25   Daniels–Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998-99 (9th Cir. 2010).

26        [5] "To bring about this exchange of monies between buyer and seller, the payment card
     networks must first facilitate interbank clearing and settlement of card transactions each
27   processing day. This exchange of information and related funds takes place between 'acquiring'
     banks, the banks that provide services to network merchants (also referred to as 'acquirers'), and
28   'issuing' banks, the banks that service cardholder accounts (also referred to as 'issuers')."
     (Friedenberg Decl., Ex. 2 (Philadelphia Federal Reserve Tutorial) at p. 2.)

1  1100.)  These facts are fatal to Plaintiff's characterization of a "MasterCard-branded debit card"

2  as cash or a "cash equivalent," as addressed in detail in Section IV.A.2.a below.

3  **III.     LEGAL STANDARD**

4        Dismissal pursuant to Rule 12(b)(6) is proper where there is a "lack of a cognizable legal

5  theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v.*

6  *Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).  Under Rule 8(a), a plaintiff's

7  obligation to provide the grounds of her entitlement to relief requires more than labels and

8  conclusions; a formulaic recitation of the elements of a cause of action is insufficient.  *Bell Atl.*

9  *Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  A complaint must set forth "sufficient factual

10  matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*,

11  556 U.S. 662, 663 (2009) (quoting *Twombly*, 550 U.S. at 570).  This plausibility standard asks

12  for "more than a sheer possibility that a defendant has acted unlawfully." *Id*. at 678.  "Rule 8 . . .

13  does not unlock the doors of discovery for a plaintiff armed with nothing more than

14  conclusions." *Id*. at 678-79 (citing *Twombly*, 550 U.S. at 555-56).  Thus, to proceed past the

15  pleading stage Plaintiff's allegations must rise above mere speculation, suspicion, or unsupported

16  conclusions and must instead show entitlement to relief.  *See Twombly*, 550 U.S. at 555.

17        Additionally, "[i]n alleging fraud or mistake, a party must state with particularity the

18  circumstances constituting fraud or mistake."  Fed. R. Civ. P. 9(b).  Rule 9(b)'s heightened

19  pleading standard applies to state-law claims brought in federal court:  "[W]hile a federal court

20  will examine state law to determine whether the elements of fraud have been pled sufficiently to

21  state a cause of action, the Rule 9(b) requirement that the *circumstances* of the fraud must be

22  stated with particularity is a federally imposed rule." *Vess v. Ciba-Geigy Corp. USA,* 317 F.3d

23  1097, 1103 (9th Cir. 2003) (alteration and emphasis in original, citation omitted).  Further, these

24  requirements apply to claims of deceptive statements under the CLRA, FAL and UCL. *Id*. at

25  1102-05; *see also Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009).

26        Such allegations must "be 'specific enough to give defendants notice of the particular

27  misconduct . . . so that they can defend against the charge and not just deny that they have done

28  anything wrong.' " *Bly–Magee v. California*, 236 F.3d 1014, 1019 (9th Cir. 2001) (quoting

- 7 -

1   *Neubronner v. Milken,* 6 F.3d 666, 671 (9th Cir. 1993)).  "A party alleging fraud must 'set forth

2   *more* than the neutral facts necessary to identify the transaction.' "  *Kearns,* 567 F.3d at 1124

3   (quoting *In re GlenFed, Inc. Sec. Litig.,* 42 F.3d 1541, 1548 (9th Cir. 1994), *superceded by*

4   *statute on other grounds*).  Plaintiff therefore must allege particular facts to establish the "who,

5   what, when, where, and how of the misconduct charged."  *Cafasso, United States ex. rel. v. Gen.*

6   *Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1055 (9th Cir. 2011) (citation omitted).  She also must

7   specify "what is false or misleading about [the purportedly fraudulent] statement" or omission

8   and "why it is false."  *Id.* (alteration in original) (citation omitted).

9   **IV.   ARGUMENT**

10          **A.      Plaintiff Has Failed to State A Claim for Violation of the California**
               **Consumers Legal Remedies Act (Count I).**
11

12          "The CLRA proscribes 'unfair methods of competition and unfair or deceptive acts or

13  practices.' "  *Rosado v. eBay Inc.*, 53 F. Supp. 3d 1256, 1266 (N.D. Cal. 2014) (*quoting* Cal. Civ.

