1  GLYNN & FINLEY, LLP
   ADAM FRIEDENBERG, Bar No. 205778
2  ROBERT C. PHELPS, Bar No. 106666
   LAUREN E. WOOD, Bar No. 280096
3  One Walnut Creek Center
   100 Pringle Avenue, Suite 500
4  Walnut Creek, CA 94596
   Telephone: (925) 210-2800
5  Facsimile: (925) 945-1975

6  Attorneys for Defendant
   Valero Marketing and Supply Company

7

8                    UNITED STATES DISTRICT COURT

9                   NORTHERN DISTRICT OF CALIFORNIA

10
                                      )  **Case No.** 15-cv-05557 RS
11 FAITH BAUTISTA, Individually and on )
   Behalf of All Others Similarly Situated, )  **DEFENDANT VALERO MARKETING**
12                                    )  **AND SUPPLY COMPANY'S NOTICE**
                    Plaintiff,        )  **OF MOTION AND MOTION TO**
13                                    )  **DISMISS PLAINTIFF'S FIRST**
          vs.                         )  **AMENDED COMPLAINT FOR**
14                                    )  **FAILURE TO STATE A CLAIM (RULE**
   VALERO ENERGY CORPORATION, CST )  **12(B)(6)) AND SUPPORTING**
15 BRANDS, INC., VALERO MARKETING )  **MEMORANDUM OF POINTS AND**
   AND SUPPLY COMPANY and CST   )  **AUTHORITIES**
16 MARKETING AND SUPPLY COMPANY, )
                                      )  Date:     June 16, 2016
17                  Defendants.       )  Time:     1:30 p.m.
                                      )  Place:    San Francisco Courthouse,
18                                    )            Courtroom 3 - 17th Floor
                                      )  Judge:    Hon. Richard Seeborg
19                                    )
                                      )  **Accompanying Documents:**
20                                    )    1) **Declaration of Adam Friedenberg**
                                      )    2) **[Proposed] Order**
21 _____)

22 TO PLAINTIFF AND HER ATTORNEYS OF RECORD

23        NOTICE IS HEREBY GIVEN that on June 16, 2016, at 1:30 P.M., or as soon thereafter

24 as the matter may be heard by the above-entitled court, located at 450 Golden Gate Avenue, 17th

25 Floor, Courtroom 3, San Francisco, California, Defendant Valero Marketing and Supply

26 Company ("Valero") will bring on for hearing this motion to dismiss the First Amended

27 Complaint ("FAC").  This motion is made pursuant to Federal Rule of Civil Procedure, Rule

28 12(b)(6) on the ground that the FAC, and each purported claim for relief set forth therein, fails to

allege facts sufficient to state a claim upon which relief can be granted.

Specifically, Plaintiff's claims fail as a matter of law and must be dismissed for the following reasons:

- As to Plaintiff's first claim for relief for violation of the California Consumers Legal Remedies Act, California Civil Code, section 1770, *et seq*, Plaintiff fails to allege facts to establish the essential elements of:  (a) a false or deceptive statement of material fact by Valero; (b) actual or detrimental reliance; or (c) economic injury.

- Plaintiff's second claim for relief for violation of the California False Advertising Law, California Business and Professions Code section 17500*, et seq*., fails to allege facts to establish an actionable false advertisement on which Plaintiff actually and reasonably relied.

- Plaintiff's third claim for relief for violation of the California Unfair Competition Law, California Business and Professions Code section 17200, *et seq.* for the following reasons:  (a) the claim is derivative of the first and second claims for relief and thus fails on the same grounds; (b) Plaintiff fails to allege an injury that she could not have reasonably avoided; and (c) Plaintiff does not allege facts sufficient to establish a violation of California Financial Code section 13081.

- Plaintiff's fourth claim for relief for accounting fails as a matter of law as Plaintiff does not allege a sufficient relationship between the parties or seek recovery of an amount that is not certain or cannot be made certain by calculation.

This motion is based upon this Notice of Motion and Motion, the below Memorandum of Points and Authorities, the Declaration of Adam Friedenberg (and attached exhibits) submitted herewith, all exhibits, pleadings and papers on file in this action, and upon such other matters as may be presented to the Court in reply or at the time of the hearing.

/ / /

/ / /

/ / /

VALERO'S MOTION TO DISMISS FIRST AMENDED COMPLAINT

**TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES ...................................................................................... iii

MEMORANDUM OF POINTS AND AUTHORITIES .......................................................1

I.      INTRODUCTION...................................................................................................1

II.     FACTUAL BACKGROUND ...................................................................................2

        A.      The Station .................................................................................................2

        B.      The Street-Corner Sign .............................................................................2

        C.      Plaintiff's Purchase ....................................................................................3

        D.      PIN and Signature Debit ...........................................................................4

        E.      Debit Card Transactions Do Not Cause Immediate Payment to Merchants ...........4

III.    LEGAL STANDARD...............................................................................................6

IV.     ARGUMENT ............................................................................................................7

        A.      Plaintiff Again Has Failed to State A Claim for Violation
                of the California Consumers Legal Remedies Act (Count I) ...................7

                1.      Plaintiff again has failed to allege unlawful conduct by Valero .......8

                2.      Plaintiff again has failed to allege an actionable misrepresentation .................9

                        a.      As a matter of law, a debit card is not "cash" ...............9

                        b.      Plaintiff again fails to allege facts to establish she was
                                reasonably—or at all—deceived ..............................11

                3.      Plaintiff again has failed to allege specific facts establishing actual and
                        reasonable reliance on the alleged misrepresentation .....................13

                        a.      Plaintiff again has failed to allege actual reliance......................13

                        b.      Plaintiff again has failed to allege that her reliance on the street
                                sign was reasonable, in light of the information given to her
                                at the pump.................................................................14

                4.      Plaintiff again fails to allege economic injury causally linked to
                        the alleged misrepresentation...................................................15

        B.      Plaintiff Again Fails to State A Claim for Violation of the California
                False Advertising Law (Count II) .........................................................16

VALERO'S MOTION TO DISMISS FIRST AMENDED COMPLAINT

## <u>TABLE OF CONTENTS</u>
Continued

1

2

3
C.   Plaintiff Again Fails to State A Claim for Violation of the California
Unfair Competition Law (Count III) ..................................................... 16

4

5
1.  Plaintiff's claim fails for the same reasons as her CLRA
and FAL claims ......................................................................... 16

6
2.  Plaintiff reasonably could have avoided her alleged injury ........... 16

7
3.  Plaintiff's claim that the Station violated the California Financial
Code lacks merit ....................................................................... 17

8

9
D.   Plaintiff Again Fails to State A Claim for Accounting (Count V) ......... 19

10
1.  Plaintiff fails to allege a relationship that requires an accounting ..... 20

11
2.  Plaintiff fails to allege a balance that can only be ascertained
by an accounting ....................................................................... 20

12
E.   Leave to Amend Should Be Denied, Because Further Amendment
Would Be Futile .................................................................................. 20

13
V.   CONCLUSION ............................................................................................... 22

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

VALERO'S MOTION TO DISMISS FIRST AMENDED COMPLAINT

1

## **TABLE OF AUTHORITIES**

2

## **CASES**

3

*Abagnin v. AMVAC Chem. Corp.*
     545 F.3d 733 (9th Cir. 2008) ....................................... 21

4

5

*Albrecht v. Lund*
     845 F.2d 193 (9th Cir. 1988) ....................................... 21

6

*Ashcroft v. Iqbal*
     556 U.S. 662 (2009) ...................................................... 6

7

8

*Balistreri v. Pacifica Police Dep't*
     901 F.2d 696 (9th Cir. 1990) ......................................... 6

9

*Bell Atl. Corp. v. Twombly*
     550 U.S. 544 (2007) ....................................................... 6

10

11

*Bly–Magee v. California*
     236 F.3d 1014 (9th Cir. 2001) ....................................... 6

12

*Brea v. McGlashan*
     3 Cal. App. 2d 454 (1934) ........................................... 19

13

14

*Buckland v. Threshold Enterprises, Ltd.*
     155 Cal. App. 4th 798 (2007) ......................................... 8

15

16

*Cafasso, United States ex. rel. v. Gen. Dynamics C4 Sys., Inc.*
     637 F.3d 1047 (9th Cir. 2011) .................................... 7, 8

17

*California Pub. Employees' Ret. Sys. v. Moody's Investors Servs.*
     226 Cal. App. 4th 643 (2014) ....................................... 14

18

19

*Colgan v. Leatherman Tool Grp., Inc.*
     135 Cal. App. 4th 663 (2006) ......................................... 7

20

21

*Daniels–Hall v. Nat'l Educ. Ass'n*
     629 F.3d 992 (9th Cir. 2010) ......................................... 5

