HOBSON, BERNARDINO & DAVIS, LLP
RAFAEL BERNARDINO, JR. (118690)
JASON A. HOBSON (184134)
725 South Figueroa Street, Suite 3230
Los Angeles, CA 90017
Telephone: 213/235-9190
213/235-9197 (fax)
rbernardino@hbdlegal.com
jhobson@hbdlegal.com

ROBBINS GELLER RUDMAN
  & DOWD LLP
PATRICK W. DANIELS (190715)
655 West Broadway, Suite 1900
San Diego, CA 92101
Telephone: 619/231-1058
619/231-7423 (fax)
patrickd@rgrdlaw.com

Attorneys for Plaintiff and the Proposed Class

[Additional counsel appear on signature page.]

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| FAITH BAUTISTA, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>VALERO ENERGY CORPORATION, et al.,<br><br>Defendants. | Case No. 3:15-cv-05557-RS<br><br>CLASS ACTION<br><br>**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT VALERO MARKETING AND SUPPLY COMPANY'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT FOR FAILURE TO STATE A CLAIM**<br>Date:    June 16, 2016<br>Time:    1:30 p.m.<br>Place:   San Francisco Courthouse,<br>           Courtroom 3 - 17th Floor<br>Judge:  Hon. Richard Seeborg<br><br>**Accompanying Documents:**<br><br>**1) [PROPOSED] ORDER** |

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION .................................................................................................1

II.     STATEMENT OF THE ISSUES TO BE DECIDED.......................................................2

III.    STATEMENT OF FACTS ......................................................................................2

        A.      A Debit Card Is Not a Credit Card.................................................................2

        B.      Valero-Branded Dealers Advertise Split-Pricing for Gasoline In a Manner
                that Has the Capacity, Likelihood, or Tendency to Deceive or Confuse the
                Public .........................................................................................................3

        C.      Valero Fails to Disclose That It Imposes a Surcharge on Debit Card Sales...........3

        D.      Valero Directly Participated in and Exercised Complete and Unbridled
                Control over the Deceptive and Misleading Practices that Injured Plaintiff
                and the Class ................................................................................................4

        E.      Plaintiff Reasonably Relied on Valero's Misrepresentations and
                Omissions and Was Injured as a Result...........................................................4

IV.     LEGAL STANDARD............................................................................................5

V.      ARGUMENT .....................................................................................................7

        A.      Plaintiff's Claims Under the CLRA, the FAL, and the UCL Should Be
                Sustained Because Consumer Deception Is a Question of Fact that Cannot
                Be Decided on a Motion to Dismiss ................................................................7

                1.      Valero Violated the CLRA and UCL Because a Reasonable
                        Consumer Would Be Deceived by Valero's Failure to Disclose the
                        Material Fact that It Imposes a Surcharge on Debit Cards .........................7

                2.      Valero Violated the CLRA, FAL, and UCL by Advertising Split-
                        Pricing in a Manner that is Likely to Deceive a Reasonable
                        Consumer ..........................................................................................8

                3.      The Rule in the Ninth Circuit Is that Consumer Deception Is a
                        Question of Fact that Cannot Be Decided on a Motion to Dismiss ...........9

                4.      Valero's Inconspicuous Price Displayed *After* a Monetary Hold
                        Has Been Placed on a Consumer's Checking Account Does Not
                        Cure Consumer Deception as a Matter of Law........................................11

                5.      The Law Does Not Impose a Duty to Investigate Upon Victims of
                        Deceptive Business Practices.................................................................16

                6.      Even if Debit Were Not Cash as a Matter of Law, Consumer
                        Deception Is Still a Question of Fact that Cannot Be Decided on a
                        Motion to Dismiss................................................................................16

**Page**

7.  Valero's Argument that Debit Is Not Cash as a Matter of Law Is Both Legally and Factually Unsound .........................................................17

8.  Valero Personally Participated in the Deceptive Scheme Because It Owns and Controls the Deceptive Street Signs, the Fuel Dispensers, the POS Devices, and the Payment Processing Service in Use at Virtually All Valero-Branded Dealers ........................................20

B.  The Amended Complaint States a Claim Under the Unfair Prong of the UCL .........................................................................................................22

C.  The Amended Complaint States a Claim Under the Unlawful Prong of the UCL .........................................................................................................22

VI.  CONCLUSION ...........................................................................................................25

1146950_1

Opposition to Defendant Valero Marketing and Supply Company's Motion to Dismiss Plaintiff's First Amended Complaint - 3:15-cv-05557-RS                                                      - ii

1

## TABLE OF AUTHORITIES

2
                                                                                        **Page**

3  **CASES**

4  *Anderson v. The Hain Celestial Grp., Inc.,*

5     87 F. Supp. 3d 1226 (N.D. Cal. 2015) .......................................................12, 13, 14

6  *Ang v. Bimbo Bakeries USA, Inc.,*
       No. 13-cv-01196-WHO, 2013 WL 5407039 (N.D. Cal. Sept. 25, 2013) ..............................12

7  *Aqua-Lung Am., Inc. v. Am. Underwater Prods. Inc.,*
8     709 F. Supp. 2d 773 (N.D. Cal. 2010) ........................................................................6

9  *Asis Internet Servs. v. Subscriberbase Inc.,*
       No. 09-3503 SC, 2010 WL 1267763 (N.D. Cal. Apr. 1, 2010) .................................9
10

11 *Carrea v. Dreyer's Grand Ice Cream, Inc.,*
       475 F. App'x 113 (9th Cir. 2012) ........................................................................10

12 *City of San José v. Office of the Comm'r of Baseball,*
13     No. C-13-02787 RMW, 2013 U.S. Dist. LEXIS
       147543 (N.D. Cal. Oct. 11, 2013), *aff'd*, 776 F.3d 686 (9th Cir. 2015). ...........................7, 20
14
   *Colucci v. ZonePerfect Nutrition Co.,*
15     No. 12-2907-SC, 2012 WL 6737800 (N.D. Cal. Dec. 28, 2012) ...............................9

16 *Gitson v. Trader Joe's Co.,*
17     No. 13-cv-01333-WHO, 2013 WL 5513711
       (N.D. Cal. Oct. 4, 2013).....................................................................................10
18
   *Dorfman v. Nutramax Labs., Inc.,*
19     No. 13cv0873 WQH (RBB), 2013 WL 5353043
       (S.D. Cal. Sept. 23, 2013) .......................................................................................7
20
   *Eminence Capital, LLC v. Aspeon, Inc.,*
21     316 F.3d 1048 (9th Cir. 2003) .................................................................................25

22 *Freeman v. Time, Inc.,*
23     68 F.3d 285 (9th Cir. 1995) ......................................................................................9

24 *Hartong v. Partake, Inc.,*
       266 Cal. App. 2d 942 (1968) ...................................................................................12
25
   *Herron v. Best Buy Co.,*
26     924 F. Supp. 2d 1161 (E.D. Cal. 2013)....................................................................22

27

28

Opposition to Defendant Valero Marketing and Supply Company's Motion to Dismiss
Plaintiff's First Amended Complaint - 3:15-cv-05557-RS                              - iii -

**Page**

*Herron v. Best Buy Stores, LP*,
    No. 12-cv-02103-GEB-JFM, 2013 WL 4432019
    (E.D. Cal. Aug. 16, 2013) ................................................................................ 20-21

*In re 3Com Sec. Litig.*,
    No. C-89-20480, 1992 WL 226890 (N.D. Cal. June 8, 1992) ............................... 25

*In re Apple In-App Purchase Litig.*,
    855 F. Supp. 2d 1030 (N.D. Cal. 2012) ............................................................. 22

*Italian Colors Rest. v. Harris*,
    99 F. Supp. 3d 1199 (E.D. Cal. 2015) ................................................................ 24

*Ivie v. Kraft Foods Glob., Inc.*,
    961 F. Supp. 2d 1033 (N.D. Cal. 2013) ................................................................ 9

*Kearns v. Ford Motor Co.*,
    567 F.3d 1120 (9th Cir. 2009) ............................................................................. 6

*Kelly v. BP W. Coast Prods. LLC*,
    No. 2:14-cv-01507-KJM-CKD, 2014 WL 7409220
    (E.D. Cal. Dec. 30, 2014) ............................................................. 8, 15, 21, 23

*Lavie v. Procter & Gamble Co.*,
    105 Cal. App. 4th 496, 129 Cal. Rptr. 2d 486 (2003) ..................................... 15, 16

*Lee v. City of L.A.*,
    250 F.3d 668 (9th Cir. 2001) ............................................................................... 6

*Madenlian v. Flax USA Inc.*,
    No. 13-01748 JVS(JRRx), 2014 WL 7723578 (C.D. Cal. Mar. 31, 2014) ............ 12

*Morgan v. AT&T Wireless Servs., Inc.*,
    177 Cal. App. 4th 1235 (2009) ........................................................................... 11

*Morgan v. Wallaby Yogurt Co., Inc.*,
    No. 13-cv-00296-WHO, 2014 WL 1017879
    (N.D. Cal. Mar. 13, 2014) ....................................................................... *passim*

*Morici v. Hashfast Techs. LLC*,
    No. 5:14-cv-00087-EJD, 2015 WL 4880670
    (N.D. Cal. Aug. 14, 2015) .................................................................................. 21

1146950_1

Opposition to Defendant Valero Marketing and Supply Company's Motion to Dismiss
Plaintiff's First Amended Complaint - 3:15-cv-05557-RS                                                     - iv -

1

2                                                                                          **Page**

3

4    *Mullins v. Premier Nutrition Corp.*,
         No. 13-cv-01271-RS, 2016 WL 1534784
5        (N.D. Cal. Apr. 15, 2016) ........................................................................................9, 12, 14

6    *OCM Principal Opportunities Fund, L.P. v. CIBC World Mkts. Corp.*,
         157 Cal. App. 4th 835 (2007) ................................................................................................12
7
     *People v. Cole*,
8        113 Cal. App. 4th 955, 7 Cal. Rptr. 3d 333 (2003).........................................................15, 16

