UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

FAITH BAUTISTA,

    Plaintiff,

    v.

VALERO MARKETING AND SUPPLY COMPANY,

    Defendant.

Case No. 15-cv-05557-RS

**ORDER GRANTING VALERO'S MOTION TO DISMISS**

## I.  INTRODUCTION

Like many gas stations, defendant Valero Marketing and Supply Co. uses "split pricing" to communicate the cost of its gas.  Split pricing is the practice of charging customers who pay with cash one price, and those who pay with credit cards a higher price.  The Valero-brand gas station in Daly City, California, where plaintiff Faith Bautista bought gas did not advertise which price applied to debit-card purchases.  Bautista contends these street signs are misleading because consumers do not know whether they will pay the credit or cash price when using a debit card.  To remedy this alleged wrong, Bautista advances four claims for relief on behalf of a class of people against Valero for violations of (1) the Consumers Legal Remedies Act (the "CLRA"), Cal. Civ. Code § 1770(a); (2) the False Advertising Law (the "FAL"), Cal. Bus. & Prof. Code § 17500, *et seq.*; (3) the Unfair Competition Law (the "UCL"), Cal. Bus. & Prof. Code § 17200, *et seq.*; and (4) for an accounting.  Valero moves to dismiss the first amended complaint ("FAC").

Bautista has stated cognizable legal actions under the CLRA, FAL, and UCL.  She has not,

however, included sufficient facts to establish that Valero personally participated in the use of the offending advertising practices or exercised unbridled control over business practices at the Daly City station. Because this deficiency could be cured, if relevant facts exist, by averring Valero's control over the unfair conduct at issue, leave to amend will be granted. Bautista has abandoned the accounting claim, and thus it will be dismissed with prejudice.

## II.   BACKGROUND[1]

Bautista is a cost-conscious consumer who checks gas prices regularly. One day, she needed to refuel, checked the prices advertised at various gas stations nearby, and chose a Valero-branded gas station in Daly City because the prices advertised were the lowest. The Daly City station advertised two prices for gas—one for customers who pay with a credit card and one for those who pay with cash. The sign did not provide any information about whether customers using debit cards would have to pay the cash price or the credit price. Bautista believed the cash price would apply if she used her debit card. She swiped her debit card at the point-of-sale device, entered her zip code, and began fueling. As the machine dispensed gas, the display did not specifically indicate whether the credit or cash price was being applied, only the price per gallon. Bautista requested a receipt and was dismayed to read that Valero charged the higher credit price and not the lower cash price on her debit card.

## III.   LEGAL STANDARD

A complaint must contain . . . "a short and plain statement of the claim showing that the pleader is entitled to relief" Fed. R. Civ. P. 8(a)(2). "[D]etailed factual allegations" are not required, but "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted).

Federal Rule of Civil Procedure 12(b)(6) provides a mechanism to test the legal sufficiency

---

[1] The factual background is based on the averments in the FAC, which must be taken as true for purposes of a motion to dismiss.

ORDER GRANTING MOTION TO DISMISS
CASE NO. 15-cv-05557-RS

2

of the averments in the complaint.  Dismissal is appropriate when the complaint "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).  When evaluating a complaint, the court must accept all its material factual averments as true and construe them in the light most favorable to the non-moving party. *Iqbal*, 556 U.S. at 678.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  This standard requires "more than a sheer possibility that the defendant has acted unlawfully." *Id.*  "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (internal quotation marks omitted).  When plaintiffs have failed to state a claim upon which relief can be granted, leave to amend should be granted unless "the complaint could not be saved by any amendment." *Gompper v. VISX, Inc.*, 298 F.3d 893, 898 (9th Cir. 2002) (internal quotation marks omitted).

## IV.   DISCUSSION

The CLRA proscribes "unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer." Cal. Civ. Code § 1770(a).  Conduct "likely to mislead a reasonable consumer" violates the CLRA. *Colgan v. Leatherman Tool Grp., Inc.*, 135 Cal. App. 4th 663, 680 (2006) (internal quotation marks omitted).  A plaintiff asserting a CLRA claim must provide facts establishing actual reliance and economic harm. *Hodsdon v. Mars, Inc.*, 15-CV-04450-RS, 2016 WL 627383, at *3 (N.D. Cal. Feb. 17, 2016).

