1  ROBBINS GELLER RUDMAN
       & DOWD LLP
2  STUART A. DAVIDSON (*pro hac vice*)
   CHRISTOPHER GOLD (*pro hac vice*)
3  JASON H. ALPERSTEIN (*pro hac vice*)
   120 East Palmetto Park Road, Suite 500
4  Boca Raton, FL  33432
   Telephone:  561/750-3000
5  561/750-3364 (fax)
   sdavidson@rgrdlaw.com
6  cgold@rgrdlaw.com
   jalperstein@rgrdlaw.com
7
   HOBSON, BERNARDINO & DAVIS, LLP
8  RAFAEL BERNARDINO, JR. (SBN 118690)
   JASON A. HOBSON (SBN 184134)
9  725 South Figueroa Street, Suite 3230
   Los Angeles, California 90017
10 Telephone: 213/235-9190
   Fax: 213/235-9190
11 rbernardino@hbdlegal.com
   jhobson@hbdlegal.com
12
   Attorneys for Plaintiff and Proposed Class Counsel
13
   [Additional counsel appear on signature page.]
14
                    UNITED STATES DISTRICT COURT
15
                  NORTHERN DISTRICT OF CALIFORNIA
16
                      SAN FRANCISCO DIVISION
17

| | | |
|---|---|---|
| FAITH BAUTISTA, Individually and on Behalf of All Others Similarly Situated,<br><br>                          Plaintiff,<br><br>        vs.<br><br>VALERO MARKETING AND SUPPLY COMPANY,<br><br>                          Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No. 3:15-cv-05557-RS<br><br>**PLAINTIFF FAITH BAUTISTA'S OPPOSITION TO DEFENDANT VALERO MARKETING AND SUPPLY COMPANY'S OBJECTIONS TO EVIDENCE AND MOTION TO STRIKE AND OBJECTIONS TO VALERO'S EVIDENCE**<br><br>Date:  September 28, 2017<br>Time:  1:30 p.m.<br>Place:  San Francisco Courthouse, Courtroom 3 – 17th Floor<br>Judge Hon. Richard Seeborg |

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION ...................................................................................................1

II. PLAINTIFF'S OPPOSITION TO VALERO'S MOTION..................................................2

   A.  Valero's Motion Should Be Stricken Because It Violates This Court's
       Rules and Prejudices Plaintiff ...........................................................................2

   B.  Valero's Motion Should Be Denied Because It Is Wholly Without Merit .............3

       1.  Exhibit 12 Was Authenticated When Valero Produced It in
           Discovery .....................................................................................................3

       2.  Plaintiff's Experts' Opinions Are Admissible: Valero's Criticisms
           Go to the Weight of the Evidence ..................................................................5

           a.  The Expert Opinions of Dr. Kamins Are Admissible......................5

               (1)  Dr. Kamins Is Not Required to Study Classwide
                    Reliance on Signage.............................................................7

               (2)  Dr. Simonson Himself Has Opined That a Control
                    Is Not Required for the Types of Surveys Dr.
                    Kamins Conducted................................................................8

               (3)  Study 2 Is Not Faulty Simply Because It Was Not
                    Designed to Study a Separate and Independent
                    Process .................................................................................9

           b.  The Expert Opinions Expressed by Mr. Blum Are
               Admissible .........................................................................................11

               (1)  Valero's Argument Regarding the Proper Measure
                    of Damages Is Wrong as a Matter Of Law .......................11

               (2)  Valero's Argument Regarding the Proper Measure
                    of Restitution Is Wrong as a Matter of Law .....................12

               (3)  The Evidence Fully Supports Mr. Blum's Reliance
                    on the Valero Card Price.....................................................12

               (4)  Mr. Blum's Extrapolation Model Is Reliable and
                    Fully Permissible Under the Law ......................................14

           c.  Stations Disclosing the Debit Price Can Be Excluded by
               Reference to Valero's Records ........................................................14

III. OBJECTIONS TO VALERO'S ADDITIONAL ADVOCACY COUCHED AS
     EXPERT OPINION ...............................................................................................15

   A.  The Simonson and Serwin Declarations Should Be Excluded Because
       They Are Advocacy Couched as Expert Opinion................................................15

**Page**

          1.    The Serwin Declaration Offers Advocacy Couched as Expert Opinion ...................................................................................15

          2.    The Simonson Declaration Offers Advocacy Couched as Expert Opinion ...................................................................................16

    B.    The Simonson and Serwin Declarations Should Be Excluded Because They Are Irrelevant.............................................................................16

          1.    The Simonson Declaration Offers Irrelevant Testimony...........................16

          2.    The Serwin Declaration Offers Irrelevant Testimony ...............................18

    C.    The Simonson and Serwin Declarations Should Be Excluded Because They Are Unreliable ...........................................................................18

          1.    The Opinions In the Simonson Declaration Are Based on Insufficient Facts and Data and Unreliable Principles or Methods ..........18

          2.    The Opinions In the Serwin Declaration Are Based on Insufficient Facts and Data and Unreliable Principles or Methods.............................19

IV.    CONCLUSION...................................................................................20

# TABLE OF AUTHORITIES

Page

## CASES

*Ambrosia v. Cogent Commc'ns, Inc.*,
    312 F.R.D. 544 (N.D. Cal. 2016) ...........................................................................15

*Castillo v. Nationstar Mortg. LLC*,
    No. 15-cv-01743-BLF, 2016 WL 6873526 (N.D. Cal. Nov. 22, 2016) ...................................2

*Chang v. Flagstar Bank FSB*,
    No. 13-cv-05785-JST, 2014 WL 1245261 (N.D. Cal. Mar. 24, 2014)....................................2

*Comcast Corp. v. Behrend*,
    __U.S. __, 133 S. Ct. 1426 (2013)................................................................................13, 14

*Cordas v. Uber Techs., Inc.*,
    228 F. Supp. 3d 985 ...................................................................................................2

*Daubert v. Merrell Dow Pharm., Inc.*,
    509 U.S. 579 (1993).................................................................................2, 5, 15, 16

*Elliot v. Spherion Pac. Work, LLC*,
    368 F. App'x 761 (9th Cir. 2010) ....................................................................................2

*English v. Apple Inc.*,
    No. 14-cv-01619-WHO, 2016 WL 1188200 (N.D. Cal. Jan. 5, 2016)....................................10

*Fortune Dynamic, Inc. v. Victoria's Secret Stores Brand Mgmt., Inc.*,
    618 F.3d 1025 (9th Cir. 2010) ........................................................................................7

*Friedman v. AARP, Inc.*,
    855 F.3d 1047 (9th Cir. 2017) ........................................................................................8

*Guthmann v. Classic Residence Mgmt. Ltd. P'ship*,
    No. 16-CV-02680-LHK, 2017 WL 3007076 (N.D. Cal. July 14, 2017) ...................................2

*In re Litheum Ion Batteries Antitrust Litig.*,
    No. 13-MD-2420 YGR, 2017 WL 1391491 (N.D. Cal. Apr. 12, 2017)....................................18

