UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

FAITH BAUTISTA,

    Plaintiff,

    v.

VALERO MARKETING AND SUPPLY COMPANY,

    Defendant.

Case No. 15-cv-05557-RS

**ORDER GRANTING MOTION FOR CLASS CERTIFICATION**

## I. INTRODUCTION

Defendant Valero Marketing and Supply Company ("Valero") is a refiner and wholesaler of motor fuels. Valero sells branded fuel to independent distributors or dealers, who in turn sell to the public or re-sell the fuel to third-party station owners (also known as "dealers") who retail to the public. Pursuant to a Distributor Marketing Agreement, Valero grants distributors and dealers the right to use Valero's trade dress and requires them to comply fully with the proper use and display of the Valero brand set out in Valero's Wholesale Branding Manual. Valero's "Pump-A-Discount" campaign provides promotional and marketing materials to stations that practice "split-pricing" by charging higher fuel prices on credit transactions and lower fuel prices on cash transactions. Plaintiff Faith Bautista brings suit against Valero, alleging that these Valero-branded gas stations engage in deceptive advertising with respect to the price per gallon charged for gasoline purchased with a debit card. According to Bautista, Valero signage that advertises a higher "credit" price and a lower "cash" price is misleading because it does not inform consumers

that debit cards will be charged the credit price. Because reasonable consumers consider a debit card to be the same as cash, in plaintiff's view, they expect to be charged the cash price.

Bautista now seeks class certification. In opposition to certification, Valero insists that cash and debit are not the same as a matter of law, and that variations in Valero-branded station sign configurations and pricing policies preclude a showing of common injury. Valero also offers numerous criticisms of the methodology employed by Bautista's experts to ascertain class membership and calculate damages awards. These objections miss the mark. To the extent Valero takes issue with the quality of evidence proffered by Bautista, those questions go to the merits of her claims for relief. At the class certification stage, Bautista need only show that Valero produced marketing materials with a material omission that could mislead a significant portion of the general consuming public. *See Ebner v. Fresh, Inc.*, 838 F.3d 958, 965 (9th Cir. 2016). Because she has met that burden here, and because she has made an adequate showing that the prerequisites of Rule 23 have been satisfied, the motion for class certification will be granted.

## II. BACKGROUND

Around 2008, Valero launched a "Pump-A-Discount" ("PAD") program that created marketing materials for stations to promote a "credit" price and a lower "cash" price. Gold Decl. Ex. 3. The program was designed to help stations save on rising payment processing fees by offering a discount to consumers who paid in cash or with Valero's proprietary credit card ("Valero Card"). Valero stations may select one of the approved signage designs from Valero's Wholesale Branding Manual, or request approval from Valero to use a modified signage design. Bautista contends that during the relevant class period Valero maintained a policy that mandated debit cards be charged at the credit price and not the cash price.[1] In response to feedback from consumers and Valero station owners, at some point Valero added "credit/debit" sign options to

---

[1] Valero asserts that this policy was pursuant to non-discrimination rules imposed by credit card companies. As a result of antitrust investigations by the DOJ, the credit card companies have since withdrawn this rule from their contracts and Valero now says that it does not require non-discrimination between credit and debit, although Valero station owners may continue to charge debit cards at the credit price if they wish.

the PAD brochure, which more clearly indicate that debit and credit cards will be charged the same price. Valero does not supply fuel dispenser decals that specify debit cards do not qualify for the cash price. Some point of service ("POS") devices will charge a debit card the cash price if consumers press a button labeled "ATM/Debit" before swiping their debit card on the card reader. Otherwise, the card is charged at the credit price. Bautista contends this too is misleading because it is not obvious to the consumer that failure to press the button first will result in being charged the credit rather than the cash price.

Bautista asserts that she regularly purchases gasoline from stations advertising the lowest price, including one in Daly City ("Daly City station"). She saw that the Daly City station offered a credit and cash price and assumed that the cash price would apply to her debit card, because she thinks of her debit card as cash. She did not notice an ATM/debit button on her fuel dispenser and claims that she did not know Valero would charge her the credit price on her debit card. It is Bautista's contention that but for Valero's misleading practices, she would not have purchased gasoline from Valero-branded stations with her debit card.

