1   ROBBINS GELLER RUDMAN
       & DOWD LLP
2   STUART A. DAVIDSON (*pro hac vice*)
    CHRISTOPHER C. GOLD (*pro hac vice*)
3   JASON H. ALPERSTEIN (*pro hac vice*)
    ERIC S. DWOSKIN (*pro hac vice*)
4   120 East Palmetto Park Road, Suite 500
    Boca Raton, FL  33432
5   Telephone:  561/750-3000
    561/750-3364 (fax)
6   sdavidson@rgrdlaw.com
    cgold@rgrdlaw.com
7   jalperstein@rgrdlaw.com
    edwoskin@rgrdlaw.com
8
    HOBSON, BERNARDINO & DAVIS, LLP
9   RAFAEL BERNARDINO, JR. (118690)
    JASON A. HOBSON (184134)
10  725 South Figueroa Street, Suite 3230
    Los Angeles, CA  90017
11  Telephone:  213/235-9190
    213/235-9197 (fax)
12  rbernardino@hbdlegal.com
    jhobson@hbdlegal.com
13
    Attorneys for Plaintiff and the Class
14
    [Additional counsel appear on signature page.]
15
                    UNITED STATES DISTRICT COURT
16
                    NORTHERN DISTRICT OF CALIFORNIA
17
                    SAN FRANCISCO DIVISION
18

| | | |
|---|---|---|
| 19 | FAITH BAUTISTA, Individually and on Behalf of All Others Similarly Situated, ) | Case No. 3:15-cv-05557-RS |
| 20 | ) Plaintiff, ) | CLASS ACTION |
| 21 | vs. ) | PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANT'S MOTION TO DECERTIFY THE CLASS |
| 22 | VALERO MARKETING AND SUPPLY ) COMPANY, ) | DATE:        October 25, 2018 |
| 23 | ) Defendant. ) | TIME:        1:30 p.m. |
| 24 | ) | CTRM:      3, 17th Floor |
| 25 | ) | JUDGE:     Honorable Richard Seeborg |
| 26 | ) | Accompanying Documents 1. Declaration of Christopher C. Gold |

27

28

**TABLE OF CONTENTS**

**PAGE**

I.    INTRODUCTION ...................................................................................................1

II.   RELEVANT PROCEDURAL HISTORY ...........................................................2

III.  LEGAL STANDARD............................................................................................4

IV.   ARGUMENT IN OPPOSITION TO VALERO'S MOTION .............................5

    A.    Common Questions Still Predominate....................................................5

        1.    The Question of Whether Valero's Deceptive Practices Are Likely to Mislead Members of the Public Still Predominates.................................6

        2.    Whether Valero's Practices Are Material to Consumers Is Still a Common Question ....................................................................................8

        3.    Damages Calculations Still Do Not Defeat Predominance.......................11

        4.    Valero's Voluntary Payment Defense Cannot Defeat Predominance................................................................................16

            a.    The Voluntary Payment Doctrine Does Not Apply to Consumer Claims as a Matter of Law............................16

            b.    The Voluntary Payment Doctrine Is Inconsistent with the Elements of UCL, FAL, and CLRA Claims ................................18

            c.    Valero's Voluntary Payment Defense Is Amenable to Common Proof..................................................................19

    B.    A Class Action Is Still the Superior Method of Adjudication .............................23

    C.    Alternative Certification for Injunctive Relief Under Rule 23(b)(2) Would Be Appropriate.....................................................................24

V.    CONCLUSION.....................................................................................................25

1

**TABLE OF AUTHORITIES**

2

**CASES**                                                                 **PAGE**

3

*Acree v. Gen. Motors Acceptance Corp.*,
    92 Cal. App. 4th 385 (2001) ..................................................................................16

4

5

*Adamson v. ADT, LLC*,
    No. CV 12-10558 DMG, 2014 WL 12551405 (C.D. Cal. Apr. 7, 2014) ...............................17

6

*Algarin v. Maybelline, LLC*,
    300 F.R.D. 444 (S.D. Cal. 2014) .................................................................................7, 9

7

8

*Applegate v. Formed Fiber Tech., LLC*,
    No. 2:10-cv-00473-GZS, 2012 WL 3065542 (D. Me. July 27, 2012) ..........................19, 21

9

*Baker v. Castle & Cooke Homes Haw., Inc.*,
    No. 11-00616 SOM-RLP, 2014 WL 1669158 (D. Haw. Apr. 28, 2014) ..............................20

10

11

*Baraza v. C. R. Bard Inc.*,
    322 F.R.D. 369 (D. Ariz. 2017) .................................................................................17, 19

12

*Bautista v. Valero Mktg. & Supply Co.*,
    322 F.R.D. 509 (N.D. Cal. 2017).................................................................................. *passim*

13

14

*Berrien v. New Raintree Resorts Int'l, LLC*,
    276 F.R.D. 355 (N.D. Cal. 2011)....................................................................................20

15

*Bowerman v. Field Asset Servs., Inc.*,
    No. 13-cv-00057-WHO, 2015 WL 5569061 (N.D. Cal. Sept. 21, 2015)..........................3, 15

16

17

*Bradach v. Pharmavite, LLC*,
    735 F. App'x 251 (9th Cir. 2018) ................................................................................1, 13

18

*Briseno v. ConAgra Foods, Inc.*,
    844 F.3d 1121 (9th Cir. 2017) .......................................................................................23

19

20

*Bruno v. Quten Research Inst., LLC*,
    280 F.R.D. 524 (C.D. Cal. 2011) ..................................................................................19

21

22

*Bruton v. Gerber Prods. Co.*,
    No. 12-CV-02412-LHK, 2018 WL 1009257 (N.D. Cal. Feb. 13, 2018)..............................11

23

*Cal. v. Infineon Techs. AG*,
    No. C 06-4333 PJH, 2008 WL 4155665 (N.D. Cal. Sept. 5, 2008)....................................11

24

25

*Cameron v. E.M. Adams & Co.*,
    547 F.2d 473 (9th Cir. 1976) .......................................................................................20

26

27

28

1

**CASES**                                                                            **PAGE**

*Campbell v. City of Los Angeles*,
   No. 15-56990, 2018 WL 4354379 (9th Cir. Sept. 13, 2018) ...................................7, 10, 12, 14

*Campbell v. Facebook Inc.*,
   315 F.R.D. 250 (N.D. Cal. 2016) ............................................................................................24

*Carnegie v. Household Int'l, Inc.*,
   376 F.3d 656 (7th Cir. 2004) (Posner, J.) ..............................................................................24

*Chowning v. Kohl's Dep't Stores, Inc.*,
   No. CV 15-08673 RGK (SPx), 2016 WL 1072129 (C.D. Cal. Mar. 15, 2016).....................11

*Comcast Corp. v. Behrend*,
   569 U.S. 27 (2013) ..................................................................................................................14

*Day v. Celadon Trucking Servs., Inc.*,
   827 F.3d 817 (8th Cir. 2016) ....................................................................................................5

*Doe v. Karadzic*,
   192 F.R.D. 133 (S.D.N.Y. 2000) ..............................................................................................4

*Eisel v. Midwest BankCentre*,
   230 S.W.3d 335 (Mo. 2007) ....................................................................................................17

*Ellsworth v. U.S. Bank, N.A.*,
   No. C 12-02506 LB, 2014 WL 2734953 (N.D. Cal. June 13, 2014) .......................................20

*Etter v. Allstate Ins. Co.*,
   323 F.R.D. 308 (N.D. Cal. 2017)................................................................................13, 19, 21

*Fink v. Time Warner Cable*,
   810 F. Supp. 2d 633 (S.D.N.Y. 2011).....................................................................................18

*Frank Music Corp. v. Metro-Goldwyn-Mayer, Inc.*,
   772 F.2d 505 (9th Cir. 1985) ...................................................................................................14

*Greenhaw v. Lubbock Cty. Beverage Ass'n*,
   721 F.2d 1019 (5th Cir. 1983) .............................................................................................13, 14

*Gutierrez v. Wells Fargo & Co.*,
   622 F. Supp. 2d 946 (N.D. Cal. 2009) ....................................................................................18

*Hadley v. Kellogg Sales Co.*,
   No. 16-CV-04955-LHK, 2018 WL 3954587 (N.D. Cal. Aug. 17, 2018).......................6, 8, 10

*Hagerman v. Yukon Energy Corp.*,
   839 F.2d 407 (8th Cir. 1988) ...............................................................................................4, 22

PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANT'S MOTION TO DECERTIFY THE CLASS -
3:15-cv-05557-RS                                                                   - iii

CASES                                                                    PAGE

*Hanlon v. Chrysler Corp.*,
   150 F.3d 1011 (9th Cir. 1998) ........................................................................23, 24

*Hinojos v. Kohl's Corp.*,
   718 F.3d 1098 (9th Cir. 2013) ..............................................................................9

*Hoxworth v. Blinder, Robinson & Co.*,
   980 F.2d 912 (3d Cir. 1992)..................................................................................19

*Huch v. Charter Commc'ns, Inc.*,
   290 S.W.3d 721 (Mo. 2009) .................................................................................17

*Hunt Foods, Inc. v. Phillips*,
   248 F.2d 23 (9th Cir. 1957) ..................................................................................14

*In re 5-Hour Energy Mktg. & Sales Practices Litig.*,
   No. ML132438PSGPLAX, 2017 WL 2559615 (C.D. Cal. June 7, 2017) ..............9

*In re Checking Account Overdraft Litig.*,
   No. 1:09-MD-02036-JLK, 2012 WL 12877718 (S.D. Fla. May 16, 2012).......20, 21

*In re Checking Account Overdraft Litig.*,
   307 F.R.D. 630 (S.D. Fla. 2015) .....................................................................20, 21

*In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*,
   No. M 02-1486 PJH, 2006 WL 1530166 (N.D. Cal. June 5, 2006)...................12, 14

*In re High-Tech Emp. Antitrust Litig.*,
   289 F.R.D. 555 (N.D. Cal. 2013) ..........................................................................11

*In re Korean Ramen Antitrust Litig.*,
   No. 13-cv-04115-WHO, 2018 WL 1456618 (N.D. Cal. Mar. 23, 2018) .............4, 5

*In re: Lenovo Adware Litig.*,
   No. 15-md-02624-RMW, 2016 WL 6277245 (N.D. Cal. Oct. 27, 2016).......5, 13, 15

*In re Myford Touch Consumer Litig.*,
   291 F. Supp. 3d 936 (N.D. Cal. 2018) ...................................................................14

*In re Myford Touch Consumer Litig.*,
   No. 13-cv-03072-EMC, 2018 WL 3646895 (N.D. Cal. Aug. 1, 2018) ................4, 5

*In re Optical Disk Drive Antitrust Litig.*,
   No. 10-md-02143-RS, 2017 WL 6448192 (N.D. Cal. Dec. 18, 2017) .....................5

