ROBBINS GELLER RUDMAN
  & DOWD LLP
STUART A. DAVIDSON (*pro hac vice*)
CHRISTOPHER C. GOLD (*pro hac vice*)
JASON H. ALPERSTEIN (*pro hac vice*)
ERIC S. DWOSKIN (*pro hac vice*)
120 East Palmetto Park Road, Suite 500
Boca Raton, FL  33432
Telephone:  561/750-3000
561/750-3364 (fax)
sdavidson@rgrdlaw.com
cgold@rgrdlaw.com
jalperstein@rgrdlaw.com
edwoskin@rgrdlaw.com

HOBSON, BERNARDINO & DAVIS, LLP
RAFAEL BERNARDINO, JR. (118690)
JASON A. HOBSON (184134)
725 South Figueroa Street, Suite 3230
Los Angeles, CA  90017
Telephone:  213/235-9190
213/235-9197 (fax)
rbernardino@hbdlegal.com
jhobson@hbdlegal.com

Attorneys for Plaintiff and the Class

[Additional counsel appear on signature page.]

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| FAITH BAUTISTA, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>VALERO MARKETING AND SUPPLY COMPANY,<br><br>Defendant. | Case No. 3:15-cv-05557-RS<br><br>CLASS ACTION<br><br>**PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANT VALERO MARKETING AND SUPPLY COMPANY'S MOTION TO EXCLUDE THE TRIAL EXPERT OPINION TESTIMONY OF SIDNEY BLUM AND DR. MICHAEL KAMINS**<br><br>DATE:     October 25, 2018<br>TIME:     1:30 p.m.<br>CTRM:     3, 17th Floor<br>JUDGE:    Honorable Richard Seeborg<br><br>Accompanying Documents<br>1. Declaration of Christopher C. Gold |

1483658_1

1

# TABLE OF CONTENTS

2
**PAGE**

3  I.     INTRODUCTION ...................................................................................................1

4  II.    ARGUMENT .........................................................................................................2

5         A.     Valero's Objections to Mr. Blum's Damage Model Have No Merit and
                 Should Be Overruled.................................................................................2

6
7                1.     Mr. Blum's Damages Model Easily Meets the *Comcast* and
                        *Daubert* Standards .......................................................................2

8                2.     Valero Does Not Get a Free Pass Merely Because It Failed to
                        Retain Sales Records for the Full Class Period ............................5

9
10               3.     Mr. Blum Considered No Information About the "Start and End
                        Dates" that Was Not Fully Disclosed to Valero, so Valero's
                        Attempt to Exclude Mr. Blum on that Ground Is Meritless .......11

11
12        B.     Dr. Kamins' Consumer Surveys Are Plainly Admissible......................13

13               1.     A Control Is Not Required for Dr. Kamins' Survey ..................14

14               2.     Dr. Kamins' Survey Questions Are Not Suggestive..................15

15               3.     Dr. Kamins Did Not Refuse to Testify At All During His
                        Deposition, so There Is No Basis to Preclude Him from Testifying
                        to Those Same Questions at Trial ...............................................17

16  III.   CONCLUSION.....................................................................................................17

17 18 19 20 21 22 23 24 25 26 27 28

PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANT'S MOTION TO EXCLUDE TRIAL EXPERT OPINION TESTIMONY OF SIDNEY BLUM AND DR. MICHAEL KAMINS - 3:15-cv-05557-RS     - i -

1

**TABLE OF AUTHORITIES**

2

**CASES**             **PAGE**

3

*Acree v. Gen. Motors Acceptance Corp.*,
    92 Cal. App. 4th 385 (2001) ...........................................................................................9

4

5

*Bautista v. Valero Mktg. & Supply Co.*,
    No. 15-cv-05557-RS, 2016 WL 3924117 (N.D. Cal. July 21, 2016) .....................................13

6

7

*Bautista v. Valero Mktg. & Supply Co.*,
    322 F.R.D. 509 (N.D. Cal. 2017) .............................................................................. *passim*

8

*Brighton Collectibles, Inc. v. RK Texas Leather Mfg.*,
    923 F. Supp. 2d 1245 (S.D. Cal. 2013) ...........................................................................16

9

*Bustamante v. Graco, Inc.*,
    No. CV 03-182 TUC JMR, 2006 WL 5156868 (D. Ariz. Mar. 9, 2006) ................................6

10

11

*Cohen v. Trump*,
    No. 3:13-cv-2519-GPC-WVG, 2016 WL 4543481 (S.D. Cal. Aug. 29, 2016)......................14

12

13

*Comcast Corp. v. Behrend*,
    569 U.S. 27 (2013)................................................................................................ *passim*

14

*Daubert v. Merrell Dow Pharms., Inc.*,
    509 U.S. 579 (1993)...............................................................................................2, 3, 6

15

16

*EFCO Corp. v. Symons Corp.*,
    219 F.3d 734 (8th Cir. 2000) ........................................................................................8

17

*Etter v. Allstate Ins. Co.*,
    323 F.R.D. 308 (N.D. Cal. 2017)....................................................................................10

18

19

*Fid. Nat. Title Ins. Co. of N.Y. v. Intercty. Nat. Title Ins. Co.*,
    412 F.3d 745 (7th Cir. 2005) .......................................................................................12

20

21

*Garnica v. HomeTeam Pest Def., Inc.*,
    230 F. Supp. 3d 1155 (N.D. Cal. 2017) ...........................................................................8

22

23

*Greenhaw v. Lubbock Cty. Beverage Ass'n*,
    721 F.2d 1019 (5th Cir. 1983) .....................................................................................10

24

*In re Google Adwords Litig.*,
    No. C08-03369 JW (HRL), 2010 WL 5185738 (N.D. Cal. Dec. 8, 2010) ...........................12

25

26

*In re Lenovo Adware Litig.*,
    No. 15-md-02624-RMW, 2016 WL 6277245 (N.D. Cal. Oct. 27, 2016)..........................9, 10

27

28

**CASES**                                                                          **PAGE**

*In re NJOY, Inc. Consumer Class Action Litig.*,
   120 F. Supp. 3d 1050 (C.D. Cal. 2015) ....................................................................5

*In re Sugar Indus. Antitrust Litig.*,
   MDL No. 201, 1976 WL 1374 (N.D. Cal. May 21, 1976) ......................................9, 10

*In re Western Liquid Asphalt Cases* [1973-2 TRADE CASES P 74,733, 75,081],
   487 F.2d 191 (9th Cir. 1973) ................................................................................10

*Ironclad, L.P. v. Poly-Am., Inc.*,
   No. CIV.A. 3:98-CV-2600, 2000 WL 1400762 (N.D. Tex. July 28, 2000) ...........................14

*Johnson & Johnson-Merck Consumer Pharm. Co. v. Rhone-Poulenc Rorer*
   *Pharm., Inc.*,
   19 F.3d 125 (3d Cir. 1994)...............................................................................15

*LG Elecs. U.S.A., Inc. v. Whirlpool Corp.*,
   661 F. Supp. 2d 940 (N.D. Ill. 2009) ....................................................................16

*Magnetar Tech. Corp. v. Intamin, Ltd.*,
   801 F.3d 1150 (9th Cir. 2015) ..........................................................................8, 9

*MediaTek Inc. v. Freescale Semiconductor, Inc.*,
   No. 11-cv-5341 YGR, 2014 WL 2854890 (N.D. Cal. June 20, 2014) .....................................9

*Moltner v. Starbucks Coffee Co.*,
   No. 08 Civ. 9257(LAP), 2009 WL 3573190 (S.D.N.Y. Oct. 23, 2009), *aff'd*,
   624 F.3d 34 (2d Cir. 2010).................................................................................16

*Mullins v. Premier Nutrition Corp.*,
   178 F. Supp. 3d 867 (N.D. Cal. 2016) .......................................................6, 9, 13, 14

*Munhwa Broad. Corp. v. Create New Tech. Co.*,
   No. CV 14-04213-RGK, 2015 WL 12747909 (C.D. Cal. Sept. 2, 2015).................................8

