UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

FAITH BAUTISTA,

    Plaintiff,

v.

VALERO MARKETING AND SUPPLY COMPANY,

    Defendant.

Case No. 15-cv-05557-RS

**ORDER GRANTING MOTION TO DECERTIFY CLASS**

## I. INTRODUCTION

This action arises from a dispute over allegedly misleading gas station signage. In her Second Amended Complaint ("SAC"), Plaintiff Faith Bautista alleges Defendant Valero Marketing and Supply Company ("Valero") designed and distributed deceptive marketing materials in violation of multiple consumer protection statutes. In October 2017, class certification was granted under Federal Rule of Civil Procedure 23(b)(3). Valero now moves to decertify the class. Bautista opposes this motion and, in the alternative, requests certification under Rule 23(b)(2). The parties provided supplemental briefing on the question of certification under Rule 23(b)(2) and the case was subsequently taken under submission. For the reasons set forth below, the motion to decertify the Rule 23(b)(3) class is granted. Bautista's request to certify a new class under Rule 23(b)(2) is denied.

## II. BACKGROUND

Valero is a refiner and wholesaler of motor fuel. The company's business model involves selling fuel to independent distributers, who in turn re-sell to the public or to third-party gas

station owners. Valero also grants certain third-party gas stations ("Valero stations") the right to use the company's trade dress and requires them to comply with the proper use and display of the Valero brand, as set out in Valero's Wholesale Branding Manual. These stations must either select marketing and signage materials from the manual or request approval from Valero if they wish to deviate significantly from the options set forth therein.

In 2008, Valero launched the "Pump-A-Discount" ("PAD") program. As part of this program, Valero designed signage advertising a "credit" price and a lower "cash" price for gasoline. This signage did not state which price applied to debit cards, however, prior to fueling, the Point of Service ("POS") screen and a waist-level screen near the gas pump would display the applicable price per gallon. At the time, Valero maintained a policy requiring Valero stations to charge debit cards the same price as credit cards. In response to complaints from customers and station owners, Valero eventually began offering additional signage options that specified a single "credit/debit" price and a lower "cash" price.

Bautista contends the signage that advertises only "credit" and "cash" pricing is misleading because it does not inform consumers their debit cards will be charged the higher credit price. The SAC specifically alleges Valero's use of this signage violates (1) the Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1780 *et seq.*, (2) the California False Advertising Law ("FAL"), Cal. Bus. & Prof. Code § 17500 *et seq.*, and (3) the California Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200 *et seq.*

In October 2017, a Rule 23(b)(3) class was certified. This class included "[a]ll consumers who, between December 3, 2011 and the final disposition of this action, purchased gasoline with a debit card from a Valero-branded station in California that sells gasoline for a 'cash' price and were charged more money per gallon than the available 'cash' price." Order Grant. Mot. Class Cert. 3. Certification was granted based, in part, on Bautista's repeated assurances that detailed Valero station pricing data, to be obtained through the discovery process, would ultimately eliminate most of the individualized inquiries related to liability. In particular, Bautista claimed Valero held data which would enable her to determine which stations utilized split-pricing signage

and during which time periods they displayed the allegedly deceptive information.

Fact discovery closed in August 2017, before Bautista filed her motion for class certification. Due to corruption in some of Valero's files, however, Bautista was unable to complete her review of the transaction data until after class certification was granted. This discovery ultimately revealed Valero does not maintain records of the signage displayed by third-party Valero stations. Furthermore, prior to this suit, Valero had a policy of retaining only 25 months' worth of transaction data from Valero stations. Therefore Valero was only able to provide station transaction data going back to January 2014.

Bautista's attempt to seek discovery from Valero's signage vendor, Sign Development Inc. ("SDI"), revealed that SDI also did not track the signage displayed at Valero stations. Based upon unspecified records and files, however, SDI was able to compile and produce a list of stations that may have ordered signage capable of displaying two prices at once ("SDI Possible Station List"). Bautista ultimately turned to Google Maps Street View to determine which stations displayed the allegedly deceptive signage. Relying on these photos, Bautista identified 192 Valero stations that, at some point during the class period, displayed the allegedly deceptive credit/cash sign.

