United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

FAITH BAUTISTA,

          Plaintiff,

    v.

VALERO MARKETING AND SUPPLY
COMPANY,

          Defendant.

Case No. 15-cv-05557-RS

**ORDER ON CROSS MOTIONS FOR
SUMMARY JUDGMENT**

## I. INTRODUCTION

Defendant Valero Marketing and Supply Company ("Valero") is a refiner and wholesaler of motor fuel. Plaintiff Faith Bautista alleges Valero designed and distributed deceptive marketing materials in violation of multiple consumer protection statutes. In October 2017, class certification was granted, however, an order decertifying the class will issue concurrently with this summary judgment order. As a result, portions of the parties' cross motions for summary judgment and motions to exclude opposing experts are now moot. The parties' remaining arguments are addressed below.

## II. BACKGROUND

The relevant background to this case is set forth in the order decertifying the class, issued concurrently with this summary judgment order. Valero now moves for summary judgment and Bautista moves for partial summary judgment.

## III. LEGAL STANDARD

The purpose of summary judgment "is to isolate and dispose of factually unsupported

claims or defenses." *Celotex v. Catrett*, 477 U.S. 317, 323-24 (1986). Summary judgment is proper if there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. The Court must ultimately decide "whether the 'specific facts' set forth by the nonmoving party, coupled with undisputed background or contextual facts, are such that a rational or reasonable jury might return a verdict in its favor based on that evidence." *T.W. Elec. Serv. v. Pac. Elec. Contractors*, 809 F.2d 626, 631 (9th Cir. 1987). When making this evaluation, courts draw all reasonable inferences in favor of the non-moving party. *Masson v. New Yorker Magazine, Inc*., 501 U.S. 496, 520-21 (1991).

## IV. DISCUSSION

### A.  Motions to Exclude Expert Opinions

Before reaching the merits of the parties' cross motions for summary judgement, their respective cross motions to exclude opposing experts will be addressed. Federal Rule of Evidence 702 tasks district courts with an important "gatekeeping role" with respect to expert testimony. *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 597 (1993). Under Rule 702, expert opinion evidence is admissible if: (1) the witness is sufficiently qualified; (2) the expert's specialized knowledge will help the trier of fact understand the evidence or determine a fact at issue; (3) the testimony is based on sufficient facts or data; (4) the testimony is the product of reliable principles and methods; and (5) the expert has reliably applied those principles and methods to the case. Fed. R. Evid. 702. Accordingly, expert testimony must be both relevant and reliable. *Daubert*, 509 U.S. at 597; *Cty. of Pomona v. SQM N. Am. Corp.*, 750 F.3d 1036, 1043-44 (9th Cir. 2014).

Trial courts enjoys broad discretion in determining both how to assess reliability and whether particular testimony is reliable. *See Kumho Tire Co. Ltd. v. Carmichael*, 526 U.S. 137, 151-52 (1999). The focus at all times, however, must remain on the principles and methodology at issue, not the expert's conclusions. "Shaky but admissible evidence is to be attacked by cross examination, contrary evidence, and attention to the burden of proof, not exclusion." *Primiano v. Cook*, 598 F.3d 558, 564 (9th Cir. 2010); *see also Alaska Rent-A-Car, Inc. v. Avis Budget Grp., Inc.*, 738 F.3d 960, 969 (9th Cir. 2013) (explaining the court must "screen the jury from unreliable

United States District Court
Northern District of California

United States District Court
Northern District of California

nonsense opinions, but not exclude opinions merely because they are impeachable").

1. Valero's Motion to Exclude Michael Kamins

Plaintiff's expert Michael Kamins conducted two studies seeking to measure consumer perceptions. Valero seeks to exclude both studies. First, Valero argues both studies are unreliable because Kamins did not include a control group. Second, Valero argues Study 1 should be excluded as unreliable because it used "closed-ended questions." Third, Valero contends Study 2 should be excluded for using suggestive language.[1] Fourth, Valero contends Kamins' studies are not tied to Bautista's theory for relief because they merely tests consumers' preconceived beliefs. Finally, Valero requests Kamins be barred from testifying about a laundry list of issues because Bautista's counsel instructed Kamins not to answer those questions during deposition.