14  Code § 1770(a), *citing In re Actimmune Marketing Litigation*, No. 08-02376-MHP, 2009 WL

15  3740648, at *16 (N.D. Cal. 2009)).  "Conduct that is 'likely to mislead a reasonable consumer'

16  violates the CLRA."  *Id.* (*quoting Keegan v. Am. Honda Motor Co., Inc.*, 838 F. Supp. 2d 929,

17  938-39 (C.D. Cal. 2012), *quoting Colgan v. Leatherman Tool Grp., Inc.*, 135 Cal. App. 4th 663,

18  680 (2006)).  However, "where a court can conclude as a matter of law that alleged

19  misrepresentations are not likely to deceive a reasonable consumer, courts have dismissed claims

20  under the UCL, CLRA, and FAL."  *Rosado*, 53 F. Supp. 3d at 1264 (*citing Jones v. ConAgra*

21  *Foods, Inc.,* 912 F. Supp. 2d 889, 899 (N.D. Cal. 2012)).

22          "A CLRA claim sounding in fraud must establish reliance and causation."  *Rosado*, 53 F.

23  Supp. 3d at 1266.

24              Under Civil Code section 1780, subdivision (a), CLRA actions may be brought
                "only by a consumer 'who suffers any damage *as a result of the use or*
25              *employment* ' of a proscribed method, act, or practice[....] 'This language does not
                create an automatic award of statutory damages upon proof of an unlawful act.
26              Relief under the CLRA is specifically limited to those who suffer damage, making
                causation a necessary element of proof.' [Citation.] Accordingly, 'plaintiffs in a
27              CLRA action [must] show not only that a defendant's conduct was deceptive but
                that the deception caused them harm.' "  (*Buckland v. Threshold Enterprises, Ltd.*
28              (2007) 155 Cal.App.4th 798, 809, 66 Cal.Rptr.3d 543.) A "misrepresentation is

1    material for a plaintiff only if there is reliance—that is, ' " 'without the
2    misrepresentation, the plaintiff would not have acted as he did.' " ' " (*Id.* at p. 810, 66 Cal.Rptr.3d 543.)

3    *Durell v. Sharp Healthcare*, 183 Cal. App. 4th 1350, 1366-67 (2010); *see also Rosado,* 53 F.

4    Supp. 3d at 1266.  Further, the alleged injury must be one the consumer could not reasonably

5    have avoided.  *E.g., Davis v. Ford Motor Credit Co*., 179 Cal. App. 4th 581, 597 (2009).

6          Thus, Plaintiff was required to allege specific facts to establish the following:  (1) a false

7    or deceptive representation by Valero; (2) actual and reasonable reliance by Plaintiff; and (3)

8    consequent economic injury.  *Durell*, 183 Cal. App. 4th at 1366-67; *Rosado*, 53 F. Supp. 3d at

9    1266.  Plaintiff was further required to allege specific facts showing exactly why the alleged

10   representation was false.  *Rosado*, 53 F. Supp. 3d at 1266.  Plaintiff has failed to allege any of

11   these elements.

12                    **1.      Plaintiff has failed to allege a misrepresentation by Valero.**

13         Plaintiff failed to allege any misrepresentation *by Valero*, because Valero does not own

14   the Daly City Station where Plaintiff allegedly shopped.  As addressed above, Rule 9(b) required

15   that Plaintiff allege with particularity "the who, what, when, where, and how" of the alleged

16   fraud.  *Cafasso,* 637 F.3d at 1055.  Moreover, "'[t]he concept of vicarious liability has no

17   application to actions brought under the unfair business practices act.' "  *Emery v. Visa Int'l Serv.*

18   *Ass'n*, 95 Cal. App. 4th 952, 960 (2002) (*quoting People v. Toomey*, 157 Cal. App. 3d 1, 14

19   (1984)).  "A defendant's liability must be based on his personal 'participation in the unlawful

20   practices' and 'unbridled control' over the practices. . . ."[6]  *Id.* (*quoting Toomey*, 157 Cal. App.

21   3d at 15) (emphasis added).

22         Plaintiff does not allege, because she cannot allege, that Valero owns the Daly City

23   Station.  (Friedenberg Decl., Ex. 1.)  Plaintiff likewise fails to allege any facts to establish the

24   "personal participation" of Valero in the alleged misrepresentation.  Instead, Plaintiff attempts to

25

26          [6] *Emery* appears to have involved claims under the UCL and FAL, but not the CLRA.  As
27   discussed in section IV.B below, however, the substantive elements under all three statutes are comparable, such that courts may evaluate the claims together.  Indeed, the CLRA likewise imposes liability upon those who *make* misleading statements, and not any entity that allegedly
28   has knowledge of such a statement.  Cal. Civ. Code, §1770.