22

*Daugherty v. Am. Honda Motor Co.*
     144 Cal. App. 4th 824 (2006) ....................................... 16

23

24

*Davis v. Ford Motor Credit Co.*
     179 Cal. App. 4th 581 (2009) ......................................... 8

25

*Durell v. Sharp Healthcare*
     183 Cal. App. 4th 1350 (2010) ................................... 8, 15

26

27

*Emery v. Visa Int'l Serv. Ass'n*
     95 Cal. App. 4th 952 (2002) ...................................... 8, 9

28

**TABLE OF AUTHORITIES**
Continued

*Estate of Chamberlain*
    46 Cal. App. 2d 16 (1941) ....................................................... 10

*Fujifilm Corp. v. Yang*
    223 Cal. App. 4th 326 (2014) ................................................... 19

*Gilbrook v. City of Westminster*
    177 F.3d 839 (9th Cir.1999) ..................................................... 2

*Gustavson v. Wrigley Sales Co.*
    961 F. Supp. 2d 1100 (N.D. Cal. 2013) ................................... 5

*Gutierrez v. Wells Fargo Bank, N.A.*
    730 F. Supp. 2d 1080 (N.D. Cal. 2010), *reversed on other
    grounds and remanded*, 704 F.3d 712 (9th Cir. 2012) ................ 5, 6

*Hansen Beverage Co. v. Innovation Ventures, LLC*
    2009 WL 6597891 (S.D. Cal. Dec. 23, 2009) ........................... 5

*Hartong v. Partake, Inc.*
    266 Cal. App. 2d 942 (1968) ................................................... 14

*Holomaxx Techs. v. Microsoft Corp.*
    783 F. Supp. 2d 1097 (N.D. Cal. 2011) ................................... 16

*In re Actimmune Marketing Litigation*
    2009 WL 3740648 (N.D. Cal. 2009) ....................................... 7, 13

*In re GlenFed, Inc. Sec. Litig.*
    42 F.3d 1541 (9th Cir. 1994) ................................................... 7

*In re Tobacco II Cases*
    46 Cal.4th 298 (2009) ............................................................. 13

*Jones v. ConAgra Foods, Inc.*
    912 F. Supp. 2d 889 (N.D. Cal. 2012) ..................................... 7

*Kearns v. Ford Motor Co.*
    567 F.3d 1120 (9th Cir. 2009) ................................................. 6, 7

*Keegan v. Am. Honda Motor Co., Inc.*
    838 F. Supp. 2d 929 (C.D. Cal. 2012) ..................................... 7, 11

*Keen v. Am. Home Mortgage Servicing, Inc.*
    664 F. Supp. 2d 1086 (E.D. Cal. 2009) ................................... 16

*Kelly v. BP West Coast Products, LLC*
    2014 WL 7409220 (E.D. Cal. Dec. 29, 2014) .......................... 13, 14, 15, 17

VALERO'S MOTION TO DISMISS FIRST AMENDED COMPLAINT

# TABLE OF AUTHORITIES
### Continued

*Kwikset Corp. v. Sup. Ct.*
   51 Cal.4th 310 (2011) .......................................................................... 16

*Lee v. City of L.A.*
   250 F.3d 668 (9th Cir. 2001) *impliedly overruled on other grounds*
   *by Galbraith v. County of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002) ............................ 2

*NACS v. Bd. of Governors of Fed. Reserve Sys.*
   746 F.3d 474 (D.C. Cir. 2014) ........................................................ 4, 5, 11, 15

*Neubronner v. Milken*
   6 F.3d 666 (9th Cir. 1993) ..................................................................... 7

*OCM Principal Opportunities Fund v. CIBC World Markets Corp.*
   157 Cal. App. 4th 835 (2007) .............................................................. 14

*People v. Tanner*
   24 Cal. 3d 514 (1979) ......................................................................... 19

*People v. Toomey*
   157 Cal. App. 3d 1 (1984) ................................................................. 8, 9

*RadLAX Gateway Hotel, LLC v. Amalgamated Bank*
   132 S. Ct. 2065 (2012) ....................................................................... 19

*Rosado v. eBay Inc.*
   53 F. Supp. 3d 1256 (N.D. Cal. 2014) .................................................... *passim*

*St. James Church of Christ Holiness v. Superior Court*
   135 Cal. App. 2d 352 (1955) .............................................................. 20

*Sw. Concrete Prods. v. Gosh Constr. Corp.*
   51 Cal.3d 701 (1990) ......................................................................... 10

*Teselle v. McLoughlin*
   173 Cal. App. 4th 156 (2009) .......................................................... 19, 20

*Thrifty Oil Co. v. Superior Court*
   91 Cal. App. 4th 1070 (2001) ........................................................... 18, 19

*Vess v. Ciba-Geigy Corp. USA*
   317 F.3d 1097 (9th Cir. 2003) ............................................................... 6

*W. Fed. Sav. & Loan Ass'n v. Heflin Corp.*
   797 F. Supp. 790 (N.D. Cal. 1992) ......................................................... 2

*Washington Mut. Bank v. Superior Court*
   95 Cal. App. 4th 606 (2002) ........................................................... 10, 11

VALERO'S MOTION TO DISMISS FIRST AMENDED COMPLAINT

# TABLE OF AUTHORITIES
Continued

## STATUTES

California Business and Professions Code
    Section 13470...............................................................................3, 19
    Section 13470(a)......................................................................4, 11, 12
    Section 13471.....................................................................................3
    Section 13472.....................................................................................3
    Section 13473.....................................................................................3
    Section 13474.....................................................................................3
    Section 13475.....................................................................................3
    Section 13476.....................................................................................3
    Section 13477.....................................................................................3

California Civil Code
    Section 1748.1(a)............................................................................18
    Section 1770(a)..................................................................................7
    Section 1770.......................................................................................9
    Section 1780, subdivision (a)............................................................7

California Financial Code
    Section 13081...................................................................................19
    Section 13081(b)........................................................................17, 19
    Section 13081(c)...............................................................................17
    Section 13081(d)...............................................................................17

Federal Rules of Civil Procedure
    Rule 8(a)..............................................................................................6
    Rule 9(b).........................................................................................6, 8
    Rule 12(b)(6).......................................................................................6

Federal Rules of Evidence
    Rule 201..............................................................................................2

## OTHER AUTHORITIES

5 Witkin, Cal. Procedure (5th Ed. 2008) Pleading, § 819 ............................................19

Judicial Council of California Civil Jury Instructions (2016 Ed.) ................................14

October 2013 Official Report of the Federal Reserve Bank of Philadelphia
    ("Philadelphia Federal Reserve Tutorial")........................................................5

VALERO'S MOTION TO DISMISS FIRST AMENDED COMPLAINT

1    **MEMORANDUM OF POINTS AND AUTHORITIES**

2    **I.    INTRODUCTION**

3         A street-corner sign at a Valero-branded gas station in Daly City, California, lists two

4    prices:  cash and credit.  In her Complaint, Plaintiff alleged that this is misleading because the

5    sign failed to state which price would apply to her "MasterCard-branded debit card."  (Dkt. No. 1

6    ¶¶ 61-65.)  A "MasterCard-branded debit card" is not cash, and the street-corner sign made no

7    representation that such electronic payment cards would be provided the cash discount.  Plaintiff

8    nonetheless alleged that she believes her "MasterCard-branded debit card" is "the equivalent of

9    cash," and therefore entitled to the posted cash discount.  (*Id.* ¶ 5.)  Based on these essential

10   allegations, Plaintiff alleged a variety of statutory and common law claims.

11        Valero moved to dismiss the Complaint, which suffered from numerous legal defects.

12   Plaintiff did not oppose the motion, but instead amended her complaint, thereby tacitly conceding

13   the merit of Valero's arguments.  However, Plaintiff's First Amended Complaint ("FAC") fails

14   to cure multiple fundamental defects.

15   •    First, Plaintiff again has failed to allege a misrepresentation by Valero.  Valero does not

16        own the Daly City station at issue.  Plaintiff did business with an independent retailer, and

17        not Valero; Plaintiff alleged no facts to establish that Valero in any way participated in

18        the alleged misrepresentation.  In the FAC, Plaintiff again alleges no *facts* showing that

19        Valero controls pricing decisions made by independent retailers selling Valero fuel.

20   •    Second, under well-settled California law, "cash" payment occurs only where there is an

21        immediate transfer of ready funds *to the payee*.  Payment by "MasterCard-branded debit

22        card" does not cause such an immediate transfer to the merchant and thus does not

23        constitute "cash."  In the FAC, Plaintiff contends at length that her MasterCard-branded

24        debit card is not a credit card, but pleads no facts establishing that such a card is "cash."

25   •    Third, the FAC confirms that Plaintiff knew that the cash discount would not apply.