9    *Pinterest Inc. v. Pintrips Inc.*,
         15 F. Supp. 3d 992 (N.D. Cal. 2014) ...................................................................................5, 6
10
     *Pirozzi v. Apple Inc.*,
11       913 F. Supp. 2d 840 (N.D. Cal. 2012) ...................................................................................12

12   *Pub. Emps'Ret. Sys. v. Moody's Inv'rs Serv., Inc.*,
         226 Cal. App. 4th 643 (2014) ..........................................................................................12, 13
13
     *Ries v. Ariz. Beverages USA LLC*,
14       287 F.R.D. 523 (N.D. Cal. 2012).......................................................................................19, 20
15
     *Rosado v. eBay, Inc.*,
16       53 F. Supp. 3d 1256 (N.D. Cal. 2014) .................................................................................8, 17

17   *Sugawara v. Pepsico, Inc.*,
         No. 2:08-cv-01335-MCE-JFM, 2009 WL 1439115
18       (E.D. Cal. May 21, 2009)........................................................................................................11

19   *Thrifty Oil Co. v. Superior Court*,
         91 Cal. App. 4th 1070 (2001) ...........................................................................................23, 24
20
     *United States v. Corinthian Colls.*,
21       655 F.3d 984 (9th Cir. 2011) ...................................................................................................6
22
     *Vess v. Ciba-Geigy Corp.*,
23       317 F.3d 1097 (9th Cir. 2003) .................................................................................................6

24   *Wash. Mut. Bank v. Superior Court*,
         95 Cal. App. 4th 606 (2002) .............................................................................................18, 19
25
     *Williams v. Gerber Prods. Co.*,
26       552 F.3d 934 (9th Cir. 2008) ........................................................................................ *passim*

27

28

Opposition to Defendant Valero Marketing and Supply Company's Motion to Dismiss
Plaintiff's First Amended Complaint - 3:15-cv-05557-RS                                    - v -

**Page**

**STATUTES, RULES AND REGULATIONS**

Cal. Bus. & Prof. Code
  §17200...................................................................................................1, 7
  §17500...................................................................................................1, 7

Cal. Civ. Code
  §1748.1.......................................................................................................24
  §1750.............................................................................................................1
  §1760.............................................................................................................7
  §1770.............................................................................................................7

Cal. Fin. Code
  §13081.............................................................................................. *passim*

Fed. R. Civ. P.
  8(a)................................................................................................................6
  9(b)................................................................................................................6
  15................................................................................................................25

Fed. R. Evid.
  201.............................................................................................................19
  201(b)(2)....................................................................................................20

1146950_1

Opposition to Defendant Valero Marketing and Supply Company's Motion to Dismiss
Plaintiff's First Amended Complaint - 3:15-cv-05557-RS                                    - vi -

## I.    INTRODUCTION

Plaintiff is a cost-conscious consumer who purchases gasoline and other products with her debit card, which she, like other reasonable consumers, believes is not a credit card.  Valero is a major supplier of gasoline in the United States and sells its fuel through a number of Valero-branded dealers.  Unbeknownst to Plaintiff and other reasonable consumers, Valero charges more money on debit card purchases of gasoline than on cash purchases (a "Surcharge") at many of its Valero-branded dealers.

Valero had a duty to disclose its debit card Surcharge under California Financial Code §13081, and also because the existence of a debit card fee is a material fact that was within Valero's exclusive knowledge.  Notwithstanding its duty, Valero does not disclose its Surcharge, which is a practice that would deceive a reasonable consumer in violation of California's Consumers Legal Remedies Act, California Civil Code §1750, *et seq.* ("CLRA"); False Advertising Law, California Business & Professions Code §17500, *et seq.* ("FAL"); and Unfair Competition Law, California Business & Professions Code §17200, *et seq.* ("UCL").  Valero compounds the consumer deception through large street signs, completely adorned with Valero's trade dress, that advertise only a "cash" price and a "credit" price for gasoline, but no "debit" price ("Split-Pricing").  Valero's Split-Pricing signs would deceive a reasonable consumer who believes that a debit card is not a credit card and, therefore, would not expect to pay the advertised "credit" price.

It is undisputed that Valero owns and maintains complete and unbridled control over its Split-Pricing signs, the fuel dispensers, and the point-of-sale ("POS") devices in use at virtually all Valero-branded dealers.  It is also undisputed that Valero owns or controls the payment processing system that actually processes debit cards like credit cards at Valero-branded dealers.

Plaintiff has stated all of the necessary elements of her claims, and Valero does not deny the truth of any of those allegations.  What remains is a question of fact that, under well-settled Ninth Circuit law, cannot be decided on a motion to dismiss: would Valero's practices deceive an objective reasonable consumer?  Because this highly factual question cannot be decided on Valero's Motion, Plaintiff respectfully requests that Valero's Motion be denied in its entirety.

Opposition to Defendant Valero Marketing and Supply Company's Motion to Dismiss
Plaintiff's First Amended Complaint - 3:15-cv-05557-RS                                              - 1 -

## II.    STATEMENT OF THE ISSUES TO BE DECIDED

1)    Whether Plaintiff has stated a plausible claim under the CLRA, FAL and UCL by alleging her reliance on Valero's deceptive practices and Valero's failure to disclose its Surcharge on debit card purchases is likely to deceive a reasonable consumer;

2)    Whether Plaintiff has stated a plausible claim under the "unfair" prong of the UCL by alleging that her injury is substantial and not outweighed by any countervailing benefits to consumers or competition and it was an injury she could not reasonably avoid; and

3)    Whether Plaintiff stated a plausible claim under the "unlawful" prong of the UCL by alleging Valero's violation of California Financial Code §13081, which requires Valero to clearly disclose any fees imposed on debit cards.

## III.    STATEMENT OF FACTS

### A.    A Debit Card Is Not a Credit Card

A debit card is not a credit card, and reasonable consumers believe that a credit card is not a debit card.  ¶¶6, 44.[1]  This correct and reasonably held belief is supported by a number of facts, including that: (1) unlike with credit cards, a positive credit history is not required to obtain a debit card; (2) unlike with credit cards, debit card transactions results in an immediate deduction of cash from the cardholder's checking account; (3) unlike with credit cards, debit cards do not hold an unpaid balance, and as such, do not accrue interest charges; (4) unlike with credit cards, debit card holders are not charged an annual fee; (5) unlike with credit cards, debit card holders do not receive a bill at the end of each month to settle accounts; (6) unlike with credit cards, debit card holders are advised by card issuers that a debit card "is not a credit card"; (7) consumer-oriented Internet content consistently draws a distinction between debit cards and credit cards, including that while the two cards appear similar, "that's where the similarity ends"; and (8) unlike credit cards, which impose upon merchants a transaction fee of approximately 1% to 4% of the transaction's total value, debit card transaction fees are capped at $0.21 per transaction plus five basis points multiplied by the value of the entire transaction.  ¶¶7-8, 30, 40-43.

---

[1]    References to "¶" or "¶¶" are to the First Amended Complaint for Injunctive Relief, Declaratory Relief, Damages, and Restitution ("Amended Complaint") [Dkt. No. 42].

1146950_1

Opposition to Defendant Valero Marketing and Supply Company's Motion to Dismiss
Plaintiff's First Amended Complaint - 3:15-cv-05557-RS                                    - 2

**B.    Valero-Branded Dealers Advertise Split-Pricing for Gasoline In a Manner that Has the Capacity, Likelihood, or Tendency to Deceive or Confuse the Public**

In the ultra-competitive gasoline market where up to four competing stations are often found at a single intersection, a price difference of just a few cents can drive motorists from one station to another.  ¶¶4, 17-18.  In order to steer customers to its own Valero-branded dealers over competing dealers, Valero advertises Split-Pricing on large street signs that are visible to passing motorists and contain no information other than Valero's trade dress and the currently advertised "credit" and "cash" prices.  *Id.*

Valero's Split-Pricing signs have the capacity, likelihood, or tendency to deceive reasonable consumers who believe that a debit card is not a credit card, because Valero processes debit cards like credit cards, charging consumers who use them a higher "credit" price. ¶5. Consumers exposed to one of Valero's Split-Pricing signs must make a determination as to which price will apply to their debit card payment.  ¶¶6, 39.  When presented with ***only*** those two options, reasonable consumers will invariably believe that the advertised "cash" price will apply to their debit card purchase because a debit card is not a credit card.  ¶39.

**C.    Valero Fails to Disclose That It Imposes a Surcharge on Debit Card Sales**

Valero does not disclose on its street signs, fuel dispensers, POS devices, or anywhere else that debit card purchasers will be charged a Surcharge or any amount of money over the cash price. ¶35.  When a consumer who has been lured into a Valero-branded dealer by the promise of cheaper gas prices swipes a debit card at Valero's POS device, the transaction must be authorized ***before*** the fuel may be dispensed.  ¶45.  As part of the authorization process,

> [s]ome hotels, gas stations, restaurants, auto rental companies, and retailers ***put a hold on the money in your checking account*** until a debit transaction is processed, which might take up to several days for signature-based payments. What's more, the amount that's blocked can significantly exceed the amount of your purchase. These holds can ***prevent you from accessing the funds*** in your bank account . . . .

¶41. It is only ***after*** a debit card sale has been authorized, and a monetary "hold" placed on the funds in a cardholder's checking account, that Valero's fuel dispenser displays an inconspicuous and ambiguous price. ¶45. Valero provides no description of the displayed price to indicate whether it is

1146950_1

Opposition to Defendant Valero Marketing and Supply Company's Motion to Dismiss
Plaintiff's First Amended Complaint - 3:15-cv-05557-RS                                                    - 3 -

a "cash" price or a "credit" price. ¶35. Moreover, because Valero's street signs are typically not visible from the fuel dispenser, and because the difference between Valero's advertised "cash" price that consumers expect to pay and the "credit" price that Valero ultimately charges them can amount to as little as $0.04 per gallon, reasonable consumers do not realize that price displayed on the fuel dispenser after their debit card transaction has been authorized is not the "cash" price. ¶¶5, 45-46.