The FAL prohibits "mak[ing] or disseminat[ing] . . . . any statement . . . which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading," in connection with the sale of goods.  Cal. Bus. & Prof. Code § 17500. The FAL also requires showing the plaintiff suffered an injury due to her own actual and reasonable reliance on the purported misleading statements. *Rosado v. eBay Inc.*, 53 F. Supp. 3d 1256, 1266 (N.D. Cal. 2014) (citing *In re Tobacco II Cases*, 46 Cal. 4th 298, 326 (2009)).

California's UCL outlaws all unlawful, unfair, or fraudulent business acts or practices.

Cal. Bus. & Prof. Code § 17200 *et seq*. "Each prong of the UCL is a separate and distinct theory of liability . . . ." *Lozano v. AT&T Wireless Servs., Inc.*, 504 F.3d 718, 731 (9th Cir. 2007). Under the unlawful prong, a plaintiff must allege that the defendant violated another law. Accordingly, a violation of the FAL or CLRA is a violation of the UCL. Under the unfair prong, a plaintiff must allege facts to establish "the practice is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers" or tether the UCL "to some specific constitutional, statutory, or regulatory provisions." *Hodsdon*, 2016 WL 627383, at *7 (internal quotation marks omitted).

Under the reasonable consumer standard of the CLRA, FAL, and UCL, a plaintiff must show a business practice is likely to deceive the reasonable consumer. *Williams v. Gerber Prods. Co.*, 552F.3d 934, 937 (9th Cir. 2008). In other words, "these laws prohibit not only advertising which is false, but also advertising which, although true, is either actually misleading or which has a capacity, likelihood or tendency to deceive or confuse the public." *Id.* (internal quotation marks and alteration omitted).

### A. The Applicability of Federal Rule of Civil Procedure 9(b)

To plead claims under the UCL, CLRA, and FAL, a plaintiff is not always required to aver fraudulent conduct, as fraud is not an essential element under these provisions. *Vess v. Ciba–Geigy Corp. USA*, 317 F.3d 1097, 1105 (9th Cir. 2003). Even so, plaintiffs "must state with particularity the circumstances constituting fraud and mistake," Fed. R. Civ. P. 9(b), if they aver the defendant engaged in "a unified course of fraudulent conduct," *Vess*, 317 F.3d at 1108. Accordingly, courts in this circuit have applied Rule 9(b)'s heightened pleading standard to claims arising under the UCL, FAL, and CLRA when the plaintiff's claims sound in fraud. *See, e.g.*, *id.* at 1008; *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009). In *Kearns*, for example, where the plaintiff pleaded claims for violations of the UCL and CLRA, *see id.* at 1125, Rule 9(b)'s heightened pleading requirement applied to these claims because he averred defendant intended to conceal information from customers, *id.* at 1127.

Valero insists Bautista's claims, like those in *Kearns*, sound in fraud, and therefore the FAC must include "the who, what, when, where, and how that would suggest fraud" to satisfy

Rule 9(b).  *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997).  Bautista's claims differ from those advanced in *Vess* and *Kearns*, however, because she does not claim Valero *intended* to make false misrepresentations.  Instead, she avers Valero unlawfully (1) omitted material information from their advertisements, and (2) failed to disclose a surcharge, which requires no representation at all.  These averments do not sound in fraud, and therefore Rule 9(b) is inapplicable.

**B.  Standing**

To bring claims for violations of the CLRA, UCL, and FAL, Bautista must plead and prove Valero's allegedly deceptive practice caused her pecuniary loss, i.e., that she "paid more than . . . she actually valued the product.  That increment, the extra money paid, is economic injury and affords the consumer standing to sue."  *Hinojos v. Kohl's Corp.*, 718 F.3d 1098, 1104 (9th Cir. 2013) (internal quotation marks omitted) (discussing the UCL and FAL); *see also id.* at 1108 ("[W]e conclude that any plaintiff who has standing under the UCL's and FAL's 'lost money or property' requirement will, *a fortiori*, have suffered 'any damage' for purposes of establishing CLRA standing.").  Plaintiffs satisfy this burden if they plead and prove they would not have purchased a product absent the allegedly misleading advertisements.  *Hodsdon*, 2016 WL 627383, at *3.