*Kamakahi v. Am. Soc'y for Reprod. Med.*,
    305 F.R.D. 164 (N.D. Cal. 2015)....................................................................................15

*Kumar v. Salov N. Am. Corp.*,
    No. 14-CV-2411-YGR, 2016 WL 3844334 (N.D. Cal. July 15, 2016)....................................7

*Mazza v. Am. Honda Motor Co.*,
    666 F.3d 581 (9th Cir. 2012) ........................................................................................8

                                                                                    **Page**

*Miletak v. Allstate Ins. Co.*,
   No. C 06- 03778 JW, 2010 WL 809579 (N.D. Cal. Mar. 5, 2010) ........................18

*Mullins v. Premier Nutrition Corp.*,
   178 F. Supp. 3d 867 (N.D. Cal. 2016) (Seeborg, J.)....................................5, 11, 13

*Mullins v. Premier Nutrition Corp.*,
   No. 13-cv-01271-RS, 2016 WL 1535057 (N.D. Cal Apr. 15, 1016)........................5, 7, 8, 11

*Nationwide Transp. Fin. v. Cass Info. Sys., Inc.*,
   523 F.3d 1051 (9th Cir. 2008) ........................................................18

*Oak Point Partners, Inc. v. Lessing*,
   No. 11-CV-03328-LHK, 2012 WL 4121109 (N.D. Cal. Sept. 18, 2012)................2

*Obrey v. Johnson*,
   400 F.3d 691 (9th Cir. 2005) ........................................................18

*Oracle Am., Inc. v. Google Inc*.,
   No. C 10-03561 WHA, 2016 WL 1743116 (N.D. Cal. May 2, 2016)........................... *passim*

*People v. Sarpas*,
   225 Cal. App. 4th 1539 (2014) ........................................................12

*Phillips v. Apple Inc*.,
   No. 15-cv-04879-LHK, 2016 WL 5846992 (N.D. Cal. Oct. 6, 2016).........................2

*Rai v. Santa Clara Valley Transp. Auth.*,
   308 F.R.D. 245 (N.D. Cal. 2015).....................................................5, 14

*Romero v. Nevada Dep't of Corr.*,
   673 F. App'x 641 (9th Cir. 2016) ....................................................4

*Seifi v. Mercedes-Benz U.S.A., LLC*,
   No. 12-cv-05493-TEH, 2014 WL 8370026 (N.D. Cal. Dec. 17, 2014) ....................2

*Tyson Foods Inc. v. Bouaphakeo*,
   __ U.S. __, 136 S.Ct. 1036 (2016) .................................................14

*Wendt v. Host Int'l, Inc*.,
   125 F.3d 806 (9th Cir.1997) .........................................................5

**STATUTES, RULES AND REGULATIONS**
Federal Rules of Civil Procedure
      Rule 23 ........................................................................14
      Rule 30(b)(6)..........................................................13, 14, 15, 19
California Business & Civil Code
      §3343..........................................................................11

# I.     INTRODUCTION

Defendant Valero Marketing and Supply Company ("Valero") filed an opposition to Plaintiff's motion for class certification[1] along with a separately filed motion to strike ("Motion") evidence submitted in support of Plaintiff's Class Certification Motion,[2] in violation of L.R. 7-3(a). Plaintiff Faith Bautista ("Plaintiff") respectfully submits this opposition to Valero's Motion and objections to the Declarations of Drs. Itamar Simonson[3] and Kenneth S. Serwin[4] submitted in support of Valero's Motion.[5]

Valero's Motion was filed solely to overburden Plaintiff's counsel and gain an upper hand in this litigation by snatching up additional pages to respond to Plaintiff's Class Certification Motion. Valero's Motion is legally baseless and, more importantly, is explicitly prohibited by L.R. 7-3(a), which requires that evidentiary objections be contained in an opposition brief that is limited to 25 pages.   Valero's Motion amounts to a supplemental brief filed in violation of L.R. 7-3(a) to circumvent this Court's Order denying Valero's request for 10 additional pages to respond to Plaintiff's Class Certification Motion (Valero initially sought Plaintiff's agreement to a 15-page extension).

Through Valero's gamesmanship and disregard for the Local Rules and this Court's Order, Valero has improperly submitted a total of ***43 pages*** in opposition to Plaintiff's 25-page Class Certification Motion.  Valero's improper conduct has prejudiced Plaintiff who now has a quieter voice on the class certification issue and who has been forced expend time and resources to respond to Valero's improper Motion.  For these reasons, Valero's Motion should be summarily stricken.  In the alternative, Valero's Motion should be denied on its merits.

---

[1]     *See* Dkt. No. 87 ("Class Certification Motion" or "Class Cert. Br.").

[2]     Dkt. No. 100.

[3]     Dkt. No. 98 ("Simonson Declaration" or "Simonson Decl.").

[4]     Dkt. No. 99 ("Serwin Declaration" or "Serwin Decl.").

[5]     In compliance with L.R. 7-3(a), Plaintiff will object to the evidence submitted by Valero in opposition to Plaintiffs' Class Certification Motion in her reply brief.

1    The Court should also exclude under *Daubert*[6] the Simonson and Serwin Declarations,

2    submitted in support of both Valero's Motion and its opposition to the Class Certification Motion.

3    Both Declarations include additional advocacy couched as expert opinion – giving Valero yet

4    additional argument on top of its 13-page Motion.  Both Declarations also offer opinions that are

5    irrelevant and unreliable.

6         For these reasons, detailed below, Valero's Motion should be stricken or, in the alternative,

7    denied on the merits, and the Simonson and Serwin Declarations should be excluded.

8    **II.     PLAINTIFF'S OPPOSITION TO VALERO'S MOTION**

9         **A.     Valero's Motion Should Be Stricken Because It Violates This Court's
         Rules and Prejudices Plaintiff**

10        Under L.R. 7-3(a), evidentiary objections to a motion must be contained within an opposition

11   brief that may not exceed 25 pages of text.[7]  Separately filed evidentiary objections allow a party to

12   circumvent page limitations set by the Local Rules and ultimately prejudice the opposing party who

13   must respond to the improper filing.[8]  Therefore, evidentiary objections contained in a separate filing

14   are routinely stricken.[9]  One court in this District has gone so far as to order counsel to show cause

15   why they should not be monetarily sanctioned for failing to comply with L.R. 7-3(a) and 7-11.[10]

16

17   _____

18   [6]   *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993).

19   [7]   *See Cordas v. Uber Techs., Inc.*, 228 F. Supp. 3d 985, 989 n.2 (N.D. Cal. 2017) (Seeborg, J.)
     (refusing to consider separately filed evidentiary objections); *Chang v. Flagstar Bank FSB*, No. 13-
20   cv-05785-JST, 2014 WL 1245261, at *1 (N.D. Cal. Mar. 24, 2014) (same).