Bautista moves to certify a class of "[a]ll consumers who, between December 3, 2011 and the final disposition of this action, purchased gasoline with a debit card from a Valero-branded station in California that sells gasoline for a 'cash' price and were charged more money per gallon than the available 'cash' price." Bautista alleges that Valero's deceptive and misleading signage violates the Consumer Legal Remedies Act, Cal. Bus. & Prof. Code § 1750 ("CLRA"), California False Advertising Law, Cal. Bus. & Prof. Code § 17500 ("FAL"), and California Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 ("UCL"). She seeks declaratory and injunctive relief on behalf of the class under the UCL and the FAL, and damages and/or restitution under the CLRA, FAL, and UCL.

### III. LEGAL STANDARD

Rule 23 of the Federal Rules of Civil Procedure governs class actions. To obtain class certification, plaintiffs bear the burden of showing they have met each of subsection (a)'s four requirements and at least one requirement from subsection (b). *Zinser v. Accufix Research Inst.*,

Inc., 253 F.3d 1180, 1186, amended by 273 F.3d 1266 (9th Cir. 2001). "A party seeking class certification must affirmatively demonstrate . . . compliance with the Rule." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). Rule 23(a) provides that a district court may certify a class only if: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a).

If all four prerequisites of Rule 23(a) are satisfied, a court must also find that plaintiffs "satisfy through evidentiary proof" at least one of the three subsections of Rule 23(b). *Comcast Corp. v. Behrend,* 133 S. Ct. 1426 (2013). Rule 23(b)(3) permits certification if a court finds that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). "[A] court's class-certification analysis must be 'rigorous' and may 'entail some overlap with the merits of the plaintiff's underlying claim.'" *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 133 S. Ct. 1184, 1194 (2013) (quoting *Wal-Mart*, 564 U.S. at 351); *see also Mazza v. Am. Honda Motor Co., Inc.*, 666 F.3d 581, 588 (9th Cir. 2012) ("Before certifying a class, the trial court must conduct a 'rigorous analysis' to determine whether the party seeking certification has met the prerequisites of Rule 23."). This "rigorous" analysis applies both to Rule 23(a) and Rule 23(b). *See Comcast*, 133 S. Ct. at 1432 (discussing how Congress included "addition[al] . . . procedural safeguards for (b)(3) class members beyond those provided for (b)(1) or (b)(2) class members (e.g., an opportunity to opt out)" and how a court has a "duty to take a 'close look' at whether common questions predominate over individual ones").

Nevertheless, "Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage." *Amgen*, 133 S. Ct. at 1194–95. "Merits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." *Id.* at 1195. If a court concludes that the moving

party has met its burden of proof, the court has broad discretion to certify the class. *Zinser*, 253 F.3d at 1186.

## IV. DISCUSSION

### A. General Considerations

<u>1. Standing</u>

Valero asserts that Bautista lacks standing to bring her claim because she has failed to prove injury in fact. The complaint alleges that but for Valero's deceptive signage, Bautista would have purchased gas at a non-Valero branded gas station. According to Valero, because Bautista has not submitted any evidence that she would have paid a lower price had she gone to a different gas station, she has not suffered injury. Such a showing is unnecessary at this stage. Bautista sufficiently alleged injury by claiming that (1) Valero's PAD signage advertises a cash discount on fuel, and (2) she purchased fuel at a Valero-branded station with her debit card and expected the advertised cash discount to apply. This is enough to establish that Bautista believes she paid an inflated price for the product she purchased and thus suffered an injury.

Valero also claims that causation is lacking because Valero does not have a contractual relationship with the Daly City station, did not select the station's particular PAD signage, and did not mandate or encourage the station to offer a cash discount. In addition, the PAD signage did not cause the injury because the POS device allows a consumer to identify her card as debit and thereby receive the cash price. According to one of Valero's declarants (Serwin), the Daly City station routinely charged debit cards at the cash price, or at least below the credit price. These arguments are unavailing. Because Valero produces the designs for the PAD signage found at the Daly City station, which allegedly misled Bautista as to whether she would receive a cash discount on her debit card, the causal link between Valero's omission and Bautista's injury is sufficiently demonstrated.[2]

---

[2] In the context of a deceptive advertising claim, Valero cannot attempt to disclaim responsibility by arguing that it does not physically manufacture the PAD signs. For the purposes of this litigation, the operative fact is that Valero controls what the signs look like.

Finally, Valero argues that Bautista fails to establish redressability because Valero does not directly acquire retail proceeds from individual stations' sales to consumers and because Valero cannot be forced to compel individual stations to change their signage or pricing policy. On the contrary, money damages are available if Bautista can show that Valero profited from its misleading advertising, and the obvious injunctive relief would require Valero to stop offering PAD signage that does not specify how debit cards will be treated.