*In re Scotts EZ Seed Litig.*,
   304 F.R.D. 397 (S.D.N.Y. 2015) ..........................................................................17

1

**CASES**                                                                           **PAGE**

2
*In re SFPP Right-of-Way Claims*,
3
    2016 WL 2378363 (C.D. Cal. May 23, 2017) ........................................................17

*In re Sugar Indus. Antitrust Litig.*,
4
    MDL No. 201, 1976 WL 1374 (N.D. Cal. May 21 1976) ................................13, 16
5
*In re Tobacco II Cases*,
6
    46 Cal. 4th 298 (2009) ...............................................................................9, 10

7
*In re Visa Check/MasterMoney Antitrust Litig.*,
    280 F.3d 124 (2d Cir. 2001)........................................................................20
8
*In re Western Liquid Asphalt Cases* [1973-2 TRADE CASES P 74,733, 75,081],
9
    487 F.2d 191 (9th Cir. 1973) ......................................................................13

10
*Indoor Billboard/Wash., Inc. v. Integra Telecom of Wash., Inc.*,
11
    162 Wash. 2d 59 (2007)..............................................................................17

12
*Jimenez v. Allstate Ins. Co.*,
    No. LA CV10-08486 JAK (FFMx), 2012 WL 1366052
13
    (C.D. Cal. Apr. 18, 2012)...........................................................................21

14
*Just Film, Inc. v. Buono*,
15
    847 F.3d 1108 (9th Cir. 2017) .....................................................................11

16
*Lambert v. Nutraceutical Corp.*,
    870 F.3d 1170 (9th Cir. 2017) .......................................................................5
17
*Lane v. Wells Fargo Bank, N.A.*,
18
    No. C 12-04026 WHA, 2013 WL 3187410 (N.D. Cal. June 21, 2013)............19, 21

19
*League of United Latin Am. Citizens, Council No. 4434 v. Clements*,
20
    999 F.2d 831 (5th Cir. 1993) .......................................................................21

21
*Lee v. Enter. Leasing Co.-W., LLC*,
    30 F. Supp. 3d 1002 (D. Nev. 2014)..............................................................17
22
*Living Designs, Inc. v. E.I. Dupont de Nemours & Co.*,
23
    431 F.3d 353 (9th Cir. 2005) .......................................................................14

24
*Marlo v. United Parcel Serv., Inc.*,
    639 F.3d 942 (9th Cir. 2011) ........................................................................5
25
*O'Connor v. Boeing N. Am., Inc.*,
26
    197 F.R.D. 404 (C.D. Cal. 2000) ..................................................................17

27
*On the House Syndication, Inc. v. Fed. Exp. Corp.*,
28
    203 F.R.D. 452 (S.D. Cal. 2001) .............................................................19, 21

1  **CASES**                                                                 **PAGE**

2  *Parkinson v. Hyundai Motor Am.*,
       258 F.R.D. 580 (C.D. Cal. 2008) ...........................................................................19
3

4  *Pettit v. Procter & Gamble Co.*,
       No. 15-cv-02150-RS, 2017 WL 3310692 (N.D. Cal. Aug. 3, 2017).........................6, 7, 12, 14

5
   *Pierce-Nunes v. Toshiba Am. Info. Sys., Inc.*,
6      No. CV 14-7242-DMG (KSX), 2016 WL 5920345 (C.D. Cal. June 23, 2016) ......................9

7  *Pratt v. Smart Corp.*,
       968 S.W.2d 868 (Tenn. Ct. App. 1997) ..............................................................17
8

9  *Ramirez v. Smart Corp.*,
       371 Ill.App.3d 797 (2007) ...............................................................................17

10
   *Ramirez v. Trans Union, LLC*,
11     No. 12-cv-00632-JSC, 2017 WL 5153280 (N.D. Cal. Nov. 7, 2017) .................................3, 15

12 *Ries v. Ariz. Beverages USA LLC*,
       287 F.R.D. 523 (N.D. Cal. 2012).................................................................... *passim*
13

14 *Rodman v. Safeway Inc.*,
       125 F. Supp. 3d 922 (N.D. Cal. 2015), *aff'd*, 694 F. App'x 612 (9th Cir. 2017) ..............16, 18

15
   *Smilow v. Sw. Bell Mobile Sys., Inc.*,
16     323 F.3d 32 (1st Cir. 2003).......................................................................15, 19, 21

17 *Smith v. Univ. of Wash., Law Sch.*,
       233 F.3d 1188 (9th Cir. 2000) .........................................................................24
18

19 *Sobel v. Hertz Corp.*,
       698 F. Supp. 2d 1218 (D. Nev. 2010), *vacated as moot*,
20     674 F. App'x 663 (9th Cir. 2017) ....................................................................17

21 *Soule v. Hilton Worldwide, Inc.*,
       1 F. Supp. 3d 1084 (D. Haw. 2014) .................................................................17
22

23 *Spann v. J.C. Penney Corp.*,
       307 F.R.D. 508 (C.D. Cal. 2015) .....................................................................22

24 *Steinman v. Malamed*,
       185 Cal. App. 4th 1550 (2010) .......................................................................17
25

26 *Story Parchment Co. v. Paterson Parchment Paper Co.*,
       282 U.S. 555 (1931).........................................................................................14

27
   *Strother v. S. California Permanente Med. Grp.*,
28     79 F.3d 859 (9th Cir. 1996) ............................................................................18

**CASES** **PAGE**

*Sullivan v. Kelly Servs.*, Inc.,
    268 F.R.D. 356 (N.D. Cal. 2010) ........................................................................ 13

*Tyson Foods, Inc. v. Bouaphakeo*,
    __ U.S. __, 136 S. Ct. 1036 (2016) ................................................................ 5, 20

*U.S. Bank Nat'l Ass'n v. PHL Variable Ins. Co.*,
    No. 12 Civ. 6811(CM)(JCF), 2014 WL 2199428 (S.D.N.Y. May 23, 2014) ........................ 18

*Williams v. Sinclair*,
    529 F.2d 1383 (9th Cir. 1975) ........................................................................ 19

*Zeisel v. Diamond Foods, Inc.*,
    No. C 10-01192 JSW, 2011 WL 2221113 (N.D. Cal. 2011) ................................ 13, 16

**STATUTES, RULES AND REGULATIONS**

California Business & Professional Code
    §17002 ........................................................................................................ 17

California Civil Code
    §1751 ......................................................................................................... 18
    §1760 ......................................................................................................... 17

Federal Rules of Evidence
    Rule 703 .................................................................................................... 13

Federal Rules of Civil Procedure
    Rule 23 ........................................................................................................ 5
    Rule 23(b) ................................................................................................... 24
    Rule 23(b)(2) ............................................................................................... 24
    Rule 23(b)(3) ........................................................................................ *passim*
    Rule 23(f) ................................................................................................. 1, 2

**SECONDARY AUTHORITIES**

E. Zitzewitz, *Do Gas Prices Vote for the Right? Political Contributions v. Price
    Distortions* (Apr. 2013), https://www.dartmouth.edu/~ericz/gasprices.pdf ............................ 9

S. Cunningham, *High Gasoline Pump Prices May Magnify Presidential
    Disapproval*, Bloomberg (July 5, 2018),
    https://www.bloomberg.com/news/articles/2018-07-05/high-gasoline-pump-
    prices-may-magnify-presidential-disapproval ........................................................ 9

3 *Newberg on Class Actions* §7:39 (5th ed.) ................................................................ 4

## I.     INTRODUCTION

In this certified consumer class action, Plaintiff Faith Bautista ("Plaintiff") alleges that Defendant Valero Marketing and Supply Company ("Valero") violated California's Unfair Competition Law ("UCL"), False Advertising Law ("FAL"), and Consumer Legal Remedies Act ("CLRA") by creating and distributing signage and marketing materials that are likely to deceive members of the public as to the price that is charged on debit card purchases of gasoline (*i.e.*, "cash" or "credit").  It is black letter law that these statutes do not require any individualized proof, which is why courts uniformly recognize that such claims are "ideal for class certification[.]"  *Bradach v. Pharmavite, LLC*, 735 F. App'x 251, 254-55 (9th Cir. 2018).[1]  This case is the paradigm of a consumer action that is ideal for class certification.  Thus, this Court had little trouble granting class certification in October 2017.

Valero did not file a Rule 23(f) petition to review this Court's certification Order.  Yet Valero now moves to decertify the Class, offering the same exact arguments that this Court rejected when certifying the Class last year.  *See* ECF No. 173 ("Motion" or "Mot.").  In fact, Valero's only new argument is based on a meritless voluntary payment defense that Valero could have raised before this Court granted certification.  Valero cannot meet its burden to show that the Court should reconsider its prior Class certification ruling by raising new legal theories that should have been raised earlier in the case.  Furthermore, as detailed below, Valero's voluntary payment defense not only lacks any evidentiary support, but even if it had support, common issues would still predominate.

This Court's Class certification Order held that Valero's "objections miss the mark."  *Bautista v. Valero Mktg. & Supply Co.*, 322 F.R.D. 509, 512 (N.D. Cal. 2017).  Valero's objections still miss the mark.  Valero's Motion should be denied for the reasons detailed below.  However, if Valero's Motion is granted, Class certification should not be disturbed with respect to Plaintiff's unfair practices claim under the UCL, which Valero's Motion does not address.

---

[1]     Citations, internal quotations, and footnotes omitted and emphasis added, unless noted otherwise.

## II.     RELEVANT PROCEDURAL HISTORY

Plaintiff filed the operative Second Amended Class Action Complaint on September 23, 2016. ECF No. 69 ("SAC").  Fact discovery closed on August 7, 2017.  ECF No. 68.  On October 4, 2017, the Court denied Valero's motion to strike Plaintiff's experts and certified the following Class under Rule 23(b)(3), as amended on July 16, 2018: "All persons who, between December 3, 2011 and the final disposition of this action, purchased gasoline using a debit card at a Valero-branded station in California that does not disclose how gasoline purchased with a debit card is priced, and were charged more money per gallon than the advertised 'cash' price."  ECF No. 123 at 3 *as amended by* ECF No. 152 at 6.  Valero **did not** file a petition under Rule 23(f) of the Federal Rules of Civil Procedure for review of this Court's Class certification Order.

Despite this Court's denial of Valero's request to bifurcate discovery, *see* ECF No. 36 at 7, Valero refused to produce any discovery related to the Valero stations at issue – which it considered to be "class discovery" – until it was ordered to do so by Magistrate Judge Kim.  *See* ECF No. 112. Judge Kim ordered Valero to produce all such "class" discovery by September 28, 2017.  *Id.*  After analyzing Valero's September 28, 2017 production of sales data for 360 Valero stations potentially at issue, Plaintiff's damages expert, Sidney P. Blum (a renowned forensic accountant), concluded that the data Valero produced was corrupt, such that it was worthless for the purpose of calculating damages or reliably determining which of the 360 stations potentially at issue, in fact, charged a "credit" price on debit cards rather than an available "cash" price.  Valero acknowledged this fact and agreed to re-produce the data that Judge Kim ordered be produced on September 28, 2017, but Valero did not complete its re-production *until May 2018* (ECF No. 137 at 3) – the same time that Plaintiff filed her original motion for approval of Class notice.  *See* ECF No. 136.