*Nat'l Fin. Partners Corp. v. Paycom Software, Inc.*,
   No. 14 C 7424, 2015 WL 3633987 (N.D. Ill. June 10, 2015) .......................................15

*NFL League Props., Inc. v. ProStyle, Inc.*,
   57 F. Supp. 2d 665 (E.D. Wis. 1999)....................................................................14

*Oracle Am., Inc. v. Google Inc.*,
   No. C 10-03561 WHA, 2016 WL 1743116 (N.D. Cal. May 2, 2016)....................................14

*Orthofix, Inc. v. Gordon*,
   No. 1:13-cv-01463-SLD-TSH, 2016 WL 1273160 (C.D. Ill. Mar. 31, 2016)............................4

*Orthoflex, Inc. v. Thermotek, Inc.*,
   986 F. Supp. 2d 776 (N.D. Tex. 2013) ....................................................................4

**CASES**                                                                   **PAGE**

*Pettit v. Procter & Gamble Co.*,
    No. 15-cv-02150-RS, 2017 WL 3310692 (N.D. Cal. Aug. 3, 2017)..........................4

*Pharmacia Corp. v. GlaxoSmithKline Consumer Healthcare, L.P.*,
    292 F. Supp. 2d 594 (D.N.J. 2003) .......................................................................14

*Procter & Gamble Pharm., Inc. v. Hoffmann-LaRoche Inc.*,
    No. 06 Civ. 0034(PAC), 2006 WL 2588002 (S.D.N.Y. Sept. 6, 2006) ...............15

*Propat Int'l Corp. v. Rpost, Inc.*,
    No. SACV 03-1011 JVS (VBKx), 2005 WL 5957834
    (C.D. Cal. Sept. 19, 2005)....................................................................................12

*Ries v. Ariz. Beverages USA LLC*,
    287 F.R.D. 523 (N.D. Cal. 2012).......................................................................4, 13

*Robroy Indus.-Tex., LLC v. Thomas & Betts Corp.*,
    No. 2:15-CV-512-WCB, 2017 WL 1319553 (E.D. Tex. Apr. 10, 2017) .................3

*Secure Energy, Inc. v. Coal Synthetics, LLC*,
    No. 4:08CV1719 JCH, 2010 WL 1692076 (E.D. Mo. Apr. 27, 2010)......................8

*SmithKline Beecham Consumer Healthcare, L.P. v. Johnson & Johnson-Merck
Consumer Pharm. Co.*,
    No. 01 Civ. 2775(DAB), 2001 WL 588846 (S.D.N.Y. June 1, 2001), *aff'd*, 19
    F. App'x 17 (2d Cir. 2001) ..................................................................................14

*Story Parchment Co. v. Paterson Parchment Paper Co.*,
    282 U.S. 555 (1931)..........................................................................................9, 10

*Strumlauf v. Starbucks Corp.*,
    No. 16-cv-01306-YGR, 2018 WL 306715 (N.D. Cal. Jan. 5, 2018).....................16

*Sullivan v. Kelly Servs., Inc.*,
    268 F.R.D. 356 (N.D. Cal. 2010).........................................................................10

*Sunbeam Corp. v. Equity Indus. Corp.*,
    635 F. Supp. 625 (E.D. Va. 1986), *aff'd*, 811 F.2d 1505 (4th Cir. 1987)...............16

*Sunlight Saunas, Inc. v. Sundance Sauna, Inc.*,
    427 F. Supp. 2d 1022 (D. Kan. 2006)..................................................................8, 9

*Thomas v. FCA US LLC*,
    242 F. Supp. 3d 819 (S.D. Iowa 2017) ..................................................................8

*Tyson Foods Inc. v. Bouaphakeo*,
    __ U.S. __, 136 S. Ct. 1036 (2016)......................................................................10

**CASES**                                                                                          **PAGE**

*United States v. Abair*,
    746 F.3d 260 (7th Cir. 2014) ................................................................3

*United States v. Clark*,
    613 F.2d 391 (2d Cir. 1979)..................................................................3

*United States v. Wall*,
    371 F.2d 398 (6th Cir. 1967) ................................................................3

*Valador, Inc. v. HTC Corp.*,
    242 F. Supp. 3d 448 (E.D. Va.), *aff'd*, 707 F. App'x 138 (4th Cir. 2017) .............................16

*Weitz Co. v. MH Washington*,
    631 F.3d 510 (8th Cir. 2011) ................................................................8

*Wells v. Fedex Ground Package Sys., Inc.*,
    No. 4:06-CV-422-JAR, 2013 WL 5436608 (E.D. Mo. Sept. 27, 2013)...................................8

*Williams v. Gaye*,
    885 F.3d 1150 (9th Cir. 2018) ..............................................................4

*Williams v. Bridgeport Music, Inc.*,
    No. LA CV13-06004 JAK (AGRx), 2015 WL 4479500
    (C.D. Cal. July 14, 2015) ..................................................................4

*Zeisel v. Diamond Foods, Inc.*,
    No. C 10-01192 JSW, 2011 WL 2221113 (N.D. Cal. June 7, 2011)...............................4, 13

**STATUTES, RULES AND REGULATIONS**

Federal Rules of Civil Procedure
    Rule 26.....................................................................................12
    Rule 26(a)(2)...............................................................................12
    Rule 26(a)(2)(B)........................................................................11, 12
    Rule 26(b)(3)(A) ..........................................................................11
    Rule 26(b)(3)(B)..........................................................................11
    Rule 26(b)(4)(C)......................................................................11, 12

**SECONDARY AUTHORITIES**

6 *McCarthy on Trademarks* § 32:172 .......................................................16

*Reference Manual on Scientific Evidence, Reference Guide on Survey Evidence*
    359 (Fed. Jud. Ctr. 3d ed. 2011) ..........................................................14

1483658_1

PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANT'S MOTION TO EXCLUDE TRIAL EXPERT
OPINION TESTIMONY OF SIDNEY BLUM AND DR. MICHAEL KAMINS - 3:15-cv-05557-RS          - v

I.       INTRODUCTION

Plaintiff Faith Bautista ("Bautista" or "Plaintiff") disclosed two expert witnesses who will testify at trial.  Sidney P. Blum is a renowned forensic accountant and certified fraud examiner who has been accepted as an expert by many federal and state courts and arbitration panels across the country.  Using industry-standard forensic accounting methods, Mr. Blum calculated damages for the Class resulting from Defendant Valero Marketing and Supply Company's ("Valero") deceptive and unfair practices alleged in this lawsuit.  His calculation is straightforward: it simply measures the price differential between the "cash" price advertised at 192 Valero stations at issue, and the "credit" price that was charged on debit card purchases for gasoline during the Class Period.

Dr. Michael A. Kamins is a renowned consumer expert, who is the current Director of Online Programs, Full Professor and Visiting Professor of Marketing at the Peter F. Drucker Graduate School of Management at Claremont University.  Dr. Kamins conducted two consumer surveys to understand whether consumers expect to be charged the "cash" price or the "credit" price using their debit card to purchase gasoline at a Valero station.  In Study 1, Dr. Kamins presented respondents with an image of a typical Valero pricing sign and asked whether they would expect the "cash" or "credit" price to apply to a debit card purchase.  Unsurprisingly, a clear majority of respondents expected to be charged the "cash" price, which is corroborated by other substantial evidence in the record.

Study 2 presented respondents with an image of a point-of-sale ("POS") device found at many Valero stations and asked respondents whether they would first swipe their debit card into the POS device, or whether they would begin the transaction by first pushing a button on the POS device labeled "ATM/Debit," which would allegedly result in the "cash" price being charged at some Valero stations.  Again, a clear majority of consumers in Study 2 indicated they would not push the "ATM/Debit" button first, and thus, would have been charged the higher "credit" price.  Study 2 further shows that a majority of the respondents who indicated that they would not push the button first *would* push it first if they were informed that it would result in them paying a lower price for gasoline.