In May 2018, Valero was granted leave to amend its answer to add the affirmative defense of voluntary payment. Valero now moves to decertify the class arguing that, in light of the aforementioned discovery and Valero's newly introduced voluntary payment defense, individualized issues predominate and class action is no longer the superior method of adjudicating Bautista's claims. Bautista opposes this motion and, in the alternative, requests certification of an injunctive relief class under Rule 23(b)(2).

### III. LEGAL STANDARD

Under Federal Rule of Civil Procedure 23(c)(1)(C), a "district court may decertify a class at any time." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 966 (9th Cir. 2009). The standard used to review a motion to decertify is the same standard used when reviewing a motion for class certification. *Ries v. Arizona Bev. USA LLC*, No. 10-01139, 2013 WL 1287416, at *3 (N.D. Cal. March 28, 2013); *see also Marlo v. United Parcel Serv., Inc.*, 639 F.3d 942, 947 (9th Cir. 2011).

Still, a motion for decertification will generally only succeed where there has been some change in the law or facts that justifies reversing the initial certification decision. *In re Myford Touch Consumer Litig.*, No. 13-cv-03072, 2018 WL 3646895, at *1 (N.D. Cal. Aug. 1, 2018).

Under Rule 23, a plaintiff seeking class certification must satisfy all four requirements set forth in Rule 23(a) and must also satisfy the requirements of Rule 23(b)(1), 23(b)(2), or 23(b)(3). *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013). A plaintiff seeking to satisfy Rule 23(b)(3) must specifically establish (1) common questions predominate over questions affecting only individual class members, and (2) class action is superior to other methods of adjudicating the controversy. Fed. R. Civ. P. 23(b)(3). By contrast, a plaintiff seeking certification under Rule 23(b)(2) need only show the defendant acted "on grounds that apply generally to the class" such that injunctive relief is appropriate with respect to the whole class. *Id.* 23(b)(2).

## IV. DISCUSSION

Valero argues the Rule 23(b)(3) class should be decertified because individual issues predominate over common questions and because class action is no longer a superior method of adjudicating class members' claims. Bautista attempts to rebut these two arguments, and in the alternative, requests certification under Rule 23(b)(2).

**A. Decertification Under Rule 23(b)(3): Predominance**

Valero advances four arguments why individual issues predominate over common questions. First, Valero argues the affirmative defense of voluntary payment requires an individualized inquiry into whether each customer was aware of the price being charged. Second, Valero maintains the question of consumer reliance must be determined on an individual basis. Third, Valero contends that adjudicating liability will require 192 mini-trials to determine whether and when each station offered differential cash/credit pricing and displayed the allegedly deceptive signs. Fourth, Valero argues determining damages will require individualized inquiries into which stations and dates should be included in the suit and whether each customer was in fact deceived.

1. The Affirmative Defense of Voluntary Payment

Under the voluntary payment doctrine, a plaintiff may not recover any payments she

voluntarily made with full knowledge of the facts. *Steinman v. Malamed*, 185 Cal. App. 4th 1550, 1557 (Cal. Ct. App. 2010).[1] According to Valero, this defense bars any class members who noticed the price displayed on the POS screen from recovering any portion of their payment. Repeat customers who had previously received receipts listing the price per gallon for debit card transactions would similarly be barred from recovering. In light of the individual nature of these inquiries, Valero argues it cannot properly assert the voluntary payment defense in a class action and the class should therefore be decertified.

Bautista responds with three counterarguments. First, Bautista contends the voluntary payment doctrine does not apply to consumer claims. Although the California Supreme Court and the Ninth Circuit have not yet addressed the question, Bautista points to numerous state and federal courts that have held the voluntary payment defense does not apply to consumer fraud actions.[2] These courts have generally found the voluntary payment doctrine inconsistent with the public policy underlying consumer fraud statutes. Bautista further notes the California legislature's policy in favor of consumer protection and mandate that consumer protection laws be applied liberally. *See* Cal. Civ. Code § 1760; Cal. Bus. & Prof. Code § 17002. Accordingly, Bautista predicts the California Supreme Court would find the voluntary payment defense does not apply to UCL, CLRA, or FAL claims.