Valero's first three arguments recycle the same reasoning from Valero's initial motion to exclude Kamins' testimony. As stated in the Order Granting Motion for Class Certification, these arguments ultimately go the weight of the evidence. Valero's fourth argument is equally unavailing. Valero contends Kamins' studies measure consumers' preconceived beliefs about what "debit" means rather than what a reasonable consumer would understand the Valero signs to mean. This argument is perplexing because a reasonable consumer's interpretation of a sign will inevitably depend upon her pre-existing understanding of various terms and concepts.

Finally, it is not appropriate to grant Valero's request that Kamins be prohibited from testifying about the questions enumerated in Valero's brief. The record shows Kamins responded to at least some of the listed question, albeit with varying degrees of thoroughness. Accordingly, a blank order barring Kamins from testifying about these issues is not warranted. The motion to exclude Kamins' testimony is, therefore, denied.

---

[1] Valero contends two questions are suggestive. The first question is: "If you were to purchase gas with your debit card using the card reader shown in the picture, would you: Press the 'ATM/Debit' button before swiping the debit card in the card reader, simply swipe your debit card in the card reader, [or] Don't know." The second question is: "[I]f you knew pressing the 'ATM/Debit' button before swiping your debit card would result in your paying 6 cents less per gallon, would you: Press the 'ATM/Debit' button before swiping the debit card or Still swipe your debit card first."

1

2.   <u>Valero's Motion to Exclude Sidney Blum</u>

2        Valero seeks to exclude expert Michael Blum's damages opinion. Blum's opinion relates

3   to the calculation of class-wide damages and is relevant to the decertification order issued

4   concurrently with this opinion. Valero argues Blum's damages calculation should be excluded

5   because it is not tied to Bautista's theory of liability. *Comcast Corp. v. Behrend*, 569 U.S. 27, 35

6   (2013). In particular, Valero contends Blum should have excluded the 42-78% of consumers that

7   Valero alleges were not misled by the challenged signage. Second, Valero argues Blum's

8   extrapolation of pre-January 2014 damages should be excluded because he assumed debit card

9   usage was constant throughout the class period and did not account for local market conditions for

10  each station. Instead, Blum simply conducted a "straight-line" extrapolation of pre-January 2014

11  sales based on post-January 2014 sales data.

12       Bautista responds that Blum's damages calculation is tied to her theory of liability because

13  it measures the difference between the advertised cash price and the price that was charged.

14  Bautista also contends that limiting class-wide damages to include only class members who were

15  actually deceived would impose a requirement of "individualized proof of deception, reliance, and

16  injury" that does not apply to the consumer protection statutes at issue in this suit. *Ries v. Az. Bev.*

17  *USA LLC*, 287 F.R.D. 523, 537-38 (N.D. Cal. 2012).

18       Bautista also defends Blum's pre-2014 extrapolation by pointing to his testimony that

19  attempting to account for myriad local market factors would be less reliable than simply relying on

20  macro-economic factors. Furthermore, while Blum did not specifically account for debit card

21  usage during the pre-2014 period, he attempted to confirm the reasonableness of his extrapolation

22  by reference to the overall gasoline sales during that time. According to Bautista, gas sales were

23  15-20% higher during the pre-2014 period, therefore Blum's extrapolation may be considered

24  conservative even if debit card usage was somewhat lower during that period. Finally, Bautista

25  notes that damages calculation need only be a "reasonable approximation" and do not need to be

26  calculated with absolute certainty. *Acree v. Gen. Motors Acceptance Corp.*, 92 Cal. App. 4th 385,

27  398 (Cal. Ct. App. 2001).

28

ORDER RE CROSS MOTIONS
CASE NO.   15-cv-05557-RS

United States District Court
Northern District of California

Ultimately, Valero's arguments are unpersuasive. Blum's method of calculating damages is tied to Blum's theory that Valero charged a higher price than was represented on the challenged signage. Furthermore, Valero's objections to Blum's pre-2014 extrapolation ultimately go to the weight of the evidence, not its admissibility. Accordingly, Valero's motion to exclude Blum's expert testimony is denied.