1   impute to Valero responsibility for the station owner's conduct by virtue of Valero's alleged

2   status as a franchisor and supplier of fuel.  Specifically, Plaintiff alleges that "[a]t all relevant

3   times prior to May 2013, [Valero] controlled the signage, including the advertised 'credit' and

4   'cash' prices, at all Valero-branded gas stations, regardless of the station's ownership structure."

5   (Compl. ¶ 20.)  But the Complaint supplies no facts to establish *how* such control exists, much

6   less the additional facts that would be required to establish " 'unbridled control' over the

7   practices" of the Daly City Station.

8       Plaintiff thus has failed to allege Valero's personal participation in the allegedly unlawful

9   conduct.  Her first claim for relief thus fails as a matter of law and must be dismissed.

10          **2.      Plaintiff has failed to allege specific facts establishing an
                      actionable misrepresentation.**
11

12      As Plaintiff fails to allege specific facts establishing conduct by Valero, her claims fail

13  and the Court's analysis need go no further.  Even had Plaintiff alleged a representation by

14  Valero, she has failed to allege a representation that is false or deceptive.  Her claims

15  independently fail on this ground.

16          **a.      As a matter of law, a debit card payment is not "cash."**

17      The crux of Plaintiff's case is her assumption that a "MasterCard-branded debit card" "is

18  a cash equivalent" and its use therefore entitled her to a cash discount.  (Compl. ¶ 83.)  This

19  essential premise is contrary to California law.

20      "A cash sale is one where the buyer and seller exchange the goods and payment at the

21  same time; any other method of payment is 'on credit.' "  *Sw. Concrete Prods. v. Gosh Constr.*

22  *Corp.*, 51 Cal.3d 701, 708 (1990).  "The common meaning of the word 'cash' is 'ready money,'

23  or 'money or its equivalent (as a check) paid for good or services at the time of purchase or

24  delivery.' "  *Washington Mut. Bank v. Superior Court*, 95 Cal. App. 4th 606, 623 (2002) (quoting

25  Webster's 10th Collegiate Dict. (1999) p. 177).  California "courts have defined the term 'cash'

26  as 'current money in hand or readily available,' and as 'ready money "at command, subject to

27  free disposal; not tied up in a fixed state." ' "  *Id.* (*quoting Estate of Chamberlain*, 46 Cal. App.

28  2d 16, 20 (1941)) (some internal quotation marks omitted).

1       Thus, in *Washington Mutual*, the California Court of Appeal held that a wire transfer or

2  electronic funds transfer (EFT) from one bank to another constituted "a method of delivering

3  cash." *Id*. at 623, 626.  The Court's focus, however, was the immediacy of the transfer to the

4  transferee—*i.e.,* "ready money . . . not tied up in a fixed state." *Id*. at 623.  Because a wire or

5  electronic transfer causes the immediate transfer of ready funds, the Court held that "such

6  transfers are the functional equivalent of cash." *Id*. at 626.  The Court held that the transfer of

7  funds, and not merely the right to receive funds, was essential.  *Id*. at 623, 626.

8       Here, in contrast, Plaintiff alleges no facts, much less the required specific facts, to

9  establish that a debit card transaction causes the *immediate* transfer of ready funds from

10  consumer to the merchant.  The Complaint describes the manner and timing of the debit of funds

11  from her account.  But this is immaterial, because the definition of a "cash" sale turns on the

12  timing of the payment *to the payee*—in short, the buyer and seller "must exchange goods and

13  payment at the same time."  *Sw. Concrete*, 51 Cal.3d at 708; *Washington Mut.*, 95 Cal. App. 4th

14  at 623.  Even assuming the truth of Plaintiff's allegation that funds were immediately withdrawn

15  from her account, Plaintiff has not alleged any facts to establish an immediate, corresponding

16  transfer to the operator of the Daly City Station of "ready money . . . not tied up in a fixed state."

17  *Washington Mut.*, 95 Cal. App. 4th at 623.  Thus, Plaintiff has failed to allege sufficient facts to

18  support her assertion that a "MasterCard-branded debit card" is a "cash equivalent."  Put another

19  way, she has failed to allege that the posted cash price was in any way misleading.

20       This is not simply a matter of incomplete pleading.  Plaintiff did not allege that a debit-

21  card payment causes the immediate transfer of ready money because such an allegation would be

22  untrue.  As detailed above, a debit-card purchase *does not* cause an immediate transfer of funds

23  to the merchant, even though Plaintiff's bank may immediately debit funds from her account.