26        Plaintiff does not allege that the street-corner sign said the debit cards would receive a

27        cash discount—rather, she assumed the cash discount would apply.  Thus it was

28        incumbent on Plaintiff to address the threshold question:  which price did the electronic

- 1 -

VALERO'S MOTION TO DISMISS FIRST AMENDED COMPLAINT

1    fuel dispenser display before Plaintiff began dispensing fuel?  The Complaint artfully

2    dodged this question, and it is now clear why.  The FAC concedes that "*Valero's fuel*

3    *dispensers display . . . the price of fuel that is currently being dispensed. . . .*"  (FAC ¶ 26

4    (emphasis added).)  As the dispenser clearly stated the price to be charged, any claimed

5    ambiguity was resolved and no deception (or injury) occurred.

6    Valero raised each of these issues in its first motion to dismiss. (Dkt. No. 31.)  The FAC

7    fails completely to allege facts to overcome these deficiencies.  It is clear that no such facts exist.

8    Dismissal with prejudice is therefore proper.

9    **II.     FACTUAL BACKGROUND**

10   **A.     The Station**

11   Plaintiff allegedly purchased gasoline from a Valero-branded gas station located at 6989

12   Mission Street, Daly City, California (the "Daly City Station") using a MasterCard-branded debit

13   card.[1]  (FAC ¶¶ 58-62.)  Plaintiff does not allege that Valero owns the Daly City Station.  (FAC

14   ¶¶ 58-64.)  In fact, non-party NGEP Investments LLC owns the location.  (Declaration of Adam

15   Friedenberg ("Friedenberg Decl.") ¶ 2, Ex. 1.[2])

16   **B.     The Street-Corner Sign**

17   Plaintiff alleges that she "is sensitive to the price of gasoline and typically purchases

18   gasoline from dealers advertising the lower price." (FAC ¶ 54.)  She observed a street-corner

19   sign at the Daly City Station listing "cash" and "credit" prices for gasoline.  (*Id.* ¶ 18.)  Plaintiff

20

21

22   [1] The great majority of debit cards (including Plaintiff's card) bear the MasterCard or VISA logo.  This association with the credit-card issuers enables debit cards to be used anywhere a credit card is accepted.  Thus, Plaintiff's original Complaint accurately identified her debit card as a "MasterCard-branded debit card."  Plaintiff purged all such references from the FAC, which now refers only to her "debit card."

25   [2] Exhibit 1 to the Friedenberg Declaration is a certified copy of a Grant Deed recorded in 2010 by the San Mateo County Recorder's Office.  As this document is in the public record, the Court may take judicial notice of the record and the facts set forth therein.  *See* Fed. R. Evid. 201; *Lee v. City of L.A.*, 250 F.3d 668, 688-89 (9th Cir. 2001) *impliedly overruled on other grounds by Galbraith v. County of Santa Clara*, 307 F.3d 1119, 1125-26 (9th Cir. 2002); *Gilbrook v. City of Westminster*, 177 F.3d 839, 858 (9th Cir.1999); *see also W. Fed. Sav. & Loan Ass'n v. Heflin Corp.*, 797 F. Supp. 790, 792 (N.D. Cal. 1992) (taking judicial notice of public records, including deeds of trust).

VALERO'S MOTION TO DISMISS FIRST AMENDED COMPLAINT

1   describes the sign as "large" and "visible to passing motorists."[3]  (*Id.* ¶ 17.)  Plaintiff allegedly

2   "was lured into the station" by the prices advertised on the sign.  (*Id.* ¶ 58.)

3       Plaintiff does *not* allege that the sign makes a false statement.  For example, she makes no

4   claim that the sign misstates the cash or credit prices.  Nor does Plaintiff allege that the sign

5   makes reference to, or states that the discounted cash price applies to, MasterCard-branded debit

6   cards.  (*Id.*)  Rather, Plaintiff concedes that the street-corner sign did not specify which price

7   (cash or credit) would apply to MasterCard-branded debit cards, so she *assumed* the cash

8   discount would apply.  (*Id.* ¶¶ 58-61.)

9       California law comprehensively regulates service station price disclosures.  Unlike

10  virtually any other business, service stations in California must prominently and plainly advertise

11  their prices.  The law regulates placement of price signs, the information required to be disclosed

12  and the physical size of the disclosures.  *See* Cal. Bus. & Prof. Code, §§ 13470-13477.

13  **C.**    **Plaintiff's Purchase**

14      Plaintiff's original Complaint failed to describe the steps she took to complete her

15  electronic purchase.  (Dkt. No. 1 ¶¶ 64-66.)  For example, Plaintiff did not say whether she

16  pressed the "Debit" button or entered her personal identification number ("PIN").  Nor did

17  Plaintiff allege whether the electronic display at the fuel dispenser disclosed which price would

18  be charged before she began dispensing fuel.  This latter omission was dispositive, because if

19  Plaintiff had notice of the applicable price before making her purchase, then she was not

20  deceived at the time of her purchase and the street sign caused her no injury.

21      The amended pleading provides additional facts that confirm no deception or injury

22  occurred.  Upon entering the station, Plaintiff allegedly "swip[ed] her debit card at Valero's fuel

23  dispenser" and "input[…] her zip code."[4]  (FAC ¶ 60.)  Whereas Plaintiff previously omitted any

24

25      [3] Paragraph 18 of the FAC includes a photograph that Plaintiff alleges "is an example of Valero's deceptive advertising."  Plaintiff does not say when the photograph was taken, or

26  whether it was taken at the Daly City Station or some other location.

27      [4] Plaintiff does not allege that she pressed the "Debit" button or entered her personal identification number ("PIN") at the point-of-sale terminal.  This is significant, as will be

28  discussed in Section II.D, below.

**VALERO'S MOTION TO DISMISS FIRST AMENDED COMPLAINT**

1  discussion of the fuel dispenser display, the FAC admits that "Valero's fuel dispensers display

2  only the price of fuel that is currently being dispensed. . . ."[5]  (FAC ¶ 26.)  Thus, Plaintiff

3  necessarily had notice of the applicable price before making her purchase.

4  **D.     PIN and Signature Debit**

5        As noted, Plaintiff's election not to press the "Debit" button and enter her PIN, but

6  instead to swipe her card and enter her zip code, is material.  This is because not all debit card

7  transactions are alike.  "Virtually all debit card transactions fall into one of two categories:

8  personal identification number (PIN) or signature."  *NACS v. Bd. of Governors of Fed. Reserve*

9  *Sys.*, 746 F.3d 474, 477 (D.C. Cir. 2014).  "Signature networks employ infrastructure used to

10  process credit card payments, while PIN networks employ infrastructure used by ATMs."  *Id.* at

11  478.  "Merchants who do accept both PIN and signature debit often allow customers to select

12  whether to process particular transactions on a PIN network or a signature network."  *Id.*

13        In a PIN transaction, the consumer generally takes the initial step of pressing a clearly-

14  labeled "Debit card" button on the fuel dispenser.  The cardholder then enters her PIN into the

15  terminal.  *NACS*, 746 F.3d at 478.  In a "signature" transaction, the consumer need not enter her

16  PIN; such transactions are processed by "signature networks employ[ing] infrastructure used to

17  process credit card payments."  *Id.*  By declining to enter her PIN, Plaintiff opted for a signature-

18  debit transaction.[6]  (FAC ¶ 60.)

19        Of course, either transaction method involves transaction costs to the merchant that

20  would not apply to a cash sale.  *Id.* at 479.  "[M]erchants end up paying most of the[se] costs"

21  and "in turn pass some of these costs along to consumers."  *NACS*, 746 F.3d at 479.

22  **E.     Debit Card Transactions Do Not Cause Immediate Payment to Merchants**

23        The transaction fees incurred by the merchant are not the only difference between cash

24  and debit-card transactions.  Another crucial difference is that debit-card transactions do not

25

26        [5] California law requires retailers to post the actual price being charged on the gasoline
    dispenser/pump itself.  Cal. Bus. & Prof. Code §13470(a).

27

28        [6] This is also confirmed by the receipt included in paragraph 62 of the FAC, which identifies
    her purchase as a "CREDIT" transaction.

- 4 -

1    cause immediate payment to the merchant.

2        Plaintiff's case is based on her assumption that "cash" and "debit" transactions are

3    essentially identical.  As noted above, Plaintiff does *not* allege that the signs at the Daly City

4    Station (or any other station) represented that "MasterCard-branded debit card" transactions

5    would be given a cash discount.  Rather, Plaintiff's assertion that the "cash" price is "false and

6    misleading" is premised on her belief that payment with a MasterCard-branded debit card *should*

7    qualify for the cash discount because "a debit card . . . is not a credit card."  (FAC ¶ 80.)  But the

8    question raised by Plaintiff's claim is not whether a debit card is a credit card, but whether a

9    debit card is cash.  It is not.