> **D.** **Valero Directly Participated in and Exercised Complete and Unbridled Control over the Deceptive and Misleading Practices that Injured Plaintiff and the Class**

Valero owns and maintains complete and unbridled control over its Split-Pricing signs, which Valero provides to its Valero-branded dealers. ¶¶13(b), 19. As such, Valero could, but does not, disclose on its signs that debit cards will be charged the "credit" price. ¶35.

Valero owns and exercises complete and unbridled control over the fuel dispensers at Valero-branded dealers. ¶¶13(c), 21. As such, Valero could, but does not, disclose on its fuel dispensers that debit cards will be charged a Surcharge or the "credit" price. ¶35.

Valero owns and exercises complete and unbridled control over the POS devices attached to its fuel dispensers through which consumers make debit and credit card payments. ¶¶13(d), 21. As such, Valero could, but does not, disclose on its POS devices that debit cards will be charged a Surcharge or the "credit" price. ¶35.

Valero also owns, or through its agent, exercises complete and unbridled control over the payment processing system that it requires all Valero-branded dealers in the state of California to use in order to accept and process debit and credit card payments for gasoline. ¶¶13(e), 22. Despite its knowledge that certain Valero-branded dealers use Valero's Split-Pricing signs, Valero itself processes debit cards as credit cards and is the entity that actually collects money from unsuspecting debit card purchasers. *Id.* To be sure, Valero does not charge its dealers a processing fee on transactions made with Valero's proprietary Valero-branded credit card. ¶22.

> **E.** **Plaintiff Reasonably Relied on Valero's Misrepresentations and Omissions and Was Injured as a Result**

Based on her reasonably held belief that a debit card is not a credit card, Plaintiff regularly purchased gasoline at various times throughout the Class Period (July 1, 2011 through the present)

1146950_1

Opposition to Defendant Valero Marketing and Supply Company's Motion to Dismiss
Plaintiff's First Amended Complaint - 3:15-cv-05557-RS                                    - 4 -

from Valero-branded dealers where Valero advertised a "cash" price and a "credit" price. ¶¶2, 12, 56-57.  Plaintiff expected that her debit card would be treated like cash rather than credit.  *Id.*  Plaintiff never received any notice during any of her purchases of Valero-brand gasoline that her debit card would be charged a Surcharge or any amount of money over a "cash" price.  ¶¶12, 57.

As just one example, at a Valero-branded dealer on 6989 Mission Street, Daly City, California (the "Daly City Station"), Plaintiff was lured into the station by Valero's advertisement of a "cash" price that was lower than the "credit" price.  ¶58.  Valero's fuel dispensers made no disclosure that her debit card would be charged any amount of money over the "cash" price.  ¶59.

After swiping her debit card, Valero's POS device asked for Plaintiff's zip code, after which it instructed her to "Begin Fuel."  ¶60.  There is no allegation or evidence that Valero's POS device disclosed that Plaintiff's debit card would not receive a "cash" price.  There is no allegation or evidence that Valero's POS device offered Plaintiff the option to select "Debit."  There is no allegation or evidence that Valero's POS device required Plaintiff to sign for her debit card purchase.

Plaintiff had no reason to suspect that the price that Valero's fuel dispenser applied to her sale was anything other than Valero's advertised "cash" price that she expected to pay.  ¶61.

Plaintiff would not have purchased gasoline from Valero-branded dealers using her debit card but for Valero's advertisement of a "cash" price and a "credit" price and its failure to disclose that it intended to impose a Surcharge on her debit card purchase.  ¶63.

## IV.    LEGAL STANDARD

As this Court recently held:

> A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2). While "detailed factual allegations are not required," a complaint must have sufficient factual allegations to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (citing *Bell Atlantic v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)).  A claim is facially plausible "when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

*Pinterest Inc. v. Pintrips Inc.*, 15 F. Supp. 3d 992, 996 (N.D. Cal. 2014) (Seeborg, J.).

Because fraud is not an essential element of Plaintiff's consumer protection claims, "only allegations ('averments') of fraudulent conduct must satisfy the heightened pleading requirements of

1146950_1

Opposition to Defendant Valero Marketing and Supply Company's Motion to Dismiss
Plaintiff's First Amended Complaint - 3:15-cv-05557-RS                                    - 5 -

1    Rule 9(b). Allegations of non-fraudulent conduct need satisfy only the ordinary notice pleading

2    standards of Rule 8(a)." *Vess v. Ciba-Geigy Corp.*, 317 F.3d 1097, 1105 (9th Cir. 2003); *see also*

3    *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009) ("Where fraud is not an essential

4    element of a claim, only those allegations of a complaint which aver fraud are subject to Rule 9(b)'s

5    heightened pleading standard.").   Because Plaintiff's claims are based on Valero's **omission** of

6    material information, and as Valero repeatedly points out, its misleading Split-Pricing signs are not

7    "false," the Amended Complaint makes no "averments of fraud" to which Rule 9(b) would apply.[2]

8    Even if Rule 9(b) did apply to Plaintiff's claims, however, the facts in the Amended Complaint are

9    alleged with sufficient specificity so as to "give [Valero] notice of the particular misconduct . . . so

10   that [it] can defend against the charge and not just deny that [it has] done anything wrong." *Vess*,

11   317 F.3d at 1106.

12        A motion to dismiss "tests the legal sufficiency of the claims alleged in the complaint."

13   *Pinterest*, 15 F. Supp. 3d at 996.   "When evaluating such a motion, the court must accept all material

14   allegations in the complaint as true, even if doubtful, and construe them in the light most favorable to

15   the non-moving party."   *Id.*   A court generally "'may not consider any material beyond the

16   pleadings,'" other than "evidence on which the complaint 'necessarily relies'" if: (1) the complaint

17   refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions

18   the authenticity of the document." *United States v. Corinthian Colls.*, 655 F.3d 984, 998-99 (9th Cir.

19   2011).

20        A court may also take judicial notice of "matters of public record."   *Lee v. City of L.A.*, 250

21   F.3d 668, 688-89 (9th Cir. 2001).   A court may not, however, take judicial notice of a fact that is

22   "'subject to reasonable dispute.'"   *Id.*   Further, judicial notice may not be used for the purpose of

23   "'prov[ing] the truth of the contents or any party's assertion of what the contents mean.'"   *City of*

24

---

25   [2]    Fraud in California requires a "'knowingly false misrepresentation.'"   *Aqua-Lung Am., Inc. v.*
26   *Am. Underwater Prods. Inc.*, 709 F. Supp. 2d 773, 786 (N.D. Cal. 2010) (Seeborg, J.).   Plaintiff does
      not allege that Valero made a "***false***" representation, just a misleading one.   Moreover, Plaintiff's
27   theory that even without a sign, consumers who believe that debit is not credit are deceived by
28   Valero's failure to disclose its Surcharge requires ***no*** representation at all.

1    *San José v. Office of the Comm'r of Baseball*, No. C-13-02787 RMW, 2013 U.S. Dist. LEXIS

2    147543, at *16 (N.D. Cal. Oct. 11, 2013), *aff'd*, 776 F.3d 686 (9th Cir. 2015).

3    **V.    ARGUMENT**

4            **A.    Plaintiff's Claims Under the CLRA, the FAL, and the UCL Should Be
                    Sustained Because Consumer Deception Is a Question of Fact that
5                    Cannot Be Decided on a Motion to Dismiss**

6            The CLRA, which must be "liberally construed . . . to protect consumers against unfair and

7    deceptive business practices and to provide efficient and economical procedures to secure such

8    protection," prohibits "unfair methods of competition and unfair or deceptive acts or practices . . . in

9    a transaction intended to result or which results in the sale . . . of goods." Cal. Civ. Code §§1760,

10   1770; *see also Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008). The FAL makes it

11   unlawful to "make or disseminate . . . any statement . . . which is untrue or misleading, and which is

12   known, or which by the exercise of reasonable care should be known, to be untrue or misleading," in

13   connection with the sale of goods. Cal. Bus. & Prof. Code §17500. The UCL prohibits "fraudulent

14   business act[s] or practice[s.]" Cal. Bus. & Prof. Code §17200.

15           Claims under all three statutes are governed by the objective "reasonable consumer" test,

16   pursuant to which Plaintiff must show that "'members of the public are likely to be deceived.'"

17   *Williams*, 552 F.3d at 938. The Amended Complaint states consumer protection claims under two

18   independently sufficient theories. First, Valero violated the CLRA and the UCL by failing to

19   disclose the material fact that it imposes a Surcharge on debit cards. Second, Valero violated the

20   CLRA, FAL, and UCL by advertising Split-Pricing in a manner that is likely to deceive a reasonable

21   consumer.

22                   **1.    Valero Violated the CLRA and UCL Because a Reasonable
                           Consumer Would Be Deceived by Valero's Failure to Disclose
23                           the Material Fact that It Imposes a Surcharge on Debit Cards**

24           Omissions of material fact, which a defendant has a duty to disclose, are actionable under the

25   CLRA and UCL. *See Dorfman v. Nutramax Labs., Inc.*, No. 13cv0873 WQH (RBB), 2013 WL

26   5353043, at *9 (S.D. Cal. Sept. 23, 2013) (the "provisions of the CLRA proscribe both fraudulent

27   omissions and fraudulent affirmative misrepresentations"); *In re Carrier IQ, Inc. Consumer Privacy*

28

Opposition to Defendant Valero Marketing and Supply Company's Motion to Dismiss
Plaintiff's First Amended Complaint - 3:15-cv-05557-RS                                    - 7 -

1  *Litig.*, 78 F. Supp. 3d 1051, 1112 (N.D. Cal. 2015) ("Omissions can form the basis of a fraudulent

2  prong UCL claim.").