Bautista states she "would not have purchased gasoline from Valero-branded dealers using her debit cards" had Valero not misled her through advertisements or had disclosed the higher credit price on her debit card purchases.  FAC ¶ 12.  This factual averment is sufficient at the pleading stage to show actual reliance and economic injury.  *Hodsdon*, 2016 WL 627383, at *3.

**C.  CLRA, FAL, UCL:  The Reasonable Consumer**

The CLRA, FAL, and UCL all require plaintiffs to prove "members of the public are likely to be deceived" by the defendant's business practices.  *Williams*, 552 F.3d at 938.  In California, the reasonableness of consumer deception is generally considered a "question of fact not appropriate for [a] decision on demurrer."  *Id.* (citing *Linear Tech. Corp. v. Applied Materials, Inc.*, 152 Cal. App. 115, 134-35 (2007)).  In rare circumstances, courts may conclude a business practice is not likely to deceive a reasonable consumer as a matter of law.  For example, a mailer

that advertises a million-dollar sweepstakes is not misleading if it states explicitly that the prize is available to only the participant with the winning number. *See Freeman v. Time, Inc.*, 68 F.3d 285, 289-90 (9th Cir. 1995).

Valero contends the advertisements at issue are not misleading because reasonable consumers do not believe debit cards are the equivalent of cash payments. The California Supreme Court has defined a "cash payment" as "one where the buyer and seller exchange the goods and payment at the same time; any other method of payment is on credit." *Sw. Concrete Prods. v. Gosh Constr. Corp*, 51 Cal. 3d 701, 707 (1990). The California Court of Appeal further held that cash is "'ready money,' or 'money or its equivalent (as a check) paid for good or services at the time of purchase or delivery.'" *Wash. Mut. Bank v. Superior Court*, 95 Cal. App. 4th 606, 623 (2002) (quoting Webster's 10th Collegiate Dictionary 177 (1999)). The court did not, however, limit this definition to an exchange of currency; indeed, it held "a wire or electronic transfer," which "causes the immediate transfer of ready funds to the transferee" is the "functional equivalent of cash." *Id.* at 626. No California court has held debit-card payments are not cash payments as a matter of law. Thus, taking the factual averments in the FAC as true, Bautista has pleaded facts suggesting debit-card payments are the functional equivalent of cash.

More importantly, the FAC includes facts establishing that consumers may reasonably believe debit-card payments are more like cash payments than credit-card payments. When consumers see the advertised credit and cash prices, they must invariably decide which of the two prices apply to debit-card payments. Consumers understand there are important differences between credit and debit cards. For example, to obtain a credit card, the applicant must demonstrate positive credit history. High interest rights, annual fees, and costs deter many consumers form applying for credit cards. Moreover, credit cards allow people to purchase items they do not have the funds to pay for immediately. In contrast, anyone with a checking account can obtain a debit card.

Second, Bautista offers consumer-oriented media drawing on the distinctions between the two forms of payment. She contends this media supports consumer's beliefs that a debit card

should be treated more like cash. *Consumer Reports Magazine* warns consumers that debit transactions can put a hold on one's checking account for several days, unlike credit transactions. FAC ¶ 8. Unlike a credit transaction, a debit transaction is not charged to a cardholder's line of credit. A debit card transaction "results in an immediate deduction of cash from the cardholder's checking account, which is immediately collected by Valero or its agent through the payment processing system that virtually all Valero-branded dealers must use, and which Valero owns or controls." FAC ¶ 41. These differences suggest consumers may reasonably believe credit-card transactions are more like cash payments than credit-card payments.[2]

Valero further argues no reasonable consumer would be deceived by its advertising practices because the point-of-sale device displays the actual price of the fuel. According to Valero, this disclosure should disabuse all reasonable consumers of the notion that the cash price applies to debit-card transactions. Although this is certainly strong evidence against consumer deception, it is not a silver bullet in Bautista's case. The difference between the cash price and the credit price is small—approximately $0.04 per gallon—and therefore a consumer may not realize the price applied is the higher of the two. In addition, the split-pricing signs may not be visible from the fuel dispenser. Consumers may easily forget the price advertised and be unable to check their memories with ease. Perhaps most importantly, the FAC raises the reasonable inference that the point-of-sale device does not explicitly notify the consumer the price charged is the credit price, not the cash price.[3] In sum, the FAC pleads cognizable legal claims under the CLRA and FAL by establishing reliance, injury, and reasonable consumer deception.