21   [8]   *Seifi v. Mercedes-Benz U.S.A., LLC*, No. 12-cv-05493-TEH, 2014 WL 8370026, at *1 (N.D. Cal.
     Dec. 17, 2014) (granting procedural motion to strike separately filed evidentiary objections that
22   "exceeded the page limits of their opposition briefing by nine pages and caused Plaintiffs to
     respond[,]," which is "is clearly prejudicial").  Citations, internal quotations, and footnotes omitted
23   and emphasis added unless otherwise noted.

24   [9]   *See id.*; *Oak Point Partners, Inc. v. Lessing*, No. 11-CV-03328-LHK, 2012 WL 4121109, at *1
     n.2 (N.D. Cal. Sept. 18, 2012); *Castillo v. Nationstar Mortg. LLC*, No. 15-cv-01743-BLF, 2016 WL
25   6873526, at *2 n.1 (N.D. Cal. Nov. 22, 2016); *Phillips v. Apple Inc.*, No. 15-cv-04879-LHK, 2016
     WL 5846992, at *5 (N.D. Cal. Oct. 6, 2016); *Guthmann v. Classic Residence Mgmt. Ltd. P'ship*, No.
26   16-CV-02680-LHK, 2017 WL 3007076, at *5 n.1 (N.D. Cal. July 14, 2017); *see also Elliot v.
     Spherion Pac. Work, LLC*, 368 F. App'x 761, 763 (9th Cir. 2010) (affirming district court's refusal
27   to consider evidentiary objections submitted in violation of local rules).

28   [10]  *See Seifi*, 2014 WL 8370026, at *2.

1    Plaintiff's Class Certification Motion fit comfortably within its 25-page limit.  Valero sought

2  Plaintiff's agreement to file a 40-page brief in opposition.  Plaintiff agreed to a ten-page extension.

3  This Court denied Valero's request for a ten-page extension and granted only five additional pages

4  for Valero to file a 30-page brief.[11]   Valero disregarded this Court's Order and the Local Rules by

5  filing a separate brief to snatch up 13 additional pages and submit ***43 total pages*** of argument

6  opposing class certification (in addition to substantial advocacy couched as expert opinion, discussed

7  below).

8    Valero's gamesmanship has unfairly prejudiced Plaintiff by giving Valero a louder voice and

9  requiring Plaintiff's counsel to commit time and resources to respond to Valero's procedurally

10 improper Motion.  For these reasons, Valero's Motion should be summarily stricken.

11  **B.    Valero's Motion Should Be Denied Because It Is Wholly Without Merit**

12    Even if Valero's Motion did not violate L.R. 7-3(a), it should be denied on its merits.  Most

13 of Valero's arguments are directly at odds with binding case law, including from this Court.  Valero

14 identifies no basis to strike Exhibit 12 to the Declaration of Christopher Gold filed in support of class

15 certification[12] ("Exhibit 12"), which Valero produced in discovery.  And any attacks on Dr. Michael

16 A. Kamins and Sidney P. Blum that are not wrong as a matter of law go to the weight of their

17 testimony, not their admissibility.

18  **1.    Exhibit 12 Was Authenticated When Valero Produced It in Discovery**

19    Valero's argument to strike Exhibit 12 as a purportedly unauthenticated document[13] is, quite

20 simply, absurd.  Valero produced Exhibit 12 in discovery in response to Plaintiff's First Set of

21 Interrogatories and represented it to be a list of Valero-branded stations that "may have ordered

22 signage capable of displaying both cash and credit prices and/or 'may have offered split-pricing.'"[14]

23 The "longstanding rule of authentication is that documents may be authenticated by having been

---

24  [11]   *See* Dkt. No. 91.

25  [12]   Dkt. No. 87-1.

26  [13]   *See* Motion at 1:23-2:1.

27  [14]   Attached as Exhibit 1 to the Declaration of Christopher Gold in Support of Plaintiff's Opposition

28 to Valero's Objections to Evidence and Motion to Strike, filed herewith.

1    produced in discovery."[15]  Moreover, Valero cannot contest the authenticity of Exhibit 12 because

2    Valero introduced its own version of Exhibit 12 – Exhibit A to the Declaration of Kimberly Ford[16]

3    ("Exhibit A") – which confirms that Exhibit 12 is precisely what Plaintiff claims it to be: a list of

4    "stations that Valero's sign-installation vendor has identified as possibly having ordered dual-price

5    signs at some point."[17]  Thus, Valero's argument to strike Exhibit 12 is not only without merit, but it

6    is disingenuous since Valero simultaneously introduced Exhibit A into the record.

7             As an aside, Valero's assertion that Exhibit 12 does not indicate which stations ordered

8    signage that disclosed the applicable "debit" price[18] should be rejected.  Valero concedes (through

9    Exhibit A) that Exhibit 12 identifies Valero stations that offered cash and credit pricing.  Signage

10   disclosing a "debit" price is the exception rather than the rule, as such signage was never offered to

11   stations as part of Valero's standard signage options.[19]  Other records possessed by Valero and its

12   exclusive sign vendor,[20] as well as Google Maps, will be used to determine which stations on Exhibit

13   12 displayed "debit" signage during the class period, and damages will not be calculated for the

14   period in which such stations disclosed the applicable debit price.  Valero currently refuses to

15   produce these highly relevant records (which defeat Valero's attacks on Exhibit 12).  This discovery

16   dispute is the subject of a letter to the Court.[21]

17

18

19

20   [15]   *Romero v. Nevada Dep't of Corr.*, 673 F. App'x 641, 647 (9th Cir. 2016).

21   [16]   Filed in support of Valero's Opposition to Class Certification [Dkt. No. 96] ("Ford
     Declaration").

22   [17]   *Id.*, ¶2.

23   [18]   *See* Motion at 2:1-3.

24   [19]   *See* Class Cert. Br. at 9-11.

25   [20]   Plaintiff subpoenaed Valero's sign vendor, Sign Development, Inc. ("SDI"), for documents
26   relating to any and all orders placed by Valero-branded stations for "debit/credit" or "credit/debit
     signs," which would easily allow one to eliminate such stores from any damages calculations.  SDI
27   is in the process of compiling the information requested.

28   [21]   *See* Dkt. No. 103.

1  Valero's assertion that Exhibit 12 is offered to show numerosity should also be rejected.[22]

2  Numerosity in this case is established by the more than 20,000 class members who were harmed at

3  the Daly City station alone,[23] as well as common sense.  Numerosity is generally satisfied when a

4  class includes more than 40 members.[24]  It would defy common sense to suggest that, since the

5  beginning of the class period in 2011, fewer than 40 consumers purchased gasoline with a debit card

6  from upwards of 360 relevant Valero stations and were charged the credit price.