### 2. Breadth of Class Definition

Valero objects to the class definition as overbroad because it encompasses individuals who have suffered no injury. The current class definition includes (1) people who purchased gas at a station that correctly displayed a sign indicating the higher price for both credit and debit transactions, (2) people who were provided the option to identify their debit card and failed to do so, and (3) people who received disclosure about the correct price before purchasing gas. Bautista responds that the class definition is correct but excludes individuals who were only ever exposed to signs that clearly specify how debit cards will be treated (e.g. a "credit/debit" label). The other two groups are properly included in the class because they were subject to a material omission as to how debit cards are treated at a split-pricing station. Based on Bautista's articulation of her claims, the class definition is proper and is understood explicitly to exclude anyone who only purchased fuel from stations that did not have misleading signage.

### B. Rule 23(a) and (b)(3) Requirements

### 1. Numerosity

Numerosity is met if the potential class members are so numerous that joinder is impracticable. Fed. R. Civ. P. 23(a)(1). Here, Bautista seeks to certify a class that likely includes thousands of members who purchased fuel with a debit card at one of the 360 Valero stations that offered split-pricing and had misleading PAD signage during the relevant class period. Valero raises the objection that some of the 360 Valero stations identified in Exhibit 12 either have credit/debit signage or do not charge different prices for cash and credit purchases. This issue

goes to the ascertainability of class members rather than numerosity.[3] Even if only some portion of the 360 Valero stations displayed the allegedly misleading signage to the many consumers that use debit cards to purchase fuel, there are likely thousands of qualifying class members. Numerosity is satisfied even if Bautista cannot identify the precise number of class members at this stage.

2. Commonality

"Commonality requires the plaintiff to demonstrate that the class members have suffered the same injury" and that the class claims depend on "a common contention . . . of such a nature that it is capable of classwide resolution." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 131 (2011). Bautista asserts that common questions in this case include: (1) whether Valero's PAD signage would deceive a reasonable consumer, (2) whether Valero's failure to disclose that the credit price applies to debit cards would deceive a reasonable consumer, (3) whether Valero's conduct violates the CLRA, FAL, and UCL, (4) whether Valero's representations and omissions are material, (5) whether Valero is principally liable for the CLRA, FAL, and UCL, (6) whether Valero is liable for aiding and abetting violations of the CLRA, FAL, and UCL, (7) whether Bautista and other class members have sustained monetary loss and the proper measure of that loss, (8) whether Bautista and other class members are entitled to punitive damages, and (9) whether Bautista and class members are entitled to declaratory and injunctive relief.

Valero's opposition mainly challenges the questions regarding consumer deception. First, Valero argues that debit is not the same as cash as a matter of law, citing cases that outline the differences between cash transactions and debit transactions. Such explanations miss the mark because this case is not about whether cash is in fact the same as debit—it is about whether a reasonable consumer *perceives* them to be the same. Although the reasonable consumer standard is an objective one, it is objective as to the existence of the perception, not necessarily its validity.

---

[3] *See Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1126 (9th Cir. 2017) ("In sum, the language of Rule 23 does not impose a freestanding administrative feasibility prerequisite to class certification.").

Valero next contends there is no common injury because Bautista cannot show that all consumers physically see the pricing signage before purchasing gas and because the signage at Valero-branded stations varies too much to establish a uniform misrepresentation. Valero relies primarily on *Mazza v. American Honda Motor Co.*, 666 F.3d 581 (9th Cir. 2012), which decertified a class in part because the allegedly deceptive advertising was not broadly disseminated enough to support an inference that class members relied upon the advertising. *Mazza* did not disturb the general rule that plaintiffs need not demonstrate individualized reliance of every class member, as long as the representative class member can show reliance. The Ninth Circuit focused its criticism on the fact that Honda's "limited scope of [the challenged] advertising" made it doubtful that all class members viewed it. *Mazza*, 666 F.3d at 596. This case is different from *Mazza*. The PAD signage is ubiquitous, and there is no question that every consumer who purchases fuel at a station with objectionable PAD signage is "exposed" to the deceptive advertising. Although there may be variations in the precise configuration of signage that individual class members encounter, Bautista claims that every configuration that does not clearly identify how debit cards are treated is deceptive. Therefore, according to the plaintiff's formulation, the misrepresentations were uniformly made to class members.