Because of Valero's failure to timely produce discovery that relates to the heart of this case, Plaintiff was forced to prepare her Class notice plan without the benefit of full discovery.  Thus, Plaintiff put forth the best notice practicable under the circumstances and identified a group of 297 Valero stations that were likely at issue, which were included in a list of relevant stations that was attached as an exhibit to the Class notice plan.  *See* ECF No. 136, Exhibit E.

1    Valero did not even acknowledge the existence of the list of relevant stations for Class notice

2    – much less articulate any objections to the stations on the list – until it did so for the ***first time*** in a

3    ***sur-reply*** to Plaintiff's motion to approve Class notice.  *See* ECF No. 147.  Based on those objections,

4    this Court denied Plaintiff's motion without prejudice to resubmit a revised station list within 14 days,

5    accompanied by an explanation of how the list was created, along with evidentiary support.  ECF No.

6    152 at 7.  The Court further encouraged the parties to meet and confer, and if possible, to stipulate

7    over the station list.  *Id.*

8    Following this Court's Order, the parties began meeting and conferring over the Class notice

9    station list, which was the first time that Plaintiff learned of Valero's specific objections.  *See* ECF

10   No. 177-9 to 177-10.  In an effort to obtain a stipulation from Valero before the 14-day deadline to

11   refile her motion, Plaintiff worked quickly to address Valero's recently articulated objections.  By

12   that time, Valero had also ***finally*** completed its re-production of sales data, which allowed Plaintiff to

13   further narrow the list of relevant Valero stations to 197 stations.  When Plaintiff presented the

14   updated Class notice station list to Valero, she made clear that the law allows the Class notice station

15   list to be broader than the Class definition and expressly reserved "all rights to revise and/or amend"

16   the list.  ECF No. 177-10 ("Under the circumstances, this constitutes the best notice practicable.");

17   *Bowerman v. Field Asset Servs., Inc.*, No. 13-cv-00057-WHO, 2015 WL 5569061, at *4 (N.D. Cal.

18   Sept. 21, 2015) ("[The best notice practicable under the circumstances was notice to a group that was

19   ***broader than the class definition*** but included the complete universe of class members. This was ***an***

20   ***acceptable and unremarkable method*** of delivering notice to the class.").

21   Valero stipulated to the Class notice station list, and demanded that Plaintiff explicitly agree

22   that the list "is ***not determinative as to any disputed factual issues or issues of liability or damages***."

23   ECF No. 161.  Plaintiff agreed to Valero's demand, but she advised that such a stipulation was a mere

24   formality because Plaintiff is not required to prove her case at the class notice stage, and the law does

25   not bind Plaintiff's case to the contours of class notice.  *See Ramirez v. Trans Union, LLC*, No. 12-cv-

26   00632-JSC, 2017 WL 5153280, at *10 (N.D. Cal. Nov. 7, 2017) ("Trans Union's argument that the

27   class size should be corrected to reflect only those class members who actually received notice is

28   unavailing.  Rule 23 requires the best notice that is practicable under the circumstances and it does

1    not limit the class to only those who received notice."). Plaintiff did not stipulate that any issue "must

2    be litigated at trial, station-by-station," as Valero claims. Mot. at 1. That is a ridiculous assertion that

3    defies common sense.

4        After the parties stipulated to the Class notice station list, Plaintiff continued to work with her

5    experts and to analyze the evidence to prepare her case for trial. Through her trial preparation,

6    Plaintiff identified the 192 Valero stations that indisputably charged debit cards at the "credit" price

7    during the Class Period, without full disclosure, from which damages for the Class should be

8    calculated at trial. Plaintiff proposed that the parties stipulate to update the Class notice station list,

9    but Valero refused unless Plaintiff agreed to unreasonable modifications of the case schedule, which

10   were in no way warranted. Thus, due to Valero's refusal to cooperate, Class notice was published as

11   ordered by the Court, with the Class notice station list to which Valero previously stipulated, which

12   was slightly broader than the Class definition, not "inaccurate," as Valero claims (Mot. at 9).

13   **III.    LEGAL STANDARD**

14       A court should not disturb its prior class certification absent "some significant intervening

15   event" or "a showing of compelling reasons to reexamine the question." *Doe v. Karadzic*, 192 F.R.D.

16   133, 136-37 (S.D.N.Y. 2000); *In re Myford Touch Consumer Litig.*, No. 13-cv-03072-EMC, 2018

17   WL 3646895, at *1 (N.D. Cal. Aug. 1, 2018) ("[D]ecertification and modification should theoretically

18   *only take place after some change*, unforeseen at the time of the class certification, that makes

19   alteration of the initial certification decision necessary."); *In re Korean Ramen Antitrust Litig.*, No.

20   13-cv-04115-WHO, 2018 WL 1456618, at *2 (N.D. Cal. Mar. 23, 2018) ("[A] defendant seeking

21   decertification or modification ought to be required to make *some showing of changed*

22   *circumstances or law*, which would then trigger a plaintiffs' obligation to defend certification.")

23   (citing 3 *Newberg on Class Actions* §7:39 (5th ed.)).

24       A motion to decertify does not provide the defendant with "the occasion to tender new legal

25   theories for the first time," or to argue facts or law that were available to the moving party at the time

26   of the original hearing, and which could have been argued at the time. *Hagerman v. Yukon Energy*

27   *Corp.*, 839 F.2d 407, 414 (8th Cir. 1988); *see also Korean Ramen*, 2018 WL 1456618, at *2

28   ("[W]here defendant had a full and fair opportunity to contest class certification and district court

1  addressed the objections that defendant raised, principles of fair adjudication require Celadon to

2  provide good reason before the district court revisits the issue.") (citing *Day v. Celadon Trucking*

3  *Servs., Inc.*, 827 F.3d 817, 832 (8th Cir. 2016)).

4       "The burden of showing why [the Court] should consider decertification falls squarely on the

5  shoulders of defendants." *Korean Ramen*, 2018 WL 1456618, at *2.[2] And defendant's burden is a

6  "***heavy***" one, because "doubts regarding the propriety of class certification should be resolved in

7  favor of certification." *In re Optical Disk Drive Antitrust Litig.*, No. 10-md-02143-RS, 2017 WL

8  6448192, at *1 (N.D. Cal. Dec. 18, 2017).

9  **IV.    ARGUMENT IN OPPOSITION TO VALERO'S MOTION**

10      **A.    Common Questions Still Predominate**

11      This Court has already held that common issues predominate in this case. *Bautista*, 322

12  F.R.D. at 518. Valero now claims, as it did before, that "individualized issues" predominate, but it

13  appears that Valero simply does not understand the law related to California's consumer protection

14  statutes and the predominance inquiry.

15      "The predominance inquiry asks whether the common, aggregation-enabling, issues in the

16  case are more prevalent or important than the non-common, aggregation-defeating, individual issues."

17  *Tyson Foods, Inc. v. Bouaphakeo*, __ U.S. __, 136 S. Ct. 1036, 1045 (2016). "When one or more of

18  the central issues in the action are common to the class and can be said to predominate, the action

19  may be considered proper under Rule 23(b)(3)[.]" *Id.* Common questions will predominate, "even

20  though other important matters will have to be tried separately, such as damages or some affirmative

21  defenses peculiar to some individual class members." *Id.* "The predominance inquiry begins with the

22  elements of the underlying causes of action." *In re: Lenovo Adware Litig.*, No. 15-md-02624-RMW,

23  2016 WL 6277245, at *17 (N.D. Cal. Oct. 27, 2016).

24

25  [2]   "Although in *Lambert v. Nutraceutical Corp.*, 870 F.3d 1170, 1182 (9th Cir. 2017), the Ninth
    Circuit stated that '[t]he party seeking to maintain class certification bears the burden of
26  demonstrating that the Rule 23 requirements are satisfied, even on a motion to decertify,' *id.* (citing
    *Marlo v. United Parcel Serv., Inc.*, 639 F.3d 942, 947 (9th Cir. 2011)), the question of burden does
27  not appear to have been squarely before the Court. After both *Marlo* and *Lambert*, ***district courts***
    ***have continued to impose the burden on a defendant*** to show that decertification is warranted[.]"
28  *Myford*, 2018 WL 3646895, at *1 (collecting cases).

1   Valero's Motion identifies many purportedly "individualized issues," to be sure, but none of

2   them relate to any of the elements that Plaintiff must prove to prevail.  Thus, the purportedly

3   "individualized issues" that Valero raises are not even relevant to the predominance analysis.  Indeed,

4   "deception and materiality under the FAL, CLRA, and UCL are objective questions, [that] are ideal

5   for class certification because they will not require the court to investigate class members' individual

6   interaction with the [challenged] product[s]." *Hadley v. Kellogg Sales Co.*, No. 16-CV-04955-LHK,

7   2018 WL 3954587, at *21 (N.D. Cal. Aug. 17, 2018).  Thus, "variation in the circumstances

8   underlying each putative class members' claims have marginal legal significance for purposes of state

9   law[.]" *Ries v. Ariz. Beverages USA LLC*, 287 F.R.D. 523, 538 (N.D. Cal. 2012).

10   Valero's assertion that individual issues predominate ignores all of this well-settled law, so it

11   should be rejected.

             **1.**       **The Question of Whether Valero's Deceptive Practices Are**
                         **Likely to Mislead Members of the Public Still Predominates**

14   Valero asserts that Plaintiff cannot show that its "signage is likely to mislead reasonable

15   consumers on a class-wide basis." Mot. at 19.  That is, quite frankly, nonsense.  The "question [of]

16   whether a significant portion of the public or targeted consumers acting reasonably could be misled

17   [is] plainly . . . capable of resolution on a class-wide basis[.]" *Pettit v. Procter & Gamble Co.*, No.

18   15-cv-02150-RS, 2017 WL 3310692, at *1 (N.D. Cal. Aug. 3, 2017).  Ironically, Valero ***relies on***

19   ***common proof*** to support its assertion: competing consumer surveys conducted by each party's

20   expert. *See id.* at *4 (noting that defendant did not "advance any argument that the relevant question

21   simply is not susceptible to class-wide resolution through proof in the form of a consumer survey").