1483658_1

PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANT'S MOTION TO EXCLUDE TRIAL EXPERT
OPINION TESTIMONY OF SIDNEY BLUM AND DR. MICHAEL KAMINS - 3:15-cv-05557-RS          - 1 -

1    Mr. Blum and Dr. Kamins offered identical evidence in support of Class certification, and

2 Valero unsuccessfully attempted to strike their opinions at that time.  *See* ECF No. 100 (the "First

3 Attempt").  As this Court held, "Valero['s] . . . objections to numerous aspects of Dr. Kamins'

4 methodology, . . . go to the weight of the evidence offered, not its admissibility." *Bautista v. Valero*

5 *Mktg. & Supply Co*., 322 F.R.D. 509, 516 (N.D. Cal. 2017).[1]  With respect to Mr. Blum – who has

6 taken an indisputably ***conservative*** approach to calculating damages – the Court held that "Valero has

7 little reason to complain about this methodology, since it potentially yields a conservative calculation

8 of damages to Valero's advantage." *Id.* at 518.

9    Since then, Mr. Blum and Dr. Kamins have not changed their testimony.  But what has

10 changed is Valero's counsel, who now hopes to prevail by spurious repetition.  *See* ECF No. 175

11 ("Motion" or "Mot.").    Valero largely recycles the arguments from its First Attempt, which this

12 Court has already rejected.  The handful of new arguments that Valero raises in the instant Motion are

13 based on obvious misunderstandings of California's consumer protection laws, as well as equally

14 obvious mischaracterizations of the record.  Valero's second shot at excluding Plaintiff's experts

15 should fail, just as it did the first time, and Valero's Motion should be denied.

16 **II.    ARGUMENT**

17    **A.    Valero's Objections to Mr. Blum's Damage Model Have No Merit and
             Should Be Overruled**

18

19        **1.    Mr. Blum's Damages Model Easily Meets the *Comcast* and
                  *Daubert* Standards**

20    Plaintiff's measure of damages is directly tied to her theory of the case.  *See Comcast Corp. v.*

21 *Behrend*, 569 U.S. 27, 38 (2013). Plaintiff's theory is that by failing to disclose that debit cards are

22 charged the higher "credit" price, Valero deceived reasonable consumers who expected to pay the

23 "cash" price.  Mr. Blum calculated damages measured as the difference between the advertised

24 "cash" price and the "credit" price that was charged on debit card purchases of gasoline at 192 Valero

25 stations in California during the Class Period.  This model measures only the damages attributed to

26 Valero's deceptive practices.  Thus, *Comcast* is easily satisfied.

27 ────────────────

28 [1]    Citations, internal quotations, and footnotes omitted and emphasis added unless noted otherwise.

PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANT'S MOTION TO EXCLUDE TRIAL EXPERT
OPINION TESTIMONY OF SIDNEY BLUM AND DR. MICHAEL KAMINS - 3:15-cv-05557-RS        - 2 -

1    Mr. Blum's model also satisfies *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993),

2    because Mr. Blum is an indisputably qualified forensic accountant and certified fraud examiner who

3    has been accepted as an expert by numerous courts and arbitration panels.  *See* Expert Report of

4    Sidney P. Blum [ECF No. 215-2] ("Blum Rpt."), ¶¶2-18; Deposition Transcript of Sidney P. Blum,

5    taken June 29, 2017 ("Blum Depo."), attached as Ex. 1 to the Declaration of Christopher C. Gold

6    ("Gold Declaration"), filed herewith, at 5:17-9:17.  Valero does not dispute this.  Mr. Blum also

7    calculated damages using industry-standard accounting methods that are regularly used by experts in

8    his field, and he relied on actual sales data from the stations at issue, which Valero produced.  There

9    is simply no legitimate basis to question the reliability of Mr. Blum or his damages model.

10    Tellingly, Valero offers only nonsense in its attempted critique of Mr. Blum.

11    ***First***, Valero claims that Mr. Blum's model is not "connected to Plaintiffs' [sic] theory of

12    liability" because Mr. Blum purportedly would not testify as to the "causative mechanism" his

13    calculations are "supposed to measure" or that Mr. Blum purportedly "assumed for the purpose of

14    assessing damages."  Mot. at 5:5-9.  This begs the questions: what is a "causative mechanism," and

15    why is Plaintiff's damages expert required to "measure" or "assume" one?  Plaintiff still has no idea,

16    and neither did Mr. Blum at his deposition.  *See* Deposition Transcript of Sidney Blum, taken

17    September 19, 2018 [ECF No. 189-10] ("Blum Depo. Tr."), at 34:2-19, 35:05-12, 120:20-121:1.

18    Plaintiff objected to Valero's vague, ambiguous, and irrelevant question regarding a "causative

19    mechanism," and any answer to that improper question, for whatever it is worth, should not be

20    considered in support of Valero's position. .  *See United States v. Abair*, 746 F.3d 260, 266 (7th Cir.

21    2014) (in reversing conviction, appeals court said prosecutor used vague, confusing, and highly

22    improper compound questions); *United States v. Wall*, 371 F.2d 398, 399-400 (6th Cir. 1967)

23    (reversing perjury conviction that had been based on response to ambiguous question).

24    A witness is not required to answer questions that are uncertain in meaning.  *See United States*

25    *v. Clark*, 613 F.2d 391, 407 (2d Cir. 1979) ("The question excluded was confusing to court, counsel

26    and the witness alike.").  Furthermore, Mr. Blum, as a damages expert, is not required to testify as to

27    causation. *See Robroy Indus.-Tex., LLC v. Thomas & Betts Corp.*, No. 2:15-CV-512-WCB, 2017 WL

28    1319553, at *5 (E.D. Tex. Apr. 10, 2017) ("This principle has been expressed in numerous cases, and

PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANT'S MOTION TO EXCLUDE TRIAL EXPERT
OPINION TESTIMONY OF SIDNEY BLUM AND DR. MICHAEL KAMINS - 3:15-cv-05557-RS        - 3 -

it is beyond serious challenge.") (collecting cases, including *Orthofix, Inc. v. Gordon*, No. 1:13-cv-01463-SLD-TSH, 2016 WL 1273160, at *3 (C.D. Ill. Mar. 31, 2016) ("It is entirely appropriate for a damages expert to assume liability for the purposes of his or her opinion. To hold otherwise would be illogical."); *Williams v. Bridgeport Music, Inc*., No. LA CV13-06004 JAK (AGRx), 2015 WL 4479500, at *24 (C.D. Cal. July 14, 2015) ("A damages expert may assume as a fact, for purposes of fashioning an opinion, that the technical conclusions of infringement experts are correct and reasonable."), *aff'd in part and rev'd in part on other grounds*, *Williams v. Gaye*, 885 F.3d 1150 (9th Cir. 2018); and *Orthoflex, Inc. v. Thermotek, Inc*., 986 F. Supp. 2d  776, 792 (N.D. Tex. 2013) ("Experts are permitted to assume the fact of liability and opine about the extent of damages.")).  To the extent Valero suggests that Mr. Blum does not understand Plaintiff's allegations in this case, Mr. Blum clearly testified that he reviewed the operative complaint and assumes the allegations to be correct.  Blum Depo. Tr., at 29:4-7, 31:10-14.  This gives Mr. Blum a sufficient basis to understand the purpose and the goal of the damage calculations he performed.  No "causative mechanism" is required.

**Second**, Valero asserts that Mr. Blum's damages calculations fail the *Comcast* standard because they purportedly include people who "could not have been misled by the challenged signs." Mot. at 5:11-12.  More than anything, this just shows that Valero does not understand California's consumer protection laws.  It is beyond dispute that "relief under the UCL and FAL is available without individualized proof of deception, reliance, **and injury**."  *Ries v. Ariz. Beverages USA LLC*, 287 F.R.D. 523, 537 (N.D. Cal. 2012); *see also Zeisel v. Diamond Foods, Inc*., No. C 10-01192 JSW, 2011 WL 2221113, at *9 (N.D. Cal. June 7, 2011) (same).  And "under the CLRA, [c]ausation, on a class[-]wide basis, may be established by **materiality**[,]" which is determined using a standard that "is identical to the UCL's and FAL's objective test."  *Ries*, 287 F.R.D. at 538 (emphasis in original).  And this Court has already made clear that "there is no need for Bautista to show that every consumer is likely to view the signs and rely upon them in deciding to use their debit cards when purchasing fuel."  *Bautista*, 322 F.R.D. at 516; *see also Pettit v. Procter & Gamble Co.*, No. 15-cv-02150-RS, 2017 WL 3310692, at *3 (N.D. Cal. Aug. 3, 2017) (Plaintiff "has no burden to establish that . . . all or nearly all [consumers] shared any specific belief.").  Valero's insistence that damages can only be

1    calculated for Class members who were actually deceived would impose a requirement of

2    "individualized proof of deception, reliance, and injury" that clearly does not exist in the law.  And

3    Valero's misunderstanding of the law does not impact the reliability of Mr. Blum's damages

4    calculation.