Second, Bautista argues the voluntary payment defense, by its own terms, cannot bar

---

[1] Valero also cites several district court cases in California applying the voluntary payment doctrine to UCL, CLRA, and FAL claims. *See, e.g.*, *Parino v. BidRack, Inc.*, 838 F. Supp. 2d 900, 908 (N.D. Cal. 2011) (assuming without discussion that the voluntary payment defense may apply to CLRA, FAL, and UCL claims); *Ubaldi v. SLM Corp.*, No. 11-01320, 2014 WL 1266783, at *12 (N.D. Cal. Mar. 24, 2014) (explaining that the voluntary payment defense may sometimes require inquiry into class members' individual UCL claims); *Endres v. Wells Fargo Banks*, No. C 06-7019, 2008 WL 344204, at *11-12 (N.D. Cal. Feb. 6, 2008) (denying class certification because, among other things, the voluntary payment doctrine would require individualized inquiries).

[2] *See, e.g.*, *Lee v. Enter. Leasing Co.−W., LLC*, 30 F. Supp. 3d 1002, 1024 (D. Nev. 2014); *Ramirez v. Smart Corp.*, 863 N.E.2d 800, 810 (Ill. App. Ct. 2007); *Pratt v. Smart Corp.*, 968 S.W.2d 868, 872 (Tenn. Ct. App. 1997); *Huch v. Charter Commc'ns, Inc.*, 290 S.W.3d 721, 726-27 (Mo. 2009); *Indoor Billboard/Wash., Inc. v. Integra Telecom of Wash., Inc.*, 170 P.3d 10, 23-24 (Wash. 2007); *see also Soule v. Hilton Worldwide, Inc.*, 1 F. Supp. 3d 1084, 1104 n.14 (D. Haw. 2014) (collecting cases).

claims that are predicated on a lack of full disclosure by the defendant. Finally, Bautista argues Valero's voluntary payment defense is, in any event, susceptible to common proof because all customers were exposed to the same POS and gas pump displays. *See Lane v. Wells Fargo Bank, N.A.*, No. C 12-04026, 2013 WL 3187410, at *8 (N.D. Cal. June 21, 2013).

As the briefing on this motion makes clear, the question whether the voluntary payment defense applies to UCL, CLRA, or FAL claims has not been definitively resolved. While both parties cite numerous cases in support of their respective positions, Bautista's argument is ultimately persuasive. California's policy of liberally construing consumer protection statutes, combined with the fact the UCL, FAL, and CLRA do not require individualized proof of deception, reliance, or injury, strongly suggests applying the voluntary payment defense here would run contrary to public policy and legislative intent. As Bautista notes, other state and federal courts have come to similar conclusions about the applicability of the voluntary payment doctrine to state consumer protection statutes. The cases relied upon by Valero are not to the contrary. While the district courts in those cases assumed the voluntary payment doctrine could apply to UCL, FAL, and CLRA claims, none of those courts addressed the arguments raised here. Accordingly, the voluntary payment defense does not apply to Bautista's claims and cannot serve as a basis for decertification.

2. Individualized Issues Related to Reliance

Under the UCL, FAL, and CLRA, a plaintiff may establish reliance by showing that a reasonable person would consider the challenged advertising to be a material misrepresentation. *Forcellati v. Hyland's, Inc.*, No. CV 12-1983, 2014 WL 1410264, at *9 (C.D. Cal. April 9, 2014) (citing *In re Tobacco II Cases*, 207 P.3d 20, 39 (Cal. 2009)). Therefore, to establish a class-wide presumption of reliance, Bautista must show the challenged statements were both material and likely to mislead a reasonable consumer. *Townsend v. Monster Bev. Corp.*, 303 F. Supp. 3d 1010, 1043 (C.D. Cal. 2018). Valero argues Bautista cannot establish that a reasonable consumer would believe the challenged omission was either material or deceptive because perceptions of the signage vary from consumer to consumer.