3.   <u>Bautista's Motion to Exclude Itamar Simonson</u>

Bautista advances several arguments in favor of excluding portions of Itamar Simonson's expert report. First, Bautista contests the relevance of a survey where Simonson asked a group of consumers to rate their likelihood of purchasing from a gas station where the sign indicated a higher "debit/credit" price and a lower "cash" price. A control group was asked the same question but was shown a sign that listed only a "credit" price and a "cash" price. Bautista notes that the survey respondents were not told to assume they were using a debit card and were told to assume that prices at nearby gas stations were comparable. According to Bautista, this priming, or lack thereof, render this study irrelevant. Valero, however, represented at oral argument that the survey respondents were screened based on whether they used debit cards to purchase gas.

Second, Bautista seeks to exclude a survey conducted by Simonson where respondents were shown a photograph of the challenged signage and were asked to indicate whether (1) the sign did not display a debit price, (2) the credit price would be charged for debit transactions, or (3) the cash price would be charged for debit purchases. According to Bautista, the inclusion of option one renders the survey unreliable and irrelevant because this response simply states an obvious fact about the sign, and therefore does not meaningfully test customer perceptions.

Bautista ultimately raises several other objections to Simonson's report and testimony, including an objection to a survey showing that 95% of respondents believed a station that did not accept cash would still accept debit card payments. All of these objections are unavailing. In particular, Bautista's criticisms of the three surveys described above go to the weight of these studies, not their admissibility.

4.   <u>Bautista's Motion to Exclude Hanna Reder, Keith Ugone, and Kenneth Serwin</u>

ORDER RE CROSS MOTIONS
CASE NO.  15-cv-05557-RS

Bautista seeks to exclude defense expert Hannah Reder's testimony about the reliability of Google Maps Street View. Bautista also objects to Kenneth Serwin's report estimating the number of repeat Valero customers within the class. Finally, Bautista seeks to exclude Keith Ugone's opinion about class-wide damages and class members' likely behavior and perceptions. Because each of these experts addresses issues related to class-wide liability or damages, these objections are moot in light of the decertification of the class. Furthermore, none of these expert opinions are relied upon in the order decertifying the class.

### B. Motions for Summary Judgment

#### 1. Valero's Motion for Summary Judgment

##### a. Whether Valero's Signage Is Not Misleading As a Matter of Law

Claims arising under the UCL, FAL, and CLRA are governed by the "reasonable consumer" standard. *Freeman v. Time, Inc.*, 68 F.3d 285, 289 (9th Cir. 1995). Under this standard, a plaintiff must show that a significant portion of the public, acting reasonably, would be misled. *Ebner v. Fresh, Inc.*, 838 F.3d 958, 965 (9th Cir. 2016). Valero argues a reasonable consumer would not have been misled about the price of gasoline because all Valero stations display the applicable price per gallon on the POS system and on a separate display near the gas pump.

Valero also proffers expert evidence purportedly showing that reasonable consumers would not be misled to believe the cash price applies to debit card transaction. First, Valero points to a survey showing that 78% of respondents who were shown the allegedly deceptive signage believed either that (1) the sign did not display a debit price, or (2) the credit price would be charged for debit transactions. Valero also points to a second survey where respondents were asked if a gas station that does not accept cash would accept a debit card. This survey revealed that 95% of respondents believed such a station would accept debit card payments.

Bautista responds by pointing out that California law generally reserves for the jury the question whether a reasonable consumer would be deceived. *Mullins v. Premier Nutrition Corp.*, 178 F. Supp. 3d 867, 892 (N.D. Cal. 2016). Bautista also points to several pieces of evidence which arguably could enable a jury to find in her favor. First, Bautista points to the signage itself

1    as evidence which the jury will consider firsthand. Second, the jury will hear testimony from

2    Bautista about her perception of the sign. Third, Bautista intends to introduce customer complaints

3    about the signage, as well as feedback from gas stations owners stating they received similar

4    complaints.[2] Fourth, Bautista plans to introduce expert testimony from Kamins that a majority of

5    the consumers he surveyed believed the lower cash price would apply to debit transactions.

6        Bautista further contends that the display of the price on the POS system and near the fuel

7    selection buttons does not defeat her claim because the price is only displayed *after* the debit card

8    transaction has been approved. Bautista also notes that the POS system does not indicate that the

9    displayed price is the credit price. Because the difference between the cash and credit prices was

10   sometimes as small as $0.04 per gallon, Bautista argues, a reasonable consumer might not notice

11   she was being charged the higher price.