24  *See NACS*, 746 F.3d at 478-79.  Instead, the merchant must wait to receive money it can use, in

25  some instances, up to two business days after the original purchase.  From the merchant's side of

26  the transaction, this does not constitute "ready money . . . not tied up in a fixed state," as required

27  by California law.  *Washington Mut.*, 95 Cal. App. 4th at 623.

28  / / /

1    Thus, payment by "MasterCard-branded debit card" is not "cash." As a matter of law,

2    therefore, the advertisement of a "cash" price that did not apply to payments made with

3    "MasterCard-branded debit cards" was neither false nor misleading. Hence Plaintiff has failed to

4    allege an actionable misrepresentation. On this further and independent basis, the Court must

5    dismiss Plaintiff's first claim for relief (as well as her parasitic claims under the FAL and UCL).

6                      **b.      Plaintiff fails to allege facts to establish she was**
                                 **reasonably deceived.**
7

8    As noted above, only "[c]onduct that is 'likely to mislead a reasonable consumer' violates

9    the CLRA." *Rosado*, 53 F. Supp. 3d at 1266 (*quoting Keegan,* 838 F. Supp. 2d at 938-39)

10   (emphasis added). It is critical that Plaintiff is not alleging that the street-corner sign falsely

11   states the cash price. Rather, she is alleging that the sign was deceptive because she reasonably

12   assumed that price would apply to purchases made with a "MasterCard-branded debit card."

13   (Compl. ¶¶ 62-63.) Plaintiff alleges that she "entered the station" as a result of this alleged

14   deception. But she never says whether she received notice of the applicable price before her

15   purchase. Thus, Plaintiff fails to allege that she was deceived, much less reasonably deceived, at

16   the time of her purchase.

17   Modern gas station dispensers include an electronic screen that displays the applicable

18   price before the consumer begins pumping fuel; the Daly City Station is no exception. Indeed,

19   section 13470(a) of the California Business & Professions Code expressly requires retailers to

20   display on the dispenser the actual price charged.[7] If the dispenser told Plaintiff she would be

21   charged the credit price, it was necessarily unreasonable for her to assume she would receive the

22   cash price. Put another way, if Plaintiff made her purchase with knowledge the credit price

23

24   _____

25   [7] Section 13470(a) provides:

26   A person shall not sell at retail to the general public, any motor vehicle fuel from any
     place of business in this state *unless there is displayed on the dispensing apparatus in a*
     *conspicuous place at least one sign or price indicator showing the total price per gallon,*
27   *liter, or other unit of measurement* adopted pursuant to Section 12107, 13404, or 13404.5
     of all motor vehicle fuel sold therefrom. The total price per gallon, liter, or other unit of
28   measurement shall include applicable fuel taxes and all sales taxes. (Emphasis added.)

1   would apply to "MasterCard-branded" cards, then she was not reasonably deceived—indeed, she

2   was not deceived at all.

3        Plaintiff completely fails to address this threshold aspect of her claim.  As discussed

4   above, she does not allege which price was displayed on the fuel dispenser.  She makes no

5   allegation whatsoever about her purchase transaction.  (*See id*. ¶¶ 58-67 (describing "Plaintiff's

6   Experiences").)  This omission is incompatible with the minimum pleading standard imposed by

7   Rule 8, let alone the elevated standard of particularity applicable under Rule 9(b).  If Plaintiff

8   wishes to bring suit alleging she purchased fuel under false pretenses, then it was incumbent

9   upon her to allege facts to establish that is actually what occurred.

10              **3.      Plaintiff has failed to allege specific facts establishing actual
                         and reasonable reliance on the alleged misrepresentation.**

11

12       As discussed above, Plaintiff "must show that [s]he personally lost money or property

13   because of [her] own actual and reasonable reliance on the allegedly untrue or misleading

14   statements."  *Rosado*, 53 F. Supp. 3d at 1264-65.  Once again, Plaintiff's failure to allege even a

15   single fact about her purchase transaction is fatal to her claim.

16                   **a.      Plaintiff has failed to allege actual reliance.**

17       The element of actual reliance requires that Plaintiff establish a causal connection

18   between the allegedly deceptive statement and the loss of money or property.  *See id.* (*citing In re*

19   *Tobacco II Cases*, 46 Cal.4th 298, 326-28 (2009)).  "Reliance can be demonstrated by showing

20   that but-for defendant's conduct, plaintiff would not, in all reasonable probability, have engaged

21   in the injury-producing conduct."  *Id*. at 1265 (*citing In re Actimmune Marketing Litig.*, 2009 WL

22   3740648 at *8).