10       Unlike a traditional "cash" purchase, in a debit transaction the process of crediting money

11   to the merchant—known as "settlement"—is not instantaneous.  (Friedenberg Decl., Ex. 2 at p.

12   14;[7] *see also NACS*, 746 F.3d at 478-79; *Gutierrez v. Wells Fargo Bank, N.A.*, 730 F. Supp. 2d

13   1080, 1100-01 (N.D. Cal. 2010), *reversed on other grounds and remanded*, 704 F.3d 712 (9th

14   Cir. 2012).)  In some instances, funds are transferred to the merchant as long as two days after the

15   retail transaction.[8]  (Friedenberg Decl., Ex. 2 at Fig. 1.)  Even where transactions are "settled" on

16   the same day as the purchase, the transfer of funds is still not instantaneous.  (*Id.*)  Banks settle

17   debit-card transactions during a once-daily "settlement window."  It is only after the settlement

18   window "closes" that funds are credited to the merchant.  (*Id.* at pp. 6-10; *Gutierrez,* 730 F.

19   Supp. 2d at 1100.)  A "signature" transaction—the transaction method for which Plaintiff

20   / / /

21

22       [7] Exhibit 2 to the Friedenberg Declaration is an October 2013 official report of the Federal
     Reserve Bank of Philadelphia, a government publication of which the Court may take judicial
23   notice and that may be considered in support of a Rule 12(b)(6) motion.  *See Gustavson v.
     Wrigley Sales Co.*, 961 F. Supp. 2d 1100, 1113 n. 1 (N.D. Cal. 2013) (citing *Hansen Beverage
24   Co. v. Innovation Ventures, LLC*, No. 08–1166, 2009 WL 6597891, at *2 (S.D. Cal. Dec. 23,
     2009)); *see also Daniels–Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998-99 (9th Cir. 2010).

25

26       [8] "To bring about this exchange of monies between buyer and seller, the payment card
     networks must first facilitate interbank clearing and settlement of card transactions each
27   processing day.  This exchange of information and related funds takes place between 'acquiring'
     banks, the banks that provide services to network merchants (also referred to as 'acquirers'), and
     'issuing' banks, the banks that service cardholder accounts (also referred to as 'issuers')."
28   (Friedenberg Decl., Ex. 2 (Philadelphia Federal Reserve Tutorial) at p. 2.)

**VALERO'S MOTION TO DISMISS FIRST AMENDED COMPLAINT**

1   opted—involves additional steps that may further delay payment to the merchant.  *Id*. at 478-79;

2   *Gutierrez*, 730 F. Supp. 2d at 1100-01.

3   **III.    LEGAL STANDARD**

4          Dismissal pursuant to Rule 12(b)(6) is proper where there is a "lack of a cognizable legal

5   theory or the absence of sufficient facts alleged under a cognizable legal theory."  *Balistreri v.*

6   *Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).  Under Rule 8(a), a plaintiff's

7   obligation to provide the grounds of her entitlement to relief requires more than labels and

8   conclusions; a formulaic recitation of the elements of a cause of action is insufficient.  *Bell Atl.*

9   *Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  A complaint must set forth "sufficient factual

10  matter, accepted as true, to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*,

11  556 U.S. 662, 663 (2009) (quoting *Twombly*, 550 U.S. at 570).  This plausibility standard asks

12  for "more than a sheer possibility that a defendant has acted unlawfully."  *Id*. at 678.  "Rule 8 . . .

13  does not unlock the doors of discovery for a plaintiff armed with nothing more than

14  conclusions."  *Id*. at 678-79 (citing *Twombly*, 550 U.S. at 555-56).  Thus, to proceed past the

15  pleading stage Plaintiff's allegations must rise above mere speculation, suspicion, or unsupported

16  conclusions and must instead show entitlement to relief.  *See Twombly*, 550 U.S. at 555.

17         Additionally, "[i]n alleging fraud or mistake, a party must state with particularity the

18  circumstances constituting fraud or mistake."  Fed. R. Civ. P. 9(b).  Rule 9(b)'s heightened

19  pleading standard applies to state-law claims brought in federal court:  "[W]hile a federal court

20  will examine state law to determine whether the elements of fraud have been pled sufficiently to

21  state a cause of action, the Rule 9(b) requirement that the *circumstances* of the fraud must be

22  stated with particularity is a federally imposed rule."  *Vess v. Ciba-Geigy Corp. USA,* 317 F.3d

23  1097, 1103 (9th Cir. 2003) (alteration and emphasis in original, citation omitted).  Further, these

24  requirements apply to claims of deceptive statements under the CLRA, FAL and UCL.  *Id*. at

25  1102-05; *see also Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009).

26         Such allegations must "be 'specific enough to give defendants notice of the particular

27  misconduct . . . so that they can defend against the charge and not just deny that they have done

28  anything wrong.' "  *Bly–Magee v. California*, 236 F.3d 1014, 1019 (9th Cir. 2001) (quoting

1   *Neubronner v. Milken,* 6 F.3d 666, 671 (9th Cir. 1993)).  "A party alleging fraud must 'set forth

2   *more* than the neutral facts necessary to identify the transaction.' " *Kearns,* 567 F.3d at 1124

3   (quoting *In re GlenFed, Inc. Sec. Litig.,* 42 F.3d 1541, 1548 (9th Cir. 1994), *superceded by*

4   *statute on other grounds*).  Plaintiff therefore must allege particular facts to establish the "who,

5   what, when, where, and how of the misconduct charged."  *Cafasso, United States ex. rel. v. Gen.*

6   *Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1055 (9th Cir. 2011) (citation omitted).  She also must

7   specify "what is false or misleading about [the purportedly fraudulent] statement" or omission

8   and "why it is false." *Id.* (alteration in original) (citation omitted).

9   **IV.    ARGUMENT**

10          **A.    Plaintiff Again Has Failed to State A Claim for Violation of the**
                    **California Consumers Legal Remedies Act (Count I).**
11

12          "The CLRA proscribes 'unfair methods of competition and unfair or deceptive acts or

13   practices.' " *Rosado v. eBay Inc.*, 53 F. Supp. 3d 1256, 1266 (N.D. Cal. 2014) (*quoting* Cal. Civ.

14   Code § 1770(a), *citing In re Actimmune Marketing Litigation*, No. 08-02376-MHP, 2009 WL

15   3740648, at *16 (N.D. Cal. 2009)).  "Conduct that is 'likely to mislead a reasonable consumer'

16   violates the CLRA." *Id.* (*quoting Keegan v. Am. Honda Motor Co., Inc.*, 838 F. Supp. 2d 929,

17   938-39 (C.D. Cal. 2012), *quoting Colgan v. Leatherman Tool Grp., Inc.*, 135 Cal. App. 4th 663,

18   680 (2006)).  However, "where a court can conclude as a matter of law that alleged

19   misrepresentations are not likely to deceive a reasonable consumer, courts have dismissed claims

20   under the UCL, CLRA, and FAL." *Rosado*, 53 F. Supp. 3d at 1264 (*citing Jones v. ConAgra*

21   *Foods, Inc.,* 912 F. Supp. 2d 889, 899 (N.D. Cal. 2012)).

22          "A CLRA claim sounding in fraud must establish reliance and causation." *Rosado*, 53 F.

23   Supp. 3d at 1266.

24                  Under Civil Code section 1780, subdivision (a), CLRA actions
                    may be brought "only by a consumer 'who suffers any damage as a
25                  result of the use or employment ' of a proscribed method, act, or

26                  practice[….] 'This language does not create an automatic award of
                    statutory damages upon proof of an unlawful act. Relief under the
27                  CLRA is specifically limited to those who suffer damage, making
                    causation a necessary element of proof.' [Citation.] Accordingly,
28                  'plaintiffs in a CLRA action [must] show not only that a

1  defendant's conduct was deceptive but that the deception caused
2  them harm.' " (*Buckland v. Threshold Enterprises, Ltd.* (2007) 155
   Cal.App.4th 798, 809, 66 Cal.Rptr.3d 543.) A "misrepresentation
   is material for a plaintiff only if there is reliance—that is, ' "
3  'without the misrepresentation, the plaintiff would not have acted
   as he did.' " ' " (*Id.* at p. 810, 66 Cal.Rptr.3d 543.)
4

5  *Durell v. Sharp Healthcare*, 183 Cal. App. 4th 1350, 1366-67 (2010); *see also Rosado*, 53 F.

6  Supp. 3d at 1266.  Further, the alleged injury must be one the consumer could not reasonably

7  have avoided.  *E.g., Davis v. Ford Motor Credit Co.*, 179 Cal. App. 4th 581, 597 (2009).

8       Thus, Plaintiff was required to allege specific facts to establish:  (1) a false or deceptive

9  representation by Valero; (2) actual and reasonable reliance by Plaintiff; and (3) consequent

10 economic injury.  *Durell*, 183 Cal. App. 4th at 1366-67; *Rosado*, 53 F. Supp. 3d at 1266.