3      Valero has a duty to disclose material facts of which it has exclusive knowledge.  *Kelly v. BP*

4  *W. Coast Prods. LLC*, No. 2:14-cv-01507-KJM-CKD, 2014 WL 7409220, at *6-*7 (E.D. Cal. Dec.

5  30, 2014) ("A duty to disclose arises . . . when the defendant had exclusive knowledge of material

6  facts not known to the plaintiff.").[3]  "A fact is material when a 'reasonable consumer' would have

7  behaved differently knowing it."  *Id.* at *7.  The existence of a debit card fee is a material fact.  *Id.*

8  ("The court declines to hold that as a matter of law, the existence of a debit card fee cannot have

9  influenced the behavior of a reasonable consumer."); *see also* ¶¶4, 17.  Putting Valero's misleading

10  Split-Pricing signs aside, a reasonable consumer would have no way of knowing that Valero imposes

11  a Surcharge on debit card purchases.  That material fact is known exclusively by Valero, who thus

12  had a duty to disclose it, but did not, in violation of the CLRA and UCL.

13        **2.**     **Valero Violated the CLRA, FAL, and UCL by Advertising**
                        **Split-Pricing in a Manner that is Likely to Deceive a**

14                          **Reasonable Consumer**

15      Valero's misleading Split-Pricing signs constitute an independent violation of the CLRA,

16  FAL, and UCL because they are likely to mislead a reasonable consumer.  Valero argues that "it is

17  critical that Plaintiff is not alleging that the street-corner sign falsely states the cash price."  Def. Br.

18  at 11:19-20.  That fact, however, is ***not*** critical because it is well established that even advertising

19  that is ***true*** fails the reasonable consumer test if a business practice presents a "'"capacity, likelihood

20  or tendency to deceive or confuse the public."'"  *Williams*, 552 F.3d at 938; *see also Rosado v. eBay,*

21  *Inc.*, 53 F. Supp. 3d 1256, 1267 (N.D. Cal. 2014) (denying motion to dismiss even though "Plaintiff

22  does not argue that eBay's website contained any statements that were actually false").

23

24

25  ─────────────────────
[3]     Valero may point to the "apparent disagreement among California courts" regarding whether the

26  factors that *Kelly* identified as giving rise to a duty to disclose apply to a CLRA claim.  *See Kelly*,

27  2014 WL 7409220, at *7 n.2.  Numerous state and federal courts in California apply the standard
used in *Kelly*, however, and because Valero cites and relies heavily on *Kelly*, the standard articulated

28  in that decision should apply here.

1146950_1

Opposition to Defendant Valero Marketing and Supply Company's Motion to Dismiss
Plaintiff's First Amended Complaint - 3:15-cv-05557-RS           - 8

1

2

> **3.** **The Rule in the Ninth Circuit Is that Consumer Deception Is a Question of Fact that Cannot Be Decided on a Motion to Dismiss**

3

Plaintiff's CLRA, FAL, and UCL claims should be sustained because the well-established

4  rule in the Ninth Circuit is that consumer deception is a question of fact that cannot be decided on a

5  motion to dismiss. *See Williams*, 552 F.3d at 938 (holding that consumer deception is "a question of

6  fact not appropriate for [a] decision on demurrer"); *see also Mullins v. Premier Nutrition Corp*., No.

7  13-cv-01271-RS, 2016 WL 1534784, at *15 (N.D. Cal. Apr. 15, 2016) (Seeborg, J.) ("California law

8  generally reserves for the jury the question of whether a reasonable consumer is likely to be

9  deceived.") (citing *Asis Internet Servs. v. Subscriberbase Inc*., No. 09-3503 SC, 2010 WL 1267763,

10  at *2 (N.D. Cal. Apr. 1, 2010) (collecting cases)); *Colucci v. ZonePerfect Nutrition Co*., No. 12-

11  2907-SC, 2012 WL 6737800, at *7 (N.D. Cal. Dec. 28, 2012) (collecting cases and observing that

12  "[t]he questions of (1) whether it would be reasonable for a consumer to believe [an] 'All–Natural'

13  [food claim] and (2) whether [the food's] labels are 'likely to deceive,' are both factual inquiries

14  beyond the scope of the present inquiry into the 'legal sufficiency' of the Complaint").

15

Consumer deception may be decided as a matter of law only in **"rare"** circumstances that are

16  not present here. *See Williams*, 552 F.3d at 939 (holding that it is a "***rare situation*** in which granting

17  a motion to dismiss [a consumer deception claim] is appropriate"); *Ivie v. Kraft Foods Glob., Inc.*,

18  961 F. Supp. 2d 1033, 1046 n.2 (N.D. Cal. 2013) (same); *Morgan v. Wallaby Yogurt Co., Inc*., No.

19  13-cv-00296-WHO, 2014 WL 1017879, at *11 (N.D. Cal. Mar. 13, 2014) (same).  This case does

20  not present the rare situation where it would be proper to disregard the general rule that consumer

21  deception cannot be decided on a motion to dismiss.

22

Indeed, courts have deviated from the general rule only where, unlike here, it would be

23  absolutely ***impossible*** for a plaintiff to prove consumer deception.  The *Williams* panel provided one

24  such example in *Freeman v. Time, Inc*., 68 F.3d 285 (9th Cir. 1995).  There, the Ninth Circuit

25  "upheld  the dismissal of a challenge to a mailer that suggested the plaintiff had won a million dollar

26  sweepstakes." *Williams*, 552 F.3d at 938.  The panel "relied on the fact that the mailer ***explicitly***

27  stated ***multiple times*** that the plaintiff would only win the prize if he had the winning sweepstakes

28

Opposition to Defendant Valero Marketing and Supply Company's Motion to Dismiss
Plaintiff's First Amended Complaint - 3:15-cv-05557-RS                                                                  - 9 -

1   number." *Id.* "Thus, it was not necessary to evaluate additional evidence regarding whether the

2   advertising was deceptive, since the advertisement itself made it ***impossible*** for the plaintiff to prove

3   that a reasonable consumer was likely to be deceived." *Id.* Here, Valero does not suggest that it

4   "explicitly stated" that it imposes a Surcharge on debit cards or that it processes debit cards like

5   credit cards. Even if all of Valero's other arguments were accepted as true, it is not impossible to

6   prove that a reasonable consumer would be unaware that Valero imposes a Surcharge on debit cards.

7        *Carrea v. Dreyer's Grand Ice Cream, Inc.*, 475 F. App'x 113 (9th Cir. 2012), presented

8   another rare situation where it was appropriate to deviate from the general rule. There, the Ninth

9   Circuit upheld the dismissal of a claim that descriptors like "'Original Sundae Cone,'" "'Original

10  Vanilla,'" and "'Classic,'" were deceptive because they allegedly suggested that "an ice cream

11  dessert" was healthier than competing ice cream products. *Id.* at 115. The court found that it would

12  be ***impossible*** to prove that a reasonable consumer would believe that an ice cream cone product

13  with chocolate coating topped with nuts, is healthier than other ice creams because of the words

14  "Original Sundae Cone," "Original Vanilla," and "Classic." *Id.* This was especially true because the

15  term "'Original Vanilla,'" which refers to a natural ingredient, appeared ***adjacent*** to the phrase

16  "'Artificially Flavored.'" *Id.*

17       Here, again, it would not be unreasonable for a consumer to assume that a debit card would

18  be treated like cash rather than credit. In fact, Valero appears to concede that a debit card is not a

19  credit card, Def. Br. at 9:17-21, and that a debit card is more like cash from a consumer's

20  perspective, *Id.* at 10:27-11:2. And unlike the "Artificially Flavored" term that appeared adjacent to

21  the "Original Vanilla" term in *Carrea* that made any contrary belief unreasonable, Valero does not

22  disclose that it processes debit cards like credit cards and imposes a Surcharge on debit cards in any

23  way that a reasonable consumer would understand as a matter of law.

24       This case simply does not present the "rare" situation where consumer deception would be

25  impossible to prove. *Contrast with Gitson v. Trader Joe's Co.*, No. 13-cv-01333-WHO, 2013 WL

26  5513711, at *7 (N.D. Cal. Oct. 4, 2013) (holding that "[t]his is one of those rare cases where the

27  accused label itself makes it impossible for the plaintiff to prove that a reasonable consumer is likely

28  to be deceived," because "'LACTOSE & DAIRY FREE'" and "'alternative to dairy milk'"

1146950_1

Opposition to Defendant Valero Marketing and Supply Company's Motion to Dismiss
Plaintiff's First Amended Complaint - 3:15-cv-05557-RS                                    - 10 -

1  disclosures on the package dispelled any assumption that the product contained ***cow's*** milk);

2  *Sugawara v. Pepsico, Inc*., No. 2:08-cv-01335-MCE-JFM, 2009 WL 1439115, at *3 (E.D. Cal. May

3  21, 2009) (ruling that reasonable consumers would not assume that a box of "'sweetened corn & oat

4  cereal'" contained a fictional fruit called a "Crunchberry").

5      Because it cannot be held as a matter of law that it would be impossible for a reasonable

6  consumer to be deceived by Valero's practices, the Amended Complaint states a claim under

7  California's consumer protection statutes.  *See Morgan v. AT&T Wireless Servs., Inc*., 177 Cal. App.

8  4th 1235, 1257 (2009) ("'[U]nless we can say as a matter of law that contrary to the complaint's

9  allegations, members of the public were ***not*** likely to be deceived or misled by [AT & T's alleged

10  conduct], we must hold that [plaintiffs] stated a cause of action.'") (emphasis is original).