---

[2] Valero extensively relies upon the factual recitation in *NACS v. Board of Governors of the Federal Reserve System*, 746 F.3d 474 (D.C. Cir. 2014), to argue debit-card payments are not the functional equivalent of cash. In essence, Valero seeks to incorporate the factual record from another case into this one. Such a practice is inconsistent with the requirement that courts accept the factual averments in the complaint as true. *See Iqbal*, 556 U.S. at 678. Facts recited in another action are not proper for judicial notice because they are not "adjudicative facts," i.e. "facts concerning the immediate parties." Fed. R. Evid. 201(a) advisory note. Accordingly, the factual background of *NACS* will not be considered for the purposes of this motion.

[3] As with Valero's attempt to insert facts contained in another judicial decision, it has sought to introduce documents which are not judicially noticeable or appropriate to consider on a motion to dismiss.

**D. UCL: Violation of Cal. Fin. Code § 13081(b)**

The UCL's unlawful prong allows plaintiffs to "borrow" and make claims independently actionable under the UCL. Bautista tethers her UCL claim to Valero's alleged violations of California Financial Code § 13081(b), the CLRA, and the FAL. As previously discussed, Bautista has adequately pleaded claims for violations of the CLRA and the FAL. The question remains, however, whether she may advance a claim based on an alleged violation of section 13081(b).

Section 13081(b) provides: "No operator of a point-of-sale device in this state shall impose any fee upon a customer for the use of that device unless that fee is disclosed to the consumer prior to the customer being obligated to pay for any goods or services." Valero contends she cannot advance this claim for many of the same reasons previously discussed. There are, however, two issues unique to this particular theory of liability. Valero insists split-pricing is permissible under California law as a cash discount and not a surcharge. *See Thrifty Oil Co.v. Superior Court*, 91 Cal. App. 4th 1070, 1078-79 (2001) (holding that a two-tiered pricing system does not involve an illegal surcharge, but rather constitutes an appropriate discount).

*Thrifty Oil* is factually distinguishable from the present case because the defendant gas station unambiguously conveyed the price difference between a cash and credit purchase. *Id.* In contrast, Bautista claims Valero does not disclose the price difference between a cash and debit purchase *at all*. Moreover, in *Thrifty Oil*, the higher credit price could not constitute a "surcharge" because the difference between the cash and credit price related to the actual transactional cost to the gas station. Here, there is no evidence to suggest Valero's higher debit and credit card price relates to their transactional cost of card payments.

Valero also argues that section 13081(b) of the California Financial Code applies to only personal identification number (PIN) transactions, and Bautista's purchase at the Daly City station was not such a transaction. Section 13081(c) provides, "the term point-of-sale device includes any device used for the purchase of a good or service where a personal identification number (PIN) is required." The FAC does not include any information about whether Bautista entered a PIN number. Instead, she states only that she entered her zip code. Accordingly, the motion to dismiss

her UCL claim premised on a violation of section 13081(b) is granted with leave to amend.

**E. UCL:  Avoidable Harm**

For a practice to be unfair under the UCL, a plaintiff must show the injury she experienced is "one that consumers themselves could not reasonably have avoided." *In re Apple In-App Purchase Litig.*, 855 F. Supp. 2d 1030, 1040 (N.D. Cal. 2012) (internal quotation marks omitted). Valero argues Bautista's alleged injury was avoidable had she simply paid cash or left the station. To this point, Valero contends that *Kelly v. BP West Coast Products LLC*, 2014 WL 7409220, at *8 (E.D. Cal. 2014) is instructive.  In *Kelly*, the plaintiff advanced a UCL claim against BP, arguing its practices were unfair because ARCO gas stations charge an additional $0.35 for debit-card transactions.  The district court granted BP's motion to dismiss because the point-of-sale device warned consumers that those who use debit cards would be charged an additional $0.35 and he continued anyway. *See id.* at *1, *8-9.  Under those circumstances, consumers could reasonably avoid injury because they had clear notice and a choice.