7  **2.  Plaintiff's Experts' Opinions Are Admissible: Valero's Criticisms Go to the Weight of the Evidence**

8  While *Daubert* applies on class certification, the relevant inquiry on class certification is a

9  "tailored *Daubert* analysis which scrutinizes the reliability of the expert testimony in light of the

10  criteria for class certification and the current state of the evidence."[25]  "The task is not to decid[e]

11  whether the expert is right or wrong, just whether his testimony has substance such that it would be

12  helpful to a jury."[26]  "Challenges to survey methodology go to the weight given the survey, not its

13  admissibility."[27]

14  Valero identifies nothing in the expert opinions of Dr. Kamins or Mr. Blum that would

15  preclude their admissibility.  Valero's arguments all go to the weight of the evidence.  Thus,

16  Valero's Motion to strike the Declarations of Plaintiff's experts should be denied.

17  **a.  The Expert Opinions of Dr. Kamins Are Admissible**

18  Dr. Kamins conducted two surveys to study consumer confusion related to two elements of

19  Valero's deceptive business practice: (1) signage that fails to disclose that the "debit" price is equal

20  to the credit price rather than the "cash" price consumers expect; and (2) a point-of-sale ("POS") that

21  _____

22  [22]  *See* Motion at 1:23-25.

23  [23]  *See* Rebuttal Declaration of Sidney Blum ("Blum Rebuttal"), filed herewith, ¶21.

24  [24]  *Mullins v. Premier Nutrition Corp.*, No. 13-cv-01271-RS, 2016 WL 1535057, at *2 (N.D. Cal Apr. 15, 1016) (Seeborg, J.) ("*Mullins I*").

25  [25]  *Rai v. Santa Clara Valley Transp. Auth.*, 308 F.R.D. 245, 264 (N.D. Cal. 2015).

26  [26]  *Mullins v. Premier Nutrition Corp.*, 178 F. Supp. 3d 867, 888 (N.D. Cal. 2016) (Seeborg, J.) ("*Mullins II*").

27  [27]  *Wendt v. Host Int'l, Inc.*, 125 F.3d 806, 814 (9th Cir.1997).

28

1    allows consumers to pay a higher price or a lower price for the same product without even knowing

2    it.  As Dr. Kamins explains, consumers already hold personal beliefs regarding debit cards being

3    either a debt-based or equity-based instrument.[28]  Dr. Kamins designed Study 1 to test how those

4    beliefs effect consumers exposed to signage typical of Valero stations that does not disclose a debit

5    price at all, but only a cash and credit price.[29]  58% respondents believed the "cash" price would

6    apply to a debit card, while 3% indicated they had no idea which price would apply.[30]  Only 39% of

7    respondents believed the credit price would apply.[31]  The results of this survey provides strong

8    evidence, although not the only evidence, that Valero's practices of failing to disclose the debit price

9    on signage would be deceptive to a reasonable consumer.

10          Study 2 was based on Valero's own motion to dismiss argument that consumers at the Daly

11   City station can pay the cash price if, without being instructed to do so, they identify their card as a

12   debit card by pressing a button on the POS device *before* swiping their card.  Study 2 was designed

13   to study whether consumers, without being instructed to do so, would press the button before

14   swiping their card in the POS device.[32]

15          The results of Study 2 showed that 53.9% of respondents would not push the button to

16   identify their debit cards before swiping. [33]  And in part two of the study, 78% of those respondents

17   indicated they would have pushed the button first to pay a lower price for gasoline if they had

18   known.[34]  This is strong evidence, although not the only evidence, that a reasonable consumer would

19   be misled by Valero's failure to disclose that a consumer's failure to pre-identify his or her debit

20   card as such will result in a higher price being charged for the same product.  Dr. Kamins cites

21
_____

22   [28]   Rebuttal Declaration of Dr. Michael A. Kamins ("Kamins Rebuttal"), ¶¶4, 10.

23   [29]   *Id.*, ¶3.

24   [30]   Declaration of Dr. Michael A. Kamins [Dkt. No. 87-1, Ex. 57] ("Kamins Decl."), ¶¶45-46.

25   [31]   *Id.*

26   [32]   Kamins Rebuttal, ¶17.

27   [33]   Kamins Decl., ¶60-62.

28   [34]   *Id.*

academic literature explaining that "the difference between PIN and signature debit [may be] too subtle a distinction for some consumers to recognize."[35]  Indeed, one respondent in Study 2 who did not elect to push the button to identify a debit card explained they did not "think it would make a difference."[36]

Valero offers no argument that relates the admissibility of these results.  Most of Valero's quibbles with Dr. Kamins' studies relate to alleged "technical inadequacies . . . including the format of the questions or the manner in which it was taken, [which] bear on the weight of the evidence, not its admissibility."[37]  Valero's remaining arguments are simply misplaced, irrelevant, or wrong as a matter of law.

### (1)   Dr. Kamins Is Not Required to Study Classwide Reliance on Signage

For instance, Valero argues that the expert opinions of Plaintiff's consumer behavior expert, Dr. Kamins, should be excluded because his empirical studies do not show that "reasonable consumers see and rely on the challenged advertising."[38]  But that was not the purpose of the survey. As detailed above, Study 1 was designed to determine whether Valero's signage is deceptive. Whether consumers view the sign is an entirely different question that is irrelevent to Study 1.

Moreover, It is beyond dispute that "[c]laims under the UCL and FAL do not require[] individualized proof of reliance, deception, or causation."[39]  While the CLRA does require a showing of reliance, classwide reliance is presumed where material misrepresentations were made to the entire class.[40]  Although Dr. Kamins cites evidence suggesting that Valero's signage is

---

[35]   Kamins Decl., ¶42.

[36]   Kamins Decl., ¶61.

[37]   *Fortune Dynamic, Inc. v. Victoria's Secret Stores Brand Mgmt., Inc.*, 618 F.3d 1025, 1036 (9th Cir. 2010).

[38]   Motion at 4:7-9.

[39]   *Kumar v. Salov N. Am. Corp.*, No. 14-CV-2411-YGR, 2016 WL 3844334, at *7 n.9 (N.D. Cal. July 15, 2016); *see also* Class Cert. Br. at 20-21 (collecting cases).

[40]   *Mullins I* , 2016 WL 1535057, at *5.

1  material,[41] materiality of a misrepresentation is established through an objective test that asks

2  whether "a reasonable man would attach importance to its existence or nonexistence in determining

3  his choice of action in the transaction."[42]  It is also a question of fact for the jury.[43]  Thus, Valero's

4  critique of Study 1 is misplaced.

5        Further, this is not a case like *Mazza*, where the "limited scope of [the] advertising [at issue]

6  ma[de] it unreasonable to assume that all class members viewed it[,]"[44] as Valero suggests.[45]

7  Valero's deception in this case is fundamentally based in an omission: Valero does not disclose (or

8  require disclosure of) the debit card price at any of the relevant stations.  Each class member, by

9  necessity, was exposed to Valero's omission, which supports a presumption of classwide reliance.

10                              **(2)**     **Dr. Simonson Himself Has Opined That a**
                                        **Control Is Not Required for the Types of**

11                                          **Surveys Dr. Kamins Conducted**

12        Valero's assertion that Dr. Kamins' expert opinions should be excluded because he did not

13  use a control in his studies[46] is belied by Valero's ***own*** proposed expert.  In another case, on behalf

14  of another client, Dr. Simonson conducted a consumer survey and, like Dr. Kamins here, did ***not*** use

15  a control.[47]  In defense of the decision to not use a control in that case, Dr. Simonson testified that "a

16  control group is not required for a survey that purports only to understand what developers ***perceive*** .