Valero next objects to Bautista's reliance on the declaration of his expert, Dr. Kamins, who drew his conclusions primarily from consumer surveys. The basic criticism is that Dr. Kamins's surveys do not reliably establish that Valero's failure to disclose the price treatment of debit cards would deceive a reasonable consumer. Again, there is no need for Bautista to show that every consumer is likely to view the signs and rely upon them in deciding to use their debit cards when purchasing fuel. All she needs to show is that the signs advertise a cash discount on fuel prices and that a substantial number of consumers expect to receive the cash discount when they use their debit cards. Valero also raises objections to numerous aspects of Dr. Kamins's methodology, which go to the weight of the evidence offered, not its admissibility. Moreover, none of Valero's criticisms appear to suggest that an offer of common proof through consumer surveys cannot demonstrate that "a significant portion of the general consuming public or of targeted consumers,

acting reasonably in the circumstances, could be misled." *Lavie v. Procter & Gamble Co.*, 105 Cal. App. 4th 496 (2003).

Because there are a number of different sign configurations and POS device procedures, Valero asserts that it is impossible to resolve individual claims with common proof. According to Valero, "individual inquiry would be needed as to whether at the time class members visited particular stations they were actually offered 'split pricing' or were even branded as Valero stations." Opp. at 18-19. Bautista disagrees, claiming that transactional data from the 360 stations could in fact be used to answer these questions and determine which individuals qualify as class members. Valero's complaints primarily go to the ascertainability of class members or the challenges of calculating individual damage awards, difficulties that are not ordinarily a bar to class certification.

Valero also asserts that Bautista cannot establish a common unlawful practice by Valero because it does not have a contractual relationship with the Daly City station or many other stations in California. For example, Valero often sells fuel to a distributor, who then re-sells the fuel and sub-leases the Valero trade dress to a station owner. According to Valero, because it does not retain title to Valero signs after delivery to station owners, provide an exclusive set of sign options, or mandate the adoption of any particular sign, there is no unlawful practice common across all stations. While Valero fixates on its alleged lack of control over Valero-branded stations, the heart of Bautista's claim is that Valero produced marketing materials that it knew would be used in conjunction with split-pricing at branded stations, and these signs were misleading as to the price treatment of debit cards. Valero does not dispute that it provides marketing and other materials to station owners, or that it designed the PAD program to assist station owners with lowering credit and debit transaction fees. Farias Decl. ¶ 13. Nor does Valero refute Bautista's claim that Valero's Wholesale Branding Manual failed to include signs with a less ambiguous (according to Bautista) credit/debit pricing option. Therefore, Bautista has a sufficient basis upon which to allege that Valero subjected class members to a common unlawful practice.

ORDER GRANTING MOTION FOR CLASS CERTIFICATION
CASE NO. 15-cv-05557-RS
9

### 3. Typicality

"Typicality focuses on the class representative's claim—but not the specific facts from which the claim arose—and ensures that the interest of the class representative aligns with the interest of the class." *Just Film, Inc. v. Buono*, 847 F.3d 1108, 1116 (9th Cir. 2017) (citation and internal quotation marks omitted). "The requirement is permissive, such that representative claims are typical if they are reasonably coextensive with those of absent class members; they need not be substantially identical." *Id.*

Valero argues that Bautista's interests do not align with the class for three reasons: (1) Bautista has not attempted to demonstrate injury at any station other than Daly City, (2) Bautista was only charged the higher credit price on her debit card because she failed to identify her card as a debit card at the POS device, (3) Bautista claims that but for Valero's misrepresentation she would have purchased gas at another station, in contrast to her expert's damages model, and (4) Bautista is subject to a unique defense because she concedes that the POS device actually disclosed the price she was charged on her debit card at the Daly City station.

Bautista strongly disputes the factual bases of Valero's arguments, but even if Valero has correctly stated them, it fails to defeat typicality. It does not matter that Bautista would rather have purchased gas from another station whereas other consumers would rather have paid the cash price at the Valero-branded station. Bautista claims that Valero's ambiguous signage caused her to pay a price higher than what she would reasonably expect, and that this injury is typical of consumers exposed to the signage. Thus, whether or not Bautista was accurately informed of the actual price she was charged is immaterial if she had no reason to think it was the higher credit price. Furthermore, Bautista's failure to identify her debit card is typical of consumers who have no reason to suspect that a debit card would be treated as anything but cash. Bautista has no need to demonstrate injury at any station other than Daly City, since she has alleged in her complaint that the type of omission to which she was exposed is common across many Valero stations.