22   Nevertheless, Valero contends that, "[a]s a matter of law, whether the signage was misleading

23   cannot be determined on a class-wide basis" because 42% of the respondents in Plaintiff's consumer

24   survey indicated that they would have expected the "credit" price to apply to a debit card, rather than

25   the "cash" price. Mot. at 20.  But the law is clear that Plaintiff "has no burden to establish that . . . all

26   or nearly all [consumers] shared any specific belief." *Id.* at *3.  Rather, Plaintiff "can prevail through

27   an objective showing of a probability that a significant portion of the relevant consumers acting

28   reasonably could be misled." *Id.*  Plaintiff's consumer survey evidence plainly meets this burden by

PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANT'S MOTION TO DECERTIFY THE CLASS -
3:15-cv-05557-RS

1  showing that **61% of respondents** would have been misled by Valero's signage (58% believing the

2  "credit" price would apply, and 3% not knowing which price would apply). ECF No. 189-13 at ¶47.[3]

3      To be sure, Valero submits a competing survey that it claims shows a majority of respondents

4  would not be misled.  As detailed in Plaintiff's pending *Daubert* motion, ECF No. 211, at 31-33,

5  Valero's survey is not probative of any issue because it did not test whether respondents believed the

6  "cash" or "credit" price would apply to a debit card.  Rather, Valero's survey simply asked

7  respondents to confirm the obvious: that Valero's signage does not explicitly display a "debit" price.

8  But each party's dispute with the other's survey evidence is irrelevant to the predominance inquiry.

9  Instead, "these arguments go to the weight of the evidence and may provide fertile ground for cross-

10  examination at trial, [but] they do not render the evidence inadmissible nor otherwise support denial

11  of class certification." *Pettit*, 2017 WL 3310692, at *4; *see also Campbell v. City of Los Angeles*, No.

12  15-56990, 2018 WL 4354379, at *20 (9th Cir. Sept. 13, 2018) ("[T]he district court may not, on a

13  merits-dependent decertification motion, weigh evidence going to the merits.").  Indeed, this Court

14  already rejected Valero's objections at class certification.  *See Bautista*, 322 F.R.D. at 516 ("[N]one

15  of Valero's criticisms appear to suggest that an offer of common proof through consumer surveys

16  cannot demonstrate that a significant portion of the general consuming public or of targeted

17  consumers, acting reasonably in the circumstances, could be misled.").

18      Furthermore, Valero's assertion that Plaintiff's consumer survey is the "only evidence" on

19  whether its practices are likely to deceive is wishful thinking.  *See* Mot. at 20.  As detailed in

20  Plaintiff's opposition to Valero's summary judgment motion (filed herewith), there are four other

21  types of evidence in the record – all common to the Class – from which a jury can reasonably

22  conclude that a significant portion of the relevant consumers could be misled by Valero's practices:

23  (1) Valero's deceptive signage and marketing materials themselves (SAC, Exs. A and G);

---

24  [3]  The fact that Plaintiff submits a consumer survey showing that the majority of respondents would

25  have been misled by Valero's signage distinguishes this case from the case that Valero cites, *Algarin v. Maybelline, LLC*, 300 F.R.D. 444 (S.D. Cal. 2014), where the only unrebutted evidence in the

26  record was a consumer survey by the defendant showing that only 14% of respondents would have been misled by the challenged practices.  Nevertheless, and with all due respect, the *Algarin* court got

27  it wrong.  Even if the consumer survey in that case showed a minimal likelihood of misleading the public, the survey is still common evidence that would have disproved the claims of the plaintiff and

28  the class in one stroke.

1    (2) Plaintiff's own experiences (ECF No. 198-6, "Bautista Depo."); (3) complaints that Valero

2    received from "a lot" customers indicating that its practices are considered deceptive by the "general

3    public" (ECF Nos. 197-2 through 197-10; 198-2 through 198-3); and (4) consumer-oriented media

4    that supports consumers' reasonable belief that a debit card is like cash and will be charged like cash

5    (¶¶25, 28-29).

6        But even if Valero were "correct in its assertion that Plaintiff has failed to provide sufficient

7    evidence of deception and materiality, that failure has no bearing on whether common questions will

8    predominate over individual questions in the instant case." *Hadley*, 2018 WL 3954587, at *21.

9    "Instead, the failure of proof on the element[s] of [deception and] materiality would end the case for

10   one and for all; no claim would remain in which individual . . . issues could potentially predominate."

11   *Id.*

12       At bottom, Valero's assertion that individual issues predominate with respect to a question

13   that is universally regarded as being amenable to classwide resolution is dumbfounding.  As this

14   Court held on Class certification, there are no individual questions related to whether Valero's

15   practices are likely to deceive members of the public.  Valero has failed to offer any reason why this

16   Court's holding should be disturbed.

17           **2.      Whether Valero's Practices Are Material to Consumers Is Still**
                       **a Common Question**
18

19       Valero's argument with respect to the materiality inquiry is equally misguided.  Valero asserts

20   that "the ***unrefuted*** evidence shows that the Valero-branded signage was ***not*** material to consumers'

21   decisions about purchasing gas[.]"  Mot. at 17 (emphasis in original).  The last time Valero attempted

22   to raise this argument on Class certification, it did not pass the "common sense test, quite frankly."

23   Ex. 3 ("Class Cert. Tr.") at 5:7-13; *id*. at 5:22-6:1.[4]  And it still does not pass the common sense test.

24       The objective test for materiality is well established.  A representation is material if: (1) "a

25   reasonable consumer would attach importance to it"; or (2) "if the maker of the representation knows

26   or has reason to know that its recipient regards or is likely to regard the matter as important in

27   _____

28   [4]   Citations to "Ex. ___" refer to exhibits to the Declaration of Christopher C. Gold, filed herewith.

1   determining his choice of action." *Hinojos v. Kohl's Corp.*, 718 F.3d 1098, 1107 (9th Cir. 2013).[5]

2   "[M]ateriality is generally a question of fact unless the fact misrepresented is so obviously

3   unimportant that the jury could not reasonably find that a reasonable man would have been influenced

4   by it." *In re Tobacco II Cases*, 46 Cal. 4th 298, 327 (2009). It cannot be credibly argued that the fact

5   misrepresented by Valero is so "obviously unimportant" that it is immaterial.

6       To the contrary, the Ninth Circuit has held that "price advertisements matter." *Hinojos*, 718

7   F.3d at 1107. And Valero's deceptive practices relate to ***the price of gasoline***. It is common

8   knowledge that the price of gasoline is, and always has been, material to consumers. It even drives

9   presidential elections.[6] Further, Valero well knows that the price of gasoline is material to

10   consumers, otherwise it would not devote a substantial portion of its business to designing,

11   distributing, and regulating large and highly visible signs to advertise the price of gasoline to passing

12   motorists. Valero might respond that its pricing signage is required by state law, but as this Court

13   noted at the Class certification hearing, "[t]he state wouldn't require it unless the state presumably

14   thought there is a reason why the consumer would want to know the cost of the product." Class Cert.

15   Tr. at 10:13-23. Valero cannot credibly contend that the price of gasoline, and whether a debit card

16   will be charged a higher price or a lower price for gasoline, is immaterial to consumers. Valero's

17   misrepresentations and omissions should be considered material as a matter of law.[7]

18

19

---

20   [5]    Valero relies on an outdated and inapplicable articulation of the materiality standard. *See* Mot. at
21   17. There is no requirement that a material fact "induce a consumer to alter his position to his
     detriment."

22   [6]    *See* E. Zitzewitz, *Do Gas Prices Vote for the Right? Political Contributions v. Price Distortions*
23   (Apr. 2013), https://www.dartmouth.edu/~ericz/gasprices.pdf ("voters care about gas prices"); S.
     Cunningham, *High Gasoline Pump Prices May Magnify Presidential Disapproval*, Bloomberg (July
24   5, 2018), https://www.bloomberg.com/news/articles/2018-07-05/high-gasoline-pump-prices-may-
     magnify-presidential-disapproval.

25   [7]    The inherently material nature of Valero's misrepresentation and omissions distinguish this case
     from Valero's cited authorities. *See* Mot. at 18 (citing *In re 5-Hour Energy Mktg. & Sales Practices
26   Litig.*, No. ML132438PSGPLAX, 2017 WL 2559615, at *7 (C.D. Cal. June 7, 2017) (whether energy
     drink provides "five hours of caloric energy"); *Pierce-Nunes v. Toshiba Am. Info. Sys., Inc.*, No. CV
27   14-7242-DMG (KSX), 2016 WL 5920345, at *7 (C.D. Cal. June 23, 2016) (whether "LED TV" can
     use LCD technology); *Algarin*, 300 F.R.D. at 454 (whether "24-hour makeup" lasts 24 hours is
28   material).

PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANT'S MOTION TO DECERTIFY THE CLASS -
3:15-cv-05557-RS                                                                          - 9 -

1    But there is also substantial common evidence in the record to support a jury finding of

2  materiality.  That common evidence includes testimony from Plaintiff, consistent with her deposition

3  testimony, that Valero's practices are material to her.  Bautista Depo. at 127:9-128:2, 130:6-132:18,

4  153:8-12.  The common evidence also includes complaints from "a lot" of consumers that Valero

5  received directly, and complaints relayed by Valero's distributors, which establish that Valero's

6  deceptive practices are material to them and the "general public."  *See* ECF Nos. 197-2 through 197-

7  10; 198-2 through 198-3.  In addition, the record includes a second consumer survey from Plaintiff's

8  expert, which shows that if given the option, the majority of consumers would (unsurprisingly) elect

9  to process their debit card at the lower "cash" price.  ECF No. 189-13, ¶7.

10    Valero, once again, ignores all of this common evidence and relies on a misleadingly designed

11  consumer survey by its proposed expert that Valero contends, shows consumers' reasons for

12  purchasing gasoline from a Valero station "vary greatly," and that none of those reasons include the

13  price of gasoline.  Mot. at 18.  Putting aside Plaintiff's pending motion to exclude this sham evidence,

14  ECF No. 211, "plaintiff is *not required* to allege that those misrepresentations were *the sole or even*

15  *the decisive cause* of the injury-producing conduct."  *Tobacco*, 46 Cal. 4th at 328; *Hadley*, 2018 WL

16  3954587, at *22 (same); *see also Ries*, 287 F.R.D. at 538 n.4 ("Defendant's argument, that there is a

17  lack of materiality which would defeat class certification in any situation where consumers may have

18  had multiple reasons for purchasing a product, if accepted, would prevent class certification in every

19  consumer product labeling case. *That is clearly not the law*.").

20    Valero's survey, at best, creates a factual issue that cannot be resolved through a motion to

21  decertify.  *See Tobacco*, 46 Cal. 4th at 327 ("[M]ateriality is generally a question of fact unless the

22  fact misrepresented is so obviously unimportant that the jury could not reasonably find that a

23  reasonable man would have been influenced by it."); *Campbell*, 2018 WL 4354379, at *20.  Valero's

24  merits dispute can, however, "be resolved classwide . . . because . . . materiality is a common question

25  for purposes of Rule 23(b)(3)."  *Hadley*, 2018 WL 3954587, at *22.