5        ***Third***, Valero claims that Mr. Blum's calculations are not "connect[ed] . . . to Plaintiffs' [*sic*]

6    claims" because of Mr. Blum's purported "unfamiliarity with and failure to understand the debit card

7    transactions[.]"  Mot. at 5:22.  Valero does not explain what familiarity or understanding of "debit

8    card transactions" that Mr. Blum lacks or needs in order to calculate damages in this case.  The only

9    debit card transactions at issue are those known as "signature-debit" transactions, which were charged

10   the "credit" price, and which are clearly marked in Valero's data production with a "Y" in a column

11   labeled "visa_debit_flag."  Blum Rpt. ¶¶38, 41, 49; Blum Depo. Tr., at 131:16-21.  Mr. Blum

12   testified, consistent with his report, that he understands the difference between so-called "PIN-debit"

13   and "signature-debit" transactions, that only the "signature-debit" transactions are at issue, and that

14   those transactions are clearly marked with a "Y."  Blum Depo. Tr., at 131:15-21.  That is all the

15   understanding of debit card transactions Mr. Blum needs to reliably and accurately calculate damages.

16       At bottom, Mr. Blum's damages calculations use straightforward accounting methods and

17   principles to perform a simple calculation of damages measured as the difference between two clearly

18   defined prices.  This is not a complex antitrust case that requires a complex regression analysis to

19   calculate damages, so Valero's reliance on authorities that involve such complex issues is misplaced.

20   *See Comcast*, 569 U.S. at 32 (discussing complex regression model in antitrust case); *In re NJOY, Inc.*

21   *Consumer Class Action Litig*., 120 F. Supp. 3d 1050, 1120-21 (C.D. Cal. 2015) (discussing complex

22   damage methodology). Valero's criticisms of Mr. Blum's damages calculations simply do not make

23   any sense.  Its Motion should be denied.

24          **2.    Valero Does Not Get a Free Pass Merely Because It Failed to
                    Retain Sales Records for the Full Class Period**

25

26       Valero did not retain sales data for its stations prior to January 2014.  In order to calculate

27   damages for the 2011 to 2014 period, Mr. Blum used an industry-standard extrapolation method, used

28   by experts in his field, which takes the damages he calculated for the 2014 to 2018 period (with data)

1    and extrapolates them back to the earlier period (without data).  Blum Rpt. ¶¶31-33, 43-45, 95-132,

2    139-140.  As a benchmark to confirm the reasonableness of his extrapolation, Mr. Blum relied on

3    historical California retail gasoline sales data published by the U.S. Energy Information

4    Administration ("EIA"), which Mr. Blum considers to be a reliable source.  Blum Rpt. ¶¶44, 117-

5    131; Blum Depo., at 74:23-25, 76:5-15.  The EIA data shows that gasoline sales in California were

6    substantially higher during the 2011 to 2013 extrapolation period than they were during the 2014 to

7    2015 period.  Blum Rpt., ¶¶124-125; Blum Depo. Tr., at 105:22-24.  Based on this data, Mr. Blum

8    could have reasonably increased his extrapolation by up to 20% to track the higher volume of

9    gasoline sales during that period, but he did not, which yielded an inherently conservative

10   extrapolation.  Blum Depo., at 89:23-90:1.  As this Court previously held, "Valero has little reason to

11   complain about this methodology, since it potentially yields a conservative calculation of damages to

12   Valero's advantage." *Bautista*, 322 F.R.D. at 516.  Yet, Valero is still complaining.

13         Valero criticizes Mr. Blum's extrapolation and claims that it is "overstate[d]" because it

14   purportedly does not account for the "economic realities of the market before 2014."  Mot. at 6:22-23,

15   9:24.  But that is obviously not true, because, as noted, Mr. Blum used actual California fuel sales

16   prior to 2014 as a benchmark for his extrapolation, which shows that Mr. Blum's extrapolation is

17   *understated* by at least 15% to 20%.  Valero not only fails to appreciate the substantial discount that

18   Mr. Blum's extrapolation grants it, but it offers no competing analysis or evidence of its own to

19   substantiate its bare assertion that Mr. Blum's extrapolation is, in fact, "overstate[d]."  Valero just

20   says it is.  That is not enough to exclude an opinion.  *See Mullins v. Premier Nutrition Corp.*, 178 F.

21   Supp. 3d 867, 888 (N.D. Cal. 2016) ("Nothing in either *Daubert* or the Federal Rules of Evidence

22   requires a district court to admit opinion evidence that is connected to existing data only by the *ipse*

23   *dixit* of the expert.").

24         To the extent Valero contends that Mr. Blum's extrapolation should have also analyzed every

25   micro-economic factor in the local market of each station – in addition to the actual gasoline sales in

26   California – that is simply a difference of opinion that goes to the weight of the evidence, not its

27   admissibility.  *See Bustamante v. Graco, Inc.*, No. CV 03-182 TUC JMR, 2006 WL 5156868, at *3

28   (D. Ariz. Mar. 9, 2006) (refusing to exclude expert who used general information in opinion).

1483658_1

PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANT'S MOTION TO EXCLUDE TRIAL EXPERT
OPINION TESTIMONY OF SIDNEY BLUM AND DR. MICHAEL KAMINS - 3:15-cv-05557-RS        - 6 -

1    Mr. Blum testified that, in his expert opinion, the more reliable way to extrapolate damages

2    focuses on the macro-economic factors rather than the micro-economic ones.  Blum Depo., at 80:15-

3    81:8; Blum Depo. Tr., at 107:23-109:4.  Mr. Blum explained that there are an infinite number of ways

4    to analyze a local market, and there are likely an equal number of factors that will cause any given

5    station's sales to increase or decrease at any given time.  Blum Depo. Tr., at 115:10-19.  For example,

6    "what their maintenance period was, the number of pumps added or lost, whether or not it was a rainy

7    day or a sunny day, whether or not there was snow conditions, whether or not there was construction

8    by the city keeping people from entering, whether or not they had a Pizza Hut open that day and they

9    were giving away free pizza."  Blum Depo. Tr., at 108:17-23.

10    Obviously, as Mr. Blum testified, it would be virtually impossible to analyze all of the micro-

11    economic factors that might affect gasoline sales at Valero stations throughout the Class Period.

12    Blum Depo. Tr., at 112:23-113:12.  Thus, subjective judgment calls would have to be made along

13    each step of the way as to which factors to consider and which to ignore.  Each subjective judgment

14    call could bias the ultimate extrapolation calculation to be  higher or lower.  Blum Depo. Tr., at

15    111:4-6.  As Mr. Blum testified, such a subjective method is not a reliable way to calculate damages,

16    and no real expert would contend otherwise.  Blum Depo. Tr., at 111:4-12.  Mr. Blum's expert

17    opinion is that the proper way to extrapolate damage is by focusing on the stations at issue in the

18    aggregate and to use historic California fuel sales as a benchmark.  Blum Depo. Tr., at 93:10-17,

19    98:9-18, 109:17-110:13, 114:21-115:19.  Any disagreement by Valero or its expert is a question for

20    the jury.