*a. Whether Materiality is Susceptible to Common Proof*

Valero contends Bautista is not entitled to a presumption of reliance because the challenged omission was not material to large portions of the class. *See Algarin v. Maybelline, LLC*, 300 F.R.D. 444, 453, 457 (S.D. Cal. 2014). In reaching this conclusion, Valero relies on a survey conducted by defense expert Itamar Simonson[3] where two groups of respondents were shown two different photographs of a Valero-branded station. The only difference between the photographs was that one included a sign that displayed only "cash" and "credit" pricing whereas the other photograph specified "cash" and "credit/debit" pricing. Respondents were asked how likely they were to purchase gasoline from the pictured station. The results were nearly identical across the two groups. Simonson also surveyed the respondents about what information they consider when deciding where to buy gasoline and determined that consumers evaluate a wide range of factors when deciding where to purchase motor fuel. According to Valero, this evidence shows that any misrepresentation with respect to the price of gasoline was immaterial.

Bautista responds that materiality is generally a question for the fact-finder unless the alleged misrepresentation is "so obviously unimportant" that no reasonable jury could find that a reasonable person would have been influenced by it. *In re Tobacco II Cases*, 46 Cal. 4th at 327 (2009). Furthermore, as the Ninth Circuit has noted, "price advertisements matter." *Hinojos v. Kohl's Corp.*, 718 F.3d 1098, 1107 (9th Cir. 2013). Finally, Bautista points to affirmative evidence that could support an objective finding of materiality, including her own testimony, customer and gas station owner complaints sent to Valero,[4] and a consumer survey showing that a majority of consumers would prefer their debit card be charged the lower cash price.

Bautista's argument is persuasive. The fact that the alleged misrepresentation related to

---

[3] As explained in the Order on Cross Motions for Summary Judgment filed concurrently with this order, Bautista's motion to exclude the testimony of expert witness Itamar Simonson is denied.

[4] As explained in the Order on Cross Motions for Summary Judgment, these complaints are inadmissible hearsay if introduced to show consumers' beliefs about and perceptions of the challenged signage. Accordingly, this evidence will not be considered for the purpose of the materiality inquiry.

price, combined with Bautista's consumer survey showing that most consumers would prefer to be charged the lower cash price when using a debit card, is sufficient to support an objective finding of materiality, thereby avoiding the need for individualized inquiries. Furthermore, Valero's reliance on consumer surveys to disprove materiality demonstrates that this question *is* susceptible to common proof. Accordingly, the question of materiality does not require individualized inquiries and therefore cannot serve as a basis for decertification.

>           b.  *Whether the Misleading Nature of the Omission is Susceptible to Common Proof*

Valero argues Bautista is not entitled to a presumption of class-wide reliance because a significant number of consumers did not find the signage misleading. First, Valero points to a survey where respondents were shown a sign that displayed only "cash" and "credit" pricing. The respondents were asked to indicate whether (1) the sign did not display a price for debit purchases, (2) the credit price was the price that would be charged for debit purchases, or (3) the cash price would be charged for debit purchases. Of the respondents, 78% indicated either that no debit price was displayed or that the credit price would apply debit purchases. Only 19% believed the cash price would apply. Valero also points to a second survey where 95% of respondents stated that a gas station that does not accept cash would nonetheless accept debit card payments. Finally, Valero notes that Bautista's own consumer survey shows that 42% of respondents either believed the credit pricing would apply to debit purchases or did not know which price applied. According to Valero, the fact that a substantial number of class members may not have been misled means this question cannot be resolved on a class-wide basis. *Algarin*, 300 F.R.D. at 457.

Bautista responds by arguing that the question whether the challenged signage was misleading is susceptible to common proof in the form of consumer surveys. *Pettit v. Procter & Gamble Co.*, No. 15-cv-02150, 2017 WL 3310692, at *1 (N.D. Cal. Aug. 3, 2017). Bautista further notes that Valero's argument that the signage is not misleading relies on such surveys. Finally, Bautista point out that her consumer survey shows that 58% of consumers believed, based on Valero's signage, that the lower cash price would apply to debit card transactions. Another 3%

of consumers did not know what price would apply.

Bautista has the better argument. Whether a reasonable consumer would be misled by Valero's signage can be resolved by common proof. Valero's assertion that a majority of consumers were not misled is a disputed question that ultimately goes to the merits of the case. Accordingly, the question whether the challenged advertising was misleading does not defeat a finding of predominance.