12       Bautista has presented sufficient evidence to enable a reasonable jury to conclude Valero's

13   signage was deceptive. In particular, Bautista offers expert evidence showing a majority of

14   consumers believe a debit card would be charged the cash price rather than the credit price. In

15   addition, Bautista will introduce copies of the challenged signage for the jury's inspection. While

16   Valero argues this evidence is irrelevant in light of the POS system and gas pump price displays, a

17   reasonable jury could conclude consumers are unlikely to notice the small difference between the

18   price listed on the sign and the price displayed at the pump. Accordingly, summary judgment is

19   not warranted on this question.

20              *b.   Whether Valero's Signage Is Not Material as a Matter of Law*

21       Valero argues Bautista has insufficient evidence to establish a class-wide presumption of

22   materiality. This argument is denied as moot in light of the order granting decertification of the

23   class.

24

25   _____

26   [2] Valero objects to the customer and gas station feedback as hearsay. This objection is sustained to the extent this evidence is introduced to show the signage was misleading. As explained below, however, this evidence may be admissible to establish that Valero had notice that its signs were

27   misleading.

28

United States District Court
Northern District of California

*c.   Whether the Voluntary Payment Defense Bars Bautista's Claims*

As explained in the order granting decertification, the voluntary payment defense does not apply to Bautista's claims under the UCL, FAL, and CLRA. Therefore, Bautista's claims are not barred by the voluntary payment defense.

*d.   Whether Bautista Can Establish the Relevant Stations and Time Periods*

Valero argues Bautista has insufficient evidence to establish the relevant stations and time periods for the purpose of determining Valero's liability to the class. In light of the order decertifying the class, this argument is denied as moot.

*e.   Whether Bautista Has Standing to Seek Injunctive Relief*

As explained in the order decertifying the class, Bautista does not have standing to seek injunctive relief. Accordingly, Valero's motion is granted with respect to this limited issue.

*f.   Whether Bautista Can Seek Restitution*

According to Valero, California law limits restitution to "money or property that [a] defendant[] took directly from [a] plaintiff" or "money or property in which [a plaintiff] had a vested interest." *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1149 (Cal. 2003). Valero claims it sells fuel to gas stations for a set price that is not contingent on the price charged at the pump. Accordingly, Valero does not receive any of the additional money charged for debit transactions and therefore cannot be forced to pay restitution for the difference in price. Valero also alleges it does not receive any of the payment processing fees because those fees are paid to a separate corporate entity called Valero Payment Services ("VPS").

Bautista responds by pointing out that restitution is recoverable in instances where the defendant indirectly obtained money from the plaintiff. *See Ferrington v. McAfee, Inc.*, No. 10-cv-01455, 2010 WL 3910169, at *8 (N.D. Cal. Oct. 5, 2010). Bautista argues that, even if Valero sells gas to independent stations at a flat rate, it still makes money from subsequent purchases made in reliance on Valero's signage. Bautista also points to deposition testimony by Valero's Senior Manager of Business Development and Risk for the Credit Card Center where the manager

admits that Valero receives payment processing fees for debit and credit card transactions.[3] This, Bautista argues, creates a material question of fact as to whether Valero receives payment processing fees. Finally, Bautista argues Valero represented VPS employees as Valero employees during depositions and therefore should not be permitted to introduce evidence that VPS is a separate entity at this stage.

Bautista has alleged sufficient facts for a jury reasonably to conclude Valero benefited financially from the use of its allegedly deceptive signage. It is undisputed that Valero created the allegedly deceptive signage and sold fuel to stations that displayed this signage. A reasonable jury could therefore conclude Valero indirectly profited from the display of signage that misled customers to believe they were being charged a lower rate than they were in fact charged.

g.   *Whether Bautista Can Seek Punitive Damages Under the CLRA*

To seek punitive damages under the CLRA, Bautista must provide "clear and convincing evidence" that Valero engaged in "oppression, fraud, or malice." Cal. Civ. Code §§ 1780(a)(4), 3294(a). Valero contends, and Bautista does not dispute, that the higher standard of clear and convincing evidence should be considered at the summary judgment stage. *Basich v. Allstate Ins. Co.*, 87 Cal. App. 4th 1112, 1121 (Cal. Ct. App. 2001). Clear and convincing evidence requires evidence "sufficiently strong to command the unhesitating assent of every reasonable mind." *In re Angelia P.*, 28 Cal. 3d 908, 919 (1981) (quotation omitted).