23       Plaintiff, however, does not connect the allegedly deceptive statement to "the injury-

24   producing conduct."  She makes no allegation that that "but for" the street sign, she would not

25   have purchased fuel at the site.  Instead, Plaintiff merely alleges that the signage caused her to

26   "enter the station."  (Compl. ¶ 64.)  This is insufficient.  Entry upon the station premises is not

27   an injury.  Rather, the theoretical injury is the purchase of fuel at the credit price, based on the

28   allegedly deceptive representation that it would be sold for the cash price.  (*Id.* ¶ 62.)

1   The recent case *Kelly v. BP West Coast Products, LLC*, No. 2:14-cv-01507-KJM-CKD,

2   2014 WL 7409220 (E.D. Cal. Dec. 29, 2014) is instructive.  In *Kelly*, the plaintiff alleged

3   violation of the CLRA, claiming that he was the victim of a deceptive "bait-and-switch" scheme

4   because the street sign at an ARCO gas station failed to disclose that debit card transactions

5   would be subject to a $0.35 fee.  *Id.* at *1.  The gasoline dispenser, however, disclosed the $0.35

6   fee *before* plaintiff made his purchase.  *Id.*  The Court granted BP's motion to dismiss, finding

7   that plaintiff did not establish reliance on the allegedly deceptive street sign given the disclosure

8   at the pump, noting the plaintiff "could have avoided the fee altogether by paying cash or buying

9   gas elsewhere."  *Id.* at *8.  The Court found that in light of the pump disclosure, Plaintiff's

10  "theory of liability does not withstand common sense scrutiny."  *Id.*

11      The same is true here.  Plaintiff does not allege that at the time of *purchase* she lacked

12  notice that she would not receive a cash discount for her electronic payment.  Thus, Plaintiff has

13  failed to allege she "personally lost money or property because of [her] own actual and

14  reasonable reliance on the allegedly untrue or misleading statements."  *Rosado*, 53 F. Supp. 3d at

15  1264-65.  For this further and independent reason, her claim fails as a matter of law.

16                      **b.      Plaintiff has failed to allege that her reliance on the**
                                  **street sign was reasonable, in light of the information**
17                                **given to her at the pump.**

18      Plaintiff's claim separately fails because she has failed to allege facts showing that her

19  purported interpretation and reliance on the street corner price signs was reasonable.  The rule is

20  stated in the California pattern jury instruction defining "Reasonable Reliance":

21          it is not reasonable for anyone to rely on a [misrepresentation/concealment/false
            promise] that is preposterous. It also is not reasonable for anyone to rely on a
22          [misrepresentation/concealment/false promise] if facts that are within [his/her]
            observation show that it is obviously false.
23

24  Judicial Council of California Civil Jury Instructions (2016 Ed.), at p. 1061 (CACI No. 1908).

25  Under long-settled law, Plaintiff's reliance is unreasonable as a matter of law where "facts within

26  [her] observation [were] so patently and obviously false that [she] must have closed [her] eyes to

27  avoid discovery of the truth."  *Hartong v. Partake, Inc.*, 266 Cal. App. 2d 942, 965 (1968);

28  *accord: OCM Principal Opportunities Fund v. CIBC World Markets Corp.*, 157 Cal. App. 4th

1  835, 865 (2007); *California Pub. Employees' Ret. Sys. v. Moody's Investors Servs.*, 226 Cal.

2  App. 4th 643, 673 (2014).

3          In essence, Plaintiff here had to do exactly that:  she had to "close her eyes" to the facts—

4  *i.e.,* the actual price she was being charged—as shown on the pump/dispenser display.  Again,

5  the core of Plaintiff's claim is that the street price sign was misleading because it omitted any

6  reference to debit cards, and it was therefore reasonable for her to assume that the "cash" price

7  applied to "MasterCard-branded debit card" transactions.  In effect, she alleges that the signage

8  was ambiguous, and therefore deceptive.  If, however, the dispenser itself provided clear notice

9  before Plaintiff dispensed fuel that the price to be charged was the "credit" price, then Plaintiff's

10  contrary assumption was manifestly unreasonable—for Plaintiff to think she was going to be

11  charged the "cash" price quite literally required her to "close her eyes" to the actual price

12  displayed on the dispenser.  *See Kelly*, 2014 WL 7409220, at *8 (finding plaintiff failed to

13  adequately allege reliance on street sign that did not disclose $0.35 debit card transaction fee

14  where the fee was disclosed at the gasoline dispenser).  The dispenser would have provided such

15  notice, which is exactly why Plaintiff elides any allegation regarding her purchase transaction

16  generally, and the dispenser display specifically.