11 Plaintiff was further required to allege specific facts showing exactly why the alleged

12 representation was false.  *Rosado*, 53 F. Supp. 3d at 1266.  Plaintiff has failed to allege facts

13 establishing any of these elements.

14       **1.      Plaintiff again has failed to allege unlawful conduct by Valero.**

15       As addressed above, Rule 9(b) required that Plaintiff allege with particularity "the who,

16 what, when, where, and how" of the alleged fraud.  *Cafasso*, 637 F.3d at 1055.  Plaintiff failed to

17 allege any misrepresentation by Valero, because Valero does not own the Daly City Station

18 where Plaintiff allegedly shopped.  Plaintiff's claim thus fails at the threshold.  This failure

19 cannot be cured by amendment.

20       Plaintiff does not allege, because she cannot allege, that Valero owns the Daly City

21 Station.  (Friedenberg Decl., Ex. 1.)  Plaintiff likewise fails to allege any facts to establish the

22 "personal participation" of Valero in the alleged misrepresentation.  Instead, Plaintiff attempts to

23 impute to Valero responsibility for the station owner's conduct by virtue of Valero's alleged

24 status as a franchisor and supplier of fuel.  But "'[t]he concept of vicarious liability has no

25 application to actions brought under the unfair business practices act.' "  *Emery v. Visa Int'l Serv.*

26 *Ass'n*, 95 Cal. App. 4th 952, 960 (2002) (*quoting People v. Toomey*, 157 Cal. App. 3d 1, 14

27 (1984)).  "A defendant's liability must be based on his personal 'participation in the unlawful

28 / / /

1   practices' and 'unbridled control' over the practices. . . ."[9] *Id.* (*quoting Toomey*, 157 Cal. App.

2   3d at 15).

3       Plaintiff repeats the bare conclusion that Valero exercised "unbridled control" over the

4   Daly City Station (FAC ¶¶ 13(b)-(e), 19, 21, 22, 25), but this is meaningless.  The FAC supplies

5   no *facts* to establish *how* Valero allegedly exercised " 'unbridled control' over the practices" of

6   the Daly City Station.  Plaintiff's repeated recitation of the "unbridled control" standard found in

7   *Emery*—without more—serves only to illuminate the lack of adequate factual allegations.

8   Plaintiff was required to allege specific facts, not merely repeat legal conclusions.

9       Plaintiff thus has failed to allege Valero's personal participation in the allegedly unlawful

10  conduct.  For this reason alone, her first claim for relief thus fails as a matter of law, and the

11  Court's analysis need go no further.

12      **2.      Plaintiff again has failed to allege an actionable misrepresentation.**

13      Even had Plaintiff alleged a representation by Valero, she has failed to allege a

14  representation that is false or deceptive.  Her claims independently fail on this ground.

15          **a.      As a matter of law, a debit card is not "cash."**

16      The crux of Plaintiff's original Complaint was her contention that a "MasterCard-branded

17  debit card" "is a cash equivalent" entitled to a cash discount.  (Compl. ¶ 83.)  In the FAC,

18  Plaintiff alleges that "a debit card . . . is not a credit card" (FAC ¶ 80) and Plaintiff "reasonably

19  and correctly believe[s] that a debit card is not a credit card and, thus, should not be charged

20  Valero's advertised 'credit' price" (*Id.* ¶ 83).  This rhetorical shift makes no substantive

21  difference.  The essence of Plaintiff's claim remains that the Daly City Station should have

22  treated her MasterCard-branded debit card as though it were cash.  This essential premise is

23  contrary to California law, and cannot be cured by further amendment.

24  / / /

25

26      [9] *Emery* appears to have involved claims under the UCL and FAL, but not the CLRA.  As
    discussed in section IV.B below, however, the substantive elements under all three statutes are
27  comparable, such that courts may evaluate the claims together.  Indeed, the CLRA likewise
    imposes liability upon those who *make* misleading statements, and not any entity that allegedly
28  has knowledge of such a statement.  Cal. Civ. Code §1770.

1    "A cash sale is one where the buyer and seller exchange the goods and payment at the

2    same time; any other method of payment is 'on credit.' " *Sw. Concrete Prods. v. Gosh Constr.*

3    *Corp.*, 51 Cal.3d 701, 708 (1990).  "The common meaning of the word 'cash' is 'ready money,'

4    or 'money or its equivalent (as a check) paid for good or services at the time of purchase or

5    delivery.' " *Washington Mut. Bank v. Superior Court*, 95 Cal. App. 4th 606, 623 (2002) (quoting

6    Webster's 10th Collegiate Dict. (1999) p. 177).  California "courts have defined the term 'cash'

7    as 'current money in hand or readily available,' and as 'ready money "at command, subject to

8    free disposal; not tied up in a fixed state." ' " *Id.* (*quoting Estate of Chamberlain*, 46 Cal. App.

9    2d 16, 20 (1941)) (some internal quotation marks omitted).

10    Thus, the California Court of Appeal held in *Washington Mutual* that a wire transfer or

11    electronic funds transfer (EFT) from one bank to another constituted "a method of delivering

12    cash." *Id.* at 623, 626.  The Court's focus, however, was the immediacy of the transfer to the

13    transferee—*i.e.*, "ready money . . . not tied up in a fixed state." *Id.* at 623.  Because a wire or

14    electronic transfer causes the immediate transfer of ready funds to the transferee, the Court found

15    that "such transfers are the functional equivalent of cash." *Id.* at 626.  The Court held that the

16    transfer of funds, not merely the right to receive funds, was essential. *Id.* at 623, 626.

17    Here, in contrast, Plaintiff alleges no facts, much less the required specific facts, to

18    establish that a debit-card transaction causes the *immediate* transfer of ready funds from

19    consumer to merchant.  The Complaint described, and the FAC again describes, the manner and

20    timing of the debit of funds from *Plaintiff's* account.  But this is immaterial, because the

21    definition of a "cash" sale turns on the timing of the payment *to the payee*—in short, the buyer

22    and seller "must exchange goods and payment at the same time." *Sw. Concrete*, 51 Cal.3d at

23    708; *Washington Mut.*, 95 Cal. 4th at 623.  Even assuming the truth of Plaintiff's allegation

24    that funds were immediately withdrawn from her account, Plaintiff has not alleged any facts to

25    establish an immediate, corresponding transfer to the operator of the Daly City Station of "ready

26    money . . . not tied up in a fixed state." *Washington Mut.*, 95 Cal. App. 4th at 623.

27    This is not simply a matter of incomplete pleading.  Plaintiff's original Complaint

28    suffered from the same defect.  As detailed above, a debit-card purchase does not cause an

1   immediate transfer of funds to the merchant, even though Plaintiff's bank may immediately debit

2   funds from her account.  *See NACS*, 746 F.3d at 478-79.  Instead, the merchant must wait to

3   receive money it can use, in some instances, up to two business days after the original purchase.

4   (Friedenberg Decl., Ex. 2 at Fig. 1.)  From the merchant's side of the transaction, this does not

5   constitute "ready money . . . not tied up in a fixed state," as required by California law.

6   *Washington Mut.*, 95 Cal. App. 4th at 623.  Moreover, by declining to press the "Debit" button,

7   and instead opting for a "signature-debit" transaction (i.e., one verified by zip code rather than

8   PIN), Plaintiff effectively identified her card as a credit card, ensuring her transaction was

9   processed via a credit-card network.  *NACS*, 746 F.3d at 478.

10       Thus, a "MasterCard-branded debit card" is not "cash."  As a matter of law, therefore, the

11  advertisement of a "cash" price that did not apply to payments made with "MasterCard-branded

12  debit cards" was neither false nor misleading.  Hence Plaintiff has failed to allege an actionable

13  misrepresentation.  On this further and independent basis, the Court must dismiss Plaintiff's first

14  claim for relief (as well as her parasitic claims under the FAL and UCL).

15           **b.      Plaintiff again fails to allege facts to establish she was**
                       **reasonably—or at all—deceived.**
16

17       As noted above, only "[c]onduct that is 'likely to mislead a reasonable consumer' violates

18  the CLRA."  *Rosado*, 53 F. Supp. 3d at 1266 (*quoting Keegan,* 838 F. Supp. 2d at 938-39)

19  (emphasis added).  As to this requirement, it is critical that Plaintiff is not alleging that the street-

20  corner sign falsely states the cash price.  Rather, Plaintiff alleges that the sign was deceptive

21  because "a debit card . . . is not a credit card" (FAC ¶ 80) so Plaintiff assumed the cash price

22  applied to debit cards.  But it is axiomatic that such an assumption was not reasonable if Plaintiff

23  was in fact provided information contrary to her assumption.  Thus, the ultimate question is:  did

24  Plaintiff have knowledge before her purchase of which price would apply?  The FAC makes

25  clear the answer is yes.