11      **4.    Valero's Inconspicuous Price Displayed *After* a Monetary Hold
             Has Been Placed on a Consumer's Checking Account Does Not
12           Cure Consumer Deception as a Matter of Law**

13      Valero attempts to invoke the "rare" exception to the rule that consumer deception cannot be

14  decided on a motion to dismiss by arguing that an inconspicuous and ambiguous price displayed

15  after a debit card sale has been authorized somehow cures any consumer deception as a matter of

16  law.  Def. Br. at 13:8-15:27.  Valero argues that Plaintiff should have known that the inconspicuous

17  price display on Valero's fuel dispenser indicated that she was not paying the "cash" price.  But

18  Valero ignores Plaintiff's specific allegations (which must be accepted as true) that the sale price is

19  displayed only ***after*** a debit card sale is authorized.  ¶¶26, 35, 45.  Valero also ignores Plaintiff's

20  specific allegation that the difference between the difference between the cash price and the credit

21  price was as little as $0.04 per gallon and, therefore, if she observed the price display, it was not

22  clear that she was being overcharged.  *Id.*  Moreover, because Valero's Split-Pricing signs are not

23  visible from the fuel dispenser, Plaintiff would have to walk away from the dispenser and onto the

24  sidewalk if she wished to confirm the amount of Valero's "cash" price.  ¶¶27, 45-46.

25      Contrary to Valero's assertion that its price display cures consumer deception as a matter of

26  law, the law is well settled that consumer deception, including whether a purported disclaimer cures

27  any alleged deception, is still a question of fact that cannot be decided on a motion to dismiss.  *See*

28

1146950_1

Opposition to Defendant Valero Marketing and Supply Company's Motion to Dismiss
Plaintiff's First Amended Complaint - 3:15-cv-05557-RS                                          - 11

1    *Mullins*, 2016 WL 1534784, at \*15 (observing that "binding authority . . . strongly suggests that

2    courts cannot hold as a matter of law that disclaimers vitiate claims for misleading representations");

3    *see also Madenlian v. Flax USA Inc.*, No. 13-01748 JVS (JRRx), 2014 WL 7723578, at \*3 n.3 (C.D.

4    Cal. Mar. 31, 2014) (holding that "the extent to which this additional language clarifies the

5    ambiguity of the . . . representation is a fact question not suitable for resolution at this stage in the

6    litigation"); *Pirozzi v. Apple Inc.*, 913 F. Supp. 2d 840, 848 n.2 (N.D. Cal. 2012) (holding that " the

7    fact that Apple may have made certain disclosures does not contradict the representations alleged in

8    the CAC," but "create[s] an issue of fact"); *Ang v. Bimbo Bakeries USA, Inc.*, No. 13-cv-01196-

9    WHO, 2013 WL 5407039, at \*8 (N.D. Cal. Sept. 25, 2013) (holding that the effect of a disclaimer on

10   consumer deception is a question of fact even where "the corrective and qualifying language was

11   present in **larger font** in **close proximity**" to the deceptive claim); *Anderson v. The Hain Celestial*

12   *Grp., Inc.,* 87 F. Supp. 3d 1226, 1237 (N.D. Cal. 2015) (holding that "on a motion to dismiss, the

13   court cannot find as a matter of law that an accurate ingredient list excuses other allegedly

14   misleading statements on a product's label").

15        Valero's reliance on the definition of "Reasonable Reliance" in California's pattern jury

16   instructions only supports Plaintiff's point. Def. Br. at 14:5-11. Should this case conclude through

17   trial, a jury will indeed have to consider whether Plaintiff's reliance was reasonable based on its

18   assessments of the "facts" within Plaintiff's observation. But that does not mean that such a

19   determination should be made on a motion to dismiss. Likewise, none of the court decisions that

20   Valero cites support its argument that this Court should disregard the general rule that consumer

21   deception is a question of fact. *Id.* at 14:12-27 (citing *Hartong v. Partake, Inc.*, 266 Cal. App. 2d

22   942 (1968); *OCM Principal Opportunities Fund, L.P. v. CIBC World Mkts. Corp.*, 157 Cal. App. 4th

23   835 (2007); *Pub. Emps.'Ret. Sys. v. Moody's Inv'rs Serv., Inc.*, 226 Cal. App. 4th 643, 651 (2014)).

24        Indeed, "reasonable reliance" was not decided as a matter of law in any of the decisions that

25   Valero cites. Both *Hartong* and *OCM Principal* were appeals from a jury verdict and a final

26   judgment, respectively, and neither involved a ruling on consumer deception as a matter of law

27   *Moody's* was an appeal from a trial court's denial of a special motion to strike pursuant to the "Anti-

28   SLAPP" statute, which required the plaintiff to establish a **probability of success on the merits** of its

Opposition to Defendant Valero Marketing and Supply Company's Motion to Dismiss
Plaintiff's First Amended Complaint - 3:15-cv-05557-RS         - 12

1    negligent misrepresentation claim – a much higher burden than the "plausibility" standard that

2    applies to Plaintiff's claims here.  Nevertheless, the *Moody's* court did not rule that the plaintiff's

3    reliance in that case was unreasonable.  Rather, the *Moody's* court correctly observed that "[e]xcept

4    in the ***rare*** case where the undisputed facts leave no room for a reasonable difference of opinion, the

5    question of whether a plaintiff's reliance is reasonable is a question of fact."  *Moody's*, 226 Cal.

6    App. 4th at 672.

7          Nevertheless, Valero argues that the reasonableness of Plaintiff's reliance should be decided

8    as a matter of law because Plaintiff's reliance was patently unreasonable because "'facts within [her]

9    observation'" confirmed the price to be charged and therefore Plaintiff would have to have

10   "'clos[ed] her eyes'" to Valero's price display. Def. Br. at 14:12-28.  But it is not impossible, as

11   Valero suggests, that a reasonable consumer, with eyes wide open, would not be aware that an

12   inconspicuous price displayed on Valero's fuel dispenser, after their debit card has been authorized,

13   was $0.04 cents higher than what she expected.  Indeed, "[o]ne does not have to suspend reality to

14   understand what Plaintiff apparently concluded."  *Anderson*, 87 F. Supp. 3d at 1237 ("It cannot be

15   confidently said, looking only at the label, that use of the word 'natural' in other less prominent

16   locations renders 'it ***impossible*** for the plaintiff to prove that a reasonable consumer was likely to be

17   deceived.'").

18         To be sure, courts have refused to decide consumer deception as a matter of law even in

19   cases where a purported disclaimer was far more conspicuous than Valero's fuel price display.  For

20   example, in *Morgan*, consumers allegedly believed that a yogurt product they purchased contained

21   no added sugar because "sugar" was not included in the product's ingredient list.  2014 WL

22   1017879, at *1.  It was undisputed that the plaintiffs were aware that the product contained

23   "evaporated cane juice," and that they were aware that "dried cane syrup" was a form of sugar, but

24   the plaintiffs failed to recognize "evaporated cane juice," which ***was*** included in the ingredients list,

25   as a form of "added sugar."  *Id.* at *1-*2.  Nevertheless, Judge Orrick held that "plaintiffs must only

26   plausibly allege that a reasonable consumer would not know that 'evaporated cane juice' was

27   actually sugar and would be misled into believing that a food product, which had an ingredient list

28   that did not otherwise list 'sugar,' did not have added sugar."  *Id.* at *10.  Judge Orrick reasoned,

Opposition to Defendant Valero Marketing and Supply Company's Motion to Dismiss
Plaintiff's First Amended Complaint - 3:15-cv-05557-RS                                           - 13

1   "[t]hat a reasonable consumer does not know that 'evaporated cane juice' is 'sugar' is not so

2   implausible that the plaintiffs fail to state a claim as a matter of law.  This is true even if the

3   plaintiffs concede that they knew that 'dried cane syrup' was sugar."  *Id.*

4       Here, it is likewise not so implausible that a reasonable consumer would not know that the

5   display price on Valero's fuel dispenser was $0.04 cents higher than the cash price.  This holds true

6   even though Plaintiff is sensitive to the price of gas.  Indeed, the plaintiffs in *Morgan* alleged that

7   they were "health-conscious consumers who want to avoid 'added sugar,'" yet the court refused to

8   hold as a matter of law that health-conscious consumers should understand that evaporated cane

9   juice is sugar.  *Id.* at *9; *see also Anderson*, 87 F. Supp. 3d at 1237 (rejecting "attractive" argument

10  on motion to dismiss that, "as a matter of common sense, consumers like Plaintiff who are seriously

11  concerned about the presence of unnatural ingredients in food products are unlikely to rely solely on

12  one cursory representation touting a product's attributes without reviewing the list of ingredients").

13      Even if it were proper to disregard the general rule in order to decide consumer deception on

14  a motion to dismiss, however, this Court and others have held, "a jury should typically review the

15  **package as a whole** to evaluate the impact of the disclaimer."  *Mullins*, 2016 WL 1534784, at *15;

16  *see also Morgan*, 2014 WL 1017879, at *12 ("'In determining whether a statement is misleading

17  under the statute, the primary evidence in a false advertising case is the advertising itself.'").

18  Valero's deceptive package "as a whole" is not in the record and, therefore, a determination of

19  consumer deception cannot be made as a matter of law on this record.  But even if Valero's

20  deceptive package "as a whole" were in the record, Valero's argument that its price display cures

21  consumer deception would lose on its merits because Valero does not display the price until ***after*** a

22  debit card transaction has been authorized and the cardholder is fully committed to the transaction.