In contrast, "Valero's fuel dispensers display only the price that is currently dispensed." FAC ¶ 26.  The point-of-sale device at the Daly City station did not warn Bautista that she would be charged the credit-card price, thereby giving her a choice about whether to continue with the transaction.  Thus, no authority suggests the advertising practices here were fair as a matter of law, and Bautista's UCL claim may advance.

**F. Valero's Unbridled Control Over the Daly City Station**

To be liable for violations of the FAL and UCL, plaintiffs must show the defendant personally participated in the allegedly unlawful practice; vicarious liability is not available. *Emery v. Visa Int'l Serv. Ass'n*, 95 Cal. App. 4th 952, 960 (2002); *People v. Toomey*, 157 Cal. App. 3d 1, 14 (1984). According to the FAC, the Daly City station advertised its gas prices in two places:  at the pump (on the point-of-sale device) and on the street signs.  Attached to the FAC is a declaration of Blair E. Skellie, a Valero executive,[4] describing the payment processing system

---

[4] Because the declaration accompanies the FAC it is incorporated by reference.

Valero requires franchisees to use. This fact establishes that Valero controlled how franchisees process payments, but not how they advertise gas prices. Instead, Bautista simply asserts Valero "maintains complete and unbridled control over the [1] street signs . . . [2] fuel dispensers . . . and [3] point-of-sale devices attached to the fuel dispensers at virtually all Valero-branded dealers." FAC ¶13. Such conclusory assertions are insufficient to plead that Valero "is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Plaintiff avers only that Valero requires retailers to use a specific payment processing system, and not that it controlled the street signs. Because Bautista has not pleaded facts which if proven would establish that Valero exercised unbridled control over the Daly City station's advertising, Valero's motion to dismiss must be granted with leave to amend the FAL and UCL claims.

Whether vicarious liability is available under the CLRA remains an open question. Many federal district courts have required plaintiffs asserting claims under the CLRA to show the defendant either personally participated in the unlawful business practice or exercised unbridled control over the advertising entity. In every case, the courts relied upon *Jamster Mktg. Litig.*, 05CV0819 JM (CAB), 2009 WL 1456632, at *9 (S.D. Cal. May 22, 2009). *See Yordy v. Plimus, Inc.*, 12-CV-00229-TEH, 2014 WL 1466608, at *3 (N.D. Cal. Apr. 15, 2014) ("[C]ourts have held that CLRA liability also requires 'personal participation' and 'unbridled control.'"); *Dorfman v. Nutramax Laboratories, Inc.*, 3CV0873 WQH RBB, 2013 WL 5353043, at *14 (S.D. Cal. Sept. 23, 2013) ("[U]nder the CLRA, a defendant's liability must be based upon participation or control in the alleged unlawful advertising scheme." (internal quotation marks omitted)). In *Herron v. Best Buy Stores*, *LP*, 2013 WL 4432019, at *4 (E.D. Cal. Aug. 16, 2013), however, one district court concluded the CLRA did not require proof of a defendant's personal participation or unbridled control to be held liable based on the statute's remedial purpose. Resolution of this issue may wait another day because Bautista has failed to plead facts of Valero's personal participation and unbridled control, but will have the opportunity to remedy that problem. At the hearing on this motion, she indicated this task will not be difficult. If she manages adequately to plead facts showing that Valero exercised sufficient control over the Daly City station to hold

1   Valero liable under the UCL and FAL, then her CLRA claims will also be adequately pleaded

2   even if she need not ultimately prove Valero exercised unbridled control over the station.

3                                        v.   **CONCLUSION**

4   Valero's motion to dismiss Bautista's CLRA, FAL, and UCL claims is granted with leave

5   to amend. The accounting claim is dismissed without leave to amend.

6   **IT IS SO ORDERED**.

8   Dated: July 21, 2016

9   _____
    RICHARD SEEBORG
10  United States District Judge

ORDER GRANTING MOTION TO DISMISS
CASE NO. 15-cv-05557-RS