17  . . in their decision-making process."[48]  Dr. Simonson's client further explained that "Simonson did

18

19

---

20  [41]  *See* Kamins Rebuttal, ¶39 (citing Federal Reserve Bank of St. Louis that [consumers pay attention to signage]).

21  [42]  *Mullins I*, 2016 WL 1535057, at *5; *see also* Class Cert. Br. at 20 (collecting cases).

22  [43]  *Friedman v. AARP, Inc.*, 855 F.3d 1047, 1055 (9th Cir. 2017).

23  [44]  *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 596 (9th Cir. 2012).

24  [45]  Motion at 3:24-26.

25  [46]  Motion at 4:22-5:23.

26  [47]  *Oracle Am., Inc. v. Google Inc.*, No. C 10-03561 WHA, 2016 WL 1743116, at *9 (N.D. Cal.
27  May 2, 2016).

28  [48]  *Id.* (citing Simonson Dep. at 98–99) (emphasis in original).

1    not attempt to test the effect of a stimulus, so there was nothing to control for."[49]  These are the exact

2    reasons Dr. Kamins gives for not using a control in this case.[50]  So Valero's argument is not even

3    supported by its own proposed expert.

4                    **(3)    Study 2 Is Not Faulty Simply Because It Was Not**
                              **Designed to Study a Separate and Independent**
5                             **Process**

6            Valero's assertion that Dr. Kamins' Study 2 is based on an "erroneous understanding" of the

7    POS device at the Daly City station[51] ignores the intended purpose of the study: to study whether

8    consumers would push the button or swipe their card first.[52]  This study was designed around

9    Valero's motion to dismiss argument that consumers at the Daly City station can literally pay two

10   different prices for gasoline solely based on whether they swipe a debit card first or push a debit

11   button before swiping the card.[53]  Valero now claims, for the first time since this action was filed,

12   that the POS device at the Daly City station "prompts" for debit, *i.e.*, asks the cardholder whether

13   they are using a debit card.  This argument is irrelevant to Dr. Kamins' Study 2 and suffers from two

14   major flaws.

15           First, Dr. Kamins' Study 2 studied consumer behavior regarding the "ATM/debit" button on

16   the POS device and whether consumers would push it first or swipe their cards first.  Whatever

17   allegedly transpires after that point is not relevant to the issue that Study 2 was designed to study.

18   Valero is free to conduct its own surveys on any issue it wishes, which tellingly, it did not do.  But

19   Dr. Kamins' study is not inadmissible simply because it was not designed to study every conceivable

20   question that is arguably at issue in this case, including, for example, the question of fact regarding

---

21   [49]  *Id.*

22   [50]  *See* Kamins Rebuttal, ¶4 (explaining that Study 1 was not designed to determine whether "a
23   single encounter with the sign in some way causally influences how consumers view a debit card
     and, therefore, changes years of consumer experience in having used such an instrument in the real
24   world and the ensuing beliefs derived from such usage"); ¶17 (explaining that "Study 2 was
     designed to examine the sequence of actions that the consumer paying with a debit card would take
25   at the point of decision making when encountering the pump of the Valero station in Daly City").

26   [51]  Motion at 7:9-21.

27   [52]  Kamins Rebuttal, ¶18.

28   [53]  Dkt. No. 45 at 4:5-21, 15:3-7, 17:6-7.

1    whether a reasonable consumer would be deceived by Valero's failure to disclose that they will pay

2    a higher price for gasoline if they do not identify their card as a debit card.  As discussed below,

3    there is already plenty of evidence that Valero's failure is deceptive.

4          Second, there is no evidence that the Daly City POS prompted for debit prior to the filing of

5    this lawsuit.  Plaintiff alleged in the Second Amended Class Action Complaint that, after swiping her

6    debit card at the POS device, "[t]he digital screen above the card reader labeled "Instructions" asked

7    for a zip code and provided Plaintiff with *no options*, such as to enter a PIN."[54]  This allegation must

8    be accepted as true for class certification.[55]  What's more, neither of Valero's motions to dismiss

9    made any mention of a debit prompt.  It is no small coincidence that Valero argues now, for the first

10   time, that the Daly City POS device prompts for debit.

11         Evidence produced in discovery shows that debit prompting can be turned on or off at will.

12   There is no evidence that debit prompting was activated at the Daly City station throughout the class

13   period.  Indeed, it was not activated at the time Plaintiff made the purchase referenced in the

14   Complaint (if it was ever activated at all).  Valero points to Plaintiff's answer to an ambiguous

15   deposition question where Plaintiff was shown an unauthenticated close-up photograph of a POS

16   device that displayed a debit prompt and asked whether she saw "that" "[w]hen [she] purchased gas

17   at the Daly City station."[56]  At best, this ambiguous testimony establishes that Plaintiff saw "that" on

18   some unidentified occasion at the Daly City station.   Plaintiff shopped at the Daly City Station on

19   multiple occasions, and her testimony that she saw "that" can easily be interpreted as a reference to

20   the POS device itself or the display on the device.  Indeed, Plaintiff will submit a sworn declaration

21   together with her reply to Valero's class certification opposition affirming that she misunderstood

22   the ambiguous deposition question and that she never received a debit prompt at the Daly City

23   station.  In other words, the allegations in the Complaint are accurate.

24

25

---

26   [54]  Dkt No. 69 ("Complaint"), ¶54.

27   [55]  *English v. Apple Inc.*, No. 14-cv-01619-WHO, 2016 WL 1188200, at *6 (N.D. Cal. Jan. 5, 2016).

     [56]  Motion at 7:18-19.

28

1          **b.     The Expert Opinions Expressed by Mr. Blum Are Admissible**

2          Mr. Blum's damage model relies on Valero's own records and uses simple arithmetic and

3    standard extrapolation techniques (where necessary) to generate a remarkably accurate damage

4    calculation.  And calculated damages can even be matched to class members, including Plaintiff.[57]

5    Valero makes no argument that impacts the admissibility of Mr. Blum's testimony.

6               **(1)     Valero's Argument Regarding the Proper
                           Measure of Damages Is Wrong as a Matter Of
7                          Law**

8          Valero argues that Mr. Blum's proposed damages model is irrelevant because it purportedly

9    "bears no relationship to the damages actually claimed" by Plaintiff.[58]  This argument has zero merit.

10   Valero claims, without citing any authority, that the proper measure of damages is "the difference

11   between the 'credit' price [Plaintiff] paid at the Daly City Valero station and the price she would

12   have paid had she gone elsewhere" to buy gasoline.[59]  But Valero's unsupported legal assertion is

13   directly at odds with blackletter case law from courts in this District, including this Court: "Where

14   plaintiffs are deceived by misrepresentations into making a purchase, the economic harm is the

15   same: the consumer has purchased a product that he or she paid more for ***than he or she otherwise***

16   ***might have been willing to pay*** if the product had been labeled accurately."[60]

17         Plaintiff alleged and testified that, absent Valero's deception, she would have been willing to

18   pay zero dollars for the gasoline she purchased.[61]  Therefore the measure of actual damages is the

19   full price Plaintiff paid.  Since, however, Plaintiff received some value from the gasoline for which

20   she should have to pay, "the proper measure for restitution is the value of the price paid minus the

21   actual value of the product."[62]  That is precisely what Mr. Blum's damages model measures: the

22

     _____

23   [57]  Blum Rebuttal, ¶22.