### 4. Adequacy

Adequacy turns on whether the named plaintiff and class counsel have any conflicts of

interest with other class members, and whether the representative plaintiff and class counsel can vigorously prosecute the action on behalf of the class. Valero asserts that a conflict of interest exists because Bautista lacks an arms-length relationship with class counsel. Because the senior partner of proposed class counsel sits on the board of Bautista's employer, Valero reasons that Bautista is essentially an employee of class counsel. For her part, Bautista vigorously denies Valero's claim that she reports on this litigation directly to her employer and rejects the notion that she has any special relationship with the senior partner in question. Indeed, the essential elements of an employer-employee relationship appear to be lacking in that the partner holds no power to fire Bautista and does not exercise control over her activities.

Valero also criticizes Bautista's ability to prosecute her claims with diligence, quoting snippets of deposition testimony in which Bautista professes her unfamiliarity with the details of this litigation. In fact, Bautista's deposition responses appear to reflect a normal degree of trust in her counsel's ability to handle the complexities of legal process and her understandable reticence to micromanage her lawyers' activities. Therefore, there is no reason to believe Bautista and class counsel cannot adequately represent the interests of the putative class.

5. Predominance and superiority of class resolution

Arguing that common questions of law and fact do not predominate over individual questions in this case, Valero again criticizes Bautista's reliance on Dr. Kamins's opinions, which Valero has moved to strike. As explained above under the commonality analysis, if Bautista is correct about the existence of detailed Valero station pricing data, many of the "serial individualized inquiries on liability" that Valero identifies could in fact be resolved through data analysis.

The parties have significant factual disputes about the validity of the damages model advanced in the declaration of Bautista's damages expert (Blum). There are two main points of disagreement. First, the parties disagree as to whether the damages are properly calculated based on the difference between the price charged to a class member's debit card and the cash price for that day at a given station. Valero interprets Bautista as saying that she would rather have gone to

a different gas station than stay at the Daly City station and pay with cash, had she known her debit card would be charged the credit price. This is not necessarily inconsistent with Bautista's theory of liability because in her view, the actual value of the gas she purchased at the Daly City station was the cash price she had expected to pay. Calculating the difference between the price paid (the credit price) and the "actual value" of the product purchased (the cash price Bautista expected to pay) is therefore a reasonable enough method of estimating damages.

Second, the parties disagree about whether it is appropriate to use the price charged to Valero Cards as a proxy for the cash price on any given day. Dr. Blum's damages model assumes that the Valero card price and the cash price are always the same. Valero contends that in fact, the Valero Card price at certain stations is slightly higher than the cash price, but lower than the credit price. Bautista responds that the Valero Card is a close enough approximation, absent actual records of what the cash price was on any given day. Both parties acknowledge that Valero does require branded stations to charge the cash price on Valero Cards. Farias Decl. ¶ 14. Valero, however, explains that individual stations do not always comply with this policy. On balance, because official policy dictates that a Valero Card be treated like cash, it is an acceptable proxy. Moreover, Valero has little reason to complain about this methodology, since it potentially yields a conservative calculation of damages to Valero's advantage.

Valero also asserts that class resolution is not superior because of the difficulties associated with identifying members of the proposed class. Because of variations in signage and pricing strategy across stations and over time, Valero argues that Bautista's proposed methodology would force class members to recall various details about their gas purchasing activities over the past six years in order to join the class. Bautista on the other hand, claims that data held by Valero will enable her to determine which stations offered split-pricing and had deceptive PAD signage, and during which time periods. Any person who purchased gas from one of the stations during the relevant time periods using a debit card would qualify as a class member. Contrary to Valero's position, there is no need to delve into the inner workings of class members' minds to determine class membership. Valero has not shown that class member identification in this case would be

substantially more unmanageable than in other deceptive advertising cases. Regardless, Rule 23 does not require "a class proponent [to] proffer an administratively feasible way to identify class members." *Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1125 n.4 1126 (9th Cir. 2017). Bautista has made the requisite showing at this stage, even if there some questions at this juncture about whether her proposed method of ascertaining class members is practically feasible.

Finally, Valero claims that the remedy sought by the class would prompt a multiplicity of litigation because Valero would be forced to compel individual branded stations to change their advertising and pricing policies. In fact, the remedy Bautista seeks merely requires Valero to stop producing PAD signage that does not identify how debit cards are treated, an action entirely within Valero's control that would not require further litigation.

### C. Rule 23(b)(2) Requirements

Because Bautista is found to have satisfied the requirements for class certification under Rule 23(b)(3), her alternative motion for certification pursuant to Rule 23(b)(2) is moot.

### V. CONCLUSION

Plaintiff's motion to certify is granted.

**IT IS SO ORDERED**.

Dated: October 4, 2017

_____
RICHARD SEEBORG
United States District Judge