26    This Court's prior Class certification was correct.  Valero offers no reason to revisit the issue.

27

28

PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANT'S MOTION TO DECERTIFY THE CLASS -
3:15-cv-05557-RS

1          **3.      Damages Calculations Still Do Not Defeat Predominance**

2          Valero asserts that "individual issues" predominate because, Valero claims, Plaintiff's damage

3   model is "unreliable" and does not "accurately measure damages resulting from the particular injury."

4   Mot. at 21-22.  Valero attempted this argument before, and it was rightly rejected.  *See Bautista*, 322

5   F.R.D. at 516 ("Valero's complaints primarily go to the ascertainability of class members or the

6   challenges of calculating individual damage awards, difficulties that are ***not ordinarily a bar to class***

7   ***certification***.").  Nothing has changed that would warrant disturbing this Court's prior holding.  It is

8   still the law in the Ninth Circuit that "damage calculations alone cannot defeat certification."  *Just*

9   *Film, Inc. v. Buono*, 847 F.3d 1108, 1120 (9th Cir. 2017).

10         As before, Valero once again overstates Plaintiff's burden to show that "damages are capable

11  of measurement on a classwide basis."  That damages are capable of measurement on a classwide

12  basis simply means "that the whole class suffered damages traceable to the same injurious course of

13  conduct underlying the plaintiffs' legal theory."  *Id.*  "At this stage, Plaintiffs need only show that

14  such damages can be determined without excessive difficulty and attributed to their theory of

15  liability[.]"  *Id.* at 1121; *see also Bruton v. Gerber Prods. Co.*, No. 12-CV-02412-LHK, 2018 WL

16  1009257, at *8-*12 (N.D. Cal. Feb. 13, 2018).  Indeed, a plaintiff's damages expert need only

17  propose a ***plausible*** model for calculating damages.  *In re High-Tech Emp. Antitrust Litig.*, 289

18  F.R.D. 555, 567 (N.D. Cal. 2013); *see also Cal. v. Infineon Techs. AG*, No. C 06-4333 PJH, 2008 WL

19  4155665, at *9 (N.D. Cal. Sept. 5, 2008).  "[A] proffered model ***need not be exact***[.]"  *Ries*, 287

20  F.R.D. at 532.  It need only be "consistent with [the plaintiff's] liability case."  *Id.*

21         Plaintiff's expert has shown that damages can be determined without difficulty by proffering a

22  damage model that measures the differential between the "credit" price charged on Class members'

23  debit cards and the available "cash" price a reasonable consumer would have expected to pay.  *See*

24  ECF No. 215-2 (filed under seal).  This model is fully consistent with Plaintiff's liability case and

25  plausibly measures only those damages that stem from Valero's deceptive practices.  This

26  "price/value differential" model is "[t]he most straightforward application of restitution"  *Chowning*

27  *v. Kohl's Dep't Stores, Inc.*, No. CV 15-08673 RGK (SPx), 2016 WL 1072129, at *5 (C.D. Cal. Mar.

28  15, 2016).  This Court's Class certification Order held that "[c]alculating the difference between the

1   price paid (the credit price) and the actual value of the product purchased (the cash price Bautista

2   expected to pay) is therefore a reasonable enough method of estimating damages." *Bautista*, 322

3   F.R.D. at 518.   Valero has not carried its burden to show that this Court's holding should be

4   disturbed.

5           To be sure, Valero raises the same objections to Plaintiff's damage model that this Court

6   already rejected, holding that Valero's "objections miss the mark" because, "[t]o the extent Valero

7   takes issue with the quality of evidence proffered by Bautista, those questions go to the merits of her

8   claims for relief." *Bautista*, 322 F.R.D. at 512.   The same conclusion should be reached on the

9   Court's second review of Valero's objections because Valero's merits dispute cannot be resolved

10  through a decertification motion. *See Campbell*, 2018 WL 4354379, at *20; *In re Dynamic Random*

11  *Access Memory (DRAM) Antitrust Litig.*, No. M 02-1486 PJH, 2006 WL 1530166, at *10 (N.D. Cal.

12  June 5, 2006) ("[T]he issues raised by defendants need not be decided at this stage of the litigation.

13  While they may be properly used to attack the merits of Dr. Noll's damages methodologies and

14  computations at trial, they are insufficient to demand a finding that individual issues predominate at

15  the certification stage."); *Pettit*, 2017 WL 3310692, at *4 ("[T]hese arguments go to the weight of the

16  evidence and may provide fertile ground for cross-examination at trial, [but] they do not render the

17  evidence inadmissible nor otherwise support denial of class certification.").

18          Valero does raise some new objections to Plaintiff's damage model, which do not merit much

19  discussion because they are contrary to black letter law.   For example, Valero asserts that Blum's

20  damage model includes consumers who, Valero contends, "were not injured in any manner."  Mot. at

21  21 (emphasis omitted).   According to Valero, Blum's damage model should exclude 42% of Class

22  members because in Plaintiff's consumer survey, 42% of respondents indicated that they expected the

23  "credit" price to apply to a debit card.  *Id*.   Valero further asserts, based on its proposed damages

24  expert's rank speculation, that the Class includes many members who ***intentionally*** would have paid

25  the higher "credit" price (despite the fact that Valero's other proposed expert disagrees with him, *see*

26  ECF No. 211 at 19), as well as "repeat purchasers" who purportedly "learned" of Valero's deceptive

27  pricing of debit cards (despite the fact that the Valero stations at issue ***do not disclose*** the price

28  treatment of debit cards).  Mot. at 21.  According to Valero, these purportedly "uninjured" consumers

1   must be excluded from the damage calculation.  Putting aside the fact that these are all merits disputes

2   that go to the heart of Plaintiff's claims (not issues related to the predominance analysis), Valero's

3   contentions do not even make sense.   As noted above, the law explicitly does not require

4   "individualized proof of deception, reliance, and injury."  *Ries*, 287 F.R.D. at 537; *see also Zeisel v.*

5   *Diamond Foods, Inc.*, No. C 10-01192 JSW, 2011 WL 2221113, at *9 (N.D. Cal. 2011) (same).  The

6   Ninth Circuit has recently reiterated that, "[f]or this reason, courts have explained that CLRA and

7   UCL . . . will not require the court to investigate class members' individual interaction with the

8   product."  *Bradach*, 735 F. App'x at 254-55.

9        Valero also disputes Blum's use of an extrapolation method (regularly used by experts in his

10   field of forensic accounting) to calculate damages for the period predating January 2014, for which

11   Valero failed to retain sales data for the 192 Valero stations at issue.  Mot. at 22.  But it should go

12   without saying that the Class cannot be punished for Valero's record-keeping practices.  *See Etter v.*

13   *Allstate Ins. Co.*, 323 F.R.D. 308, 315 (N.D. Cal. 2017) ("This order further agrees with [plaintiff]

14   that, insofar as defendants are the ones responsible for the absence of more detailed fax transmission

15   records, they should not benefit from their poor recordkeeping by dodging a class action on that

16   basis."); *Greenhaw v. Lubbock Cty. Beverage Ass'n*, 721 F.2d 1019, 1027 (5th Cir. 1983) ("The

17   unavailability of price records for defendants' stores during the 1970 to 1974 period is caused by no

18   failure of diligence on the part of the class, but by defendants' failure to preserve such information.").

19   Courts routinely allow extrapolations.  *See Sullivan v. Kelly Servs.*, Inc., 268 F.R.D. 356, 365 (N.D.

20   Cal. 2010) ("[S]tatistical evidence, including surveys or representative testimony, or both, of class

21   members to determine damages at trial . . . [is] evidence . . . commonly accepted by courts for

22   calculating damages in large class actions.") (collecting cases); *Lenovo*, 2016 WL 6277245, at *21

23   (rejecting argument that damage model was "flawed" because it relied on "a straight-line model for

24   depreciation"); *In re Sugar Indus. Antitrust Litig.*, MDL No. 201, 1976 WL 1374, at *27 (N.D. Cal.

25   May 21 1976) ("As to the admissibility of statistical proof of damages, Rule 703 of the Federal Rules

26   of Evidence and the Advisory Committee note thereto clearly open the door to such data when

27   properly compiled and presented. Also, courts within this circuit have dealt with such data since *In re*

28

1    *Western Liquid Asphalt Cases* [1973-2 TRADE CASES P 74,733, 75,081], 487 F.2d 191 (9th Cir.

2    1973).").

3    Valero cannot, and does not, claim that extrapolations like the one conducted by Mr. Blum are

4    inherently unreliable or improper.  To the extent Valero takes issue with the way Mr. Blum conducted

5    his extrapolation, that objection, as before, goes to the merits of Plaintiff's claims, not the question of

6    predominance.  *See Bautista*, 322 F.R.D. at 512; *Campbell*, 2018 WL 4354379, at *20; *DRAM*, 2006

7    WL 1530166, at *10; *Pettit*, 2017 WL 3310692, at *4.

8    Valero also, once again, asserts that Mr. Blum's damage model does not exclude purportedly

9    "irrelevant stations."  Mot. at 11-16, 22.  That assertion is clearly contradicted by the record.  Valero

10   may dispute the evidence (although it does so only through conjecture), but even if all of Valero's

11   objections were accepted at face value, it cannot deny that the evidence shows that each of the 192

12   Valero stations at issue are, in fact, relevant for at least a portion of the Class Period.  Thus, contrary

13   to Valero's assertions, there ***are no*** "irrelevant" stations included among the 192 at issue.