21    Similarly, Valero asserts that Mr. Blum's extrapolation should have accounted for the

22    purportedly less frequent use of debit cards during the extrapolation period.  Mot. at 9.  As before,

23    this is a difference of expert opinion, and it is a question for the jury.  And again, Valero offers no

24    actual evidence that Mr. Blum's extrapolation is "overstate[d]" in any way for purportedly not

25    considering frequency of debit card usage.  Nor could it.  As noted, Mr. Blum's extrapolation is

26    inherently conservative by at least 15% to 20%.  That means debit card usage would have to be at

27    least 15% to 20% less frequent during the extrapolation period just for Mr. Blum's extrapolation to

28    meet the benchmark of actual California fuel sales.  And there is no evidence in the record that

1483658_1

PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANT'S MOTION TO EXCLUDE TRIAL EXPERT
OPINION TESTIMONY OF SIDNEY BLUM AND DR. MICHAEL KAMINS - 3:15-cv-05557-RS        - 7 -

1   purports to show that the frequency of debit card usage during the extrapolation period materially

2   varies from the debit card usage during the data period, such that Mr. Blum's extrapolations would no

3   longer be a reasonable approximation for damages.

4       In sum, there is no basis to exclude Mr. Blum's damages extrapolation.  There is no dispute

5   that Mr. Blum is qualified to perform an extrapolation.  Mr. Blum performed his extrapolation using

6   reliable data and methods that are accepted by experts in his field and countless courts throughout the

7   country.  *Munhwa Broad. Corp. v. Create New Tech. Co.*, No. CV 14-04213-RGK (RZx), 2015 WL

8   12747909, at *6 (C.D. Cal. Sept. 2, 2015) (accepting Mr. Blum's extrapolation of revenue); *EFCO*

9   *Corp. v. Symons Corp.*, 219 F.3d 734, 739 (8th Cir. 2000) (extrapolation admissible, even if party

10  "questioned his approach"); *Secure Energy, Inc. v. Coal Synthetics, LLC*, No. 4:08CV1719 JCH,

11  2010 WL 1692076, at *3 (E.D. Mo. Apr. 27, 2010) (jury question whether expert's profit forecast

12  was too speculative); *Wells v. Fedex Ground Package Sys., Inc.*, No. 4:06-CV-422-JAR, 2013 WL

13  5436608, at *7 (E.D. Mo. Sept. 27, 2013) (refusing to exclude expert where party alleged that expert

14  opinion was speculative even though other variables were not considered); *Thomas v. FCA US LLC*,

15  242 F. Supp. 3d 819, 824 (S.D. Iowa 2017) ("[e]xpert opinion necessarily involves some

16  speculation") (quoting *Weitz Co. v. MH Washington*, 631 F.3d 510, 528 (8th Cir. 2011)).

17      Valero thinks Mr. Blum should have performed his extrapolation differently, but that is a

18  factual dispute for the jury.  Valero ultimately offers no evidence or independent analysis to support

19  its assertion that Mr. Blum's extrapolation is purportedly "overstate[d]."  Instead, it offers only

20  conjecture and speculations.  Had Valero conducted any analysis at all, it would have immediately

21  recognized that Mr. Blum's extrapolation is, in fact, understated by at least 15% to 20%.  And, as

22  noted, Valero cannot complain about that.

23      Indeed, Valero's cited authorities are plainly inapposite.  In *Garnica v. HomeTeam Pest Def.,*

24  *Inc.*, 230 F. Supp. 3d 1155, 1159 (N.D. Cal. 2017), Plaintiff's expert failed to conduct the analysis on

25  a "market-by-market" basis, which was required in "an antitrust case . . . defined by the area of

26  competition."  Here, as noted, Mr. Blum's damage analysis is directly tied to Plaintiff's theory of

27  liability.  In both *Sunlight Saunas, Inc. v. Sundance Sauna, Inc.*, 427 F. Supp. 2d 1022, 1030 (D. Kan.

28  2006), and *Magnetar Tech. Corp. v. Intamin, Ltd.*, 801 F.3d 1150, 1159 (9th Cir. 2015), Plaintiff's

1  experts incorrectly calculated lost profits because they relied upon an inaccurate forecast of sales.  *See*

2  *Sunlight*, 427 F. Supp. 2d at 1030 (rejecting plaintiff's expert's methodology to calculate lost profits

3  because "Finch's entire damage calculation is based on his underlying assumptions regarding

4  plaintiff's forecast of sales," which were not "valid predictors of actual sales"); *Magnetar*, 801 F.3d at

5  1159 (affirming summary judgment, finding, "Schulze only compared Magnetar's actual [results]

6  versus their business plan[, which] showed that they did not achieve their business plan").  Here,

7  Mr. Blum calculated damages based upon Valero's actual sales data and then extrapolated those

8  damages back in time to the period for which Valero failed to preserve data, which yielded a

9  significantly conservative estimate of gallons of gas sold during that period.

10      To the extent that Valero takes issue generally with damages being calculated for periods

11  without data using an extrapolation, the weight of authority and expert opinion are against it.

12  Generally speaking, plaintiffs are not required to prove damages with "exact precision."  *Mullins*,

13  178  . Supp. 3d at 898; *In re Sugar Indus. Antitrust Litig.*, MDL No. 201, 1976 WL 1374, at *27

14  (N.D. Cal. May 21, 1976) ("[A]bsolute precision has never been required in the proof of the amount

15  of damages."); *Comcast*, 569 U.S. at 35 ("[c]alculations need not be exact").

16      Only a "reasonable approximation" is required.  *Acree v. Gen. Motors Acceptance Corp.*,

17  92 Cal. App. 4th 385, 398 (2001) ("Where the fact of damages is certain, as here, the amount of

18  damages need not be calculated with absolute certainty. The law requires only that some reasonable

19  basis of computation be used, and the result reached can be a reasonable approximation."); *see also*

20  *MediaTek Inc. v. Freescale Semiconductor, Inc.*, No. 11-cv-5341 YGR, 2014 WL 2854890, at *5

21  (N.D. Cal. June 20, 2014) (denying motion to exclude damages testimony where expert's estimates

22  were a "reasonable approximation[]"); *In re Lenovo Adware Litig.*, No. 15-md-02624-RMW, 2016

23  WL 6277245, at *21 (N.D. Cal. Oct. 27, 2016) ("[C]alculation of restitution damages requires only

24  that some reasonable basis of computation of damages be used, and the damages may be computed

25  even if the result reached is an approximation.").

26      Furthermore, the Supreme Court has long made clear that "there is a clear distinction between

27  the measure of proof necessary to establish the fact that petitioner had sustained some damage and the

28  measure of proof necessary to enable the jury to fix the amount."  *Story Parchment Co. v. Paterson*

1483658_1

PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANT'S MOTION TO EXCLUDE TRIAL EXPERT
OPINION TESTIMONY OF SIDNEY BLUM AND DR. MICHAEL KAMINS - 3:15-cv-05557-RS      - 9 -

1    *Parchment Paper Co.*, 282 U.S. 555, 562 (1931). "The rule which precludes the recovery of uncertain

2    damages applies to such as are not the certain result of the wrong, not to those damages which are

3    definitely attributable to the wrong and only uncertain in respect of their amount." *Id.*; *see also*

4    *Greenhaw v. Lubbock Cty. Beverage Ass'n*, 721 F.2d 1019, 1027 (5th Cir. 1983) ("The rigorous

5    measure urged by defendants would not allow for the use of reasonable inferences and educated

6    projections. It is too much to demand for courtroom proof.").

7           And obviously, the Class cannot be punished for Valero's failure to retain sales records;

8    otherwise, corporations would be incentivized to practice poor record keeping to escape class action

9    liability.  *See Etter v. Allstate Ins. Co.*, 323 F.R.D. 308, 315 (N.D. Cal. 2017) ("This order further

10   agrees with [plaintiff] that, insofar as defendants are the ones responsible for the absence of more

11   detailed fax transmission records, they should not benefit from their poor recordkeeping by dodging a

12   class action on that basis."); *Greenhaw*, 721 F.2d at 1027 ("The unavailability of price records for

13   defendants' stores during the 1970 to 1974 period is caused by no failure of diligence on the part of

14   the class, but by defendants' failure to preserve such information.").

15          For such situations, the Supreme Court expressly permits the use of statistical and

16   "representative evidence."  *Tyson Foods Inc. v. Bouaphakeo*, __ U.S. __, 136 S. Ct. 1036, 1047

17   (2016).  District courts around the country have also accepted such representative evidence, including

18   extrapolations, and including extrapolations conducted by Mr. Blum.  *See Sullivan v. Kelly Servs.*,

19   Inc., 268 F.R.D. 356, 365 (N.D. Cal. 2010) ("[S]tatistical evidence, including surveys or

20   representative testimony, or both, of class members to determine damages at trial . . . [is] evidence . . .