3. Whether and When Stations Used Split Pricing and Displayed Credit/Cash Signs

Valero argues that determining which stations and time periods should be included in this case will require 192 mini-trials. As Valero points out, the gas station transaction records only go back to 2014. Even if the transaction data were complete, Valero argues, the jury would still need to review voluminous transaction data to determine when each station started and stopped offering split pricing. Furthermore, Bautista would have to show that each station not only charged split pricing, but also displayed the allegedly deceptive "cash" and "credit" signage.

Bautista apparently intends to rely on the SDI Possible Station List[5] to ascertain which stations displayed the challenged signage and when that signage was installed. Bautista will then rely on photos from Google Maps Street View[6] to establish when each gas station stopped displaying the allegedly deceptive signage. Valero contends this method of proof will force the jury to sift through hundreds of photos to determine when each station installed and took down the challenged signage. Valero also asserts it will introduce conflicting photos from different mapping services to undermine Bautista's estimated date ranges.

Bautista does not meaningfully engage with these arguments. Instead, Bautista contends the "accuracy" of the time periods during which each station displayed the signage is "irrelevant"

---

[5] As explained in the Order on Cross Motions for Summary Judgment, the SDI Possible Station List is inadmissible hearsay.

[6] As explained in the Order on Cross Motions for Summary Judgment, the Google Maps photos are inadmissible hearsay if introduced to show that a particular gas station in fact charged split pricing. These photos are not hearsay if admitted simply to show the deceptive signage was displayed during a particular month.

to the predominance analysis. Opp. Mot. Decertify Class 14. Bautista also points out that Valero does not deny each of the 192 stations are relevant for "at least a portion of the Class Period." *Id.* Finally, Bautista argues the class should not be punished for Valero's lack of records regarding Valero-branded gas stations.

Valero's argument is persuasive. Class certification was initially granted in reliance on Bautista's assertion that discovery from Valero would enable her definitively to establish which stations and which time periods should be included in this case. This assumption has failed to materialize. Instead, Bautista intends to piece together photos from Google Maps and ask the jury to estimate the appropriate time periods for 192 different gas stations. Valero insists it would dispute these time periods, possibly with contradictory photos from other mapping services. The jury would then be left to determine, based on piecemeal evidence, when each of the 192 stations displayed the allegedly deceptive signage. This sort of station-by-station analysis, alone, is sufficient to defeat a finding of predominance. As discussed below, the difficulty of calculating class-wide damages further supports this finding.

### 4. Calculating Class-Wide Damages

Valero contends that calculating class-wide damages will require several individualized inquiries which help defeat predominance. First, Valero argues Bautista cannot easily determine the relevant stations and time periods. Accordingly, properly calculating damages would require individualized inquiries into each of the 192 stations at issue in this suit. Second, Valero argues calculating class-wide damages requires individualized inquiries into station-specific economic factors. Valero specifically attacks the extrapolation method advanced by plaintiff's expert Sidney Blum for failing to consider such factors.[7] Finally, Valero argues that, because between 42-78% of consumer were not misled,[8] damages cannot be calculated on a class-wide basis. *Kohen v. Pac.*

---

[7] As explained in the Order on Cross Motions for Summary Judgment filed concurrently with this order, Valero's motion to exclude the testimony of Sidney Blum is denied.

[8] Valero derives these percentages from the consumer surveys conducted by both Bautista and Valero. These percentages include survey respondents who said the higher "credit" price would apply to debit card transactions, as well as those who indicated that it was unclear based on

ORDER DECERTIFYING CLASS
CASE NO. 15-cv-05557-RS

1  *Inv. Mgmt. Co. LLC*, 571 F.3d 672, 677-78 (7th Cir. 2009) (explaining that class certification is inappropriate if the proposed class contains "a great many persons who have suffered no injury at the hands of the defendant" because of the "*in terrorem* character" of class actions).

Bautista responds that damages calculations alone do not typically defeat certification. *Just Film, Inc. v. Buono*, 847 F.3d 1108, 1120 (9th Cir. 2017). Furthermore, Bautista argues, plaintiffs need only show that damages can be determined "without excessive difficulty." *Id.* at 1121. That is, the damages model need not be exact, so long as it is consistent with the plaintiff's theory of liability. *Ries*, 287 F.R.D. at 532. Finally, Bautista attempts to minimize the dispute over which stations and time periods are relevant to this suit.