Valero maintains that the primary purpose of the PAD program is to encourage the use of Valero credit cards not to deceive customers into paying higher debit card prices. Furthermore, Valero contends its contracts with major credit card companies prohibited it from discriminating between debit and credit cards. Bautista argues the customer complaints and feedback from station owners[4] put Valero on notice that its signage was misleading. According to Bautista, Valero's

---

[3] Valero presents a declaration by the same employee explaining that he was referring to a family of related corporations when he said "Valero" received payment processing fees. He clarified that VPS is a separate corporation from Valero.

[4] Valero contends the emails from gas station owners saying they had received complaints about the signs are inadmissible hearsay if admitted to show customers actually complained. This

ORDER RE CROSS MOTIONS
CASE NO. 15-cv-05557-RS

United States District Court
Northern District of California

1    continued usage of the sign after receiving this negative feedback support a finding that Valero

2    engaged in "intentional misrepresentation" to attract more customers. Cal. Civ. Code § 3294(c).

3          The parties do not dispute any material facts related to punitive damages. Rather, they

4    disagree over whether the undisputed evidence of customer complaints and station owner feedback

5    are sufficient to support a finding that the company acted with malice or oppression. Ultimately,

6    there is insufficient evidence for a reasonable jury to conclude by clear and convincing evidence

7    that Valero engaged in oppression fraud or malice. Accordingly, Valero's request for summary

8    judgment on this issue is granted.

9              *h.   Whether Bautista Can Establish the Amount of Class-Wide Monetary Relief*

10         Valero argues Bautista has insufficient evidence to establish class-wide damages. Because

11   the class has been decertified, this argument is denied as moot.

12             *i.   Whether Bautista Can Recover for Damages prior to December 4, 2012*

13         The CLRA, which is the sole basis for damages in this suit,[5] has a three-year statute of

14   limitations. Accordingly, Valero argues, Bautista cannot recover damages for transactions

15   occurring before December 4, 2012. As Bautista does not contest any part of this argument,

16   summary judgement is granted with respect to this limited issue.

17             *j.   Whether Bautista Can Seek Statutory Damages under the CLRA*

18         Valero argues statutory damages are unavailable under the CLRA because the conduct at

19   issue was not directed at senior citizens or disabled persons. Cal. Civ. Code § 1780(b). As Bautista

20   does not contest this argument, Valero's motion for summary judgment is granted with respect to

21   statutory damages under section 1780(b).

22             **2.   Bautista's Motion for Partial Summary Judgment**

23

24   _____

25   feedback is admissible, however, to show Valero was on notice that gas station owners had
     concerns about the signage, regardless of whether the statements about customer complaints were
     true.

26   [5] Note that restitution is available under the UCL and FAL. *Clark v. Super. Ct.*, 50 Cal. 4th 605,

27   613 (Cal. 2013); *Korea Supply Co.*, 29 Cal. 4th at 1147-48.

28

United States District Court
Northern District of California

United States District Court
Northern District of California

*a.   Valero's Eighth Affirmative Defense: Acts or Omissions of Third Parties*

Bautista maintains Valero has not pleaded sufficient facts to support the affirmative defense that the acts or omissions of third parties caused the alleged injuries. Bautista interprets this defense to mean Valero intends to argue the independent gas station owners, rather than Valero, are responsible for causing the injuries in this suit. In its opposition, Valero clarified that this affirmative defense is merely "aimed at preserving Valero's right to argue that any damages Bautista and the other class members sustained were caused by their own error in instructing the POS systems to treat their debit cards as credit cards at the time of purchase." Opp. Plaintiffs' Mot. Part. Summary Judgment 10. At oral argument, however, Valero's counsel indicated the company wished to preserve both theories. In any event, Bautista ultimately seeks a ruling that Valero is directly responsible for producing and displaying the allegedly deceptive signage, or in the alternative, is responsible as an aider and abettor.