17          Moreover, the receipt attached to the Complaint as Exhibit F indicates that the dispenser

18  in fact did clearly notify Plaintiff that she would be charged the credit price.  That receipt states

19  that Plaintiff made a "Credit" purchase.  As discussed above, a debit card of the type alleged by

20  Plaintiff allows the consumer to elect, at her option, to make either a debit or credit transaction.

21  *See NACS*, 746 F.3d at 477.  The receipt indicates that Plaintiff opted for the latter, in which case

22  the dispenser necessarily would have displayed the credit price.  Either way, Exhibit F strongly

23  suggests that Plaintiff was notified before her purchase that she would be charged the credit

24  price.  Like the plaintiff in *Kelly*, Plaintiff "could have avoided the [alleged injury] altogether by

25  paying cash or buying gas elsewhere."  *Kelly*, 2014 WL 7409220, at *8.  This further underscores

26  the failure to plead actual or reasonable reliance causally linked to the alleged injury.

27          Plaintiff was required to allege particular facts to establish her reliance on the purportedly

28  ambiguous signage was reasonable.  Because such reliance was necessarily unreasonable if the

1   dispenser—*i.e.,* "facts within her observation"—confirmed the price to be charged, it was

2   incumbent upon her to allege facts addressing this issue.  Plaintiff's artful avoidance of these

3   facts constitutes a failure to make an essential *prima facie* allegation.  Mere conclusion is always

4   insufficient, and all the more so where the particularized-fact standard of Rule 9 applies.  For this

5   further reason, the claim fails as a matter of law and must be dismissed.

6            **4.    Plaintiff fails to allege specific facts establishing economic injury.**

7            Plaintiff's omission of any description of the purchase transaction also causes a failure to

8   plead the requisite economic injury.  As detailed above, Plaintiff merely asserts that the allegedly

9   deceptive signage caused her to "enter the station."  (Compl. ¶ 64.)  She nowhere alleges that the

10  signage caused her to lose money or property.  Thus, she has independently failed to allege an

11  actionable loss under the CLRA.  *Durell*, 183 Cal. App. 4th at 1366-67.

12       **B.    Plaintiff Fails to State A Claim for Violation of the California False
               Advertising Law (Count II).**
13

14           "A claim under the FAL must show that the plaintiff suffered an injury due to his or her

15  own actual and reasonable reliance on the purported misleading statements."  *Rosado*, 53 F.

16  Supp. 3d at 1266 (*citing Kwikset Corp. v. Sup. Ct.,* 51 Cal.4th 310, 326, n. 9 (2011)).  As the

17  elements of the claim are essentially the same as claims brought under the CLRA and UCL,

18  courts analyze all three claims together.  *Rosado*, 53 F. Supp. 3d at 1266-67.  Indeed, Plaintiff's

19  FAL claim is based on the same allegations as the CLRA claim:  that "[d]efendants' false and

20  misleading advertisements regarding the true 'cash' price of gasoline . . . induced [Plaintiff] to

21  enter Defendant[']s[] gas stations. . . ."  (Compl. ¶ 95.)  The claim thus fails as a matter of law,

22  and must be dismissed, for the same reasons set forth above with respect to the CLRA claim.

23       **C.    Plaintiff Fails to State A Claim for Violation of the California Unfair
               Competition Law (Count III).**
24

25           Plaintiff's UCL claim is likewise derivative of the CLRA claims and fails on the same

26  grounds.  *Keen v. Am. Home Mortgage Servicing, Inc.*, 664 F. Supp. 2d 1086, 1102 (E.D. Cal.

27  2009) (dismissing the plaintiff's cause of action for UCL violations because "plaintiff's UCL

28  claim is predicated on facts supporting her other claims, all of which the court has dismissed");

1    *Holomaxx Techs. v. Microsoft Corp.*, 783 F. Supp. 2d 1097, 1108 (N.D. Cal. 2011) ("Because . . .