26       Modern gas station dispensers include an electronic screen that displays the applicable

27  price before the consumer begins pumping fuel; the Daly City Station is no exception.  Indeed,

28  section 13470(a) of the California Business & Professions Code requires retailers to display on

- 11 -

**VALERO'S MOTION TO DISMISS FIRST AMENDED COMPLAINT**

the dispenser the actual price charged.[10]  Thus, Plaintiff concedes, as she must, that "Valero's fuel dispensers display only the price of fuel that is currently being dispensed."  (FAC ¶ 26.) This is dispositive.  As the dispenser told Plaintiff the price she would be charged, it was necessarily unreasonable for her to assume she would receive any other price.  Because Plaintiff made her purchase with knowledge of the price applicable to "MasterCard-branded" cards, she was not reasonably deceived—indeed, she was not deceived at all.

Plaintiff attempts to confront this fundamental problem in paragraph 26 of the FAC. There she alleges that "consumers have no visual basis by which to compare the 'credit' price that they are being charged at the dispenser in order to confirm whether it is indeed the 'cash' price that they were expecting to pay on their debit card transaction."  (FAC ¶ 26.)  This makes no sense.  First, regardless of the price Plaintiff was "expecting to pay," the dispenser stated the precise monetary price that she would pay.  Second, the foundation of Plaintiff's case is that she is so attentive to gasoline prices that she was "lured" into the Daly City Station by the posted cash price.  (FAC ¶¶ 18, 58.)  Having so alleged, Plaintiff cannot plausibly contend that she was indifferent to that same price just moments later as she stood at the fuel dispenser.  Plaintiff cannot have it both ways—the price either was material or it was not.

Because a debit card is neither cash nor a credit card, Plaintiff's theory of deception relies on what is, at most, an ambiguity.  Plaintiff concedes, however, that the "fuel dispensers display only the price of fuel that is currently being dispensed" (FAC ¶ 26); that display necessarily removes any ambiguity.  Plaintiff could not reasonably have assumed she would be charged any price other than the price displayed at the fuel dispenser.  Thus she has failed to allege she was actually or reasonably deceived.  Dismissal is therefore required on this independent ground.

---

[10] Section 13470(a) provides:

A person shall not sell at retail to the general public, any motor vehicle fuel from any place of business in this state *unless there is displayed on the dispensing apparatus in a conspicuous place at least one sign or price indicator showing the total price per gallon, liter, or other unit of measurement* adopted pursuant to Section 12107, 13404, or 13404.5 of all motor vehicle fuel sold therefrom. The total price per gallon, liter, or other unit of measurement shall include applicable fuel taxes and all sales taxes.  (Emphasis added.)

1           **3.**       **Plaintiff again has failed to allege specific facts establishing**
                             **actual and reasonable reliance on the alleged**
2                              **misrepresentation.**

3        As discussed above, Plaintiff "must show that [s]he personally lost money or property

4 because of [her] own actual and reasonable reliance on the allegedly untrue or misleading

5 statements." *Rosado*, 53 F. Supp. 3d at 1264-65.  Plaintiff fails to allege facts sufficient to

6 comply with either requirement.

7                **a.**       **Plaintiff again has failed to allege actual reliance.**

8        The element of actual reliance requires that Plaintiff establish a causal connection

9 between the allegedly deceptive statement and the loss of money or property.  *See id.* (*citing In re*

10 *Tobacco II Cases*, 46 Cal.4th 298, 326-28 (2009)).  "Reliance can be demonstrated by showing

11 that but-for defendant's conduct, plaintiff would not, in all reasonable probability, have engaged

12 in the injury-producing conduct."  *Id.* at 1265 (*citing In re Actimmune Marketing Litig.*, 2009 WL

13 3740648 at *8).  The recent case *Kelly v. BP West Coast Products, LLC*, No. 2:14-cv-01507-

14 KJM-CKD, 2014 WL 7409220 (E.D. Cal. Dec. 29, 2014) is instructive.  In *Kelly*, the plaintiff

15 alleged violation of the CLRA, claiming that he was the victim of a deceptive "bait-and-switch"

16 scheme because the street sign at an ARCO gas station failed to disclose that debit card

17 transactions would be subject to a $0.35 fee.  *Id.* at *1.  The gasoline dispenser, however,

18 disclosed the $0.35 fee *before* plaintiff made his purchase.  *Id.*  The Court granted BP's motion to

19 dismiss, finding that plaintiff did not establish reliance on the allegedly deceptive street sign

20 given the disclosure at the pump, noting the plaintiff "could have avoided the fee altogether by

21 paying cash or buying gas elsewhere."  *Id.* at *8.  The Court found that in light of the pump

22 disclosure, Plaintiff's "theory of liability does not withstand common sense scrutiny."  *Id.*

23        The same is true here.  Plaintiff does not allege that at the time of *purchase* she lacked

24 notice that she would not receive a cash discount for her electronic payment.  To the contrary, she

25 admits that the fuel dispenser displayed the applicable price.  (FAC ¶ 26.)  Thus, Plaintiff has

26 failed to allege she "personally lost money or property because of [her] own actual and

27 reasonable reliance on the allegedly untrue or misleading statements."  *Rosado*, 53 F. Supp. 3d at

28 1264-65.  Put differently, even had Plaintiff alleged an actionable misrepresentation, the price

1    specified at the pump necessarily broke the causal chain.  For this further and independent

2    reason, her claim fails as a matter of law.

3                  **b.**      **Plaintiff again has failed to allege that her reliance on**
                          **the street sign was reasonable, in light of the**

4                           **information given to her at the pump.**

5         Plaintiff's claim separately fails because she has failed to allege facts showing that her

6    purported interpretation and reliance on the street-corner price sign was reasonable.  The rule is

7    stated in the California pattern jury instruction defining "Reasonable Reliance":

> it is not reasonable for anyone to rely on a [misrepresentation/concealment/false
> promise] that is preposterous.  It also is not reasonable for anyone to rely on a
> [misrepresentation/concealment/false promise] if facts that are within [his/her]
> observation show that it is obviously false.

11   Judicial Council of California Civil Jury Instructions (2016 Ed.), at p. 1061 (CACI No. 1908).

12   Under long-settled law, Plaintiff's reliance is unreasonable as a matter of law where "facts within

13   [her] observation [were] so patently and obviously false that [she] must have closed [her] eyes to

14   avoid discovery of the truth."  *Hartong v. Partake, Inc.,* 266 Cal. App. 2d 942, 965 (1968);

15   *accord: OCM Principal Opportunities Fund v. CIBC World Markets Corp.*, 157 Cal. App. 4th

16   835, 865 (2007); *California Pub. Employees' Ret. Sys. v. Moody's Investors Servs.*, 226 Cal.

17   App. 4th 643, 673 (2014).

18        In essence, Plaintiff here had to do exactly that:  she had to "close her eyes" to the facts—

19   *i.e.,* the actual price she was being charged—as shown on the dispenser display.  Again, the core

20   of Plaintiff's claim is that the street price sign was misleading because it omitted any reference to

21   debit cards, and it was therefore reasonable for her to assume that the "cash" price applied to

22   "MasterCard-branded debit card" transactions.  In effect, she alleges that the signage was

23   ambiguous, and therefore deceptive.  If, however, the dispenser itself provided clear notice before

24   Plaintiff dispensed fuel that the price to be charged was the "credit" price, then Plaintiff's

25   contrary assumption was manifestly unreasonable—for Plaintiff to think she was going to be

26   charged the "cash" price quite literally required her to "close her eyes" to the actual price

27   displayed on the dispenser.  *See Kelly*, 2014 WL 7409220, at *8 (finding plaintiff failed to

28   adequately allege reliance on street sign that did not disclose $0.35 debit card transaction fee

VALERO'S MOTION TO DISMISS FIRST AMENDED COMPLAINT

1    where the fee was disclosed at the gasoline dispenser).  Plaintiff admits the dispenser displayed

2    the applicable price.  (FAC ¶ 26.)

3         Moreover, the receipt incorporated in paragraph 62 of the FAC states that Plaintiff made a

4    "Credit" purchase.  As discussed above, a debit card of the type alleged by Plaintiff allows the

5    consumer to elect, at her option, to make either a PIN transaction over a bank network or a

6    signature transaction over a credit-card network.  *See NACS*, 746 F.3d at 477.  The receipt

7    indicates that Plaintiff opted for the latter, which is why the dispenser displayed the credit price.

8    Like the plaintiff in *Kelly*, Plaintiff "could have avoided the [alleged injury] altogether by paying

9    cash or buying gas elsewhere."  *Kelly*, 2014 WL 7409220, at *8.  This further underscores the

10   failure to plead actual or reasonable reliance causally linked to the alleged injury.