23      Indeed, once a consumer swipes a debit card at one of Valero's POS devices, the transaction

24  must be authorized before the cardholder may dispense fuel.  ¶45.  As part of the authorization

25  process, gas stations typically place a monetary "hold" on the funds in the cardholder's checking

26  account of up to $150 in order to ensure payment of the gasoline that is being dispensed. ¶41. These

27  monetary holds can take up to several days after the transaction is complete to clear.  *Id.*  "[T]he

28

1146950_1

Opposition to Defendant Valero Marketing and Supply Company's Motion to Dismiss
Plaintiff's First Amended Complaint - 3:15-cv-05557-RS                                    - 14 -

1   amount that's blocked can significantly exceed the amount of [the cardholder's] purchase[]," and

2   *can prevent [the cardholder] from accessing the funds* in [their] bank account . . . ." *Id.*

3       Valero's fuel dispensers do not display any price until the dispenser is ready to pump,

4   meaning that the customer's debit card has been authorized and a monetary hold has been placed on

5   their checking account. Therefore, even if an *extra-savvy* consumer were to realize that Valero has

6   imposed a surcharge on their debit card, they could not simply "'pay[] cash or buy[] gas elsewhere,'"

7   as Valero suggests. Def. Br. at 15:8-9. Of course, reasonable consumers are not expected to be

8   extra-savvy. *See People v. Cole*, 113 Cal. App. 4th 955, 980, 7 Cal. Rptr. 3d 333, 353 (2003),

9   *review granted and opinion superseded on other grounds*, 10 Cal. Rptr. 3d 535 (Cal. 2004), and

10  *aff'd*, 38 Cal. 4th 964 (2006) ("'[A] "reasonable consumer" need not be "exceptionally acute and

11  sophisticated."'"); *see also Lavie v. Procter & Gamble Co.*, 105 Cal. App. 4th 496, 510, 129 Cal.

12  Rptr. 2d 486, 496 (2003) (a "reasonable consumer [need not] necessarily be wary or suspicious of

13  advertising claims."). Even in the case of an extra-savvy consumer, however, if that consumer only

14  has $150 in their checking account to begin with, they would have no available funds to purchase

15  gasoline from another retailer until days later when the monetary hold clears.

16      The *Kelly* case that Valero cites, 2014 WL 7409220, at *1, demonstrates the inadequacy of

17  Valero's purported price "disclosure[]." There, an operator of an ARCO gas station charged a $0.35

18  fee on all debit card transactions. *Id.* The defendant's POS device *clearly* disclosed the surcharge

19  immediately after the plaintiff inserted his debit card, and the POS device required the plaintiff's

20  *affirmative approval* of the surcharge before continuing and authorizing the debit card sale. *Id.*

21  Here, by contrast, Valero does not *clearly* disclose that it will impose an fee on a debit card

22  transaction. Instead, Valero suggests that, as a matter of law, reasonable consumers should

23  understand that an inconspicuous price displayed just before fueling indicates that they are being

24  overcharged by $0.04. Moreover, unlike the defendant in *Kelly*, Valero does not ever obtain

25  affirmative consent of its Surcharge from consumers. Rather, Valero inconspicuously displays an

26  ambiguous price *after* the consumer's debit card has been authorized and a monetary hold placed on

27  their checking account. Whether a reasonable consumer would be deceived is a question of fact.

28

1146950_1

Opposition to Defendant Valero Marketing and Supply Company's Motion to Dismiss
Plaintiff's First Amended Complaint - 3:15-cv-05557-RS                              - 15 -

1

2

### 5.     The Law Does Not Impose a Duty to Investigate Upon Victims of Deceptive Business Practices

3

Valero argues that it was "incumbent" on Plaintiff to investigate in order to confirm or dispel

4

her reasonable belief that her debit card would be treated like cash rather than credit. Def. Br. at

5

1:25-2:2. But the law imposes no such duty to investigate upon victims of deceptive and misleading

6

business practices. In fact, the law is the exact opposite. *See Cole*, 113 Cal. App. 4th at 981 ("*[I]t is*

7

*not incumbent* upon a reasonable consumer to investigate what is meant by 'independent doctors of

8

optometry' or the corporate or financial relationship between Pearle and Pearle VisionCare.").

9

Indeed, "'a reasonable consumer *may* be unwary or trusting' and is not required 'to investigate the

10

merits of advertising claims.'" *Id.* at 980.

11

In *Williams*, and countless decisions following it, it was held that reasonable consumers

12

cannot be expected to read the list of ingredients printed on a box in their own hand in order to

13

confirm the ingredients of a food product. 552 F.3d at 939 ("We disagree with the district court that

14

reasonable consumers should be expected to look beyond misleading representations on the front of

15

the box to discover the truth from the ingredient list in small print on the side of the box."). If a

16

reasonable consumer would not read the ingredients list on the side of a box in their hand, a

17

reasonable consumer would not walk away from a fuel dispenser in order to confirm the prices

18

advertised on a street sign or to inquire with a merchant regarding the fees it will impose on a debit

19

card sale. Indeed, reasonable consumers do not even know they are being deceived by Valero. *See*

20

*Lavie*, 105 Cal. App. 4th at 510 (holding that a "reasonable consumer [need not] necessarily be wary

21

or suspicious of advertising claims"). Therefore, at best, Valero has created an issue of fact

22

regarding whether a reasonable consumer would inquire as to the applicable price on a sale, which

23

cannot be decided on a motion to dismiss.

24

### 6.     Even if Debit Were Not Cash as a Matter of Law, Consumer Deception Is Still a Question of Fact that Cannot Be Decided on a Motion to Dismiss

25

26

Valero argues that it would be patently unreasonable for a consumer to assume that they

27

would not be charged a higher "credit" price because a debit card is not cash, as a matter of law.

28

1146950_1

Opposition to Defendant Valero Marketing and Supply Company's Motion to Dismiss
Plaintiff's First Amended Complaint - 3:15-cv-05557-RS                                    - 16 -

1  Def. Br. at 9:15-23, 11:10-14.  Even if Valero were right (which it is not) the general rule that

2  consumer deception is a question of fact would still apply.

3      As detailed above, even advertising that is true can be deceptive if it has the "capacity,

4  likelihood or tendency to deceive or confuse the public."  *Williams*, 552 F.3d at 938; *see also*

5  *Rosado*, 53 F. Supp. 3d at 1267 (denying motion to dismiss even though "Plaintiff does not argue

6  that eBay's website contained any statements that were actually false").  Indeed, even if debit were

7  not cash as a matter of law, it does not follow that a debit card is a credit card and that consumers

8  should then assume that Valero's "credit" price will apply to their debit card.  Even Valero appears

9  to concede that a debit card is not a credit card and is more like cash from the consumer's

10  perspective, which is the only perspective that matters in a "reasonable consumer" test.  *See* Def. Br.

11  at 9:20-21, 10:27-11:5.

12      Furthermore, even if a debit card were not cash as a matter of law, it would not be patently

13  unreasonable for consumers to believe that their debit card will be treated like cash.  *See Morgan*,

14  2014 WL 1017879, at *10 (holding that it is not so implausible "[t]hat a reasonable consumer does

15  not know that 'evaporated cane juice' is 'sugar'").  Therefore, even if one were to accept Valero's

16  argument, whether a reasonable consumer would be deceived by Valero's practices, despite the

17  purported fact that debit is not cash, would still be a question of fact because debit ***is also not credit***

18  – a fact Valero cannot possibly dispute.

19      ### 7.    Valero's Argument that Debit Is Not Cash as a Matter of Law
20      ### Is Both Legally and Factually Unsound

21      Valero argues that  "[a] cash sale is one where the buyer and seller exchange the goods and

22  payment at the same time; any other method of payment is on 'credit.'"  Def. Br. at 10:1-2.  But

23  there is no evidence that Plaintiff and Valero did not exchange goods and payment at the same time,

24  or that a debit card payment is "on credit."  Indeed, Plaintiff and Valero ***did*** exchange goods and

25  payment at the same time.  According to *Gutierrez v. Wells Fargo Bank, N.A.*, when a debit card

26  payment is processed, an authorization request is immediately sent to the issuing bank, which is

27  approved or declined "in a matter of seconds."  730 F. Supp. 2d 1080, 1100 (N.D. Cal. 2010).  The

28

1146950_1

Opposition to Defendant Valero Marketing and Supply Company's Motion to Dismiss
Plaintiff's First Amended Complaint - 3:15-cv-05557-RS                                - 17 -

1    approval of an authorization request constitutes a promise to pay the merchant the authorized amount

2    – "*i.e.* the debit-card purchase [becomes] a '***must pay***' item." *Id.*

3        As explained in *NACS v. Bd. of Governors of Fed. Reserve Sys.*, a case that Valero cites,

4    "PIN transactions are authorized and cleared simultaneously." 746 F.3d 474, 478 (D.C. Cir. 2014).

5    "Signature transactions are first authorized and subsequently cleared: because the cardholder

6    generally signs only after the issuer has approved the transaction, the merchant must send a separate

7    clearance message." *Id.* This distinction makes no practical difference but serves as a convenient

8    feature for certain businesses that might need to charge additional fees to a cardholder ***after*** a sale is

9    complete.[4] For instance, rental car companies "allow for the possibility that the customer might

10   damage the vehicle or return it without a full tank of gas." *Id.* Hotels "allow for the possibility that

11   the guest might trash the room, order room service, or abscond with the towels." *Id.* "[S]it-down

12   restaurants authorize transactions for the full amount of the meal but postpone clearance to give

13   diners an opportunity to add a tip." *Id.* In other words, a debit card sale is complete upon

14   authorization when the debit card purchase has become a "must pay" item.

15       Nevertheless, Valero argues that under *Wash. Mut. Bank v. Superior Court*, 95 Cal. App. 4th

16   606, 624 (2002), "cash" is only considered cash when there is an "immediate transfer of ready funds

17   from consumer to merchant." Def. Br. at 10:10-26. Valero's argument is based on a complete

18   mischaracterization of the court's holding in *Washington Mutual*. Contrary to Valero's assertion,

19   *Washington Mutual* does not hold as a matter of law that a payment form is not "cash" unless there is

20   an "immediate transfer of ready funds from consumer to merchant." *Id.* at 10:17-19. Indeed, the

21   *Washington Mutual* court did not define "cash" in the general sense, but rather, merely interpreted

22   the legislature's intent to determine whether an electronic funds transfer ("EFT") was excluded from

---

23   [4]    Valero's baseless assertion that Plaintiff "opt[ed]" for a "signature-debit" transaction thereby
24   identifying her debit card as a credit card should be rejected. Def. Br. at 11:6-9. There is no
     evidence that Plaintiff was ever provided with an opportunity to select a "PIN" or "Signature"
25   transaction. Indeed, the *NACS* decision Valero cites states that "[i]n signature authentication, the
     cardholder usually *signs a copy of the receipt*." 746 F.3d at 478. There is no evidence or suggestion
26   from Valero that Plaintiff signed a copy of her receipt. More importantly, however, even if Plaintiff
     was provided with the option, which is found nowhere in the Amended Complaint, that would not
27   cure consumer deception because reasonable consumers have no knowledge about the differences
28   between PIN and Signature transactions – they are both forms of "debit."