24   [58]  Motion at 8:7-10.

25   [59]  Motion at 8:20-9:1.

26   [60]  *Mullins II*, 178 F. Supp. 3d at 898; *see also* Cal. Civ. Code §3343.

27   [61]  *See* Complaint, ¶56.

28   [62]  *Mullins I*, 2016 WL 1535057, at *6.

1    differences between what Plaintiff paid and the value of the gasoline, reflected by the lower

2    available "cash" price for which the gasoline is sold.  Valero's assertion that Mr. Blum's model

3    should be excluded because it does not measure expectation damages has no basis in the law.

4                              **(2)     Valero's Argument Regarding the Proper**
                                       **Measure of Restitution Is Wrong as a Matter of**
5                                      **Law**

6            Valero's argument that Mr. Blum's model is "fundamentally improper" for calculating

7    restitution because it does not consider the "net gain" to Valero[63] is also legally flawed.  California

8    law is clear: restitution is *not* limited to a defendant's net profit.[64]  "[I]t is not essential that money be

9    paid directly to [Defendants] by the party seeking restitution."[65]   Indeed, the "courts are not

10   concerned with restoring the violator to the status quo ante."[66]   "The focus instead is on the

11   victim."[67] "The status quo ante to be achieved by the restitution order was to again place the *victim*

12   in possession of that money."[68]  A contrary rule "would allow UCL and FAL violators to escape

13   restitution by structuring their schemes to avoid receiving direct payment from their victims."[69]

14                             **(3)     The Evidence Fully Supports Mr. Blum's**
                                       **Reliance on the Valero Card Price**
15           Valero claims that Plaintiff's counsel instructed Mr. Blum to rely on the price charged on

16   purchases made with Valero's proprietary credit card ("Valero Card") as a proxy for the cash price

17   charged at a Valero station.[70] That is simply false.  The overwhelming and uncontroverted evidence

18   in this case establishes that it is entirely appropriate to rely on the Valero Card to determine the cash

19

20   [63]   Motion at 13:2-12, with advocacy expanded to Serwin Decl., ¶66.

21   [64]   *People v. Sarpas*, 225 Cal. App. 4th 1539, 1562 (2014) (rejecting defendants' argument that
22   "restitution must be limited to the net profits he received").

23   [65]   *Id.*

24   [66]   *Id.*

25   [67]   *Id.*

26   [68]   *Id.* (emphasis in original).

27   [69]   *Id.*

28   [70]   Motion at 10:1-3.

1    price.  Indeed, Mr. Blum noted in his Declaration that he relied, not on counsel, but on the deposition

2    testimony of Valero's Rule 30(b)(6) witness, who confirmed that Valero stations are obligated to

3    charge the cash price on the Valero Card or risk being debranded.[71]  There is nothing in the record to

4    suggest that it would be unreasonable or improper to assume that the majority of Valero stations

5    comply with Valero's policy.

6         Valero relies on five outlier stations that were known to be violating Valero's policy.  Dr.

7    Serwin reviewed the transaction records from those cherry-picked outlier stations and confirmed

8    they are, indeed, outliers that do not comply with Valero's policy.[72]  This proves nothing.  There is

9    no evidence that the other hundreds of Valero stations do not comply with their contractual

10   obligation to Valero by charging the cash price on the Valero Card.  As discussed below, Dr. Serwin

11   relied on a biased sample selection, not reliable methodologies, to support a conclusion sought by his

12   client.

13        Moreover, it is blackletter law that damages and restitution calculations do not need to be

14   made with "exact precision."[73]  As detailed above, the measure of damages is the price Plaintiff was

15   charged and the price she might otherwise have been willing to pay absent Valero's deception,

16   which Plaintiff testified to be zero dollars.  Thus, the measure of damages is actually the entire price

17   Plaintiff paid minus the value of the product received.  The value of the gasoline sold to Plaintiff is

18   sold at a lower cash price.  But if the product is also sold at a different "Valero Card price," the

19   "value" of the gasoline Plaintiff received can also be measured by the Valero Card price it is sold

20   for.  Thus, even if a station does not charge the cash price on the Valero Card, it is not improper to

21   calculate damages by reference to the Valero Card price.  It also would not be improper to calculate

22   damages by relying on the "PIN debit price," which is another indicator of the gasoline's value.  At

23   best, Valero shows that Mr. Blum's demonstrative calculation was slightly conservative, which does

24   not make Mr. Blum's model inadmissible.

25   ───────────────────

[71]  Declaration of Sidney P. Blum [Dkt. No 87-1, Ex. 58] ("Blum Decl."), ¶42 & n.2.

26

[72]  *See* Serwin Decl., ¶¶29-34, 42-58.

27

[73]  *Mullins II*, 178 F. Supp. 3 at 898; *Comcast Corp. v. Behrend*, __U.S. __, 133 S. Ct. 1426, 1433

28   (2013)

1

### (4) Mr. Blum's Extrapolation Model Is Reliable and Fully Permissible Under the Law

2

Valero's assertion that Mr. Blum's proposed extrapolation model for the period for which

3

Valero did not retain and preserve its records is somehow improper[74] falls flat in light of *Tyson*

4

*Foods*, where the Supreme Court held that the use of "representative evidence" is permissible

5

particularly where, as here, Valero failed to preserve its records (even after this lawsuit was filed).[75]

6

Valero offers no reason why widely accepted extrapolation methods would be improper here.

7

Indeed, Dr. Serwin exaggerates minimal pricing variations that exist.[76] But, "the existence of . . .

8

variations is not a sufficient reason to defeat class certification analysis when damages will be

9

calculated" based on the difference between the price class members were charged and the price they

10

might have paid absent Valero's deceptive practices.[77] Moreover, Mr. Blum, who has years of

11

experience in the oil and gas industry, which Serwin lacks, is uniquely qualified to opine on potential

12

pricing variations at Valero stations.

13

### c. Stations Disclosing the Debit Price Can Be Excluded by Reference to Valero's Records

14

Finally, Valero's assertion that Mr. Blum's model cannot exclude the few stations on Exhibit

15

12 that displayed a sign disclosing the debit price is a red herring. Mr. Blum's expert opinion is that

16

damages and restitution can be calculated in accordance with *Comcast*, *Tyson*, and Rule 23. Periods

17

for which a Valero station displayed debit pricing signage will not be included in Mr. Blum's

18

calculations. Other evidence in the possession of Valero and its exclusive sign vendor, as well as

19

Google Maps, will be used to identify those stations. Although Valero's Rule 30(b)(6) witness

20

testified that these records exist, and Valero has produced such records for a few stations, Valero

21

refuses to produce these relevant records. This discovery dispute is the subject of a letter being filed

22

with the Court.