14   Indeed, Valero's dispute is not with the relevance of each station at issue.  Rather, Valero's

15   dispute is with the purported "accuracy" of the damage period for ***some*** of the relevant stations at

16   issue.  Mot. at 11-16.  But again, this is irrelevant to the predominance analysis.  It is simply another

17   merits dispute over the weight of evidence, which is common to the Class, so predominance still

18   exists.[8]  But to the extent there is a dispute, it is not a genuine dispute because Valero offers no

19

20   [8]   It is also important to note "there is a clear distinction between the measure of proof necessary to establish the fact that petitioner had sustained some damage and the measure of proof necessary to
21   enable the jury to fix the amount."  *Story Parchment Co. v. Paterson Parchment Paper Co.*, 282 U.S. 555, 562 (1931) ("damages which are definitely attributable to the wrong and only uncertain in
22   respect of their amount" are recoverable); *see also Greenhaw*, 721 F. 2d at 1027 ("The rigorous measure urged by defendants would not allow for the use of reasonable inferences and educated
23   projections.  It is too much to demand for courtroom proof.");  *In re Myford Touch Consumer Litig.*, 291 F. Supp. 3d 936, 971-72 (N.D. Cal. 2018); *see Comcast Corp. v. Behrend*, 569 U.S. 27, 35 (2013)
24   (noting that damages "[c]alculations need not be exact" so long as they "attempt" to "measure only those damages attributable to [plaintiffs'] theory"); *cf. Living Designs, Inc. v. E.I. Dupont de Nemours
25   & Co.*, 431 F.3d 353, 367 (9th Cir. 2005) (explaining that "[w]here the fact of damage is established," the court will "not insist upon a higher degree of certainty as to the amount of damages than the
26   nature of the case admits, particularly where the uncertainty was caused by the defendant's own wrongful acts"); *Hunt Foods, Inc. v. Phillips*, 248 F.2d 23, 33 (9th Cir. 1957) ("[W]here it clearly
27   appears that a party has suffered damage, a liberal rule should be applied in allowing a court or jury to determine the amount; and that, given proof of damage, uncertainty as to the exact amount is no
28   reason for denying all recovery.  The fact that the amount of damage may not be susceptible of exact proof or may be uncertain, contingent or difficult of ascertainment does not bar recovery.");  *Frank*

PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANT'S MOTION TO DECERTIFY THE CLASS -
3:15-cv-05557-RS                                                                    - 14 -

1   evidence to support its bare assertion that the damage period for each station is not "accurate."[9] Thus,

2   Plaintiff's evidence that supports the damage period for each station is largely unrebutted.

3          In the face of Plaintiff's largely unrebutted evidence of the proper damage period for each

4   station, Valero offers nothing but conjecture to support its assertions that the damage periods are not

5   "accurate."   And "[t]here is even less reason to decertify a class where the possible existence of

6   individual damages issues is a matter of conjecture."  *Smilow v. Sw. Bell Mobile Sys., Inc.*, 323 F.3d

7   32, 40 (1st Cir. 2003).

8          Valero attempts to hide its inability to rebut Plaintiff's evidence by vaguely referring to

9   "voluminous" errors with respect to a "multitude of stations" at issue that, Valero claims, stopped

10  causing damages before the end of the Class Period by either: (1) finally disclosing that debit cards

11  will be charged as "credit"; (2) terminating the dual "cash" and "credit" pricing structure; or

12  (3) ceasing operations under the Valero brand.  But Valero's silence as to the true volume of the

13  purportedly "voluminous" errors with Plaintiff's evidence is telling.  By Plaintiff's count, Valero has

14  produced evidence that it claims supports a ***shorter*** damage period for ***only 16 of the 192 stations at***

15  ***issue***.  That is only 8.3% of the stations at issue.  And importantly, Valero does not have a ***shred*** of

16  evidence that those 16 stations, or any of the 192 stations at issue, are not otherwise properly included

17  in the damage calculation.

18         Moreover, Valero's purported evidence related to just 8.3% of the stations at issue does not

19  defeat Plaintiff's damage model.  Plaintiff need only proffer a ***plausible*** damage model that  "***need***

20  _____

21  *Music Corp. v. Metro-Goldwyn-Mayer, Inc.*, 772 F.2d 505, 513 (9th Cir. 1985) ("Although
    uncertainty as to the amount of damages will not preclude recovery, uncertainty as to the fact of

22  damages may.").

23  [9] Valero's evidentiary failures are detailed in Plaintiff's brief in opposition to Valero's summary
    judgment motion, filed herewith.  It should be pointed out, however, that Valero relies heavily on the

24  list of affected stations from the Class notice publication.  Mot. at 1-16.  It is unclear why Valero
    relies on the Class notice list because Valero demanded that the parties explicitly stipulate to the fact

25  that the Class notice list has no bearing on any merits issues, which in any event, is the law.  Plaintiff
    is not required to prove her claims at the class notice phase, which requires only "the best notice

26  practicable under the circumstances."  *Bowerman*, 2015 WL 5569061, at *4.  And Plaintiff is not
    bound by class notice.  ECF No. 161; *Ramirez*, 2017 WL 5153280, at *10.  As detailed in Plaintiff's

27  brief in opposition to Valero's summary judgment motion, there is substantial admissible evidence in
    the record to establish the damage period for the 192 stations at issue with more than a reasonable

28  degree of certainty.

PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANT'S MOTION TO DECERTIFY THE CLASS -
3:15-cv-05557-RS                                                                          - 15 -

1    *not be exact*[.]"  *Ries*, 287 F.R.D. at 532; *see also Lenovo*, 2016 WL 6277245, at *21 ("[T]he

2    calculation of restitution damages requires only that some reasonable basis of computation of

3    damages be used, and the damages may be computed ***even if the result reached is an***

4    ***approximation***."); *Acree v. Gen. Motors Acceptance Corp.*, 92 Cal. App. 4th 385, 398 (2001) (same);

5    *Sugar*, 1976 WL 1374, at *27 ("[A]bsolute precision has never been required in the proof of the

6    amount of damages.").  And this Court already held that Plaintiff's damage model is "a reasonable

7    enough method of estimating damages."  *Bautista*, 322 F.R.D. at 518.

8        Even if the 16 stations that Valero quibbles with were ***entirely excluded*** from the damage

9    calculation (which is not at all warranted, even accepting Valero's evidence at face value), the total

10   damage calculation for the entire Class would be reduced by ***only 7.38%***.  Thus, even giving Valero

11   much more credit than its meager evidence warrants, Plaintiff's current calculations would still be a

12   reasonable approximation of Classwide damages.

13       Thus, as before, Valero's objections to Plaintiff's damages calculations still miss the mark

14   because they still go to the weight of the evidence, and they still do not impact this Court's prior

15   holding that common issues predominate.  Valero has failed to meet its burden to show any reason

16   why this Court's holding should be disturbed.

17       **4.    Valero's Voluntary Payment Defense Cannot Defeat**
            **Predominance**

18

19       Valero claims that individual issues predominate with respect to its voluntary payment

20   defense.  Mot. at 22-24.  Valero is wrong.  The application of the voluntary payment doctrine likely

21   ***does not apply*** to consumer fraud claims as a matter of law.  And even if it did apply, the defense

22   would not raise any individualized questions because relief under the UCL, FAL, and CLRA "is

23   available without individualized proof of deception, reliance, and injury."  *Ries*, 287 F.R.D. at 537;

24   *see also Zeisel*, 2011 WL 2221113, at *9 (same).

25       **a.    The Voluntary Payment Doctrine Does Not Apply to**
            **Consumer Claims as a Matter of Law**

26

27       "The voluntary payment doctrine bars the recovery of money that was voluntarily paid with

28   full knowledge of the facts."  *Rodman v. Safeway Inc.*, 125 F. Supp. 3d 922, 941 (N.D. Cal. 2015),

1    *aff'd*, 694 F. App'x 612 (9th Cir. 2017).  Although neither the California Supreme Court nor the

2    Ninth Circuit have addressed the issue, almost every other state and federal court to consider the issue

3    has concluded that the voluntary payment defense does not apply to consumer fraud claims like those

4    at issue here, because its application would be contrary to public policy.[10]  Even one of ***Valero's cited***

5    ***authorities*** expressed doubts about whether the voluntary payment doctrine applied to a consumer

6    claim.  *See In re Scotts EZ Seed Litig.*, 304 F.R.D. 397, 406 (S.D.N.Y. 2015) ("the Court is not

7    convinced either defense properly applies") (cited at Mot. at 23).[11]

8         Like other states, California's legislature has expressed a clear public policy in favor of

9    consumer protection by explicitly requiring the state's robust consumer protection laws to be liberally

10   construed.  *See* Cal. Civ. Code §1760 ("This title shall be liberally construed and applied to promote

11   its underlying purposes . . . ."); Cal. Bus. & Prof. Code §17002 ("This chapter shall be liberally

12   construed . . . .").  In *Adamson v. ADT, LLC*, No. CV 12-10558 DMG (PLAx), 2014 WL 12551405,

---

13   [10]    *See Sobel v. Hertz Corp.*, 698 F. Supp. 2d 1218, 1223-24 (D. Nev. 2010) (reasoning that "[t]o

14   allow [the defendant] to avoid liability for [an] unfair practice through the voluntary payment doctrine
     would nullify the protections of the act and be contrary to the intent of the legislature"), *vacated as*

15   *moot*, 674 F. App'x 663 (9th Cir. 2017); *Indoor Billboard/Wash., Inc. v. Integra Telecom of Wash.,*
     *Inc.*, 162 Wash. 2d 59, 86 (2007) ("We agree with Indoor Billboard that the voluntary payment

16   doctrine is inappropriate as an affirmative defense in the CPA context, as a matter of law, because we
     construe the CPA liberally in favor of plaintiffs."); *Huch v. Charter Commc'ns, Inc.*, 290 S.W.3d 721

17   (Mo. 2009); *Eisel v. Midwest BankCentre*, 230 S.W.3d 335, 339-40 (Mo. 2007) (because voluntary
     payment doctrine is based on waiver and consent, defendant could not assert defense to claim that it

18   engaged in the unauthorized practice of law in violation of statute enacted for the protection of
     public); *Ramirez v. Smart Corp.*, 371 Ill.App.3d 797, 805 (2007) ("[T]his state has an interest in

19   transactions that violate statutorily-defined public policy.  The effect of such transgressive acts,
     generally speaking, is that the voluntary payment rule will not be applicable."); *Pratt v. Smart Corp.*,

20   968 S.W.2d 868, 872 (Tenn. Ct. App. 1997) ("[T]he State has an interest in transactions that involve
     violations of statutorily defined public policy, and, generally speaking, in such situations, the

21   voluntary payment rule will not be applicable."); *Soule v. Hilton Worldwide, Inc.*, 1 F. Supp. 3d 1084,
     1104 n.14 (D. Haw. 2014) ("The Court also expresses some doubt about the applicability of the

22   Voluntary Payment Rule to Plaintiff's claim under Hawaii's Unfair and Deceptive Trade Practices
     Act.  The consumer protection statute is remedial in nature and was constructed in broad language in

23   order to constitute a flexible tool to stop and prevent fraudulent, unfair or deceptive business practices
     for the protection of both consumers and honest business persons."); *Lee v. Enter. Leasing Co.-W.,*

24   *LLC*, 30 F. Supp. 3d 1002, 1024 (D. Nev. 2014) (The court maintains that to allow Hertz to avoid
     liability for an unfair pricing practice via the voluntary payment doctrine would nullify the consumer

25   protection purpose of the statute and be contrary to the intent of the Nevada legislature, which
     explicitly set forth a civil remedy for precisely this type of violation.).

26   [11]    Notably, none of Valero's other authorities involve consumer claims.  *See* Mot. at 22-24 (citing

27   *Baraza v. C. R. Bard Inc.*, 322 F.R.D. 369 (D. Ariz. 2017); *Steinman v. Malamed*, 185 Cal. App. 4th
     1550 (2010); *O'Connor v. Boeing N. Am., Inc.*, 197 F.R.D. 404 (C.D. Cal. 2000); *In re SFPP Right-*

28   *of-Way Claims*, 2016 WL 2378363 (C.D. Cal. May 23, 2017)).