21   commonly accepted by courts for calculating damages in large class actions.") (collecting cases);

22   *Lenovo*, 2016 WL 6277245, at *21 (rejecting argument that damage model was "flawed" because it

23   relied on "a straight-line model for depreciation"); *Sugar*, 1976 WL 1374, at *27 ("As to the

24   admissibility of statistical proof of damages, Rule 703 of the Federal Rules of Evidence and the

25   Advisory Committee note thereto clearly open the door to such data when properly compiled and

26   presented. Also, courts within this circuit have dealt with such data since *In re Western Liquid*

27   *Asphalt Cases* [1973-2 TRADE CASES P 74,733, 75,081], 487 F.2d 191 (9th Cir. 1973).").

28

1483658_1

PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANT'S MOTION TO EXCLUDE TRIAL EXPERT
OPINION TESTIMONY OF SIDNEY BLUM AND DR. MICHAEL KAMINS - 3:15-cv-05557-RS          - 10 -

1   There is simply no basis to exclude Mr. Blum's extrapolation.  Therefore, Valero's Motion

2   should be denied.

3       **3.   Mr. Blum Considered No Information About the "Start and
            End Dates" that Was Not Fully Disclosed to Valero, so**

4       **Valero's Attempt to Exclude Mr. Blum on that Ground Is
            Meritless**

5

6   Valero's strategic ploy to exclude Mr. Blum because Valero purportedly could not "test his

7   reliance" on the liability date-range range for each station, which counsel provided to him,

8   mischaracterizes the record and lacks any merit.

9   At deposition, counsel for Valero asked Mr. Blum whether he "determine[d] the damages

10  period" for each station at issue.  Blum Depo. Tr., at 38:22-39:7.  Mr. Blum unequivocally testified

11  that he did not and, further, that he "assume[d] that the dates that counsel has given me are dates that I

12  can rely upon[,]" that he did not conduct any "separate analysis to test whether those dates are

13  accurate[,]" and that such an analysis is "not something that a damages expert like myself should be

14  doing, unless I've been specifically trained to do that type of work.  So I have to place reliance on

15  others as is proper."  *Id.*, at 40:11-41:4.  Thus, Valero's testing of Mr. Blum's reliance on those dates

16  was complete.

17  Despite the fact that Mr. Blum testified that he relied on the damage periods he was provided,

18  and did not conduct any analysis of them, Valero's counsel then began demanding that Mr. Blum

19  reveal "how the begin and end dates for those stations were ***derived***[.]"  *Id.*, at 41:6-7.  But how the

20  dates were derived – to the extent Mr. Blum even knows – reflects the theories and mental

21  impressions of counsel based on analysis of the evidence, which counsel believes supports the

22  accuracy of those damage periods.  Such work-product is clearly protected from disclosure.  *See* Fed.

23  R. Civ. P. 26(b)(4)(C) ("Rules 26(b)(3)(A) and (B) protect communications between a party's

24  attorney and any witness required to provide a report under Rule 26(a)(2)(B), regardless of the form

25  of the communications"); *see also* Advisory Committee Notes to the 2010 Amendment ("The

26  addition of Rule 26(b)(4)(C) is designed to protect counsel's work product and ensure that lawyers

27  may interact with retained experts without fear of exposing those communications to searching

28

PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANT'S MOTION TO EXCLUDE TRIAL EXPERT
OPINION TESTIMONY OF SIDNEY BLUM AND DR. MICHAEL KAMINS - 3:15-cv-05557-RS        - 11 -

1  discovery."); *id*. ("The refocus of disclosure on "facts or data" is meant to limit disclosure to material

2  of a factual nature by excluding theories or mental impressions of counsel.").[2]

3      The Rule does provide a narrow exception for communications that "identify facts or data that

4  the party's attorney provided and that the expert considered in forming the opinions to be

5  expressed[.]"  *Id*.  But as the Advisory Committee Notes to the 2010 Amendment explains, "[t]he

6  exception applies only to communications 'identifying' the facts or data provided by counsel; further

7  communications about the potential relevance of the facts or data are protected."  Mr. Blum fully

8  disclosed the "facts or data" he considered in forming his opinions: the dates that counsel provided

9  him.  Any communications regarding the "potential relevance" of those facts and data are clearly

10 protected from disclosure.  And contrary to Valero's bald assertion, that "of course" Mr. Blum

11 considered how those dates were derived, that assertion finds no support in the transcript.  Mr. Blum

12 unequivocally testified that, in forming his opinion, he did ***not*** consider how the dates were derived,

13 nor did he need to in order to reliably calculate damages.

14      Valero's contentions have no merit and should be rejected.

---

15  [2]  Valero cites authorities that predate the applicable amendments to the Federal Rules.  *See* Fed. R.
16  Civ. P. 26 Advisory Committee Note (2008); *In re Google Adwords Litig*., No. C08-03369 JW
    (HRL), 2010 WL 5185738, at *2 (N.D. Cal. Dec. 8, 2010) (citing Fed. R. Civ. P. 26 Advisory
17  Committee's Note (1993); *Propat Int'l Corp. v. Rpost, Inc*., No. SACV 03-1011 JVS (VBKx), 2005
    WL 5957834, at *1 (C.D. Cal. Sept. 19, 2005); *Fid. Nat. Title Ins. Co. of N.Y. v. Intercty. Nat. Title
18  Ins. Co*., 412 F.3d 745, 751 (7th Cir. 2005) (citing Committee Notes to 1993 Amendments to Fed. R.
    Civ. P. 26(a)(2)).  But even under those outdated authorities, Valero's cases are distinguishable. In
19  *Google*, the Court required the expert to disclose the identities of four entities, "whose click data
    Mothner considered because (1) he reviewed unredacted copies of their aggregate click data and
20  (2) Plaintiffs should be able to challenge the validity of using these particular companies/business
    areas as illustrative examples."  2010 WL 5185738, at *2.  The Court rejected disclosure of the
21  underlying click data for the four entities because the expert did not consider such data.  Here,
    Mr. Blum was told to assume that the begin and end dates were correct and those dates were
22  disclosed.  *Google* does not stand for the proposition that an expert in Mr. Blum's situation must
    disclose his conversations with counsel, if any, or his understanding based on those conversations
23  about how the begin and end dates were decided upon by counsel.  In *Propat*, the Court excluded a
    damage expert whose "report and . . . deposition testimony indicate[d] that he reviewed other material
24  as part of his expert assignment," but failed to disclose such materials pursuant to Rule 26. 2005 WL
    5957834, at *1.[2]  Again, nothing in *Propat* requires Mr. Blum to disclose his "understanding of how
25  the dates were determined" (Mot. at 10:23-24) by Plaintiff's counsel based upon his conversations, if
    any, with Plaintiff's counsel.  *Fidelity* is even farther afield: in *Fidelity*, the Seventh Circuit affirmed
26  that the district court appropriately sanctioned Plaintiff's expert where the expert destroyed
    investigatory notes, pursuant to an accounting firm's "document retention" policy, when the notes
27  should have been preserved and disclosed under Rule 26(a)(2)(B), but the Seventh Circuit also held
    that exclusion was an excessive sanction under the circumstances.  412 F.3d at 750-51.  There is
28  simply no allegation here that any documents have been destroyed by Plaintiff or her expert.

PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANT'S MOTION TO EXCLUDE TRIAL EXPERT
OPINION TESTIMONY OF SIDNEY BLUM AND DR. MICHAEL KAMINS - 3:15-cv-05557-RS      - 12 -

1          **B.      Dr. Kamins' Consumer Surveys Are Plainly Admissible**

2          In its First Attempt, Valero raised objections to numerous aspects of Dr. Kamins'

3   methodology.  *See* First Attempt, at 3-7.  This Court correctly held that those objections "go to the

4   weight of the evidence offered, not its admissibility."  *Bautista*, 322 F.R.D. at 516; *see also Mullins*,

5   178 F. Supp. 3d at 905 ("The general rule is that as long as [the survey] is conducted according to

6   accepted principles and is relevant, the technical inadequacies in a survey, including the format of the

7   questions or the manner in which it was taken, bear on the weight of the evidence, not its

8   admissibility.").