As noted in the prior Order Granting Class Certification, challenges based on the difficulty of calculating damages do not ordinarily defeat class certification. Furthermore, Valero's argument that calculating class-wide damages requires individualized inquiries into station-specific economic factors is unpersuasive. Ultimately, Valero's criticism of Blum's method of extrapolation goes to the merits. Valero, however, raises valid concerns about the difficulty of determining a method by which to identify stations and time periods of consequence in this case. Standing alone, difficulties in accurately calculating damages are not sufficient to overcome class certification. Those difficulties, however, add to the conclusion that individual issues predominate over common questions.

**B. Decertification Under Rule 23(b)(3): Superiority**

Valero's superiority arguments essentially reprise its predominance arguments. According to Valero, the number of individual inquiries required in this suit renders the suit unmanageable. Valero specifically highlights the necessity of litigating the errors it alleges in Bautista's list of 192 stations. Bautista responds that Valero's arguments primarily go to the question of ascertainability, which is generally not treated as a bar to class certification. Bautista also argues

---

Valero's signage what price would apply to such transactions.

United States District Court
Northern District of California

the time period for each of the stations could be adjusted by stipulation if necessary.

Ultimately, Valero's arguments raise both manageability and ascertainability problems. Conducting 192 mini-trials and forcing the jury to cross reference hundreds of photos and other documents to determine the relevant stations and time periods is not a viable process.[9] This, in turn, casts doubt on Bautista's ability to determine what conduct Valero is liable for, and therefore which customers belong in the class. Finally, Bautista's resort to intermittent Google Maps photos in an attempt to determine the appropriate time periods for each station further demonstrates that class action is not the superior method of determining Valero's liability to its customers.

### C. Certification Under Rule 23(b)(2)

In the event the Rule 23(b)(3) class is decertified, Bautista requests certification of the same class under Rule 23(b)(2). To prevail on this request, Bautista must satisfy all four of the requirements of Rule 23(a), as well as the requirements of Rule 23(b)(2). Bautista must also establish that she has standing to seek injunctive relief.

#### 1. Rule 23 Requirements

Under Rule 23(a), a plaintiff seeking class certification must first satisfy four requirements: numerosity, commonality, typicality, and adequacy. Fed. R. Civ. P. 23(a). Here, these requirements are satisfied for essentially the same reasons laid out in the Order Granting Motion to Certify Class, issued on October 4, 2017. Valero does not contest Bautista's satisfaction of any of these factors and, accordingly, there is no need to address them here.

Class certification under Rule 23(b)(2) further requires that "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2)). Bautista contends she has satisfied this requirement because she seeks declaratory relief that Valero's distribution of the challenged signage is unlawful, and requests

---

[9] While Bautista is correct that a stipulation to the relevant stations and time periods would mitigate problems related to manageability, in light of the evidence on the record, there is no indication the parties would be able to come to such an agreement.

injunctive relief prohibiting Valero from continuing to engage in this conduct. As these requests "can be satisfied with indivisible equitable relief that benefits all class members at once," Bautista has met the requirements of Rule 23(b)(2). *Ries*, 287 F.R.D. at 541 (internal quotation marks omitted).[10]

  2. Standing

Valero's only argument against certification under Rule 23(b)(2) is that Bautista does not have standing to seek injunctive relief. To establish standing under Article III, a plaintiff must show injury-in-fact, causation, and redressability. *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 967 (9th Cir. 2018). Plaintiffs seeking injunctive relief must specifically show the threat of future injury is "actual and imminent, not conjectural or hypothetical." *Id.* Thus, where standing is premised on a threat of repeated injury, plaintiffs must show a "sufficient likelihood that [they] will again be wronged in a similar way." *Id.* (quoting *Cty. of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983)). In the class action context, a named plaintiff must show she is personally "subject to a likelihood of future injury." *Shank v. Presidio Brands, Inc.*, No. 17-cv-00232, 2018 WL 1948830, at *2 (N.D. Cal. April 25, 2018); *see also Hodgers-Durgin v. de la Vina*, 199 F.3d 1037, 1045 (9th Cir. 1999).