This request is denied. First, Valero points to evidence on the record that creates a material dispute regarding the degree of control it exercised over Valero stations' signage, thereby undermining Bautista's argument that Valero is directly liable for the display of deceptive signage. In particular, Valero points to evidence that SDI was empowered to design Valero signs that deviated from Valero's marketing manual without seeking approval from Valero. Valero also notes that it was often not aware of changes to gas station signage until long after the changes had been made. Second, Valero has presented sufficient evidence to enable a jury to conclude Valero was not an aider or abettor because it did not know its signage was misleading to the general consumer population. *Schulz v. Neovi Data Corp.*, 152 Cal. App. 4th 86, 93 (Cal. Ct. App. 2007) (explaining that a defendant may be held liable as an aider and abettor only if the defendant knew the conduct it was abetting was wrongful). Accordingly, summary judgment is denied with respect to these two issues.

*b.   Valero's Thirteenth Affirmative Defense: Voluntary Payment*

As explained in the order granting decertification of the class, the voluntary payment defense does not apply to Bautista's claims. Accordingly, Bautista's motion for summary

United States District Court
Northern District of California

1   judgment is granted with respect to Valero's Thirteenth Affirmative Defense.

2                            *c.   All Remaining Affirmative Defenses*

3         As a preliminary matter, Valero does not contest Bautista's motion for summary judgment

4   with respect to Valero's First, Second, Third, Fourth, Fifth, Tenth, and Twelfth Affirmative

5   Defenses. Bautista's motion for summary judgement is accordingly granted with respect to these

6   defenses. Bautista also seeks summary judgement on Valero's Sixth, Seventh, Ninth, and Eleventh

7   Affirmative Defenses.

8         Valero contends the Sixth Affirmative Defense of failure to mitigate is based on the fact

9   that, after Bautista became aware of the split-pricing structure, she instructed her assistant to fill

10   up her gas tank knowing the assistant typically bought gas from Valero. According to Valero,

11   Bautista should be barred from recovering damages resulting from these purchases. Bautista

12   contests Valero's interpretation of her deposition testimony. Valero has, however, established a

13   genuine dispute as to whether Bautista knew her assistant would purchase gas from a Valero-

14   branded station. Accordingly, summary judgment is denied with respect to the Sixth Affirmative

15   Defense.

16         Valero's Seventh Affirmative Defense of comparative or contributory negligence rests

17   upon the theory Bautista was negligent in failing to pay attention to the POS screen or the gas

18   pump display. Valero has introduced sufficient evidence to enable a reasonable jury to conclude

19   Bautista was negligent in failing to notice she was being charged the higher credit price.

20   Accordingly, summary judgement is denied with respect to the Seventh Affirmative Defense.

21         The Ninth Affirmative Defense alleges certain claims are barred by the statute of

22   limitations. In particular, Valero argues Bautista's CLRA and FAL claims are each subject to a

23   three-year statute of limitations, thus limiting Bautista's ability to recover damages from before

24   2014. Bautista does not dispute the substance of this defense but argues the affirmative defense

25   should be stricken because she "will seek only those damages allowed under the law" and

26   therefore "there is no triable issue of fact." Plaintiff's Reply 14. As there is no evident basis to

27   strike the Ninth Affirmative Defense at this time, this request is denied.

28

United States District Court
Northern District of California

1    Finally, Bautista seeks summary judgment on Valero's Eleventh Affirmative Defense of

2    "failure to join a necessary party" under Rule 19. The Court, however, declines to reach this

3    question until Valero affirmatively advances this defense. *See* Fed. R. Civ. P. 12(h)(2).

4    **C.  Remaining Evidentiary Objections**

5    At oral argument, Valero requested that the Court rule on all evidentiary objections

6    contained in the parties' briefs.[6] Although some of these objections are moot, each one is

7    addressed in turn. First, as explained above, customer complaints about the challenged signage

8    and gas station emails relaying customer complaints are inadmissible hearsay if introduced to

9    show the signs were in fact deceptive. This evidence is not hearsay if introduced to show Valero

10    had notice that its signage may be misleading.