2    Holomaxx has yet to state a viable claim for any actionable wrongdoing, the UCL claim in its

3    present form also is subject to dismissal").  Moreover, to state a claim under the UCL's "unfair"

4    prong, Plaintiffs must allege facts to support that "the consumer injury is substantial, is not

5    outweighed by any countervailing benefit to consumers or to competition, and it is not an injury

6    the consumers themselves could reasonably have avoided."  *Daugherty v. Am. Honda Motor Co.,*

7    144 Cal. App. 4th 824, 839 (2006).  If Plaintiff's theory is that the street-corner sign induced her

8    to make a debit card purchase, then she could have avoided the alleged injury by using an

9    alternate method of payment when she learned the applicable price at the fuel dispenser.  *See*

10   *Kelly*, 2014 WL 7409220, at *8 (upon receiving notice at the fuel dispenser of the $0.35

11   transaction fee for use of a debit card, plaintiff "could have avoided the fee altogether by paying

12   cash or buying gas elsewhere").  If Plaintiff wanted to obtain the cash price, she could have done

13   so by paying cash or by completing a PIN-debit transaction (*i.e.*, by pressing the "Debit" card

14   button).  By failing to allege that she lacked pre-transaction notice of the price to be charged,

15   Plaintiff has failed to establish that she could not have reasonably avoided the purported injury.

16       **D.     Plaintiff Fails to State A Claim for Breach of Contract (Count IV).**

17           The claim for breach of contract requires that Plaintiff allege facts showing:  (1) a valid

18   contract exists; (2) Plaintiff's performance; (3) Defendant's breach; and (4) injury resulting from

19   the breach.  *E.g., Richman v. Hartley*, 224 Cal. App. 4th 1182, 1186 (2004); *see generally*

20   Judicial Council of California Civil Jury Instructions (2016 Ed.), at pp. 82-85 (CACI No. 303).

21           **1.     Plaintiff fails to allege formation of a valid contract.**

22                   **a.     Plaintiff fails to allege any agreement with Valero.**

23           Plaintiff purchased fuel from an independent Valero dealer, not from Valero.

24   (Friedenberg Decl., Ex. 1.)  That the station may have a fuel supply or branding agreement with

25   Valero does not establish contractual privity between *Plaintiff* and Valero.  *See Clemens v.*

26   *Daimler Chrysler Corp.*, 534 F.3d 1017, 1023 (9th Cir. 2008) (purchaser who buys vehicle from

27   retailer is not in privity of contract with vehicle manufacturer because purchaser and

28   manufacturer do not hold "adjoining links of the distribution chain.").  A consumer who buys a

1    Big Mac at a local franchised McDonalds does not have a contract with McDonalds Corporation.

2    Thus, any offer to contract made by the station (or its owner) was not an offer made by Valero,

3    and any theoretically resulting contract could not be a contract to which Valero was a party.  For

4    this reason alone, the fourth claim for relief fails as a matter of law.

5                        **b.      Plaintiff fails to allege offer and acceptance of the same
                                 essential terms.**
6

7         For contracts not governed by the Uniform Commercial Code, California law applies the

8    "mirror image" rule of contract formation.  Accordingly, "terms proposed in an offer must be met

9    exactly, precisely and unequivocally for its acceptance to result in the formation of a binding

10   contract [citations]; and a qualified acceptance amounts to a new proposal or counteroffer putting

11   an end to the original offer. . . ."  *Apablasa v. Merritt & Co.*, 176 Cal. App. 2d 719, 726 (1959);

12   *accord Panagotacos v. Bank of Am.,* 60 Cal. App. 4th 851, 855-56 (1998); *see also, e.g.*, Cal.

13   Civ. Code, § 1585.  If offer and acceptance do not mirror each other exactly, no contract forms.

14        The Complaint fails to allege the required facts.  Plaintiff alleges that "Defendant[']s[]

15   advertisement of a specific 'cash' price for gasoline sold at their Valero-branded stations

16   constituted an offer to the public to purchase gasoline at the advertised price in exchange for the

17   public's act of entering such Valero-branded gas stations."  (Compl. ¶ 105.)  However, Plaintiff

18   did not pay cash.  (*Id.* ¶¶ 64-65.)  Moreover, a debit-card payment is not a "cash equivalent"

19   under California law, as discussed in Section IV.A.2.a, above.  Thus, to the extent the street-

20   corner sign constituted an "offer" to contract, Plaintiff's "acceptance" was on terms materially

21   different than the alleged offer.  As a matter of law, no contract formed and for this independent

22   reason Count IV fails as a matter of law.

23                        **2.      Plaintiff fails to allege consideration.**

24        Even if Plaintiff alleged an agreement with Valero, the alleged contract still would fail for

25   lack of consideration.  Cal. Civ Code, § 1550(4).  Further, there must be mutuality—for a

26   contract to be enforceable, it must obligate both parties to perform.  *E.g., Mattei v. Hopper*, 51

27   Cal.2d 119, 122 (1958).  Absent mutual obligation, an alleged agreement lacks consideration and

28   is legally unenforceable.  *Id.*

1   Here, Plaintiff fails to allege mutual obligation.  She alleges that she "enter[ed]

2   Defendant[']s[] gas stations, and such action constitutes sufficient consideration. . . ."  (Compl. ¶

3   106.)  As a matter of law, this is not so.  Plaintiff's entry upon station property did not oblige her

4   to purchase fuel; she remained free not to make any purchase at all.  As Plaintiff was free not to

5   perform the alleged contract, it fails for lack of consideration.  For this further and independent

6   reason, her claim for breach of contract fails as a matter of law and must be dismissed.