11        The fuel dispenser—*i.e.,* "facts within Plaintiff's observation"—confirmed the price to be

12   charged.  That Plaintiff may have assumed or desired a different price is a fact of no legal

13   significance.  Thus Plaintiff has failed to plead reasonable reliance, and for this further reason,

14   the claim fails as a matter of law and must be dismissed.

15        **4.    Plaintiff again fails to allege economic injury causally linked to**
             **the alleged misrepresentation.**
16

17        Plaintiff's original Complaint failed to allege any economic injury.  Rather, Plaintiff

18   merely asserted that the street sign caused her to "enter the station."  (Dkt. No. 1 ¶ 64.)  She

19   nowhere alleged that the signage caused her to lose money or property.  Thus, Valero moved to

20   dismiss on the ground that Plaintiff failed to allege an actionable loss under the CLRA.  *Durell*,

21   183 Cal. App. 4th at 1366-67.

22        In the FAC, Plaintiff now alleges that she "would not have purchased gasoline from

23   Valero-branded dealers but for Valero's false, deceptive, and misleading advertising. . . ."  (FAC

24   ¶ 83.)  Once again, however, Plaintiff's new allegation is insufficient.  Because the dispenser

25   provided notice of the applicable price, Plaintiff necessarily could not have been injured by the

26   allegedly ambiguous street sign.  As in *Kelly*, Plaintiff could have paid cash or gone elsewhere.

27   2014 WL 7409220, at *8.

28   / / /

VALERO'S MOTION TO DISMISS FIRST AMENDED COMPLAINT

1   **B.   Plaintiff Again Fails to State A Claim for Violation of the California**
2       **False Advertising Law (Count II).**

3   "A claim under the FAL must show that the plaintiff suffered an injury due to his or her

4   own actual and reasonable reliance on the purported misleading statements." *Rosado*, 53 F.

5   Supp. 3d at 1266 (*citing Kwikset Corp. v. Sup. Ct.,* 51 Cal.4th 310, 326, n. 9 (2011)).  As the

6   elements of the claim are essentially the same as claims brought under the CLRA and UCL,

7   courts analyze all three claims together.  *Rosado*, 53 F. Supp. 3d at 1266-67.  Indeed, Plaintiff's

8   FAL claim is based on the same allegations as the CLRA claim:  that "Valero's advertisement of

9   a lower 'cash' price was untrue and misleading . . . because a debit card . . . is not a credit card."

10  (FAC ¶ 90.)  The claim thus fails as a matter of law, and must be dismissed, for the same reasons

11  set forth above with respect to the CLRA claim.

12  **C.   Plaintiff Again Fails to State A Claim for Violation of the California**
13      **Unfair Competition Law (Count III).**

13      **1.   Plaintiff's claim fails for the same reasons as her CLRA and**
14          **FAL claims.**

15  Plaintiff's UCL claim is likewise derivative of the CLRA claims and fails on the same

16  grounds.  *Keen v. Am. Home Mortgage Servicing, Inc.*, 664 F. Supp. 2d 1086, 1102 (E.D. Cal.

17  2009) (dismissing the plaintiff's cause of action for UCL violations because "plaintiff's UCL

18  claim is predicated on facts supporting her other claims, all of which the court has dismissed");

19  *Holomaxx Techs. v. Microsoft Corp.*, 783 F. Supp. 2d 1097, 1108 (N.D. Cal. 2011) ("Because . . .

20  Holomaxx has yet to state a viable claim for any actionable wrongdoing, the UCL claim in its

21  present form also is subject to dismissal").

22      **2.   Plaintiff reasonably could have avoided her alleged injury.**

23  Moreover, to state a claim under the UCL's "unfair" prong, Plaintiffs must allege facts to

24  support that "the consumer injury is substantial, is not outweighed by any countervailing benefit

25  to consumers or to competition, and it is not an injury the consumers themselves could

26  reasonably have avoided."  *Daugherty v. Am. Honda Motor Co.*, 144 Cal. App. 4th 824, 839

27  (2006).  Plaintiff claims the street-corner sign "lured her" into the station, but the sign did not

28  specifically address debit cards, and Plaintiff admits that the fuel dispensers "display only the

- 16 -

1    price of fuel that is currently being dispensed."  (FAC ¶¶ 26, 58.)  At that point, Plaintiff readily

2    could have avoided the alleged injury by using an alternate method of payment, or making no

3    purchase at all, when she learned the applicable price at the fuel dispenser.  See Kelly, 2014 WL

4    7409220, at *8 (upon receiving notice at the fuel dispenser of the $0.35 transaction fee for use of

5    a debit card, plaintiff "could have avoided the fee altogether by paying cash or buying gas

6    elsewhere").  If Plaintiff wanted to obtain the cash price, she could have done so by paying cash

7    or by completing a PIN-debit transaction (i.e., by pressing the "Debit" card button).  But a

8    plaintiff cannot willfully "close her eyes" to the facts before her.  That is the definition of

9    unreasonableness, as shown above.

10          **3.**     **Plaintiff's claim that the Station violated the California**
                      **Financial Code lacks merit.**
11

12          Plaintiff's UCL claim is principally parasitic of the CLRA and FAL counts (as was the

13   case in the original Complaint), but the FAC adds one new theory.  Plaintiff alleges that the Daly

14   City Station violates California Financial Code section 13081(b).  Section 13081(b) provides that

15   "[n]o operator of a point-of-sale device in this state shall impose any fee upon a customer for the

16   use of that device unless that fee is disclosed to the customer prior to the customer being

17   obligated to pay for any goods or services."  Plaintiff, however, fails to allege any violation by

18   Valero.

19          First, the statute by its express terms applies only to the "operator of a point-of-sale

20   device."  Cal. Fin. Code § 13081(b).  "[T]he term 'operator of a point-of-sale device' means the

21   person who imposes the fee on a customer for using a point-of-sale device to pay for a good or

22   service."  Cal. Fin. Code § 13081(d).  As shown above, Valero does not own, and hence does not

23   operate, the Daly City Station.

24          Second, "the term 'point-of-sale device' includes any device used for the purchase of a

25   good or service where a personal identification number (PIN) is required."  Cal. Fin. Code §

26   13081(c) (emphasis added).  Plaintiff admits in the FAC that she did not enter her PIN, but

27   instead completed a signature-debit transaction by entering her zip code.  (FAC ¶ 60.)

28   / / /

1    Third, Plaintiff's claim is based on her allegation that "[t]he difference between the

2  'credit' price and Valero's advertised 'cash' price that Valero deceptively charges on debit card

3  transactions represents an undisclosed fee for the use of Valero's POS devices."[11]  (FAC ¶ 29.)

4  This assertion is inconsistent with settled California law.  In *Thrifty Oil Co. v. Superior Court*, 91

5  Cal. App. 4th 1070 (2001), the plaintiff alleged that Thrifty Oil's practice of using two-tier

6  pricing for cash and credit transactions imposed an "illegal surcharge" on customers who paid

7  with credit.  *Id*. at 1073.  Plaintiff's claim was based on the Song-Beverly Credit Card Act, which

8  prohibits retailers from imposing "a surcharge on a cardholder who elects to use a credit card in

9  lieu of payment by cash, check, or similar means."  *Id*. at 1077 (*citing* Cal. Civ. Code §

10  1748.1(a).  The court granted summary adjudication in favor of defendant, finding that

11  defendant's use of two-tier pricing was lawful because the Song-Beverly Credit Card Act

12  expressly permitted retailers to "offer discounts for the purpose of inducing payment by cash,

13  check, or other means not involving the use of a credit card, provided that the discount is offered

14  to all prospective buyers" and the tiered pricing was a permissible discount, not a surcharge.  Civ.

15  Code § 1748.1(a); *Thrifty Oil*, 91 Cal. App. 4th at 1076-78.  The court also found that the

16  Petroleum Act, Business and Professions Code section 13400, et seq. "expressly authorizes and

17  regulates discounts for cash purchases of gasoline."  *Id*. at 1077, n.6 (citing Bus. & Prof. Code §§

18  / / /

19  / / /

20

---

21    [11] In support of the claim, Plaintiff alleges that "in December 2013, United States District
Court Judge John Gleeson approved a settlement in the largest antitrust class action lawsuit in
22  American history, *In re Payment Card Interchange Fee & Merchant Discount Antitrust Litig.*,
MDL No. 1720 (E.D.N.Y.), which resulted in a *$5.7 billion* payment *to consumers* who were
23  overcharged fees on debit card purchases."  (FAC p. 8, n.3) (original and added emphasis).  In
truth, the *Interchange Fee* lawsuit was brought on behalf of a nationwide class of *merchants*
24  alleging that Visa, MasterCard, and affiliated banks conspired to fix interchange and merchant
discount fees charged to merchants.  Visa and MasterCard agreed to a $5.7 billion settlement
25  *payable to merchants*; Visa and MasterCard also agreed to rule changes including, *inter alia*:  (1)
allowing merchants to charge customers an extra fee/surcharge if they pay with Visa or
26  MasterCard credit cards, and (2) allowing merchants to offer discounts to customers who do *not*
pay with Visa or MasterCard credit or debit cards. (Friedenberg Decl., Exs. 3 and 4.) The
27  litigation had nothing to do with any overcharge to consumers. (*See id.*)  That Plaintiff would
suggest otherwise is particularly troubling, as her counsel (the Robbins Geller firm) was co-lead
28  class counsel on the *Interchange* case.