1146950_1

Opposition to Defendant Valero Marketing and Supply Company's Motion to Dismiss
Plaintiff's First Amended Complaint - 3:15-cv-05557-RS                                    - 18 -

1    a statute that provided exclusions for "cash." 95 Cal. App. 4th at 626 ("We conclude that the word

2    'cash,' *as that word is used in Section 2948.5* includes a[n]" EFT . . . . ).  Moreover, the *Washington*

3    *Mutual* court held that ETFs were "the equivalent of cash" despite the fact that EFTs can take *over a*

4    *day* to be completed, however, "[m]ost transfers are completed *within one day*."  *Id.* at 624.

5    Therefore, even accepting Valero's naked assertion that it could take a day or more for Valero-

6    branded dealers to receive their funds, a debit card would still qualify as "cash" under Valero's

7    concocted definition.

8          Moreover, there is no evidence in the record that a debit card payment at a Valero-branded

9    station does *not* result in "immediate transfer of ready funds from consumer to merchant."  Def. Br.

10   at 10:17-19.  None of the authorities that Valero cites speak to the immediacy of payments through

11   *Valero's* payment processing system.  The *NACS* decision speaks generally of debit card

12   transactions, but not debit card transactions at Valero-branded dealers, where Valero owns or

13   controls the payment processing system.  Moreover, *NACS* was a review of a summary judgment

14   order where a substantial factual record was developed.  This case is only at the motion to dismiss

15   case.  Valero cannot introduce evidence in support of its defenses, and if it could, it would not be

16   appropriate for Valero to "borrow" findings of fact from another case to which neither Valero nor

17   Plaintiff were parties.

18         Likewise, Valero asserts that in some debit card transactions, a "merchant must wait to

19   receive money it can use, in *some* instances, up to two business days after the original purchase."

20   Def. Br. at 11:2-4 (citing Dkt. No. 46, Friedenberg Declaration, Ex. 2 at 14 ("Exhibit 2")).  This

21   statement does not explain how many days it takes to receive money through *Valero's* payment

22   processing system.  Moreover, this improper factual assertion should not be considered at all because

23   it is based on evidence that is completely outside the four corners of the Amended Complaint and

24   cannot be judicially noticed under Fed. R. Evid. 201.

25         Exhibit 2 is purported to be an "official report" of the Federal Reserve Bank of Philadelphia.

26   Valero contends that it is a "government publication" subject to judicial notice.  Def. Br. at 5:22-25

27   n.7.  Valero is wrong, and its request for judicial notice should be denied.  While "[c]ertain

28   government records may be the proper subject of judicial notice," *Ries v. Ariz. Beverages USA LLC*,

1146950_1

Opposition to Defendant Valero Marketing and Supply Company's Motion to Dismiss
Plaintiff's First Amended Complaint - 3:15-cv-05557-RS                              - 19 -

287 F.R.D. 523, 542 (N.D. Cal. 2012) (Seeborg, J.), Exhibit 2 is not a government record.  Rather, Exhibit 2 describes itself as a "summary" of information from a "meeting with representatives of MasterCard Worldwide," where the attendees discussed "card clearing and settlement operations." Exhibit 2 at 2.  Moreover, the front page of the document disclaims that "[t]he views expressed here are those of the author and ***do not necessarily reflect the views of the Federal Reserve Bank of Philadelphia or the Federal Reserve System***."  *Id.*; cover page.  Exhibit 2 is not a "government record" and is not amenable to judicial notice.

Furthermore, judicial notice is only proper "when the facts being noticed are not subject to reasonable dispute and can be accurately and readily determined."  *Ries*, 287 F.R.D. at 542.  The facts that Valero asks the Court to judicially notice pertain to the operation of Valero's payment processing system, an issue that occupies several pages in each party's brief, and is, thus, clearly subject to reasonable dispute.  The factual assertions in Exhibit 2 cannot "be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201(b)(2).

Valero also attempts to introduce Exhibit 2 for an improper purpose, that is, to prove the truth of its contents.  *City of San José*, 2013 U.S. Dist. LEXIS 147543, at *16 (documents are judicially noticeable only "for the purpose of determining what statements are contained therein, not to prove the truth of the contents or any party's assertion of what the contents mean").

The Court should deny Valero's request for judicial notice of Exhibit 2 and should not consider Exhibit 2 or any arguments based on its review in its consideration of Valero's Motion.

> **8. Valero Personally Participated in the Deceptive Scheme Because It Owns and Controls the Deceptive Street Signs, the Fuel Dispensers, the POS Devices, and the Payment Processing Service in Use at Virtually All Valero-Branded Dealers**

Valero argues that it cannot be held liable for the consumer deception that Plaintiff alleges because it purportedly does not own the Daly City Station and, therefore, did not participate in the deception.  Def. Br. at 8:15-9:11.  As an initial matter, Valero's unsupported suggestion that the "direct participation and unbridled control" requirement should apply to Plaintiff's CLRA claims, *id.* at 9:26-28 n.9, has been expressly rejected.  *See Herron v. Best Buy Stores, LP*, No. 12-cv-02103-

1146950_1

Opposition to Defendant Valero Marketing and Supply Company's Motion to Dismiss
Plaintiff's First Amended Complaint - 3:15-cv-05557-RS                                          - 20 -

1  GEB-JFM, 2013 WL 4432019, at *4 (E.D. Cal. Aug. 16, 2013) ("Toshiba has not shown that the

2  personal participation and unbridled control standard applies to Plaintiff's CLRA claim.

3  Accordingly, this portion of Toshiba's dismissal motion is denied.").  Therefore, even if the Court

4  were to dismiss Plaintiff's other claims based on Valero's purported lack of participation, Plaintiff's

5  CLRA claim should survive.

6      Nevertheless, Plaintiff **has** alleged Valero's personal participation and unbridled control over

7  the deceptive scheme.  Indeed, Valero does not, and cannot, dispute Plaintiff's allegations that

8  Valero owns and exercises unbridled control over: (1) the deceptive Valero-branded Split-Pricing

9  signs at issue, which it provides to Valero-branded dealers, ¶¶13(b), 19; (2) the fuel dispensers at

10 Valero-branded dealers, ¶¶13(c), 21; (3) the POS devices attached to fuel pumps at Valero-branded

11 dealers, ¶¶13(d), 21; and (4) the payment processing system that processes debit cards like credit

12 cards at virtually all Valero-branded dealers, ¶¶13(e), 22.  To be sure, the few documents that Valero

13 has produced in discovery thus far fully support each of these allegations.  Therefore, Plaintiff

14 adequately alleges that Valero directly participated in and exercised unbridled control over the

15 consumer deception here by, among other things: (1) failing to disclose the "debit" price on its street

16 signs; and/or (2) failing to disclose on its fuel dispenser or POS devices that Valero imposes a

17 Surcharge on debit cards.  *See Morici v. Hashfast Techs. LLC*, No. 5:14-cv-00087-EJD, 2015 WL

18 4880670, at *7 (N.D. Cal. Aug. 14, 2015) ("While [Valero] may certainly dispute the extent of [its]

19 knowledge and participation if discovery proves something other than what Plaintiff presents in the

20 [Amended Complaint], the court must nonetheless credit Plaintiff's allegations at this stage.").

21     Even if Valero did not own and control its Split-Pricing signs, however, Valero is **still** liable

22 for failing to disclose that it imposes a Surcharge on debit cards.  As discussed above, even without

23 its misleading Split-Pricing signs, Valero had a duty to disclose the fact that it imposes a Surcharge

24 on debit cards.  Indeed, the existence of debit card fees is a material fact, which was known

25 exclusively to Valero. *See Kelly*, 2014 WL 7409220, at *7.  Therefore, Plaintiff has sufficiently

26 alleged Valero's personal participation and unbridled control over the consumer deception at issue.

27

28

1146950_1

Opposition to Defendant Valero Marketing and Supply Company's Motion to Dismiss
Plaintiff's First Amended Complaint - 3:15-cv-05557-RS                                    - 21 -

**B.    The Amended Complaint States a Claim Under the Unfair Prong of the UCL**

A practice is unfair if "(1) the consumer injury [is] substantial; (2) the injury [is] not . . . outweighed by any countervailing benefits to consumers or competition; and (3) [the] injury [is] one that consumers themselves could not reasonably have avoided." *In re Apple In-App Purchase Litig.*, 855 F. Supp. 2d 1030, 1040 (N.D. Cal. 2012).  Here, Plaintiff's injury is substantial and is not outweighed because Plaintiff is sensitive to the price of gasoline. *See Morgan*, 2014 WL 1017879, at *11 ("Because the plaintiffs and others similarly situated care about the presence of added sugar for any number of reasons, including health reasons, I conclude that the plaintiffs have adequately pleaded that the gravity of the alleged harm outweighs any utility of Wallaby's conduct.").

Furthermore, contrary to Valero's assertion, Def. Br. at 17:1-9, Plaintiff could not have reasonably avoided the injury by paying with cash or making no purchase at all, because, as discussed above, even if a reasonable consumer understood the inconspicuous and ambiguous price displayed on Valero's fuel dispenser to be $0.04 cents higher than the cash price, Valero displays that price only ***after*** it has authorized the customer's debit card and a monetary hold has been placed on the cardholder's checking account.  Therefore, the Amended Complaint states a claim for violation of the unfair prong.