23

24

---

[74] Motion at 12:3-10.

25

[75] *Tyson Foods Inc. v. Bouaphakeo*, __ U.S. __, 136 S.Ct. 1036, 1047 (2016).

26

[76] Blum Rebuttal, ¶¶26-34.

27

[77] *Rai*, 308 F.R.D. at 264.

28

1    **III.    OBJECTIONS TO VALERO'S ADDITIONAL ADVOCACY COUCHED**
2    **AS EXPERT OPINION**

3    Not only did Valero unfairly and improperly seize 13 additional pages to argue against
4    Plaintiff's Class Certification Motion, it also submitted the Simonson and Serwin Declarations that
5    read like two additional briefs advancing factual and legal arguments in opposition to class
6    certification.

7    The Simonson and Serwin Declarations should be excluded under *Daubert* because they are
8    advocacy couched as "expert" opinion, the opinions expressed are not relevant, and the opinions are
9    based on insufficient facts and data and unreliable principles or methods.

10    **A.    The Simonson and Serwin Declarations Should Be Excluded Because**
      **They Are Advocacy Couched as Expert Opinion**
11

12    Valero introduces evidence in support of this Motion that should be excluded under *Daubert*.
13    "Where an 'expert report' amounts to written advocacy . . . akin to a supplemental brief, a motion to
14    strike is appropriate because this evidence is not useful for class certification purposes."[78]

15           **1.    The Serwin Declaration Offers Advocacy Couched as Expert Opinion**

16    As detailed above in Sections II.B(2)(b)(1) & (2), the Serwin Declaration argues for a
17    measure of damages and restitution that is wrong as a matter of law.[79]   The Serwin Declaration also
18    argues that the documentary evidence and Rule 30(b)(6) testimony that Valero stations are obligated
19    to charge the cash price on purchases made with the Valero Card should somehow be completely
20    disregarded because Serwin cherry-picked five known outlier stations and reviewed Valero's sales
21    records for those stations to confirm that they are, indeed, outliers in that they are in direct violation
22    of Valero's admitted policy of treating Valero Cards like cash.[80]   This is not expert opinion; this is
23    advocacy to support a client's position.

24    

25    [78]   *Kamakahi v. Am. Soc'y for Reprod. Med.*, 305 F.R.D. 164, 176 (N.D. Cal. 2015); *see also*
      *Ambrosia v. Cogent Commc'ns, Inc.*, 312 F.R.D. 544, 549 n.3 (N.D. Cal. 2016) (Seeborg, J.)
26    (sustaining objection to advocacy couched as expert opinion).

27    [79]   *See* Serwin Decl., at 26-34.

28    [80]   *See* Serwin Decl., ¶¶29-34, 42-58.

2.     **The Simonson Declaration Offers Advocacy Couched as Expert Opinion**

The Simonson Declaration likewise offers pure advocacy on behalf of Dr. Simonson's client *du jour*.  In another case, on behalf of another client, Dr. Simonson conducted a consumer survey and, like Dr. Kamins here, did ***not*** use a control.[81]  In defense of the decision to not use a control in that case, Dr. Simonson testified that "a control group is not required for a survey that purports only to understand what developers ***perceive*** . . . in their decision-making process."[82]  Dr. Simonson's client further explained that "Simonson did not attempt to test the effect of a stimulus, so there was nothing to control for."[83]  These are the exact reasons Dr. Kamins gives for not using a control in this case.  Dr. Simonson, as an advocate for his client in ***this case***, abandons the expert opinion he advanced in *Oracle* and speaks out of the other side of his mouth, arguing, without explanation, that Dr. Kamins' studies required a control.

The Serwin and Simonson Declarations are not expert opinions.  They are more advocacy submitted to circumvent the Local Rules and this Court's Order limiting Valero's class certification opposition to 30 pages.  They should be excluded.

B.     **The Simonson and Serwin Declarations Should Be Excluded Because They Are Irrelevant**

Expert testimony that does not relate to any issue in the case is irrelevant and excludable under *Daubert*.[84]  Both the Simonson and Serwin Declarations propose to offer purported expert opinions that do not relate to any issue in the case and are, thus, irrelevant and excludable.

1.     **The Simonson Declaration Offers Irrelevant Testimony**

The Simonson Declaration purports to offer an opinion that a cause-and-effect study requires a control.[85]  This proposed testimony does not relate to any issue in the case.  Dr. Kamins has

---

[81]   *Oracle*, 2016 WL 1743116, at *9.

[82]   *Id*. (citing Simonson Dep. at 98-99) (emphasis in original).

[83]   *Id.*

[84]   509 U.S. at 591.

[85]   *See* Simonson Decl., ¶¶10, 17, 27.

1 repeatedly testified, and his Declaration and Rebuttal Declaration confirm, that the studies he

2 conducted were ***not*** cause and effect studies.[86]  As detailed above in Section II.A.2, Dr. Simonson

3 argued in another case, on behalf of another client, that a control is not required for the types of

4 surveys Dr. Kamins conducted, *i.e.*, one that does not attempt to study the effect of a stimulus.[87]  The

5 proposed testimony offered by the Simonson Declaration does not speak to the types of surveys that

6 Dr. Kamins conducted here, which Dr. Simonson agrees do not require a control.  Therefore, the

7 purported opinions are irrelevant and should be excluded.

8    The Simonson Declaration also purports to offer testimony that Dr. Kamins' Study 2 is

9 unreliable because it did not test consumer behavior that followed the initial behavior that Study 2

10 was designed to study: whether consumers would naturally identify a debit card on a POS device by

11 pressing a button labeled "ATM/debit" before swiping a debit card.[88]  As discussed above in Section

12 II.B.2(a)(3), this argument is irrelevant because Dr. Kamins Study 2 was designed to study only

13 whether consumer would push the button first and it never claimed to study the entire purchase

14 sequence that allegedly transpires following the point of the process the survey was designed to

15 study.

16    Moreover, as discussed above in Section II.B.2(a)(3), there is no evidence that debit

17 prompting was activated on the Daly City POS device before this action was filed.  Dr. Simonson

18 claims when he purchased gasoline at the Daly City station on June 26, 2017, the POS device

19 prompted for debit.[89]  As Dr. Kamins explains, however, a sample size of one is not reliable or

20 trustworthy.[90]  Indeed, a sample size of one is particularly unreliable here because the evidence

21 suggests that debit prompting, which can be turned on or off at will, was likely turned on at the Daly

22 City station after this action was filed.

23

---

[86] *See* Kamins Rebuttal, ¶¶3, 27, 54(a).

[87] *Oracle*, 2016 WL 1743116, at *9.

[88] *See* Simonson Decl., ¶11.

[89] Simonson Decl., ¶42.

[90] Kamins Decl., ¶41.