---

PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANT'S MOTION TO DECERTIFY THE CLASS -
                    3:15-cv-05557-RS                                                                    - 17 -

1    at *5 (C.D. Cal. Apr. 7, 2014), the court did not resolve the issue of whether the voluntary payment

2    doctrine applies to consumer claims, but it noted that "Plaintiffs argue persuasively that the doctrine

3    does not apply at all because the statutory provisions at issue are designed by the legislature to protect

4    consumers and cannot be waived." *See also* Cal. Civ. Code §1751 ("Any waiver by a consumer of

5    the provisions of this title is contrary to public policy and shall be unenforceable and void.").

6          There is little doubt that, if given the opportunity, the California Supreme Court would follow

7    the persuasive reasoning of other courts and hold that the voluntary payment defense does not apply

8    to consumer claims, as it would be contrary to public policy.   Thus, this Court should hold that

9    Valero's voluntary payment defense does not apply as a matter of law.  *See Strother v. S. California*

10   *Permanente Med. Grp*., 79 F.3d 859, 865 (9th Cir. 1996) ("[A] federal court must predict how the

11   highest state court would decide the issue using intermediate appellate court decisions, decisions from

12   other jurisdictions, statutes, treatises, and restatements as guidance.").

13                **b.      The Voluntary Payment Doctrine Is Inconsistent with
                            the Elements of UCL, FAL, and CLRA Claims**

14

15         Even if the voluntary payment doctrine could apply to consumer claims in general, its

16   application to absent Class members would be inconsistent with the elements of a California

17   consumer fraud claim (which is another reason to believe that the California Supreme Court would

18   not apply it).

19         The voluntary payment doctrine precludes recovery unless a consumer shows they did not

20   have "full knowledge of the facts" at the time of payment.  *Rodman*, 125 F. Supp. 3d at 941.  Thus, as

21   an initial matter, "[w]here a plaintiff's claim is predicated on a lack of full disclosure by the

22   defendant, the doctrine does not apply."  *U.S. Bank Nat'l Ass'n v. PHL Variable Ins. Co.*, No. 12 Civ.

23   6811(CM)(JCF), 2014 WL 2199428, at *10 (S.D.N.Y. May 23, 2014) (citing *Fink v. Time Warner*

24   *Cable*, 810 F. Supp. 2d 633, 649 (S.D.N.Y. 2011); *Gutierrez v. Wells Fargo & Co*., 622 F. Supp.

25   2d 946, 955-56 (N.D. Cal. 2009)).

26         Furthermore, the requirement to show that Class members lacked "full knowledge of the

27   facts" equates to a requirement that the consumer prove **reliance** on a challenged material omission.

28   And such a showing is fundamentally at odds with UCL, FAL, and CLRA claims, which provide

PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANT'S MOTION TO DECERTIFY THE CLASS -
3:15-cv-05557-RS                                                                      - 18 -

1  relief "without individualized proof of deception, reliance, and injury." *Ries*, 287 F.R.D. at 537.

2  Indeed, the reasonable consumer standard that applies to these claims is an ***objective*** test, not "a

3  subjective test that inquires into each class members' experience with the product." *Bruno v. Quten*

4  *Research Inst., LLC*, 280 F.R.D. 524, 537 (C.D. Cal. 2011).  Thus, whether any individual class

5  member had "full knowledge of the facts" is irrelevant to the question at issue: whether an objective,

6  reasonable consumer could be misled.  *See On the House Syndication, Inc. v. Fed. Exp. Corp.*, 203

7  F.R.D. 452, 455 (S.D. Cal. 2001) (noting that class was certified despite voluntary payment defense

8  because "it is not necessary that each Plaintiff must prove individual knowledge and reliance").

9      Consequently, Valero's voluntary payment defense, if it applies at all, applies only to Plaintiff

10  (the only Class member required to prove reliance).  Therefore, there are no individual issues with

11  respect to the Class related to the voluntary payment doctrine that would warrant decertification.

12      ### c.      Valero's Voluntary Payment Defense Is Amenable to Common Proof

13

14      Finally, the existence of a voluntary payment affirmative defense does not defeat

15  predominance.  Indeed, Valero's own authorities recognize that "the mere existence of affirmative

16  defenses does not compel a finding that individual issues predominate over common ones[.]"

17  *Barraza v. C. R. Bard Inc.*, 322 F.R.D. 369, 379 (D. Ariz. 2017) (quoting *Williams v. Sinclair*, 529

18  F.2d 1383, 1388 (9th Cir. 1975)); *Applegate v. Formed Fiber Tech., LLC*, No. 2:10-cv-00473-GZS,

19  2012 WL 3065542, at *9 (D. Me. July 27, 2012) ("Even if Formed Fiber's affirmative defenses do

20  not apply equally to each plaintiff, affirmative defenses are not a per se bar to class certification.").

21  To the contrary, "courts ***generally are reluctant*** to deny certification based on defenses to each

22  individual class member's claims." *Parkinson v. Hyundai Motor Am.*, 258 F.R.D. 580, 591 (C.D.

23  Cal. 2008).  In fact, "where common issues otherwise predominated, courts have ***usually*** certified

24  Rule 23(b)(3) classes even though individual issues were present in one or more affirmative

25  defenses." *Smilow*, 323 F.3d at 39-40.[12]

26

27  _____

[12]  *Etter v. Allstate Ins. Co.*, 323 F.R.D. 308, 314 (N.D. Cal. 2017) ("Under these circumstances, this order finds that any individual issues raised by this affirmative defense will not predominate over common questions."); *Lane v. Wells Fargo Bank, N.A.*, No. C 12-04026 WHA, 2013 WL 3187410, at *8 (N.D. Cal. June 21, 2013) ("[t]he basic facts are common to the class"); *Hoxworth v. Blinder*,

PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANT'S MOTION TO DECERTIFY THE CLASS - 3:15-cv-05557-RS                                                                        - 19 -

1    The Supreme Court has made clear that common questions will predominate, "even though

2    other important matters will have to be tried separately, such as damages or some affirmative

3    defenses peculiar to some individual class members." *Tyson Foods*, 136 S. Ct. at 1045. "Indeed, if it

4    were required at the certification stage to exclude all class members whose claims will ultimately fail

5    because of a meritorious affirmative defense, then it would necessarily follow that

6    all affirmative defenses would have to be decided on the merits at the point of certification." *Baker v.*

7    *Castle & Cooke Homes Haw., Inc.*, No. 11-00616 SOM-RLP, 2014 WL 1669158, at *15 (D. Haw.

8    Apr. 28, 2014). "That cannot be so." *Id.* "[I]t would eviscerate the distinction between

9    the certification and merits inquiries if a court were forced to exclude at certification those individuals

10   whose claims would not succeed." *Id.* "This is particularly so in a case like this one, in which

11   bringing an individual claim will cost more than any likely recovery. Although exclusion from a

12   class, unlike a judgment on the merits, will technically preserve a plaintiff's claim, that has little value

13   if the claim cannot be effectively brought outside of a class action." *Id.*

14   Here, even "[a]ssuming that the voluntary payment affirmative defense applies to consumer

15   actions, Defendants' invocation of it in this case does not compel individualized inquiries." *Berrien*

16   *v. New Raintree Resorts Int'l, LLC*, 276 F.R.D. 355, 363 (N.D. Cal. 2011). That is because Valero's

17   voluntary payment defense can only be proven with the evidence that is currently in the record – and

18   it is all ***common evidence***. That common evidence includes: (1) images of Valero fuel pumps that

19   display a "price per gallon" with ***no*** indication as to whether the price displayed is the "cash" price or

20   the "credit" price; (2) Plaintiff's testimony that she did not realize that the "credit" price was being

---

22   *Robinson & Co*., 980 F.2d 912, 924 (3d Cir. 1992) ("Given a sufficient nucleus of common questions,
     the presence of the individual issue of compliance with the statute of limitations has not prevented

23   certification of class actions in securities cases."); *Cameron v. E.M. Adams & Co.*, 547 F.2d 473, 478
     (9th Cir. 1976) (same); *In re Visa Check/MasterMoney Antitrust Litig*., 280 F.3d 124, 138-40 (2d Cir.

24   2001); *In re Checking Account Overdraft Litig.*, 307 F.R.D. 630, 651 (S.D. Fla. 2015) ("[T]he
     presence of individualized defenses against a small number of class members would not destroy the
     predominance of common liability questions."); *Ellsworth v. U.S. Bank, N.A.*, No. C 12-02506 LB,

25   2014 WL 2734953, at *29 (N.D. Cal. June 13, 2014) ("The affirmative defenses do not preclude

26   certification."); *In re Checking Account Overdraft Litig.*, No. 1:09-MD-02036-JLK, 2012 WL
     12877718, at *9 n.20 (S.D. Fla. May 16, 2012) ("To the extent that PNC could prove that some

27   customers learned of their Matrix or their ability to opt out, yet continued to incur and pay overdraft
     fees, the presence of individualized defenses as to a small number of class members would not

28   destroy the predominance of common liability questions.")

1    applied to her debit card purchase; and (3) complaints that Valero received from "a lot" of angry

2    consumers who also did not notice they were being charged the "credit" price. This common

3    evidence does not vary from Class member to Class member, and, therefore, common questions

4    predominate with respect to Valero's voluntary payment defense. Where, as here, affirmative

5    defenses are amenable to common proof, courts routinely grant class certification.[13]

6          Aside from this common evidence, there is currently zero evidence in the record to support

7    Valero's voluntary payment defense premised on the assumption that Plaintiff – or any Class member

8    – had "full knowledge of the facts" that their debit card was being charged the "credit" price, rather

9    the "cash" price.[14]  Valero baldly asserts that there is "every reason to believe" that Class members

10   did have that knowledge, Mot. at 23, **but there is no evidence** to support its assertion. Courts "need

11   evidence, not musings." *League of United Latin Am. Citizens, Council No. 4434 v. Clements*, 999

12   F.2d 831, 867 (5th Cir. 1993). And without any evidence, "[t]here is even less reason to decertify a

13   class where the possible existence of individual damages issues is a matter of conjecture." *Smilow*,

14   323 F.3d at 40.

15         Furthermore, the opportunity has long passed for Valero to obtain **any** evidence to support its

16   defense (to the extent any exists), because fact discovery closed over a year ago. And Valero has no

17   basis to seek discovery at this time. *See House Syndication*, 203 F.R.D. at 457 ("Defendant has failed

18   to show that discovery on . . . the defense of voluntary payment and reliance is necessary.