9          In its instant Motion, Valero merely recycles the same old objections from its First Attempt.

10  As detailed below, they should be overruled again.  But Valero also offers a new assertion, based on

11  *Comcast*, that Dr. Kamins' opinions are not "tie[d]" to the "legal claims being asserted," because

12  Dr. Kamins purportedly did not "show that any consumer was misled by the challenged signs."  Mot.

13  at 19:21-23.  This assertion is based on a fundamental misunderstanding of the law and, consequently,

14  it has no merit.

15         As an initial matter, *Comcast* is a damages opinion that has no relevance to the admissibility

16  of consumer survey evidence.  Further, neither Dr. Kamins nor Plaintiff is required to show that any

17  consumer was, in fact, misled by Valero's practices.  California's consumer protection statutes

18  prohibit practices that are "likely to deceive" members of the public.  *Bautista v. Valero Mktg. &*

19  *Supply Co.*, No. 15-cv-05557-RS, 2016 WL 3924117, at *3 (N.D. Cal. July 21, 2016).  And, as noted

20  above, relief under California's consumer protection statutes "is available without individualized

21  proof of deception, reliance, and injury."  *Ries*, 287 F.R.D. at 537; *see also Zeisel*, 2011 WL 2221113,

22  at *9 (same).  Thus, Valero's assertion that Dr. Kamins was required to prove that any consumer was,

23  in fact, misled finds no support in the law.

24         Dr. Kamins' survey shows exactly what Plaintiff is required to prove to prevail: that "a

25  significant portion of the general consuming public or of targeted consumers, acting reasonably in the

26  circumstances, could be misled."  *Bautista*, 322 F.R.D. at 516.  This evidence is directly relevant to

27  Plaintiff's claims, and Valero's quibbles with perceived "technical inadequacies in a survey,

28

1    including the format of the questions or the manner in which it was taken, bear on the weight of the

2    evidence, not its admissibility."  *Mullins*, 178 F. Supp. 3d at 905.

3              **1.      A Control Is Not Required for Dr. Kamins' Survey**

4              Valero relies on Lanham Act authorities to contend that Dr. Kamins' surveys require a

5    "control" in order to ensure that the surveys do not test the "pre-existing" knowledge of consumers.

6    Mot. at 13:23-27.  But as Valero acknowledges, this is not a Lanham Act case.  This is a consumer

7    fraud case, and here,  the "pre-existing" beliefs of consumers with respect to debit cards are the ***focus***

8    of the case.  *Bautista*, 322 F.R.D. at 515 ("[T]his case is not about whether cash is in fact the same as

9    debit – it is about whether a reasonable consumer perceives them to be the same.").

10             Furthermore, the undisputed leading authority on consumer survey design, Dr. Shari Seidman

11   Diamond, has made it clear that a "control" is not required when studying beliefs or attitudes of

12   consumers.   Expert Report of Dr. Michael A. Kamins ("Kamins Rpt.") [ECF No. 189-13], ¶19;

13   *Reference Manual on Scientific Evidence, Reference Guide on Survey Evidence* 359 (Fed. Jud. Ctr. 3d

14   ed. 2011).[3]  Valero cannot dispute this because its own proposed consumer expert has previously

15   defended his own decision to design a consumer survey without a control when testing perception.

16   *Oracle Am., Inc. v. Google Inc.*, No. C 10-03561 WHA, 2016 WL 1743116, at *9 (N.D. Cal. May 2,

17   2016) (quoting deposition by Dr. Simonson: "a control group is not required for a survey that purports

18   only to understand what developers perceive . . . in their decision-making process").   Here,

19   Dr. Kamins designed a survey to understand exactly that: what consumers perceive in their decision-

20

21   _____

     [3]     Valero's cited authorities actually support Plaintiff's position.  In the *Reference Manual on
22   Scientific Evidence, Reference Guide on Survey Evidence* 359 (Fed. Jud. Ctr. 3d ed. 2011),
     Dr. Diamond distinguishes "surveys . . . designed . . . simply to describe attitudes or beliefs or
23   reported behaviors" from those designed "to determine the source of those attitudes or beliefs or
     behaviors."  The purpose of surveys designed to study the source of those attitudes or beliefs or
24   behaviors is to "test a causal proposition."  But here, Dr. Kamins' survey is designed to test consumer
     perception towards Valero's signage.  Since Dr. Kamins' survey is not designed to test a causal
25   proposition, a control group or question is not best practices.  For that reason, Valero's cause-and-
     effect study cases, *NFL League Props., Inc. v. ProStyle, Inc.*, 57 F. Supp. 2d 665, 668 (E.D. Wis.
26   1999); *Ironclad, L.P. v. Poly-Am., Inc.*, No. CIV.A. 3:98-CV-2600, 2000 WL 1400762, at *8 (N.D.
     Tex. July 28, 2000); *Pharmacia Corp. v. GlaxoSmithKline Consumer Healthcare, L.P.*, 292 F. Supp.
27   2d 594, 601 (D.N.J. 2003); *Cohen v. Trump*, No. 3:13-cv-2519-GPC-WVG, 2016 WL 4543481, at *7
     n.4 (S.D. Cal. Aug. 29, 2016); and *SmithKline Beecham Consumer Healthcare, L.P. v. Johnson &
28   Johnson-Merck Consumer Pharm. Co.*, No. 01 Civ. 2775(DAB), 2001 WL 588846, at *11 (S.D.N.Y.
     June 1, 2001), *aff'd*, 19 F. App'x 17 (2d Cir. 2001), are inapposite.

1    making process when considering purchasing gas with a debit card at a Valero station.  A control is
2    not required for this purpose.  At best, whether a control is required is an issue for the jury to decide.

3              **2.       Dr. Kamins' Survey Questions Are Not Suggestive**

4              Valero again criticizes Dr. Kamins' use of purportedly "close-ended" and  suggestive
5    questions that purportedly "present[] an incomplete array of answers, and . . . provide[] . . . a false
6    dichotomy."  Mot. at 14:16-18.  Again, the criticisms should be rejected because they go to the
7    weight, and not the admissibility, of Dr. Kamins' surveys.  *See Bautista*, 322 F.R.D. at 516.

8              To be sure, Valero cites authorities that excluded suggestive surveys, but the surveys at issue
9    were egregiously suggestive and even included images that were created to support a position.  In
10   *Procter & Gamble Pharm., Inc. v. Hoffmann-LaRoche Inc.*, No. 06 Civ. 0034(PAC), 2006 WL
11   2588002, at \*23 (S.D.N.Y. Sept. 6, 2006), the court found that a closed-ended survey question that
12   asked the respondent what a TV commercial implied was "very suggestive of the desired answers."
13   Furthermore, the question did not include a "don't know" option, and since "neither" was a realistic
14   possibility for an answer, it was suggestive to not include that as an option.  *See also Johnson &*
15   *Johnson-Merck Consumer Pharm. Co. v. Rhone-Poulenc Rorer Pharm., Inc.*, 19 F.3d 125, 135 (3d
16   Cir. 1994) (discussing the district court's findings that "[t]he consumer surveys conducted for
17   [Johnson–Merck] were not objective because they asked very leading questions," but crediting the
18   non-leading questions).

19             By contrast, Dr. Kamins' surveys were not suggestive because respondents were told to
20   assume they were purchasing gas with a debit card and were asked whether they expected to pay the
21   "cash" or "credit" price, as advertised on the Valero signage, and they were permitted to respond that
22   they did not know,.   This was the entire universe of possible answers in the real world where
23   consumers **must**  draw a conclusion as to which price will apply if they are to rely on Valero's sign.
24   Options such as "neither" or "the sign does not show the debit card price" are not realistic or
25   reasonable options for a respondent, who was told to assume they are "purchas[ing] gas at this station
26   with a debit card."  Kamins Rpt., ¶44.  Indeed, Dr. Kamins' studies are similar to the study in *Nat'l*
27   *Fin. Partners Corp. v. Paycom Software, Inc.*, No. 14 C 7424, 2015 WL 3633987, at \*9 (N.D. Ill.
28

1483658_1

PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANT'S MOTION TO EXCLUDE TRIAL EXPERT
OPINION TESTIMONY OF SIDNEY BLUM AND DR. MICHAEL KAMINS - 3:15-cv-05557-RS        - 15 -

1   June 10, 2015), that Valero describes as being appropriate, even though it included a "don't know"

2   option, because here the survey answers were not missing any option that exists in reality.