The Ninth Circuit's decision in *Davidson* provides guidance on how to evaluate whether a plaintiff in a false advertising suit has standing to seek injunctive relief. In *Davidson*, the plaintiff alleged the defendant falsely advertised its wipes as "flushable," in violation of the UCL, CLRA, and FAL. *Davidson*, 889 F.3d at 962. The plaintiff testified she was willing to purchase genuinely flushable wipes from the defendant in the future but had no way of telling whether the defendant's wipes had been improved or whether the advertising on the label remained false. *Id.* at 970-71. The Ninth Circuit concluded that, while it was a "close question," the plaintiff had adequately shown a likelihood of injury based on her "inability to rely on the validity of the information

---

[10] Valero does not dispute Bautista has satisfied the requirements of Rule 23(b)(2) but argues she cannot seek any monetary relief under this section. Bautista contends she should be allowed to seek punitive damages as well as $1,000 in actual damages under the CLRA. It is not necessary to reach this question because, as explained below, Bautista lacks standing to proceed under Rule 23(b)(2).

advertised on [the defendant's] wipes despite her desire to purchase truly flushable wipes." *Id.* at 971. The court also concluded that the injury she alleged was concrete and particularized because it would affect the plaintiff as a direct consumer of the defendant's product. *Id.*

Valero points out that, unlike the plaintiff in *Davidson*, Bautista never testified that she would like to purchase from Valero again in the future. Rather, Bautista stated that her impression of Valero stations had diminished and that she "do[es] not use Valero" anymore. Bautista Depo. Tr. at 58:9-10; 78:13-24. Bautista further testified that she does not shop at Arco gas stations because they apply a surcharge to debit card transactions, and that she would not have purchased from Valero had she known she would be charged a higher price. Finally, Valero points out that, unlike the plaintiff in *Davidson*, Bautista can determine the applicable gas price by simply checking the POS screen. According to Valero, Bautista's statements indicating that she is not inclined to patronize Valero gas stations, along with the fact the POS systems always display the applicable gas price, prevent Bautista from establishing a likelihood of future harm. *Davidson*, 889 F.3d at 969-70 (explaining that a consumer has standing if she "plausibl[y] alleg[es] that she will be unable to rely on the product's advertising or labeling in the future, and so will not purchase the product although she would like to.").

Bautista admits she does not shop at Arco gas stations because they charge a higher price for debit card transactions. She notes, however, that she did not testify she would *never* shop at any station that applies a surcharge. Furthermore, according to her testimony, Bautista generally shops for gas based on price and convenience. Accordingly, Bautista argues "there is no reason to doubt that Plaintiff would purchase gasoline from a Valero station in the future if she could rely on its signage to determine the price that would apply to a debit card payment." Plaintiff's Supp. Standing Brief 12.

Bautista ultimately fails to carry her burden of showing she is likely to be harmed in the future. First, Bautista's testimony does not indicate any interest in returning to Valero gas stations, and in fact shows that Bautista is disinclined to shop there. Bautista explicitly stated that she does not shop at Valero anymore and that her negative experience with Valero's debit card pricing made her less likely to patronize these stations. Bautista attempts to explain these statements away

in her briefing by arguing that she only stopped shopping at Valero because she could not rely on its advertising. Unlike the plaintiff in *Davidson*, however, she does not point to any evidence in support of this bare assertion. Furthermore, Bautista's testimony makes clear that she generally avoids gas stations that apply a surcharge to debit card transactions. Accordingly, Bautista cannot establish that she is likely to be harmed in the future by Valero's pricing signage and therefore does not have standing to seek injunctive relief.

## IV. CONCLUSION

For the reasons set forth above, the motion to decertify the Rule 23(b)(3) class is granted. Bautista's request for class certification under Rule 23(b)(2) is denied. In light of the decertification of the class, the pretrial conference set for December 20, 2018 and the trial set to begin on January 28, 2019 are hereby vacated. A status conference will be scheduled for February 7, 2019 at 10 A.M.

**IT IS SO ORDERED**.

Dated: 12/04/2018

_____
RICHARD SEEBORG
United States District Judge