11    Second, Valero objects to the admissibility of the SDI Possible Station List. Bautista

12    argues the SDI Possible Station List is admissible as a summary of voluminous evidence. Federal

13    Rule of Evidence 1006 allows for the use of summaries to prove the contents of voluminous

14    writings, recordings, or photographs that cannot be conveniently examined in court when,

15    however, the evidence used to construct the summary must be made available to the other side for

16    inspection. *Encompass Office Sols., Inc. v. Conn. Gen. Life Ins. Co.*, No. 11-cv-02487, 2017 WL

17    3268034, at *9 n.4 (N.D. Tex. July 31, 2017). Bautista, however, is unable to produce the records

18    underlying this summary. In fact, it appears neither party has possession of the underlying

19    documents because these records were never identified or produced by SDI during discovery.

20    Accordingly, Valero's objection to the admission of the SDI Possible Station List is sustained.

21    Third, Valero objects to the admissibility of a list of stations created by Bautista's counsel

22    for the purpose of providing class notice. Valero contends the list is hearsay and is unduly

23    prejudicial under Federal Rule of Evidence 403. Bautista concedes this list has no bearing on the

24    merits and explains that it was compiled solely for the purpose of providing class notice.

25

26    [6] The parties are reminded that e-filed documents must include text search capabilities, unless the filer only has access to a paper copy of the document. Civ. Local R. 5-1(e)(2). This helps conserve

27    Court resources and increase the accuracy and thoroughness of decisions.

28

1    Accordingly, Valero's objection is sustained on both hearsay and Rule 403 grounds.

2         Finally, Valero objects to the admissibility of the Google Maps Street View photos, which

3    Bautista intends to rely upon to establish the relevant stations and time periods at trial. According

4    to Valero, these photographs are hearsay not within an exception. Bautista responds that the

5    photographs are not hearsay because they do not qualify as a "statement." The Google maps

6    photographs are not hearsay to the extent they are introduced to show the purportedly deceptive

7    signage was displayed during a particular month. These photographs are hearsay, however, if

8    introduced to show a station charged split pricing at the time the sign was displayed.

9         **D.  Motions to Seal**

10        The parties request that several exhibits and declarations be maintained under seal. These

11   requests are, however, far too broad. For example, the parties attempt to seal several expert reports

12   in their entirety (Docket 171) despite the fact that large portions of the contents do not appear

13   particularly sensitive. Furthermore, the vast majority of the redactions in Bautista's motion to

14   exclude Valero's experts (Dockets 176, 187) do not qualify for sealing. The same holds true with

15   respect to virtually all the motions to seal.

16        The parties shall meet and confer in an attempt to agree on the narrowest possible sealing

17   order and shall jointly submit such a proposed order no later than January 1, 2019. The proposed

18   order shall clearly identify any documents, or portions thereof, that the parties agree should be

19   filed under seal (either entirely or with redactions), and concisely state the basis for such sealing

20   under Civil Local Rules 79-5. The parties shall clearly indicate where their respective declarations,

21   either already submitted or new declarations, provide sufficient grounds to seal each document

22   requested to be sealed. The proposed order should be one document, which in one fashion or

23   another, will dispose of all pending sealing motions.

24                              **IV. CONCLUSION**

25        In conclusion, the parties' cross motions for summary judgment are granted in part and

26   denied in part. In particular, Valero's motion for summary judgment is granted with respect to the

27   following issues:

28

United States District Court
Northern District of California

1

(a) Bautista does not have standing to seek injunctive relief,

2

(b) She is not entitled to punitive damages,

3

(c) She cannot recover damages prior to December 4, 2012, and

4

(d) She cannot recovery statutory damages under Cal. Civ. Code §1780(b).

5

Bautista's motion for partial summary judgment is granted with respect to Valero's First,

6

Second, Third, Fourth, Fifth, Tenth, Twelfth, and Thirteenth Affirmative Defenses. Furthermore,

7

in light of the decertification of the class, the pretrial conference set for December 20, 2018 and

8

the trial set to begin on January 28, 2019 are hereby vacated. A status conference will be

9

scheduled for February 7, 2019 at 10 A.M.

10

11

**IT IS SO ORDERED**.

12

13

Dated: 12/04/2018

14

15

RICHARD SEEBORG
United States District Judge

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California