7       **3.      Plaintiff fails to allege her performance or Valero's breach.**

8   Valero could not breach a "contract" to which it was not a party.  Moreover, Plaintiff's

9   theory is that a contract formed obliging Valero to sell Plaintiff fuel at the cash price upon

10   Plaintiff's tender of cash (or, in her phrasing, a "cash equivalent").  Plaintiff, however, does not

11   allege that she tendered cash.  Thus, she fails to allege her performance or Valero's breach.

12       **E.      Plaintiff Fails to State A Claim for Accounting (Count V).**

13   "A cause of action for an accounting requires a showing that a relationship exists between

14   the plaintiff and defendant that requires an accounting, and that some balance is due the plaintiff

15   that can only be ascertained by an accounting."  *Teselle v. McLoughlin*, 173 Cal. App. 4th 156,

16   179 (2009) (*citing Brea v. McGlashan* 3 Cal. App. 2d 454, 460 (1934) and 5 Witkin, Cal.

17   Procedure (5th Ed. 2008) Pleading, § 819, p. 236).  Plaintiff has failed to allege facts sufficient to

18   establish either element.

19       **1.      Plaintiff fails to allege a relationship that requires an accounting.**

20   Plaintiff has not alleged facts showing the requisite relationship between Plaintiff and

21   Valero.  Indeed, Plaintiff has *no* relationship with Valero, because Valero does not own the Daly

22   City Station.  (Friedenberg Decl., Ex. 1.)  Plaintiff did business with an independent Valero-

23   branded retailer—*not* with Valero.  Plaintiff never alleges she made any payment to Valero, as

24   opposed to the individual retailer.  Valero does not possess any money belonging to Plaintiff.

25   Even had Plaintiff alleged a purchase from Valero, this alone would be insufficient.

26   Although a fiduciary relationship is not required, there must exist some relationship requiring an

27   accounting:  "[t]he right to an accounting can arise from the possession by the defendant of

28   money or property which, because of the defendant's relationship with the plaintiff, the defendant

- 19 -

1   is obliged to surrender." *Teselle*, 173 Cal. App. 4th at 179-80.  Plaintiff does not allege a special

2   or unique relationship warranting the unusual remedy of accounting, only a garden variety claim

3   for monetary recovery.

4                   **2.      Plaintiff fails to allege a balance that can only be ascertained
                            by an accounting.**
5

6           Even had Plaintiff adequately alleged the required special relationship, she has failed to

7   allege a balance due "that can only be ascertained by an accounting." *Teselle,* 173 Cal. App. 4th

8   at 179.  "An action for accounting is not available where the plaintiff alleges the right to recover

9   a sum certain or a sum that can be made certain by calculation." *Id.* (*citing St. James Church of*

10  *Christ Holiness v. Superior Court*, 135 Cal. App. 2d 352, 359 (1955)).  That, however, is

11  precisely what Plaintiff claims.  She alleges that she was "overcharged" by an amount equal to

12  the difference between the posted "cash" and "credit" prices at the Daly City Station.  (Compl. ¶¶

13  58-67.)  Valero, of course, denies this allegation and further denies that Plaintiff can prove any

14  amount as to which restitution would be proper.  But Plaintiff is clearly alleging an amount that,

15  if recoverable, is subject to calculation.  The fact that multiple or complex calculations may be

16  required makes no difference.  Thus, for this further and independent reason the fifth claim for

17  relief for accounting fails as a matter of law and must be dismissed.

18  **V.      CONCLUSION**

19          For the foregoing reasons, Valero respectfully submits that their motion should be

20  granted, without leave to amend.

21          Dated:  February 26, 2016

22                                                          GLYNN & FINLEY, LLP
                                                            ADAM FRIEDENBERG
23                                                          ROBERT C. PHELPS
                                                            LAUREN E. WOOD
24                                                          One Walnut Creek Center
                                                            100 Pringle Avenue, Suite 500
25                                                          Walnut Creek, CA  94596

26                                                          By ____/s/ Adam Friedenberg_____
                                                            Attorneys for Defendant
27                                                          Valero Marketing and Supply Company

28