VALERO'S MOTION TO DISMISS FIRST AMENDED COMPLAINT

1   13532, 13470).[12]  Although *Thrifty Oil* did not address debit-card transactions, it clearly holds

2   that a two-tier pricing system reflects a cash discount, and not the imposition of a fee or

3   surcharge on non-cash transactions.

4        Fourth, even were the statute theoretically applicable, Plaintiff fails to allege any

5   violation.  Financial Code section 13081 applies on its face to non-obvious fees.  Non-gasoline

6   consumer products are not subject to differential prices depending on the manner of payment.  If

7   a grocery-store customer purchases a gallon of milk bearing a $4.00 price tag from a store that

8   imposes a $.35 debit-card surcharge, unless that surcharge is disclosed the consumer has no way

9   of knowing that the total price will be $4.35.  That is not at all the fact pattern at bar.  As

10  discussed above, the FAC admits that the fuel dispensers display the price of fuel being

11  dispensed.  (FAC ¶ 26.)  Plaintiff was fully aware of the total applicable price, including any

12  differential attributable to her use of a signature debit card.

13       Thus, California Financial Code section 13081 has no application to this case.  It cannot

14  support Plaintiff's UCL claim, which therefore fails on this further and independent ground.

15       **D.     Plaintiff Again Fails to State A Claim for Accounting (Count V).**

16       "A cause of action for an accounting requires a showing that a relationship exists between

17  the plaintiff and defendant that requires an accounting, and that some balance is due the plaintiff

18  that can only be ascertained by an accounting."  *Teselle v. McLoughlin*, 173 Cal. App. 4th 156,

19  179 (2009) (*citing Brea v. McGlashan* 3 Cal. App. 2d 454, 460 (1934) and 5 Witkin, Cal.

20  Procedure (5th Ed. 2008) Pleading, § 819, p. 236).  Plaintiff again has failed to allege facts

21  sufficient to establish either element.

22  / / /

23

24       [12] Even if Plaintiff's transaction fell within the ambit of Financial Code § 13081(b), as a
statute governing point-of-sale devices *generally*, the Petroleum Act's specific provisions

25  regulating gasoline dispensers, which expressly authorize cash discounts for gasoline purchases
govern.  It is a well-settled rule that a "specific provision relating to a particular subject will

26  govern a general provision, even though the general provision standing alone would be broad
enough to include the subject to which the specific provision relates."  *People v. Tanner*, 24 Cal.

27  3d 514, 521 (1979); *accord Fujifilm Corp. v. Yang*, 223 Cal. App. 4th 326, 336 (2014); *see also
RadLAX Gateway Hotel, LLC v. Amalgamated Bank*, 132 S. Ct. 2065, 2070-71 (2012) ("[I]t is a

28  commonplace of statutory construction that the specific governs the general.").

1            **1.     Plaintiff fails to allege a relationship that requires an accounting.**

2        Plaintiff has not alleged facts showing the requisite relationship between Plaintiff and

3  Valero.  Indeed, Plaintiff has *no* relationship with Valero, because Valero does not own the Daly

4  City Station.  (Friedenberg Decl., Ex. 1.)  Plaintiff did business with an independent Valero-

5  branded retailer—*not* with Valero.  Even had Plaintiff alleged a purchase from Valero, this alone

6  would be insufficient.  Although a fiduciary relationship is not required, there must exist some

7  relationship requiring an accounting:  "[t]he right to an accounting can arise from the possession

8  by the defendant of money or property which, because of the defendant's relationship with the

9  plaintiff, the defendant is obliged to surrender."  *Teselle*, 173 Cal. App. 4th at 179-80.  Plaintiff

10  does not allege a special or unique relationship warranting the unusual remedy of accounting,

11  only a garden variety claim for monetary recovery.

12            **2.     Plaintiff fails to allege a balance that can only be ascertained**
13                        **by an accounting.**

14        "An action for accounting is not available where the plaintiff alleges the right to recover a

15  sum certain or a sum that can be made certain by calculation."  *Teselle,* 173 Cal. App. 4th at 179

16  (*citing St. James Church of Christ Holiness v. Superior Court*, 135 Cal. App. 2d 352, 359

17  (1955)).  That, however, is precisely what Plaintiff claims.  She alleges that she was

18  "overcharged" by an amount equal to the difference between the posted "cash" and "credit"

19  prices at the Daly City Station.  (FAC ¶¶ 103, 104.)  Plaintiff is clearly alleging an amount that, if

20  recoverable, is subject to calculation.  The fact that multiple or complex calculations may be

21  required makes no difference.  Thus, for this further and independent reason, the fifth claim for

22  relief for accounting fails as a matter of law and must be dismissed.

23      **E.     Leave to Amend Should Be Denied, Because Further Amendment**
24               **Would Be Futile.**

25        Finally, Valero submits that further leave to amend should be denied.  While we

26  recognize that leave to amend is ordinarily freely granted, Plaintiff already has attempted one

27  amendment in response to Valero's motion to dismiss.  Leave to amend may be denied where the

28  underlying facts are not seriously disputed and the remaining question is the defendant's liability

1  under the substantive law.  *E.g., Albrecht v. Lund*, 845 F.2d 193, 195-196 (9th Cir. 1988).

2  Moreover, further leave to amend may be denied where, as here, Plaintiff has already amended

3  her complaint, but has failed to correct the complaint's previous defects.  *E.g., Abagnin v.*

4  *AMVAC Chem. Corp.*, 545 F.3d 733, 742 (9th Cir. 2008).  Here, further leave to amend should

5  be denied under both standards.

6      If the Court accepts Plaintiff's allegations in the FAC, it is undisputed that:  (1) Valero

7  does not own the Daly City Station; (2) *as a matter of law*, a "debit" transaction is not a "cash"

8  transaction; (3) "Valero's fuel dispensers display … the price of fuel that is currently being

9  dispensed;" and (4) Plaintiff does *not* allege that the Daly City Station failed to comply with

10  California's statutory requirements for disclosing gasoline prices to consumers (indeed, the

11  photograph incorporated at paragraph 18 of the FAC shows a station in compliance with the

12  California law).

13      No amendment can make Valero the owner/operator of  the Daly City Station, and no

14  amendment can change California law that refuses to impose vicarious liability on Valero as a

15  franchisor.  Plaintiff's repeated recitation that Valero possesses "unbridled control" over the site

16  is meaningless.

17      No amendment can change the fact that Plaintiff's debit card, while not a "credit card," is

18  also not "cash."  California law is clear.  Accordingly, the fundamental premise of the case—that

19  it was reasonable for Plaintiff to expect that the "cash" price to apply to a debit-card

20  transaction—is simply wrong as a matter of law.  Valero called this fact to Plaintiff's attention in

21  Valero's original Motion to Dismiss, but the FAC does not cure the defect.  The FAC simply

22  ignores this point and merely reiterates that a debit card is not a credit card.  But that is irrelevant

23  and misses the point.

24      Finally, no realistic amendment can save Plaintiff's claims now that Plaintiff admits the

25  actual price to be charged was displayed on the dispenser.  California law has long held that a

26  fraud-based claim is not plausible and not actionable where "the truth" was immediately apparent

27  to the alleged victim.  Here, the truth was literally right in front of Plaintiff's eyes.

28  / / /

1
## V.     CONCLUSION

2      Plaintiff has had two opportunities to plead a cognizable claim. She has failed to do so,

3 because the substantive legal defects in her claims cannot be overcome.  Accordingly, Valero

4 respectfully submits the Court should grant this motion and dismiss the case with prejudice.

5      Dated:  April 28, 2016

6                                              GLYNN & FINLEY, LLP
                                              ADAM FRIEDENBERG
7                                              ROBERT C. PHELPS
                                              LAUREN E. WOOD
8                                              One Walnut Creek Center
                                              100 Pringle Avenue, Suite 500
9                                              Walnut Creek, CA  94596

10                                             By____/s/ Adam Friedenberg_____
                                              Attorneys for Defendant
11                                             Valero Marketing and Supply Company

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

VALERO'S MOTION TO DISMISS FIRST AMENDED COMPLAINT