**C.    The Amended Complaint States a Claim Under the Unlawful Prong of the UCL**

The Amended Complaint also states a claim for violation of the UCL's "unlawful" prong. "Under the UCL's 'unlawful' prong, violations of other laws are 'borrowed' and made independently actionable under the UCL." *Herron v. Best Buy Co.*, 924 F. Supp. 2d 1161, 1177 (E.D. Cal. 2013).  Here, Valero's UCL liability  is predicated on its violation of the CLRA and the FAL, as detailed above, and the California Financial Code §13081.

Section 13081 provides that: "No operator of a point-of-sale device in this state shall impose any fee upon a customer for the use of that device unless that fee is disclosed to the customer ***prior*** to the customer being obligated to pay for any goods or services."  To be sure, the California Attorney General has issued an opinion advising California consumers that:

Opposition to Defendant Valero Marketing and Supply Company's Motion to Dismiss
Plaintiff's First Amended Complaint - 3:15-cv-05557-RS                    - 22

> [I]f a merchant charges a credit or debit card surcharge or offers a cash discount, but does not ***fully disclose*** this to customers prior to their committing themselves to the goods or services, or if the merchant does not clearly explain its policies regarding debit and credit cards, the merchant may be violating California law.[5]

Under the statute, "the term "operator of a point-of-sale device" means the person who imposes the fee on a customer for using a point-of-sale device to pay for a good or service." *Kelly*, 2014 WL 7409220, at *3. Valero does not, and cannot, dispute Plaintiff's allegations that Valero owns or controls the POS devices and the payment processing system in use at virtually all Valero-branded dealers. ¶¶13(d), 21. Therefore, for purposes of a motion to dismiss, it should be inferred that Valero is, in fact, the entity imposing a fee on debit card purchasers. Valero's argument that it is exempt from the statute because it purportedly does not operate the Daly City ***Station*** should, therefore, be rejected. Def. Br. at 17:19-23. Likewise, Valero's argument that its POS devices are exempt from the statute, *id.*, should be rejected. *See Kelly*, 2014 WL 7409220, at *3 (holding that the debit card machines on the gasoline dispensers were "point-of-sale devices" as defined by Section 13081). Because Valero makes ***no*** disclosure that it imposes a Surcharge on debit cards, Valero is in violation of §13081.

Furthermore, as discussed above, whether the inconspicuous and ambiguous price displayed on Valero's fuel dispenser clearly discloses Valero's Surcharge is a question of fact. Based on *Kelly*, however, Valero's purported disclosure would likely be found insufficient by a trier of fact. There, the court found that BP complied with the statute by ***affirmatively*** disclosing that it charged a $0.35 fee on debit card transactions "and . . . requir[ing] each customer's consent before charging that fee." 2014 WL 7409220 at *8. By contrast, Valero does not ***clearly*** disclose that it imposes a Surcharge on debit cards. Valero also does not obtain each consumer's consent before imposing its surcharge.

Valero argues that its failure to disclose its surcharge on debit card payments is permissible because, pursuant to *Thrifty Oil Co. v. Superior Court*, 91 Cal. App. 4th 1070, 1078-79 n.8 (2001), Valero is permitted to offer a "cash discount." This argument fails for several reasons. First, even if Valero were permitted to offer a "cash discount," it must still comply with its legal duty under

---

[5]    http://oag.ca.gov/consumers/general/credit_cards (last visited Apr. 8, 2016).

1146950_1

Opposition to Defendant Valero Marketing and Supply Company's Motion to Dismiss
Plaintiff's First Amended Complaint - 3:15-cv-05557-RS                                    - 23 -

1   §13081 to disclose that debit card purchasers will not receive the cash discount.  Indeed, in *Thrifty*,

2   the fact that the defendant charged more money on credit card purchases than cash purchases was

3   disclosed and was "'***clear as day***,'" and therefore, the *Thrifty* court held that it "could [not] be

4   deceptive in the context of a statute intended to prevent a retailer from adding an ***undisclosed***

5   surcharge to a credit card purchase."   *Thrifty*, 91 Cal. App. 4th 1078-79 (second emphasis in

6   original).  Here, Valero's surcharge is undisclosed.

7         Second, the *Thrifty* court specifically found that the price that the defendant charged on credit

8   card transactions was "based on the [actual] different costs to Thrifty of cash purchases (no cost) and

9   credit card purchases (bank fees)."  *Id.* at 1076.  Here, there is no evidence that the difference

10   between the "cash" price and the price that Valero charges on debit cards represents the actual

11   transaction costs to Valero.  Indeed, Valero owns or controls the payment processing system used at

12   Valero-branded dealers, so it likely pays much lower transaction fees than other merchants, but even

13   if it did not own the payment processing system, transaction fees are much lower with debit cards

14   than credit cards.  *See* ¶¶13(2), 22, 30; *see also NACS*, 746 F.3d at 479 ("In contrast to credit card

15   fees, which generally represent a set percentage of the value of a transaction, debit card fees change

16   little as price increases.").  Therefore, because Valero charges debit cards at the same price as credit

17   cards, the Surcharge that Valero imposes on debit card purchases is far more than the actual costs to

18   Valero, which suggests that Valero's financial windfall is an unlawful surcharge.

19         Third, *Thrifty* was a summary judgment decision where the court weighed evidence and

20   made findings of fact regarding that nature of the fees imposed on credit cards.  This case is only at

21   the motion to dismiss stage, and Plaintiff has not yet had the opportunity to submit evidence in

22   support of her allegations.

23         Fourth, even if the *Thrifty* decision were considered, its holding that the defendant's split-

24   pricing system constituted a lawful cash discount under Cal. Civ. Code §1748.1 has no legal force

25   here because that statute has since been declared unconstitutional and unenforceable.  *See Italian*

26   *Colors Rest. v. Harris*, 99 F. Supp. 3d 1199, 1212 (E.D. Cal. 2015) ("The Court declares the

27   California Civil Code section 1748.1 unconstitutional and permanently enjoins its enforcement.").

28

1146950_1

Opposition to Defendant Valero Marketing and Supply Company's Motion to Dismiss
Plaintiff's First Amended Complaint - 3:15-cv-05557-RS                                                   - 24 -

1    **VI.    CONCLUSION**

2         For the reasons stated herein, Plaintiff respectfully requests that the Court issue an Order: (1)

3    denying Valero's request for judicial notice of Exhibit 2; (2) denying Valero's Motion in its entirety;

4    and (3) granting any and all further relief this Court deems just and proper.[6]  Should the Court

5    dismiss all or part of any of Plaintiff's claims, Plaintiff respectfully requests that such dismissal be

6    without prejudice because the discovery to date, which has just begun, supports Plaintiff's theory

7    regarding Valero's personal participation and unbridled control over the deceptive practices alleged,

8    and, therefore, amendment would not be futile.[7]

9    DATED:  May 13, 2016                                  ROBBINS GELLER RUDMAN
                                                               & DOWD LLP
10                                                         STUART A. DAVIDSON (*pro hac vice*)
                                                           MARK J. DEARMAN
11                                                         CHRISTOPHER C. MARTINS (*pro hac vice*)
                                                           JASON H. ALPERSTEIN (*pro hac vice*)
12

13

14                                                            *s/ Christopher C. Martins*
                                                           CHRISTOPHER C. MARTINS
15
                                                           120 East Palmetto Park Road, Suite 500
16                                                         Boca Raton, FL  33432
                                                           Telephone:  561/750-3000
17                                                         561/750-3364 (fax)

18

19

20

21

22

---

23    [6]    Plaintiff concedes Valero's argument that calculation of damages would not be so difficult so as to require an accounting and, therefore, will not proceed on her accounting claim.

24    [7]    *See In re 3Com Sec. Litig.*, No. C-89-20480, 1992 WL 226890, at *3 (N.D. Cal. June 8, 1992)
25    ("Although futile amendments should not be permitted, there is nothing improper in plaintiffs' desire to amplify claims set out in an original complaint or to 'plead then with greater specificity in light of
26    material which they have obtained in the course of their pre-trial discovery.'"); *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003) (reversing district court's denial of 'leave
27    to amend a pleading for the fourth time and observing that "Rule 15 advises the court that 'leave shall be freely given when justice so requires.'  This policy is 'to be applied with extreme
28    liberality.'").

Opposition to Defendant Valero Marketing and Supply Company's Motion to Dismiss
Plaintiff's First Amended Complaint - 3:15-cv-05557-RS                                          - 25 -

1
2
3
4
5          HOBSON, BERNARDINO & DAVIS, LLP
           RAFAEL BERNARDINO, JR.
           JASON A. HOBSON
           725 South Figueroa Street, Suite 3230
           Los Angeles, CA  90017
           Telephone:  213/235-9190
           213/235-9197 (fax)

6          ROBBINS GELLER RUDMAN
             & DOWD LLP
7          PATRICK W. DANIELS
           655 West Broadway, Suite 1900
8          San Diego, CA  92101
           Telephone:  619/231-1058
9          619/231-7423 (fax)

10         ROBBINS GELLER RUDMAN
             & DOWD LLP
11         ROXANA PIERCE (*pro hac vice*)
           1701 K Street NW, Suite 350
12         Washington, DC  20036
           Telephone:  202/822-6762
13         202/828-8528 (fax)

14
15         **Attorneys for Plaintiff and the Proposed Class**

16
17
18         <u>**CERTIFICATE OF SERVICE**</u>

19         I, hereby certify that this document filed through the ECF system will be sent electronically

20   to the registered participants as identified on the Notice of Electronic Filing and papers copies will

21   be sent to those indicated as non-registered participants on May 13, 2016.

22
23                                    *s/ Christopher C. Martins*
24
25
26
27
28

1146950_1

Opposition to Defendant Valero Marketing and Supply Company's Motion to Dismiss
Plaintiff's First Amended Complaint - 3:15-cv-05557-RS                                    - 26 -