1

### 2.     The Serwin Declaration Offers Irrelevant Testimony

2        The Serwin Declaration purports to offer testimony that Mr. Blum's damage model does not

3  reliably calculate damages and restitution because it does not calculate Plaintiff's expectation

4  damages or Valero's net profits.[91]  The measure of damages is a question of law for the Court, not an

5  expert witness.[92]  Thus, the Serwin Declaration's proposed testimony regarding the proper measure

6  of damages is irrelevant to any question that would assist the trier of fact.  Moreover, as detailed

7  above in Section II.B(2)(b)(1) & (2), the measure of damages and restitution advocated in the Serwin

8  Declaration are wrong as a matter of law.  Thus, even if the proper measurement of damages was

9  subject to expert opinion, the wrong opinion offered by the Serwin Declaration is irrelevant and

10  should be excluded.

11

### C.     The Simonson and Serwin Declarations Should Be Excluded Because They Are Unreliable

12        Testimony that suffers from "serious methodological flaws" should be excluded.[93]  The

13  Simonson and Serwin Declarations both suffer from serious methodological flaws that warrant

14  exclusion.

15

### 1.     The Opinions In the Simonson Declaration Are Based on Insufficient Facts and Data and Unreliable Principles or Methods

16

17        The Simonson Declaration is based upon insufficient facts and data and unreliable principles

18  or methods and should be excluded.  The primary opinion expressed in the Simonson Declaration is

19  that Dr. Kamins did not use a control in his surveys.  As detailed above in Section II.A.2, this

20  opinion cannot be based on reliable principles or methods because Dr. Simonson himself expressed

21  the exact opposite opinion on behalf of another client in *Oracle*: "a control group is not required for

22

23

---

24  [91]   Serwin Decl., ¶66.

25  [92]   *Miletak v. Allstate Ins. Co.*, No. C 06- 03778 JW, 2010 WL 809579, at *10 (N.D. Cal. Mar. 5, 2010); *see also In re Litheum Ion Batteries Antitrust Litig.*, No. 13-MD-2420 YGR, 2017 WL 1391491, at *5 (N.D. Cal. Apr. 12, 2017) (experts may not opine on matters of law for the court); *Nationwide Transp. Fin. v. Cass Info. Sys., Inc.*, 523 F.3d 1051, 1058 (9th Cir. 2008) (holding no abuse of discretion to exclude expert report discussing appropriate formula to calculate damages).

26

27  [93]   *Obrey v. Johnson*, 400 F.3d 691, 696 (9th Cir. 2005).

28

1  a survey that purports only to understand what [respondents] perceive[.]"[94]  That is why Dr. Kamins

2  did not use a control in his surveys.  The Simonson Declaration offers purported testimony that is

3  inconsistent with Dr. Simonson's own expert opinions offered in *Oracle*.  Thus, the contradictory

4  opinion offered here cannot be the product of reliable principles or methods and should be excluded.

5          The Simonson Declaration also offers purported opinions that are unreliable as they do not

6  rely on sufficient facts or data.  The Simonson Declaration claims that the design of Dr. Kamins'

7  Study 2 was "flaws" as it was not consistent with Dr. Simonson's own personal experiences at the

8  Daly City station on June 26, 2017, when the POS device allegedly made a debit prompt.[95]  As

9  discussed above in Section III.B.1, a sample size of one is not reliable or trustworthy and, here, does

10  nothing to invalidate Plaintiff's experience alleged in the Complaint, which must be accepted as true.

11  Dr. Simonson made no effort to study the behavior of the POS device at the Daly City station

12  throughout the class period to determine whether class members were prompted to identify a debit

13  card.  Thus, the purported opinion offered by the Simonson Declaration is unreliable and should be

14  excluded.

15              **2.      The Opinions In the Serwin Declaration Are Based on
                        Insufficient Facts and Data and Unreliable Principles or
16                       Methods**

17          The main opinion the Serwin Declaration purports to offer is that Mr. Blum's reliance on

18  Valero Card transactions to determine the "cash" price offered at a station is unreliable because some

19  unidentified number of the 360 Valero stations at issue purportedly "may not consistently follow"

20  Valero's policy that requires stations to charge the cash price on Valero Cards.[96]  This opinion is

21  based on insufficient data and unreliable methods or principles.

22          There is no dispute that Valero stations are, indeed, contractually required to charge the cash

23  price on Valero Card transactions.  Valero's Rule 30(b)(6) representative testified that stations

24

25

---

[94]  *Oracle*, 2016 WL 1743116, at *9.

[95]  Simonson Decl., ¶42.

[96]  Serwin Decl., ¶15.

1   failing to comply risk being debranded.[97]  The purported opinion that some unidentified group of

2   Valero stations violate Valero's policy is based on a review of sales data from five cherry-picked

3   outlier stations that were selected for review precisely because they were known to be outliers.[98]  As

4   Mr. Blum explains: "Serwin's selection of outlier stations seeks to prove a conclusion sought by his

5   client and not one that is supported by proper damage calculation methodologies, which require

6   testing from a sample that fairly represents the entire population."[99]  The opinion of the Serwin

7   Declaration is, therefore, not based on reliable principals or methods.  Indeed, three stations cited in

8   the Serwin Declaration were actually compliant with the Valero Card policy, which explains why

9   any discussion of those stations is absent from the Serwin Declaration.[100]

10  **IV.   CONCLUSION**

11          For the reasons stated herein, Plaintiff respectfully requests that the Court strike Valero's

12  Motion for failure to comply with L.R. 7-3(a).  In the alternative, Plaintiff respectfully requests that

13  Valero's Motion be denied on its merits.

14  DATED:  August 14, 2017                    ROBBINS GELLER RUDMAN
                                                  & DOWD LLP
15                                             STUART A. DAVIDSON (*pro hac vice*)
                                               CHRISTOPHER GOLD (*pro hac vice*)
16                                             JASON H. ALPERSTEIN (*pro hac vice*)

17

18                                                     *s/ Christopher Gold*
                                                   CHRISTOPHER GOLD
19
                                               120 East Palmetto Park Road, Suite 500
20                                             Boca Raton, FL  33432
                                               Telephone:  561/750-3000
21                                             561/750-3364 (fax)

22

23

---

24  [97]   *See* Blum Decl., ¶42 & n.2.

25  [98]   *See* Serwin Decl., ¶¶29-34, 42-58.

26  [99]   Blum Rebuttal, ¶6.

27  [100]  *Compare* Serwin Decl., ¶6 n.34 (citing 6323 Fresno, 8790 Victorville San Jose, and 7100 Galt)
    *with* ¶¶40-58 and Blum Rebuttal, ¶¶31-34.
28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

HOBSON, BERNARDINO + DAVIS LLP
RAFAEL BERNARDINO, JR.
JASON A. HOBSON
725 South Figueroa Street, Suite 3230
Los Angeles, CA  90017
Telephone:  213/235-9190
213/235-9190 (fax)

ROBBINS GELLER RUDMAN
  & DOWD LLP
PATRICK W. DANIELS
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)

ROBBINS GELLER RUDMAN
  & DOWD LLP
ROXANA PIERCE (*pro hac vice*)
1701 K Street NW, Suite 350
Washington, DC  20036
Telephone:  202/822-6762
202/828-8528 (fax)

**Attorneys for Plaintiff and Proposed Class Counsel**