---

19   [13]  *See Lane*, 2013 WL 3187410, at *8 ("[t]he basic facts are common to the class"); *Applegate*, 2012
20   WL 3065542, at *9 ("there is no reason to believe that these defenses might apply differently to
     different individual plaintiffs"); *Checking Account*, 307 F.R.D. at 650 ("Wells Fargo's affirmative
21   defenses [including voluntary payment] do not defeat certification for the additional reason that they
     raise common questions of proof that predominate over individualized issues."); *Jimenez v. Allstate
22   Ins. Co.*, No. LA CV10-08486 JAK (FFMx), 2012 WL 1366052, at *20 (C.D. Cal. Apr. 18, 2012)
     ("Defendant will have an opportunity to raise these defenses with the representative witnesses.");
23   *Etter*, 323 F.R.D. at 314 ("[W]hile the inquiry is about the statuses of individual recipients, it remains
     susceptible to a common method of proof."); *Checking Account*, 2012 WL 12877718, at *9 ("[M]any
24   of PNC's defenses, such as statute of limitations, waiver and voluntary payment, apply equally to all
     members of the proposed Class. This leads courts to find that affirmative defenses do not upset the
25   predominance of common issues as long as a sufficient constellation of common issues binds the
     class together.").

26   [14]  While the parties dispute this point, it is not a genuine dispute because Valero cannot point to
27   even a scintilla of evidence to support its defense. For that reason, as detailed in Plaintiff's pending
     summary judgment motion, ECF No. 190-3, judgment as a matter of law should be entered in
28   Plaintiff's favor.

1    Accordingly, this Court will not allow Defendant to subject absent class members to discovery on

2    these irrelevant issues [after the class was certified].").

3         In its motion for leave to amend its answer to assert a voluntary payment defense – which was

4    filed almost *a year after* fact discovery and this Court's Class certification Order – Valero insisted

5    that it needed a 60-day extension of the case schedule in order to conduct "expert discovery" related

6    to "the role the gas pump displays and receipts played in the other class members' purchases[.]" ECF

7    No. 137, at 9:28-10:1. This Court granted Valero's request. Now, expert discovery has closed, yet

8    Valero still has failed to produce a shred of evidence to support its belatedly asserted defense.

9         Finally, Valero did not even assert a voluntary payment defense until *nine months* after this

10   Court's Class certification Order. ECF No. 152. Valero cannot meet its burden to show that this

11   Court should consider decertification by manufacturing individual questions – without *a shred* of

12   evidence – and "tend[ing] new legal theories for the first time" or arguing facts or law that were

13   available to it at the time of the original class certification hearing, and which could have been argued

14   then. *Hagerman*, 839 F.2d at 414. Indeed, Valero previously argued that "[t]he factual and legal

15   issues underlying the voluntary payment defense have been known, explored, and debated *since the*

16   *beginning of this case*." ECF No. 137, at 9:10-11. Valero's indolence in failing to raise its voluntary

17   payment defense before fact discovery closed, and before this Court held that common issues

18   predominate, does not warrant decertification.

19        At bottom, Valero's request to decertify the Class based on its voluntary payment defense is

20   wrong on the law and wrong on the facts. Common issues clearly predominate in this routine

21   consumer class action. *See Spann v. J.C. Penney Corp.*, 307 F.R.D. 508, 518 (C.D. Cal. 2015)

22   ("District courts in California routinely certify consumer class actions arising from alleged violations

23   of the CLRA, FAL and UCL."). Valero's Motion should be denied.

24

25

26

27

28

1

### B.    A Class Action Is Still the Superior Method of Adjudication

2      Valero reasserts its contention that a class action would be unmanageable because "a trial

3   will necessarily entail 192 mini-trials as to which stations and for what periods Valero is *potentially*

4   liable[.]" Mot. at 24-25 (emphasis in original).[15]  Valero's assertion, once again, misses the mark.

5      As an initial matter, there is a "well-settled presumption that courts should not refuse to certify

6   a class merely on the basis of manageability concerns." *Briseno v. ConAgra Foods, Inc.*, 844 F.3d

7   1121, 1128 (9th Cir. 2017).  Here, Valero does not even raise any concerns that impact manageability.

8   As this Court noted in its Class certification Order, "Valero's complaints primarily go to the

9   ascertainability of class members or the challenges of calculating individual damage awards,

10   difficulties that are *not ordinarily a bar to class certification*." *Bautista*, 322 F.R.D. at 516.  Since

11   then, nothing has changed except that Valero finally completed its discovery production, which

12   establishes the relevant period for which damages should be calculated for each of the 192 Valero

13   stations that are unquestionably at issue.

14      Moreover, Valero's threat of 192 mini-trials is an empty one.  The notion of 192 mini-trials

15   presupposes that there is actually *some* evidence in the record to create a genuine issue of fact for a

16   trial.  But the only evidence in the record related to the damages period for the stations at issue is

17   largely *unrebutted*.  At best, Valero points to purported evidence that the damage calculation period

18   should be slightly shortened for just 16 of the 192 stations at issue.  To the extent Valero's evidence is

19   credible (which Plaintiff does not concede), the damages period for those 16 stations could easily be

20   adjusted accordingly by stipulation, if necessary.  There is no need for any trial on Plaintiff's

21   unrebutted evidence.

22      Furthermore, the superiority inquiry "necessarily involves a comparative evaluation of

23   alternative mechanisms of dispute resolution." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1023 (9th

24   Cir. 1998).  Here, "[a] fair examination of alternatives can only result in the apodictic conclusion that

25

26   ---
   [15]   Valero also contends that trial would be unmanageable because it would require "individualized

27   determinations of reliance; individualized determinations of damages; and individualized determinations of Valero's affirmative defense of voluntary payment." Mot. at 24.  As noted above, these contentions are misguided, as the law indisputably does not require such "individualized

28   inquiry." Thus, these assertions do not even enter the "superiority" analysis.

1    a class action is the clearly preferred procedure in this case." *Id.* ("litigation costs would dwarf

2    potential recovery[,] . . . the proposed class action is paradigmatic"); *see also Carnegie v. Household*

3    *Int'l, Inc.*, 376 F.3d 656, 661 (7th Cir. 2004) ("The *realistic* alternative to a class action is not 17

4    million individual suits, but zero individual suits, as only a lunatic or a fanatic sues for $30.") (Posner,

5    J.) (emphasis in original).

6         There can be no reasonable dispute that the superiority requirement is still satisfied.

7    Decertification is not warranted.

8    **C.    Alternative Certification for Injunctive Relief Under Rule 23(b)(2)**
         **Would Be Appropriate**

9

10        Valero notes that the Court's Class certification Order found Plaintiff's alternative request for

11   certification under Rule 23(b)(2) to be moot in light of the certification under Rule 23(b)(3), and

12   Valero appears to suggest that certification under Rule 23(b)(2) would be improper if the Court were

13   to grant its Motion, because it claims Plaintiff has "prioritized" monetary relief.  Mot. at 25.  But at

14   the same time, Valero contends (incorrectly) that "individualized issues" regarding damages defeat

15   certification under Rule 23(b)(3).  Valero cannot have it both ways.

16        If the Rule 23(b)(3) Class were decertified due to "individualized issues" with damages,

17   Plaintiff would seek injunctive relief on behalf of the Class, which would be properly certified under

18   Rule 23(b)(2), which is appropriate for all the reasons detailed in Plaintiff's initial request for

19   alternative certification under Rule 23(b)(2).  *See* ECF No. 87 at 18; ECF No. 114 at 13; *see also*

20   *Campbell v. Facebook Inc.*, 315 F.R.D. 250, 270 (N.D. Cal. 2016) (certifying alternative Rule

21   23(b)(2) class where plaintiffs would only seek declaratory and injunctive relief); *Smith v. Univ. of*

22   *Wash., Law Sch.*, 233 F.3d 1188, 1196 (9th Cir. 2000) (subdivisions of Rule 23(b) "are not mutually

23   exclusive").

24        Aside from its misplaced assertion that monetary relief would be "prioritized," Valero does

25   not dispute that certification under Rule 23(b)(2) would be appropriate.  Thus, if the Rule 23(b)(3)

26   Class is decertified, the Class should be certified under Rule 23(b)(2), for the reasons detailed in

27   Plaintiff's original motion for class certification.

28

PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANT'S MOTION TO DECERTIFY THE CLASS -
3:15-cv-05557-RS                                                                    - 24 -

1  **V.     CONCLUSION**

2          Valero's Motion is frivolous.  Almost every argument it advances is directly contradicted by

3  black letter law, and Valero does not offer any non-frivolous argument for extending, modifying, or

4  reversing that law.  Valero also raises numerous arguments that clearly go to the merits of Plaintiff's

5  claim, and which have absolutely nothing to do with the class certification analysis.  Moreover,

6  Valero's Motion relies on arguments that were already rejected by this Court at Class certification or

7  that it could have raised at Class certification, but failed to.  Valero ultimately has failed to carry its

8  burden to show any reason why this Court should disturb its prior holding that the Class is properly

9  certified under Rule 23(b)(3).  And any doubts should be resolved in favor of maintaining Class

10  certification.  Valero's Motion should be denied.

11  DATED:  October 4, 2018                    ROBBINS GELLER RUDMAN
                                                   & DOWD LLP
12                                               STUART A. DAVIDSON (*pro hac vice*)
                                                 CHRISTOPHER C. GOLD (*pro hac vice*)
13                                               JASON H. ALPERSTEIN (*pro hac vice*)
                                                 ERIC S. DWOSKIN (*pro hac vice*)

14

15                                                       *s/ Christopher C. Gold*
16                                               CHRISTOPHER C. GOLD

17                                               120 East Palmetto Park Road, Suite 500
                                                 Boca Raton, FL  33432
18                                               Telephone:  561/750-3000
                                                 561/750-3364 (fax)
19
                                                 ROBBINS GELLER RUDMAN
20                                                   & DOWD LLP
                                                 PATRICK W. DANIELS
21                                               655 West Broadway, Suite 1900
                                                 San Diego, CA  92101
22                                               Telephone:  619/231-1058
                                                 619/231-7423 (fax)
23
                                                 ROBBINS GELLER RUDMAN
24                                                   & DOWD LLP
                                                 ROXANA PIERCE
25                                               905 16th Street, N.W., Suite 303
                                                 Washington, DC  20006
26                                               Telephone:  202/822-6762
                                                 202/828-8528 (fax)
27

28

PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANT'S MOTION TO DECERTIFY THE CLASS -
3:15-cv-05557-RS                                                                      - 25 -

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

HOBSON, BERNARDINO & DAVIS, LLP
RAFAEL BERNARDINO, JR.
JASON A. HOBSON
725 South Figueroa Street, Suite 3230
Los Angeles, CA  90017
Telephone:  213/235-9190
213/235-9197 (fax)

Attorneys for Plaintiff and the Class

PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANT'S MOTION TO DECERTIFY THE CLASS -
3:15-cv-05557-RS                                                                                           - 26 -