3        Nor do any of Valero's cases persuade that Dr. Kamins' survey questions create "demand

4   effects" or "cues" by including the word "simply" in a response.[4]  By "simply" Dr. Kamins meant

5   "only."  Deposition Transcript of Dr. Michael A. Kamins, Ex. 2 to the Gold Declaration, at 84:18-19.

6   There is no demand effect or cue here where Valero simply thinks that Dr. Kamins should have used

7   different words for his survey questions.

8        Valero further asserts that Dr. Kamins provided respondents with a "false dichotomy" because

9   they were not given the option to state that "[t]he sign does not show the debit card price."  Mot. at

10  15:20-21, 17:19.  But such a response presents a false ***reality***.  In his critique of Dr. Kamins' surveys,

11  Valero's proposed consumer expert stresses that "it is critical that the expert conducting the surveys

12  . . . try to approximate reality."  Rebuttal Expert Report of Itamar Simonson, Ph.D. [ECF No. 189-

13  14], ¶24.  Valero's proposed revisions to Dr. Kamins' survey, however, would not approximate

14  reality, but would distort it.  In reality, consumers who drive by a deceptive Valero sign do not have

15  the luxury of thinking to themselves, "[t]he sign does not list a price for debit card purchases."  At the

16

17      [4]  Valero's cited authorities are inapposite.  *See Strumlauf v. Starbucks Corp.*, No. 16-cv-01306-
    YGR, 2018 WL 306715, at *7 (N.D. Cal. Jan. 5, 2018) (finding survey question "leading and lacking
18  reliability" where question was accompanied by a misleading graphic; "in short, the survey asked
    whether the "Fluid" in a "16 fl. oz." beverage should be "16" and the question and answer
19  predisposes respondents to equate "fluid ounce" with "Fluid"); 6 *McCarthy on Trademarks* § 32:172
    (discussing the concept of demand effect); *Valador, Inc. v. HTC Corp.*, 242 F. Supp. 3d 448, 465
20  (E.D. Va.), *aff'd*, 707 F. App'x 138 (4th Cir. 2017) (survey found unreliable because the questions did
    not accurately reflect the parties' commercial usage of their trademarks and "improperly suggest[ed]
21  to participants a link between plaintiff and defendants"); *LG Elecs. U.S.A., Inc. v. Whirlpool Corp.*,
    661 F. Supp. 2d 940, 955 (N.D. Ill. 2009) ("[A] non-leading closed-ended question is not improper
22  merely because it explicitly provides respondents with a set of responses from which to choose –
    particularly where as here, the question allows respondents the option of choosing 'don't know/not
23  sure,' in case they do not agree with any of the provided choices."); *Brighton Collectibles, Inc. v. RK
    Texas Leather Mfg.*, 923 F. Supp. 2d 1245, 1257 (S.D. Cal. 2013) (calling the survey design
24  "blatantly biased" because "[a] line-up in which only one bag shares the most prominent and eye-
    catching features – two colors and silver hearts – improperly suggested to the participants that
25  Defendants' bag was the 'correct' answer"); *Sunbeam Corp. v. Equity Indus. Corp.*, 635 F. Supp. 625,
    634 (E.D. Va. 1986) (survey suggestive where one choice "stood out like a bearded man in a lineup
26  with four clean-shaven men"), *aff'd*, 811 F.2d 1505 (4th Cir. 1987); *Moltner v. Starbucks Coffee Co.*,
    No. 08 Civ. 9257(LAP), 2009 WL 3573190, at *5 (S.D.N.Y. Oct. 23, 2009), *aff'd*, 624 F.3d 34 (2d
27  Cir. 2010), *and aff'd*, 399 F. App'x 630 (2d Cir. 2010) (questioning expert's "use of words like
    'dramatically,' 'nearly,' 'some,' and 'high'" in his report because he provided no basis for the
28  characterization, not that survey question was improper because of the use of cues).

1    moment they drive by a Valero sign and consider whether to purchase gas with a debit card at that

2    station, they must draw a conclusion as to which price they think will apply (because Valero

3    deceptively failed to tell them upfront).   And Dr. Kamins' survey demonstrates that under

4    circumstances that actually approximate reality, the large majority of consumers will reasonably

5    expect that the cash price applies to their debit card purchases.

6        At best, Valero's objections go to the weight of the evidence.

7        **3.**      **Dr. Kamins Did Not Refuse to Testify *At All* During His**
         **Deposition, so There Is No Basis to Preclude Him from**
8        **Testifying to Those Same Questions at Trial**

9        Valero again makes a strategic play to preclude Dr. Kamins from testifying regarding

10   "dozens" of subjects that he purportedly was "instructed to not answer." Mot at 20:12-14.  The

11   obvious flaw in Valero's assertion is that Dr. Kamins was ***not*** instructed to not answer any of those

12   questions.  Counsel simply entered legitimate objections that the questioning of Dr. Kamins fell

13   outside the scope of his expert opinion, and Dr. Kamins then proceeded to provide lengthy answers to

14   each of Valero's questions.  Of course, if Valero is allowed to elicit the testimony during deposition,

15   Dr. Kamins is allowed to offer that testimony at trial.  Valero's assertion that Dr. Kamins was

16   instructed not to answer or refused to answer any questions is belied by the record.  The Court should

17   reject Valero's request to exclude Dr. Kamins' testimony.

18   **III.    CONCLUSION**

19       Valero's disputes clearly go the weight of the evidence offered by Plaintiff's experts.   And

20   many of Valero's objections are based on clear misunderstandings of the law and have already been

21   raised and rejected by this Court.  Valero has no valid basis to exclude Plaintiff's experts.  As before,

22   the Court should reject Valero's efforts to exclude Plaintiff's experts.

23   DATED:  October 4, 2018                      ROBBINS GELLER RUDMAN
                                          & DOWD LLP
24                        STUART A. DAVIDSON (*pro hac vice*)
                          CHRISTOPHER C. GOLD (*pro hac vice*)
25                        JASON H. ALPERSTEIN (*pro hac vice*)
                          ERIC S. DWOSKIN (*pro hac vice*)
26

27                             *s/ Christopher C. Gold*
28                        CHRISTOPHER C. GOLD

PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANT'S MOTION TO EXCLUDE TRIAL EXPERT
OPINION TESTIMONY OF SIDNEY BLUM AND DR. MICHAEL KAMINS - 3:15-cv-05557-RS     - 17 -

1
2
3

4
5
6
7

8
9
10
11

12
13
14
15

16

17
18
19
20
21
22
23
24
25
26
27
28

120 East Palmetto Park Road, Suite 500
Boca Raton, FL  33432
Telephone:  561/750-3000
561/750-3364 (fax)

ROBBINS GELLER RUDMAN
  & DOWD LLP
PATRICK W. DANIELS
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)

ROBBINS GELLER RUDMAN
  & DOWD LLP
ROXANA PIERCE
905 16th Street, N.W., Suite 303
Washington, DC  20006
Telephone:  202/822-6762
202/828-8528 (fax)

HOBSON, BERNARDINO & DAVIS, LLP
RAFAEL BERNARDINO, JR.
JASON A. HOBSON
725 South Figueroa Street, Suite 3230
Los Angeles, CA  90017
Telephone:  213/235-9190
213/235-9197 (fax)

Attorneys for Plaintiff and the Class

1483658_1

PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANT'S MOTION TO EXCLUDE TRIAL EXPERT
OPINION TESTIMONY OF SIDNEY BLUM AND DR. MICHAEL KAMINS - 3:15-cv-05557-RS          - 18 -