ROBBINS GELLER RUDMAN
 & DOWD LLP
STUART A. DAVIDSON (*pro hac vice*)
CHRISTOPHER C. GOLD (*pro hac vice*)
120 E. Palmetto Park Rd., Suite 500
Boca Raton, FL  33432
Telephone:  561/750-3000
561/750-3364 (fax)
sdavidson@rgrdlaw.com
cgold@rgrdlaw.com

HOBSON, BERNARDINO & DAVIS, LLP
RAFAEL BERNARDINO, JR. (118690)
JASON A. HOBSON (184134)
725 South Figueroa Street, Suite 3230
Los Angeles, CA  90017
Telephone:  213/235-9190
213/235-9197 (fax)
rbernardino@hbdlegal.com
jhobson@hbdlegal.com

Attorneys for Plaintiff and the Class

[Additional counsel appear on signature page.]

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| FAITH BAUTISTA, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>VALERO MARKETING AND SUPPLY COMPANY,<br><br>Defendant. | Case No. 3:15-cv-05557-RS<br><br><u>CLASS ACTION</u><br><br>NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND CLASS COUNSEL'S REQUEST FOR A FEE AND EXPENSE AWARD AND PLAINTIFF SERVICE AWARD; MEMORANDUM OF LAW IN SUPPORT THEREOF<br><br>Date:          March 11, 2021<br>Time:          1:30 p.m.<br>Courtroom:  3 – 17th Floor<br>Judge:         Hon. Richard Seeborg |

4840-0958-9974.v2

1

**TABLE OF CONTENTS**

2

Page

3   I.    INTRODUCTION ................................................................................................1

4   II.   FACTUAL AND PROCEDURAL BACKGROUND.........................................................3

5   III.  PLAINTIFF HAS PROVIDED SUFFICIENT NOTICE TO THE SETTLEMENT
6        CLASS IN COMPLIANCE WITH RULE 23 AND DUE PROCESS...............................4

    IV.  THE SETTLEMENT MERITS FINAL APPROVAL ....................................................5
7

8        A.    Class Counsel and Plaintiff Have Adequately Represented the Settlement
             Class .........................................................................................................7

9        B.    The Settlement Was Negotiated at Arm's Length ...................................7

10       C.    The Relief Is Adequate Considering the Costs, Risks and Delay of Trial
11            and Appeal ...............................................................................................8

12            1.    The Injunctive Relief Is Meaningful...........................................9

13            2.    Serious Legal and Factual Questions Placed the Litigation's
                  Outcome in Doubt.......................................................................9

14            3.    The Delay in Further Litigation ..................................................9

15       D.    The Requested Attorneys' Fees ..............................................................10

16       E.    The Parties Have No Other Agreement ..................................................10

17       F.    The Proposal Treats Settlement Class Members Equitably.....................10

18       G.    The Settlement Satisfies the Remaining *Churchill* Factors ...................10

19            1.    The Experience and Views of Counsel......................................10

20            2.    Reaction of the Settlement Class to Date...................................11

21   V.    CLASS COUNSEL'S FEE AND EXPENSE REQUEST IS REASONABLE.................12

22       A.    Plaintiff Is Entitled to Fees Under Governing California Law ..............12

23       B.    The Requested Fee Is Reasonable Under the Lodestar Method .........15

24       C.    The Result Achieved for the Settlement Class .......................................17

25       D.    The Risks of the Litigation and the Novelty and Difficulty of the
26            Questions Presented ................................................................................18

       E.    The Skill Required and the Quality and Efficiency of the Work...........18
27

28       F.    The Contingent Nature of the Fee and the Financial Burden Carried by
             Class Counsel..........................................................................................18

**Page**

      G.      Reaction of the Settlement Class Supports Approval of the Attorneys'
            Fees Requested .......................................................................................19

VI.    CLASS COUNSEL'S EXPENSES ARE REASONABLE AND INCLUDED IN
       THEIR REQUEST .........................................................................................20

VII.   THE REQUESTED SERVICE AWARD IS REASONABLE GIVEN THE
       LENGTH OF THE CASE AND THE SIGNIFICANT EFFORTS OF PLAINTIFF
       FAITH BAUTISTA .......................................................................................21

VIII.  CONCLUSION.............................................................................................22

1

**TABLE OF AUTHORITIES**

2

**Page**

3

**CASES**

4
*Beckman v. KeyBank, N.A.*,
    293 F.R.D. 467 (S.D.N.Y. 2013) ...........................................17

5

6
*Behrens v. Wometco Enters., Inc.*,
    118 F.R.D. 534 (S.D. Fla. 1988),
    *aff'd*, 899 F.2d 21 (11th Cir. 1990).....................................17

7

8
*Brazil v. Dell Inc.*,
    No. C-07-01700 RMW, 2012 U.S. Dist. LEXIS 47986
    (N.D. Cal. Apr. 4, 2012) ...................................................14

9

10
*Brotherton v. Cleveland*,
    141 F. Supp. 2d 894 (S.D. Ohio 2001) ...................................12

11

12
*Broughton v. Cigna Healthplans of Cal.*,
    21 Cal. 4th 1066 (1999) ....................................................13

13

14
*Chen v. Chase Bank USA, N.A.*,
    No. 19-cv-01082-JSC, 2020 WL 2644332
    (N.D. Cal. Jan. 16, 2020) ..................................................21

15

16
*Churchill Vill., L.L.C. v. Gen. Elec.*,
    361 F.3d 566 (9th Cir. 2004) .....................................6, 7, 8, 10

17

18
*Craft v. Cty. of San Bernardino*,
    624 F. Supp. 2d 1113 (C.D. Cal. 2008) .................................17

19
*Cunningham v. Cty. of Los Angeles*,
    879 F.2d 481 (9th Cir. 1988) .............................................15

20

21
*Destefano v. Zynga, Inc.*,
    No. 12-cv-04007-JSC, 2016 WL 537946
    (N.D. Cal. Feb. 11, 2016).................................10, 17, 18, 20

22

23
*Eisen v. Carlisle & Jacquelin*,
    417 U.S. 156 (1974)...........................................................5

24

25
*EK Vathana v. Everbank*,
    No. 09-cv-02338-RS, 2016 WL 3951334
    (N.D. Cal. July 20, 2016)...................................................21

26

27
*Fitzgerald v. City of Los Angeles*,
    No. CV 03-01876 DDP, 2009 U.S. Dist. LEXIS 34803
    (C.D. Cal. Apr. 7, 2009).....................................................14

28

1

2                                                                                     **Page**

3

4      *Graciano v. Robinson Ford Sales, Inc.*,
          144 Cal. App. 4th 140 (2006) ...............................................................................14

5      *Grodensky v. Artichoke Joe's Casino*,
6         171 Cal. App. 4th 1399 (2009) .............................................................................14

7      *Hanlon v. Chrysler Corp.*,
          150 F.3d 1011 (9th Cir. 1998) .............................................................................11

8
       *Harris v. Marhoefer*,
9         24 F.3d 16 (9th Cir. 1994) ...................................................................................15

10     *Harris v. Vector Mktg. Corp.*,
11        No. C-08-5198 EMC, 2011 WL 1627973
          (N.D. Cal. Apr. 29, 2011) .......................................................................................8

12
       *Hayward v. Ventura Volvo*,
13        108 Cal. App. 4th 509 (2003) ...............................................................................13

14     *Hensley v. Eckerhart*,
          461 U.S. 424 (1983)...............................................................................................17
15

16     *Heston v. Taser Int'l., Inc.*,
          431 F. App'x 586 (9th Cir. 2011) .........................................................................14

17
       *In re Amgen Inc. Sec. Litig.*, No. CV 7-2536 PSG-PLAx,
18        2016 WL 10571773 (C.D. Cal. Oct. 25, 2016).....................................................11

19     *In re Bluetooth Headset Prods. Liab. Litig.*,
          654 F.3d 935 (9th Cir. 2011) ....................................................................6, 7, 12, 15
20

21     *In re Equity Funding Corp. of Am. Sec. Litig.*,
          438 F. Supp. 1303 (C.D. Cal. 1977) .....................................................................15

22
       *In re Heritage Bond Litig.*,
23        No. 02-ML-1475-DT, 2005 WL 1594403
          (C.D. Cal. June 10, 2005) .....................................................................................19

24
       *In re Hyundai & Kia Fuel Econ. Litig.*,
25        926 F.3d 539 (9th Cir. 2019) ..................................................................................5

26     *In re Immune Response Sec. Litig.*,
          497 F. Supp. 2d 1166 (S.D. Cal. 2007)..................................................................21
27

28

**Page**

*In re JDS Uniphase Corp. Sec. Litig.*,
   No. C-02-1486 CW (EDL), 2007 WL 4788556
   (N.D. Cal. Nov. 27, 2007) ........................................................................................19

*In re King Res. Co. Sec. Litig.*,
   420 F. Supp. 610 (D. Colo. 1976) ...........................................................................18

*In re Mego Fin. Corp. Sec. Litig.*,
   213 F.3d 454 (9th Cir. 2000) ...................................................................................20

*In re Nat'l Collegiate Athletic Ass'n Athletic Grant-in-Aid Cap Antitrust Litig.*,
   No. 4:14-md-2541-CW, 2017 WL 6030065
   (N.D. Cal. Dec. 6, 2017),
   *aff'd*, 768 F. App'x 651 (9th Cir. 2019) ...................................................................17

*In re Online DVD-Rental Antitrust Litig.*,
   779 F.3d 934 (9th Cir. 2015) ..............................................................................15, 21

*In re Oracle Corp. Sec. Litig.*,
   No. C 01-00988 SI, 2009 WL 1709050
   (N.D. Cal. June 19, 2009),
   *aff'd*, 627 F.3d 376 (9th Cir. 2010) .........................................................................19

*In re Washington Pub. Power Supply Sys. Sec. Litig.*,
   19 F.3d 1291 (9th Cir. 1994) ........................................................................12, 18, 19

*Kim v. Euromotors West/The Auto Gallery*,
   149 Cal. App. 4th 170 (2007) ...................................................................................13

*Lindelli v. Town of San Anselmo*,
   139 Cal. App. 4th 1499 (2006) .................................................................................13

*Lucero v. Solarcity Corp.*,
   No. 15-cv-05107-RS, 2018 WL 573593
   (N.D. Cal. Jan. 26, 2018) ..........................................................................................21

*Lyons v. Chinese Hosp. Ass'n*,
   136 Cal. App. 4th 1331 (2006) .................................................................................14

*Milano v. Interstate Battery Sys. of Am., Inc.*,
   No. 10-CV-2125-CW, 2012 U.S. Dist. LEXIS 93192
   (N.D. Cal. July 5, 2012) ............................................................................................13

**Page**

*Milligan v. Toyota Motor Sales, U.S.A., Inc.,*
   No. C 09-05418 RS, 2012 WL 10277179
   (N.D. Cal. Jan. 6, 2012) ......................................................................................22

*Moreno v. City of Sacramento,*
   534 F.3d 1106 (9th Cir. 2008) ............................................................................14

*Nat'l Rural Telecomm. Coop. v. DIRECTV, Inc.,*
   221 F.R.D. 523 (C.D. Cal. 2004) ...................................................................10, 12

*Officers for Justice v. Civil Serv. Comm'n of City & Cty. of San Francisco,*
   688 F.2d 615 (9th Cir. 1982) ............................................................................6, 8

*Radcliffe v. Experian Info. Sols. Inc.,*
   715 F.3d 1157 (9th Cir. 2013) .............................................................................21

*Retta v. Millennium Prods., Inc.,* No. CV15-1801 PSG AJWx,
   2017 WL 5479637 (C.D. Cal. Aug. 22, 2017)....................................................12

*Rodriguez v. W. Publ'g Corp.,*
   563 F.3d 948 (9th Cir. 2009) .........................................................................10, 21

*Satchell v. Fed. Express Corp.,*
   No. C03-2659 SI, 2007 WL 1114010
   (N.D. Cal. Apr. 13, 2007) .....................................................................................8

*Schuchardt v. Law Office of Rory W. Clark,*
   314 F.R.D. 673 (N.D. Cal. 2016)..........................................................................7

*Serrano v. Priest,*
   20 Cal. 3d 25 (1977) ...........................................................................................13

*Serrano v. Stefan Merli Plastering Co.,*
   52 Cal. 4th 1018 (2011) .................................................................................13, 14

*Shaw v. Interthinx, Inc.,*
   No. 13-CV-01229-REB-NYW, 2015 WL 1867861
   (D. Colo. Apr. 22, 2015)........................................................................................6

*Steiner v. Am. Broad. Co., Inc.,*
   248 F. App'x 780 (9th Cir. 2007) ........................................................................17

*Tennille v. W. Union Co.,*
   785 F.3d 422 (10th Cir. 2015) ...............................................................................5

| | Page |
|---|---|

*van Wingerden v. Cadiz, Inc.*, No. LA CV15-03080 JAK (JEMx),
    2017 WL 5565263 (C.D. Cal. Feb. 8, 2017)........................................................................19

*Vizcaino v. Microsoft Corp.*,
    290 F.3d 1043 (9th Cir. 2002) .......................................................................17, 18, 19

*Walters v. Target Corp.*,
    No. 3:16-cv-1678-L-MDD, 2020 WL 6277436
    (S.D. Cal. Oct. 26, 2020) ..................................................................................6

*Winterrowd v. Am. Gen. Annuity Ins. Co.*,
    556 F.3d 815 (9th Cir. 2009) ...........................................................................12

*Woodland Hills Residents Ass'n., Inc. v. City Council*,
    23 Cal. 3d 917 (1979) ......................................................................................14

## STATUTES, RULES AND REGULATIONS

California Code of Civil Procedure
    §1021.5...............................................................................................12, 13, 14
    §1760....................................................................................................13
    §1780....................................................................................................13
    §1780(e).............................................................................................12, 13

Federal Rules of Civil Procedure
    Rule 12...................................................................................................3
    Rule 23.................................................................................................5, 6
    Rule 23(c)(2)(B)....................................................................................4, 5
    Rule 23(e)(1)...........................................................................................4
    Rule 23(e)(1)(B)......................................................................................4
    Rule 23(e)(2)........................................................................................1, 6
    Rule 23(e)(2)(A)......................................................................................7
    Rule 23(e)(2)(C)(i)..................................................................................8
    Rule 23(e)(2)(C)(iii)..............................................................................10
    Rule 23(e)(2)(C)(iv)..............................................................................10
    Rule 23(e)(3)......................................................................................6, 10
    Rule 23(f) ..................................................................................... *passim*

**NOTICE OF MOTION AND MOTION**

PLEASE TAKE NOTICE THAT on March 11, 2021, at 1:30 p.m., or on a date selected by the Court, Plaintiff Faith Bautista ("Plaintiff") will and hereby does respectfully move the Court, in the courtroom of the Honorable Richard Seeborg, Courtroom 3, 17th Floor of the United States District Court for the Northern District of California, located at 450 Golden Gate Avenue, San Francisco, California 94102, for an Order granting final approval of the Settlement and awarding fees and expenses to Class Counsel and a service award to Plaintiff.

This motion is based on the notice of motion and motion for Final Approval of Class Action Settlement and Class Counsel's Request for a Fee and Expense Award and Plaintiff Service Award, the following memorandum of points and authorities in support, the accompanying declarations and exhibits, the arguments of counsel, and any other matters in the record or that properly come before the Court.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.    INTRODUCTION**

Plaintiff[1] has achieved a Settlement of this consumer class action which squarely addresses the challenged conduct and satisfies each of the Rule 23(e)(2) factors, as well as the factors considered by the Ninth Circuit in deciding whether a class settlement is fair, reasonable, and adequate.  The Settlement is particularly beneficial to the Settlement Class in light of the many risks Plaintiff faced, including that: (i) the Ninth Circuit could rule against Plaintiff on her Rule 23(f) appeal of this Court's decertification of the litigation class; and (ii) protracted and expensive continued litigation, including trial and likely appeals, could ultimately lead to no change at all in Defendant Valero Marketing and Supply Company's ("Valero") challenged conduct.

The Settlement was negotiated at arm's length by counsel with extensive experience in complex consumer class actions.  Before agreeing to the Settlement, Class Counsel had a thorough

---

[1]    All capitalized terms that are not otherwise defined herein have the same meanings ascribed to them in the Class Action Settlement Agreement and Release, dated as of September 30, 2020 ("Settlement Agreement").   ECF No. 279-1.   Citations are omitted and emphasis is added throughout unless otherwise noted.

understanding of the merits of Plaintiff's claims, the strengths and weaknesses of the evidence and legal arguments, and the likelihood of ultimate success.  Indeed, the Settlement is the result of hard-fought litigation among sophisticated parties and experienced counsel in which virtually every issue was contested.  Before agreeing to the Settlement, Class Counsel successfully defended against multiple motions to dismiss; engaged in comprehensive and contentious discovery that included a motion to compel, the production, review, and analysis of thousands of pages of documents and the taking of nine depositions; defended against multiple *Daubert* expert challenges; successfully moved for class certification; defended against Valero's summary judgment and decertification motions while moving for cross summary-judgment; successfully petitioned the Ninth Circuit Court of Appeals to review this Court's class decertification; and made detailed submissions in connection with three separate, in-person mediations with an experienced mediator, Cathy Yanni of JAMS.

On November 5, 2020, the Court granted preliminary approval of the Settlement, preliminarily certified the Settlement Class, and authorized notice to the Settlement Class ("Preliminary Approval Order"), finding that the Settlement was fair, reasonable, and adequate, subject to further consideration at the Final Approval Hearing.  ECF No. 284, ¶6.  In accordance with the Preliminary Approval Order, Class Counsel ensured that the Class Notice and Publication Notice ("Notice") were disseminated to the Settlement Class as provided in the Preliminary Approval Order.  *See* Declaration of Cameron R. Azari, Esq., on Implementation of Settlement Notice Plan ("Azari Decl."), submitted herewith.  The Settlement Administrator, Epiq Class Action & Claims Solutions, Inc. ("Epiq"), commenced dissemination of the Notice on November 20, 2020 by (i) posting the Class Notice on the Settlement website along with comprehensive information about the Settlement; (ii) publishing the Publication Notice in the *Sacramento Bee*, *San Jose Mercury News/East Bay Times*, *Los Angeles Times*, *Orange County Register*, *San Diego Union-Tribune*, and the *San Francisco Chronicle*; (iii) posting Internet Banner Notices with links to the Settlement website on online networks and social media platforms, including *Facebook*, *Twitter*, and *Instagram*; and (iv) publishing the Publication Notice in a

1   nationwide Informational Release.  *Id.*, ¶¶8-15.  To date, not a single objection to the proposed

2   Settlement has been made, and no requests for exclusion have been received.  *Id.*, ¶18.

3         For all the reasons set forth herein and in the accompanying declarations, Class Counsel

4   respectfully submit that the Settlement is fair, adequate, and reasonable under the applicable legal

5   standards and should be finally approved by the Court.

6         Likewise, based on the time and lodestar committed to this litigation as well as the

7   exceptional result achieved and significant risks faced by Class Counsel, the fee and expense

8   request of $1,650,000, inclusive, is reasonable and should be granted.  Indeed, Class Counsel

9   litigated this case for over four years, entirely on a contingent-fee basis, with no payment to date

10  whatsoever.  Notably, the requested fee and expense award would result in a significant ***negative***

11  multiplier and therefore is certainly reasonable.

12  **II.      FACTUAL AND PROCEDURAL BACKGROUND**

13        The Declaration of Stuart A. Davidson in Support of Plaintiff's Motion for Final Approval

14  of Class Action Settlement and Class Counsel's Request for a Fee and Expense Award and Plaintiff

15  Service Award ("Davidson Declaration" or "Davidson Decl.") filed simultaneously herewith, and

16  adopted by reference herein, fully describes the factual background and procedural history of the

17  Action, the extensive efforts undertaken by Plaintiff and Class Counsel during the course of the

18  Action, the risks of continued litigation, and the negotiations leading to the Settlement.  *See*

19  Davidson Decl., ¶¶11-33, 36-42.

20        In short, Plaintiff filed a detailed second amended complaint ("Complaint") and opposed

21  two attempts by Valero to dismiss the Action pursuant to Rule 12.  *See id.*, ¶¶13-17.  Discovery

22  was extensive and contentious, involving a motion to compel, the production and review of

23  thousands of documents, and the taking of nine depositions.  *Id.*, ¶¶18-19.  Following that

24  discovery, Plaintiff filed a detailed class certification motion, attaching substantial documentary

25  evidence in support, which the Court granted over Valero's opposition on October 4, 2017.  *Id.*,

26  ¶¶21-23.  In connection with class certification, Plaintiff defended against Valero's motion to strike

27  her experts' testimony.  *Id.*, ¶21.  Plaintiff then defended against Valero's motions to decertify the

28  litigation class and for summary judgment, while also offensively moving for summary judgment

1   on certain of Valero's affirmative defenses. *Id.*, ¶¶24-28. After this Court granted Valero's motion

2   to decertify, Plaintiff successfully petitioned the Ninth Circuit for review under Fed. R. Civ. P.

3   23(f), and was preparing to brief her appeal when the Parties entered into the Settlement. *Id.*, ¶29.

4   At no point did Valero concede the merits of Plaintiff's allegations.

5        The Settlement is the product of extensive, arm's-length negotiations under the guidance

6   of Cathy Yanni, a neutral, third-party mediator with JAMS. *Id.*, ¶¶30-33, 36-39. The Parties

7   attended three separate in-person mediation sessions that included detailed submissions regarding

8   the strengths and weaknesses of the Action, the evidence, and the Parties' respective claims and

9   defenses. *Id.*, ¶¶32, 36. The Parties were unable to reach a compromise at these mediation

10   sessions. *Id.*, ¶31. Settlement was subsequently reached only after Ms. Yanni issued a "mediator's

11   proposal," which the Parties accepted. *Id.*, ¶¶33, 36.

12        Plaintiff's and Class Counsel's diligent prosecution of the Action has directly resulted in

13   immediate and meaningful non-monetary relief to the Settlement Class. Valero will take steps to

14   affirmatively address the central complaint in this Action, *i.e.*, Valero agrees to: (1) no longer

15   approve the use of signage in California that advertises "cash" and "credit," but omits debit prices;

16   (2) amend its "Wholesale Branding Manual" to include a statement that any station advertising

17   discounted pricing must indicate how debit cards will be charged; (3) provide fuel pump decals

18   and signage that prominently display debit card pricing to any Valero-branded stations in

19   California that notify Valero that they advertise discounted pricing for cash; and (4) promptly

20   notify and demand compliance from any Valero-branded stations in California it discovers are

21   violating these terms. Settlement Agreement, ¶4.2. These changes will come at significant costs

22   of time and money to Valero. *See* Declaration of Charles Pettibon, ECF No. 279-4, ¶¶7-10.

23   **III.  PLAINTIFF HAS PROVIDED SUFFICIENT NOTICE TO THE**

24         **SETTLEMENT CLASS IN COMPLIANCE WITH RULE 23 AND DUE PROCESS**

25        Under Rule 23(e)(1), a district court approving a class action settlement "must direct notice

26   in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ.

27   P. 23(e)(1)(B). Rule 23(c)(2)(B) also provides that notice of a class settlement must be "the best

28   notice that is practicable under the circumstances, including individual notice to all members who

1   can be identified through reasonable effort."  Fed. R. Civ. P. 23(c)(2)(B); *Eisen v. Carlisle &*

2   *Jacquelin*, 417 U.S. 156, 173 (1974) (class notice designed to fulfill due process requirements).

3   Notice "'must be reasonably calculated, under all the circumstances, to apprise interested parties

4   of the pendency of the action and afford them an opportunity to present their objections.'" *Tennille*

5   *v. W. Union Co.*, 785 F.3d 422, 436 (10th Cir. 2015).

6        Valero does not maintain contact information for each Settlement Class member.

7   Accordingly, the Settlement Notice Plan targeted Settlement Class members through a combination

8   of online banner ads, social media ads, press releases, and print media channels designed to reach a

9   minimum of 70% of the Settlement Class an average of three times each.  Azari Decl., ¶¶6-15; *see*

10  *also* Declaration of Cameron Azari, Esq., on Proposed Settlement Notice Plan, ECF No. 279-6,

11  ¶7.  The plan included a nationwide supplemental digital campaign and national press release

12  targeting Settlement Class members who have migrated from California or who were temporarily in

13  California at the time of their transaction, which further enhanced the reach and frequency of the

14  Settlement Notice Plan.  *Id.*

15       As explained in Plaintiff's memorandum of law in support of preliminary approval (ECF

16  No. 279, at §VI), the Settlement Notice satisfied the applicable standards and amply informed

17  Settlement Class members of all relevant information regarding the Settlement, Class Counsels' fee

18  and expense request, and Settlement Class members' rights to object or opt out.  Moreover, the

19  Settlement Notice Plan is substantially the same plan that the Court approved in connection with

20  notifying the formerly certified litigation class of the pendency of the class action.  ECF No. 164.

21  For these reasons, the Court's Preliminary Approval Order found that the form and content of the

22  Notice, as well as the methods for notifying the Settlement Class, "satisfy the requirements of due

23  process and Fed. R. Civ. P. 23, and will provide the best notice practicable under the

24  circumstances."  Preliminary Approval Order, ¶14.

25  **IV.    THE SETTLEMENT MERITS FINAL APPROVAL**

26       It is well established within this Circuit that the settlement of a complex proposed class

27  action, such as this, is both favored and encouraged.  *See In re Hyundai & Kia Fuel Econ. Litig.*,

28  926 F.3d 539, 556 (9th Cir. 2019) (*en banc*) (recognized the "'strong judicial policy that favors

settlements, particularly where complex class action litigation is concerned'"). Because of this, when exercising their sound discretion to approve a settlement, courts are mindful "'not to decide the merits of the case or resolve unsettled legal questions.'" *Shaw v. Interthinx, Inc.*, No. 13-CV-01229-REB-NYW, 2015 WL 1867861, at *2 (D. Colo. Apr. 22, 2015); *see Officers for Justice v. Civil Serv. Comm'n of City & Cty. of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982) ("Neither the trial court nor this court is to reach any ultimate conclusions on the contested issues of fact and law which underlie the merits of the dispute.").

To finally approve a class action settlement as fair, reasonable, and adequate, Rule 23(e)(2) requires the Court to consider "whether: (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2).

These factors largely encompass those identified by the Ninth Circuit for evaluating a class settlement. *See In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011) (quoting *Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004)). The *Churchill* factors are: (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members of the proposed settlement. *Id.* These Ninth Circuit factors are often reviewed alongside those identified by Rule 23. *See, e.g., Walters v. Target Corp.*, No. 3:16-cv-1678-L-MDD, 2020 WL 6277436, at *5 (S.D. Cal. Oct. 26, 2020).

### A.  Class Counsel and Plaintiff Have Adequately Represented the Settlement Class

The Rule 23(e)(2)(A) factor examines whether the class representative and Class Counsel adequately represented the Settlement Class.  This factor overlaps with the fifth *Churchill* factor which looks at the extent of discovery completed and the stage of proceedings.

Class Counsel and Plaintiff have adequately represented the Settlement Class throughout the almost five years in which they have fiercely litigated this case all the way up through summary judgment before the litigation class was decertified, and then Class Counsel successfully petitioned the Ninth Circuit for Rule 23(f) review.  Throughout that process, which required the preparation of numerous complex legal briefs, Class Counsel conducted extensive discovery of Valero and third parties that included the review and analysis of thousands of pages of documents and the taking of nine depositions.  Before entering into the Settlement, Class Counsel engaged in three separate mediation attempts, which required additional complex submissions.  *See* November 5, 2020 Transcript of Zoom Video Conference Proceedings at 5 (the Court: "the long and short of it is I think there was a great deal of good attorney effort in this case").

Class Counsel's support of the Settlement can be considered and also favors approval.  *In re Bluetooth*, 654 F.3d at 946.  Here, Class Counsel have extensive experience litigating consumer class actions, and it is their considered judgment that the Settlement represents a very good result for the Settlement Class given that it achieves the primary goal of the litigation.  Davidson Decl., ¶¶44-45.  "Given Class Counsel's extensive experience in this field, and their assertion that the settlement is fair, adequate, and reasonable, this factor supports final approval of the Settlement Agreement."  *Schuchardt v. Law Office of Rory W. Clark*, 314 F.R.D. 673, 685 (N.D. Cal. 2016).

### B.  The Settlement Was Negotiated at Arm's Length

The Settlement was extensively negotiated between the Parties and carefully guided by Ms. Yanni as a neutral mediator.  On March 27, 2018, shortly after the Court certified the litigation class, counsel and authorized representatives for both Parties participated in the first face-to-face mediation which took place in San Francisco.  Davidson Decl., ¶31.  Before the mediation, the Parties provided Ms. Yanni with comprehensive settlement statements and supporting exhibits

identifying key evidence. *Id.*, ¶32. The Parties attended a second face-to-face mediation with Ms. Yanni on November 29, 2018, while Valero's decertification motion was under submission, and a third face-to-face mediation on October 29, 2019, after the Ninth Circuit granted Plaintiff's Rule 23(f) petition. *Id.*, ¶31. The Parties reached an agreement in principle to settle the litigation only after Ms. Yanni issued a mediator's proposal. *Id.*, ¶33. Ms. Yanni attests that she never witnessed or sensed any collusiveness between the Parties (because there was none). *See* Declaration of Cathy Yanni, ECF No. 279-5, ¶14.

Courts have recognized that "[t]he assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive." *Satchell v. Fed. Express Corp.*, No. C03-2659 SI, 2007 WL 1114010, at *4 (N.D. Cal. Apr. 13, 2007); *see also Harris v. Vector Mktg. Corp.*, No. C-08-5198 EMC, 2011 WL 1627973, at *8 (N.D. Cal. Apr. 29, 2011). Here, Ms. Yanni played a very active – indeed, critical – role in bringing about the Settlement.

The agreement in principle was followed by extensive negotiations between the Parties regarding the detailed terms of the Settlement, including the scope of the releases and the form and content of the notice to be disseminated. Davidson Decl., ¶34. These facts establish that the Settlement is the result of hard-fought, arm's-length negotiations and "not the product of fraud or overreaching by, or collusion between, the negotiating parties." *Officers for Justice*, 688 F.2d at 625; *see also* November 5, 2020 Transcript of Zoom Video Conference Proceedings at 4 (the Court noting that this case was "intensely litigated" prior to settlement). Accordingly, this factor strongly favors final approval of the Settlement.

### C. The Relief Is Adequate Considering the Costs, Risks and Delay of Trial and Appeal

Rule 23(e)(2)(C)(i) examines the sufficiency of the relief in light of the costs, risks, and delay of trial and appeal. It largely overlaps with *Churchill* factors one (strength of Plaintiff's case), two (risk, expense, complexity, and likely duration of litigation), three (the risk of maintaining class action status), and four (amount offered in settlement).

1.     **The Injunctive Relief Is Meaningful**

The relief here is meaningful.  The Settlement requires Valero to modify its approved signage and fuel pump decals to directly address the challenged conduct, *i.e.*, notifying consumers when debit card purchases of gasoline will be charged like credit cards rather than cash.  Under the Settlement, the signage at Valero-branded stations in California must prominently disclose how debit cards will be charged.  This is precisely the issue raised in all the pleadings and the operative Second Amended Complaint, and the primary form of relief sought.  *See* Hr'g Tr. at 4:14-18, Preliminary Approval Zoom Video Conference Proceedings (Nov. 5, 2020) (the Court: "I do think in this case it is relief that is congruent with what was requested in the case, what the case was all about, and I think that the . . . proposed relief is meaningful and provides some real recovery for the class . . . .") (attached hereto as Exhibit 1).

2.     **Serious Legal and Factual Questions Placed the Litigation's Outcome in Doubt**

If litigation continued, Plaintiff would be faced with significant risk of obtaining no relief for the proposed class.  Although Plaintiff successfully sought appellate review of the Court's decertification Order, permission to pursue an appeal does not suggest success on the merits.  *See* November 5, 2020 Transcript of Zoom Video Conference Proceedings at 14 (the Court noting that the parties never learned what the Ninth Circuit's thoughts on decertification would have been).  And even if Plaintiff were to win on appeal, she would still need to prove liability and damages at trial.

3.     **The Delay in Further Litigation**

While this Action has been pending for over five years, absent the Settlement, there would likely be several more years of further litigation and the uncertainty that goes along with that.  The Parties and the Court would expend significant time, resources, and costs to complete Plaintiff's appeal and trial.  Moreover, assuming Plaintiff was successful at the Ninth Circuit and at trial, the inevitable appeals would surely follow, further delaying any relief to the Settlement Class and creating further uncertainty.  There is real value in an immediate resolution in the face of such delays and uncertainty.

1

### D.    The Requested Attorneys' Fees

2      Rule 23(e)(2)(C)(iii) addresses "the terms of any proposed award of attorney's fees,

3 including timing of payment."  Fed. R. Civ. P. 23(e)(2)(C)(iii).  As discussed below (§V), Class

4 Counsel seek an award of attorneys' fees and expenses of $1,650,000, inclusive.  This represents

5 a substantial ***negative*** multiplier on Class Counsel's lodestar.  The Settlement Agreement provides

6 that any attorneys' fee and expense award shall be paid to Class Counsel within 30 calendar days

7 from the expiration of time to appeal the Court's Order approving the Settlement or, if an appeal

8 is taken, within 30 calendar days of the final resolution of such appeal.  Settlement Agreement,

9 ¶4.8.

10

### E.    The Parties Have No Other Agreement

11     Rule 23(e)(2)(C)(iv) requires consideration of any agreement required to be disclosed

12 under Rule 23(e)(3).  The Parties have entered into no other agreement.  Davidson Decl., ¶33.

13

### F.    The Proposal Treats Settlement Class Members Equitably

14     Because the Settlement provides for injunctive relief – namely, a change in Valero's

15 approved signage and other related relief – it necessarily treats all Settlement Class members

16 equitably.

17

### G.    The Settlement Satisfies the Remaining *Churchill* Factors

18

#### 1.    The Experience and Views of Counsel

19     Experienced counsel, negotiating at arm's length, have weighed the factors discussed

20 above and endorse the Settlement.  Davidson Decl., ¶46.  As the Ninth Circuit has observed, "[t]his

21 circuit has long deferred to the private consensual decision of the parties" and their counsel in

22 settling an action.  *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009).  The views

23 of the attorneys actively conducting the litigation and who are most closely acquainted with the

24 facts of the underlying litigation, are entitled to "'[g]reat weight.'"  *Nat'l Rural Telecomm. Coop.

25 v. DIRECTV, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004); *see also Destefano v. Zynga, Inc.*, No.

26 12-cv-04007-JSC, 2016 WL 537946, at *13 (N.D. Cal. Feb. 11, 2016) ("'A district court is entitled

27 to give consideration to the opinion of competent counsel that the settlement is fair, reasonable,

28 and adequate.'").

1   Class Counsel are experienced and able lawyers in this area of practice and firmly believe

2   that the Settlement is fair, adequate, and reasonable, and particularly so in view of the risks,

3   burdens, and expense of continued litigation.  Davidson Decl., ¶¶45-46.

4   **2.      Reaction of the Settlement Class to Date**

5   "In evaluating the fairness, adequacy, and reasonableness of settlement, courts also

6   consider the reaction of the class to the settlement." *In re Amgen Inc. Sec. Litig.*, No. CV 7-2536

7   PSG-PLAx, 2016 WL 10571773, at *4 (C.D. Cal. Oct. 25, 2016).  Pursuant to this Court's

8   Preliminary Approval Order, the Court-approved Notices were disseminated through internet

9   banner ads and social media and published in a nationwide press release and the *Sacramento Bee*,

10  *San Jose Mercury News/East Bay Times*, *Los Angeles Times*, *Orange County Register*, *San Diego*

11  *Union-Tribune*, and the *San Francisco Chronicle*; publishing the Publication Notice in a

12  nationwide Informational Release.  Azari Decl., ¶¶8-13.  And the Settlement Agreement, Notice,

13  and Preliminary Approval Order were posted to a publicly-available website dedicated to the

14  Action (www.gasolinesignagesettlement.com), which became operational on November 19, 2020,

15  *see id.*, ¶14.

16  The Notice advised the public, including the Settlement Class, of the terms of the

17  Settlement and Class Counsel's anticipated request for an award of attorneys' fees and expenses,

18  as well as the procedure and deadline for filing objections and opting out of the Settlement Class.

19  *See generally* ECF No. 284-1.  The Notice also provided Settlement Class members with

20  information on where they could obtain additional information and get answers to their questions.

21  *Id.*

22  The Parties also provided CAFA Notice of the Settlement, ECF No. 280, and to date, no

23  government agency has sought to intervene or comment on the Settlement.

24  While the objection/exclusion deadline – February 18, 2021 – has not yet passed, to date,

25  no objections and no exclusion requests have been received.  *See* Azari Decl., ¶18.  "[T]he fact

26  that the overwhelming majority of the class willingly approved the offer and stayed in the class

27  presents at least some objective positive commentary as to its fairness." *Hanlon v. Chrysler Corp.*,

28  150 F.3d 1011, 1027 (9th Cir. 1998); *see also Retta v. Millennium Prods., Inc.*, No. CV15-1801

1   PSG AJWx, 2017 WL 5479637, at *6 (C.D. Cal. Aug. 22, 2017) ("'It is established that the absence

2   of a large number of objections to a proposed class action settlement raises a strong presumption

3   that the terms of a proposed class action settlement are favorable to the class members.'" (quoting

4   *Nat'l Rural Telecomms.*, 221 F.R.D. at 528-29)).  Of course, "[t]he fact that some class members

5   object to the Settlement does not by itself prevent the court from approving the agreement."

6   *Brotherton v. Cleveland*, 141 F. Supp. 2d 894, 906 (S.D. Ohio 2001).  The reaction to the

7   Settlement further confirms the reasonableness of the Settlement.[2]

8          Each of the above factors fully supports a finding that the Settlement is fair, reasonable,

9   and adequate, and therefore deserves the Court's approval.

10  **V.      CLASS COUNSEL'S FEE AND EXPENSE REQUEST IS REASONABLE**

11         Class Counsel respectfully request an award of attorneys' fees and expenses of $1,650,000,

12  inclusive.  The guiding principle in this Circuit is that a fee award be "'reasonable under the

13  circumstances.'"  *In re Washington Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1296 (9th

14  Cir. 1994) ("*WPPSS*") (emphasis omitted).  The requested fee here is reasonable under the lodestar

15  analysis and satisfies the relevant Ninth Circuit factors.

16         **A.      Plaintiff Is Entitled to Fees Under Governing California Law**

17         "The 'lodestar method' is appropriate in class actions brought under fee-shifting statutes

18  (such as federal civil rights, securities, antitrust, copyright, and patent acts), where the relief sought

19  – and obtained – is often primarily injunctive in nature and thus not easily monetized, but where

20  the legislature has authorized the award of fees to ensure compensation for counsel undertaking

21  socially beneficial litigation."  *In re Bluetooth*, 654 F.3d at 941.  "California substantive law

22  determines the availability and amount of attorney's fees in this diversity case."  *Winterrowd v.*

23  *Am. Gen. Annuity Ins. Co.*, 556 F.3d 815, 829 (9th Cir. 2009).  Here, Class Counsel's fee request

24  is justified by the fee-shifting provisions of California's CLRA, Cal. Civ. Code §1780(e), and

25  Private Attorney General Statute, Cal. Code Civ. Proc. §1021.5, which "are designed to incentivize

26

27  [2]   In accordance with the Preliminary Approval Order, should any objections be received prior
     to the February 18, 2021 deadline, Plaintiff will address them in her reply brief, which will be filed
28  on or before March 4, 2021.

1   counsel to pursue consumer interests through publicly beneficial litigation." *Milano v. Interstate*

2   *Battery Sys. of Am., Inc.*, No. 10-CV-2125-CW, 2012 U.S. Dist. LEXIS 93192, at *2 (N.D. Cal.

3   July 5, 2012).

4        The CLRA provides that the "court ***shall*** award court costs and attorney's fees to a

5   prevailing plaintiff in litigation filed pursuant to this section."  Cal. Civ. Code §1780(e).  "The

6   legislative policy to allow prevailing plaintiffs reasonable attorney's fees is clear.  Section 1780

7   provides remedies for consumers who have been victims of unfair or deceptive business practices.

8   The provision for recovery of attorney's fees allows consumers to pursue remedies in cases . . .

9   where the compensatory damages are relatively modest."  *Hayward v. Ventura Volvo*, 108 Cal.

10  App. 4th 509, 512 (2003).  This provision is "integral to making the CLRA an effective piece of

11  consumer legislation, increasing the financial feasibility of bringing suits under the statute,"

12  *Broughton v. Cigna Healthplans of Cal.*, 21 Cal. 4th 1066, 1086 (1999), and must "be liberally

13  construed and applied to promote [the statute's] underlying purposes, which are to protect

14  consumers against unfair and deceptive business practices and to provide efficient and economical

15  procedures to secure such protection."  *Id.*; *see* Cal. Civ. Code §1760; *accord Hayward*, 108 Cal.

16  App. 4th at 512-13 ("section 1760 expressly directs [courts] to liberally construe section 1780 to

17  protect consumers").  A fee award to a prevailing plaintiff in a CLRA action is thus mandatory,

18  even when resolved before trial.  *Kim v. Euromotors West/The Auto Gallery*, 149 Cal. App. 4th

19  170, 178-79, 181 (2007).

20        California Code of Civil Procedure "section 1021.5 authorizes an award of attorney fees to

21  a 'private attorney general,' that is, a party who secures a significant benefit for many people by

22  enforcing an important right affecting the public interest."  *Serrano v. Stefan Merli Plastering Co.*,

23  52 Cal. 4th 1018, 1020 (2011).  Consistent with the policies underlying the statute, the entitlement

24  belongs to both the litigant and her counsel.  *Lindelli v. Town of San Anselmo*, 139 Cal. App. 4th

25  1499, 1509 (2006); *see also Serrano v. Priest*, 20 Cal. 3d 25, 44 (1977) (purpose of fee-shifting

26  statutes is to "award . . . substantial attorney's fees to those public-interest litigants and their

27  attorneys . . . who are successful in such cases" and thereby incentivize "representation of interests

28

1    of similar character in future litigation"); *accord Moreno v. City of Sacramento*, 534 F.3d 1106,

2    1111 (9th Cir. 2008).

3          "Although the section 'is phrased in permissive terms . . . the discretion to deny fees to a

4    party that meets its terms is quite limited,' and generally requires a full fee award unless special

5    circumstances would render such an award unjust." *Fitzgerald v. City of Los Angeles*, No. CV 03-

6    01876 DDP (RZx), 2009 U.S. Dist. LEXIS 34803, at *9-*10 (C.D. Cal. Apr. 7, 2009) (quoting

7    *Lyons v. Chinese Hosp. Ass'n*, 136 Cal. App. 4th 1331, 1344 (2006)). Fees are awarded when: (1)

8    the action "'has resulted in the enforcement of an important right affecting the public interest,'"

9    (2) "'a significant benefit, whether pecuniary or nonpecuniary, has been conferred on the general

10    public or a large class of persons . . .'", and (3) "'the necessity and financial burden of private

11    enforcement . . . are such as to make the award appropriate . . . .'" *Stefan*, 52 Cal. 4th at 1026

12    (quoting Cal. Code Civ. Proc. § 1021.5 and citing *Woodland Hills Residents Ass'n., Inc. v. City*

13    *Council*, 23 Cal. 3d 917, 935 (1979)). "The key question is 'whether the financial burden placed

14    on the party [claiming fees] is out of proportion to its personal stake in the lawsuit.'" *Heston v.*

15    *Taser Int'l., Inc*., 431 F. App'x 586, 589 (9th Cir. 2011) (quoting *Lyons v. Chinese Hosp. Ass'n*,

16    136 Cal. App. 4th 1331, 1352 (2006)). Here, the price differential between the "cash" price and

17    the "credit" price at most Valero-branded stations is only 4 cents per gallon, so buyers could not

18    possibly have a stake adequate to litigate. Further, the "elimination of allegedly false

19    representations . . . confer[] a benefit on both the class members and the public at large." *See*

20    *Brazil v. Dell Inc*., No. C-07-01700 RMW, 2012 U.S. Dist. LEXIS 47986, at *4 (N.D. Cal. Apr.

21    4, 2012). Thus, Plaintiff has acted as a true attorney general and is a successful party.

22          "[A] party need not prevail on every claim to be considered a successful party within the

23    meaning of the statute." *Grodensky v. Artichoke Joe's Casino*, 171 Cal. App. 4th 1399, 1437

24    (2009); *see also Graciano v. Robinson Ford Sales, Inc*., 144 Cal. App. 4th 140, 153 (2006) (As

25    with section 1021.5, "[i]t is settled that 'plaintiffs may be considered "prevailing parties" for

26    attorney's fees purposes [under the CLRA] if they succeed on any significant issue in litigation

27    which achieves some of the benefit the parties sought in bringing the suit." (internal quotation and

28    emphasis omitted)). Plaintiff is a prevailing and successful party because the lawsuit "achieved

1    its main litigation objective": ensuring that Valero-branded stations in California clearly inform

2    consumers how their debit cards will be treated.  *See* Settlement Agreement, ¶4.2.  Injunctive relief,

3    such as this, that is "'socially beneficial' . . . justif[ies] a fee award under" the CLRA.  *In re*

4    *Bluetooth*, 654 F.3d at 944.

5        **B.**    **The Requested Fee Is Reasonable Under the Lodestar Method**

6           As discussed above, the requested fee is based on statute, and thus the lodestar method

7    applies.  "'The guiding principles in determining awards of attorneys' fees should be to provide

8    compensation sufficient to stimulate the motive for representation of classes.'"  *In re Equity*

9    *Funding Corp. of Am. Sec. Litig.*, 438 F. Supp. 1303, 1325 (C.D. Cal. 1977).  When determining

10   a reasonable fee in a class action, the lodestar figure is "'presumptively reasonable,'" *In re*

11   *Bluetooth*, 654 F.3d at 941 (quoting *Cunningham v. Cty. of Los Angeles*, 879 F.2d 481, 488 (9th

12   Cir. 1988)); *see also Harris v. Marhoefer*, 24 F.3d 16, 18 (9th Cir. 1994) (the lodestar

13   "presumptively provides the accurate measure of reasonable fees").  Here, the negotiated fee is a

14   small percentage of Class Counsel's lodestar, and, thus, is reasonable.

15          "The lodestar method requires 'multiplying the number of hours the prevailing party

16   reasonably expended on the litigation (as supported by adequate documentation) by a reasonable

17   hourly rate for the region and for the experience of the lawyer.'"  *In re Online DVD-Rental*

18   *Antitrust Litig.*, 779 F.3d 934, 949 (9th Cir. 2015).  Class Counsel spent 10,452.93 hours of

19   attorney and paraprofessional time prosecuting this Action on the Settlement Class' behalf.  *See*

20   accompanying Declaration of Stuart A. Davidson Filed on Behalf of Robbins Geller Rudman &

21   Dowd LLP in Support of Application for Award of Attorneys' Fees and Expenses ("Robbins

22   Geller Decl."), ¶4 & Ex. A; Declaration of Rafael Bernardino, Jr., Filed on Behalf of Hobson,

23   Bernardino & Davis, LLP, in Support of Application for Award of Attorneys' Fees and Expenses

24   ("Hobson, Bernardino Decl."), ¶4 & Ex. A.  The resulting lodestar is $7,479,412.20.  Thus, the

25   requested $1,065,354.92 fee (after subtracting expenses) represents a ***negative*** multiplier of ***0.142***.

26   *Id.*

27          As this Court recognized at the preliminary approval hearing, there was a great deal of

28   good attorney effort in this case.  *See* Preliminary Approval Transcript at 5:5-6.  That effort

1   included an extensive pre-filing investigation, the drafting of three complex pleadings, the

2   preparation and presentation of numerous complex legal briefs and arguments related to multiple

3   motions to dismiss, cross motions for summary judgment, class certification and decertification,

4   class notice, and a Rule 23(f) petition.   Class Counsel also briefed numerous offensive and

5   defensive *Daubert* motions and a motion to compel discovery.   Class Counsel obtained and

6   reviewed thousands of pages of documents from Valero and third parties and took nine depositions.

7   Class Counsel also attended three separate mediation sessions, submitting detailed submissions to

8   the mediator, and engaged in significant follow-up negotiations to achieve the Settlement relief for

9   the Settlement Class.  Class Counsel's hours are reasonable based on the work performed and were

10  necessary to the relief obtained.   The hours spent by Class Counsel are all the more reasonable in

11  light of Class Counsel's adversary.  Valero was represented by a formidable law firm, Hawxhurst

12  Harris LLP (ranked as a top-ten litigation boutique by Law360), which increased the risk of failure,

13  as well as the quantity and quality of work this case demanded.   Class Counsel nevertheless

14  achieved this exceptional result despite a worthy adversary who was ***not*** working on a contingent

15  basis.

16          Class Counsel's hourly rates, too, are reasonable and have recent judicial approval.  *See*

17  June 11, 2020 Hr'g Tr. at 25:12-16, *Kaess v. Deutsche Bank AG*, No. 1:09-cv-01714 (GHW)

18  (RWL) (S.D.N.Y.) ("I find that these billable rates [for Robbins Geller] based on the timekeeper's

19  title, specific years of experience, and market rates for similar professionals in their fields . . . to

20  be reasonable in this context.") (attached as Exhibit 2 hereto); Nov. 15, 2017 Hr'g Tr. at 16:13-19,

21  *In re Genworth Fin. Sec. Litig.*, No. 1:14-cv-02392 (AKH) (S.D.N.Y.), ECF No. 181 ("I don't find

22  the rates [for Robbins Geller and Labaton] – they're high, but I don't find them unreasonable,

23  given what's going on in the market," and "agree" the firm's rates were "actually below market.").

24  For attorneys with 12 years of experience or less (who did the bulk of the work on this case), Class

25  Counsel's average rate is lower than the average approved in settlements in this District.   For the

26  senior attorneys who took supervisory roles, the rate is slightly higher than average.  *Id*.  That is

27  unsurprising here considering that Class Counsel have been recognized as among the top in their

28  field.  *Id*.

1          The last piece of the lodestar analysis is the risk multiplier.  "Courts regularly award

2  lodestar multipliers of up to eight times the lodestar, and in some cases, even higher multipliers."

3  *Beckman v. KeyBank, N.A.*, 293 F.R.D. 467, 481 (S.D.N.Y. 2013) (citing *Vizcaino v. Microsoft*

4  *Corp.*, 290 F.3d 1043, 1052-54 (9th Cir. 2002)); *Craft v. Cty. of San Bernardino*, 624 F. Supp. 2d

5  1113, 1125 (C.D. Cal. 2008) (noting "ample authority" for a multiplier of 5.2 and collecting cases

6  with substantially higher multipliers); *see also In re Nat'l Collegiate Athletic Ass'n Athletic Grant-*

7  *in-Aid Cap Antitrust Litig.*, No. 4:14-md-2541-CW, 2017 WL 6030065, at *9 & n.57 (N.D. Cal.

8  Dec. 6, 2017) (collecting cases), *aff'd*, 768 F. App'x 651 (9th Cir. 2019).  The Ninth Circuit, for

9  its part, has determined in the context of a crosscheck that a multiplier of 6.85 was "well within

10  the range of multipliers that courts have allowed."  *Steiner v. Am. Broad. Co., Inc.*, 248 F. App'x

11  780, 783 (9th Cir. 2007).

12          As explained in detail above, this is not the average case in terms of either the risk taken

13  on by Class Counsel or the results achieved for the Settlement Class.  Accordingly, if the lodestar

14  analysis were to return a multiplier within the range deemed allowable by the Ninth Circuit, it

15  would serve to confirm the appropriateness of the fee award here.  However, there is ***no*** multiplier

16  here.   To the contrary, Class Counsel are seeking a ***negative*** multiplier of 0.142, without

17  accounting for the additional work that remains to be done to complete this Settlement.

18        **C.**    **The Result Achieved for the Settlement Class**

19          Courts have consistently recognized that the result achieved is a major factor to be

20  considered in making a fee award.  *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983) ("most critical

21  factor is the degree of success obtained"); *Zynga*, 2016 WL 537946, at *17 ("The overall result

22  and benefit to the class from the litigation is the most important factor in granting a fee award.");

23  *Behrens v. Wometco Enters., Inc.*, 118 F.R.D. 534, 547-48 (S.D. Fla. 1988) ("The quality of work

24  performed in a case that settles before trial is best measured by the benefit obtained."), *aff'd*, 899

25  F.2d 21 (11th Cir. 1990).

26          As discussed above, the non-monetary benefit that Class Counsel achieved for the

27  Settlement Class is meaningful and achieves what Class Counsel set out to accomplish, and it

28  justifies the appropriateness of the fee and expense award here.

1

### D. The Risks of the Litigation and the Novelty and Difficulty of the Questions Presented

2

Numerous cases have recognized that risk as well as the novelty and difficulty of the issues

3

4

presented are important factors in determining a fee award. *See, e.g.*, *Vizcaino*, 290 F.3d at 1048;

5

*WPPSS*, 19 F.3d at 1299-1301.  Uncertainty that Plaintiff and Class Counsel would be successful

6

is highly relevant in determining risk.  *Id.* at 1300.  As the court aptly observed in *In re King Res.*

7

*Co. Sec. Litig.*, 420 F. Supp. 610 (D. Colo. 1976), "[i]n evaluating the services rendered in this

8

case, appropriate consideration must be given to the risks assumed by plaintiffs' counsel in

9

undertaking the litigation.  The prospects of success were by no means certain at the outset, and

10

indeed, the chances of success were highly speculative and problematical."  *Id.* at 632, 636-37; *see*

11

*also Zynga*, 2016 WL 537946, at *18 ("[W]hen counsel takes on a contingency fee case and the

12

litigation is protracted, the risk of non-payment after years of litigation justifies a significant fee

13

award.").

As detailed above, continued litigation presented high risks and uncertainties on Plaintiff's

14

Rule 23(f) appeal and at trial.

15

### E. The Skill Required and the Quality and Efficiency of the Work

16

The "'prosecution and management of a complex national class action requires unique

17

legal skills and abilities.'"  *Zynga*, 2016 WL 537946, at *17.  Robbins Geller is a nationally

18

recognized leader in the fields of consumer class actions and complex litigation.  *See* Exhibit G to

19

Robbins Geller Decl.  Hobson, Bernardino & Davis, LLP is similarly skilled and experienced.  *See*

20

Exhibit E to Hobson, Bernardino Decl.  The result obtained for the Settlement Class is the direct

21

result of Class Counsel's expertise and the significant efforts of its highly skilled and specialized

22

attorneys.  *See* www.rgrdlaw.com; www.hbdlegal.com.

23

### F. The Contingent Nature of the Fee and the Financial Burden Carried by Class Counsel

24

25

A determination of a fair fee must include consideration of the contingent nature of the fee

26

and the difficulties that were overcome in obtaining the settlement:

27

> It is an established practice in the private legal market to reward attorneys for taking
> the risk of non-payment by paying them a premium over their normal hourly rates
> for winning contingency cases.  *See* Richard Posner, *Economic Analysis of Law*

28

§21.9, at 534-35 (3d ed. 1986).  Contingent fees that may far exceed the market value of the services if rendered on a non-contingent basis are accepted in the legal profession as a legitimate way of assuring competent representation for plaintiffs who could not afford to pay on an hourly basis regardless whether they win or lose.

*WPPSS*, 19 F.3d at 1299.  Indeed, "[c]ourts 'routinely' enhance multipliers to reflect the risk of non-payment in common fund cases." *van Wingerden v. Cadiz, Inc.*, No. LA CV15-03080 JAK (JEMx), 2017 WL 5565263, at *13 (C.D. Cal. Feb. 8, 2017) (citing *Vizcaino*, 290 F.3d at 1051).

The risk of no recovery for a class and its counsel in complex cases of this type is very real. There are numerous class actions in which plaintiffs' counsel expended thousands of hours and yet received no remuneration whatsoever despite their diligence and expertise.  For example, in *In re Oracle Corp. Sec. Litig.*, No. C 01-00988 SI, 2009 WL 1709050 (N.D. Cal. June 19, 2009), *aff'd*, 627 F.3d 376 (9th Cir. 2010), a case that Robbins Geller prosecuted, the court granted summary judgment to defendants after eight years of litigation, after plaintiff's counsel incurred over $7 million in expenses, and worked over 100,000 hours, representing a lodestar of approximately $40 million.  In another case, after a lengthy trial involving securities claims against JDS Uniphase Corporation, the jury reached a verdict in defendants' favor.  *See In re JDS Uniphase Corp. Sec. Litig.*, No. C-02-1486 CW (EDL), 2007 WL 4788556 (N.D. Cal. Nov. 27, 2007).

Because the fee in this matter was entirely contingent, the only certainties were that there would be no fee without a successful result and that such a result would be realized only after considerable effort.  Nevertheless, Class Counsel committed significant resources of both time and money to vigorously and successfully prosecute this Action for the Settlement Class' benefit.  *See* Exhibits A-B to Robbins Geller Decl.; Exhibits A-B to Hobson, Bernardino Decl.  While the contingent nature of Class Counsel's representation strongly favors a premium on Class Counsel's lodestar, again Class Counsel's fee and expense request here represents a significant ***discount*** to their lodestar.

### G.   Reaction of the Settlement Class Supports Approval of the Attorneys' Fees Requested

District courts in the Ninth Circuit also consider the reaction of the class when deciding whether to award the requested fee.  *In re Heritage Bond Litig.*, No. 02-ML-1475-DT (RCx), 2005

1  WL 1594403, at *21 (C.D. Cal. June 10, 2005) ("The existence or absence of objectors to the

2  requested attorneys' fee is a factor in determining the appropriate fee award.").

3       The Notices have been disseminated as provided for in the Court's Preliminary Approval

4  Order, and the Settlement Agreement (ECF No. 279-1), Notices, and Order Granting Unopposed

5  Motion for Preliminarily Approval of Class Action Settlement (ECF No. 284) were posted to a

6  website dedicated to the Settlement (www.gasolinesignagesettlement.com) (Azari Decl., ¶14).

7  Settlement Class members were informed in the Notices that Class Counsel would move the Court

8  for an award of no more than $1,650,000 in attorneys' fees and expenses.  Azari Decl., Attachment

9  5 (Notice) at 8.  Settlement Class members were also advised of their right to object to the fee and

10  expense request, and that such objections are required to be filed with the Court no later than

11  February 18, 2021.  As of the date of this memorandum, no Settlement Class member has objected

12  to the fee and expense request, or any aspect of the Settlement.  The lack of objection is compelling

13  evidence that the request for fees and expenses is reasonable.  *See, e.g.*, *Zynga*, 2016 WL 537946, at

14  *13 ("By any standard, the lack of objection of the Class Members favors approval of the

15  Settlement.").  This is not to say that a small number of objections would stand in the way of approval

16  of a reasonable fee, however.  *See In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir.

17  2000).

18  ## VI.    CLASS COUNSEL'S EXPENSES ARE REASONABLE AND INCLUDED IN THEIR REQUEST

19

20       Class Counsel do ***not*** request an additional award for their litigation expenses and charges

21  ($584,645.08) reasonably incurred.  Robbins Geller Decl., ¶5; Hobson, Bernardino Decl., ¶5.

22  Rather, this amount is included in their $1,650,000 fee and expense request.

23       The main expenses here relate to expert witnesses fees and providing notice to the formerly

24  certified litigation class.  Robbins Geller Decl., ¶6 & Ex. B.  Class Counsel were also required to

25  travel in connection with court appearances, discovery, and settlement efforts, and to work long

26  hours.  Work-related transportation, lodging, and meal costs totaled $90,339.80 or approximately

27  15.4% of aggregate expenses.  Robbins Geller Decl., Ex. D; Hobson, Bernardino Decl., Ex. C.  *See*

28

1  *also In re Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166, 1177 (S.D. Cal. 2007)

2  ("'reimbursement for travel expenses . . . is within the broad discretion of the Court'").

3       The expenses also include the costs of mediation efforts ($14,895.00 or approximately

4  2.5% of total expenses) and e-discovery ($34,089.06 or approximately 5.8% of total expenses).

5  Robbins Geller Decl., ¶6(h)-(i).  Additional expenses include the costs of factual and legal research

6  ($21,006.79 or approximately 3.6% of total expenses).  *Id.*, Ex. C.  These are the costs of

7  computerized factual and legal research services such as Lexis/Nexis, Westlaw, and PACER.  It is

8  standard practice for attorneys to use such databases to assist them in researching legal and factual

9  issues and reimbursement is proper.  *See Immune Response*, 497 F. Supp. 2d at 1177.

10      These expenses are reasonable.

11  **VII.    THE REQUESTED SERVICE AWARD IS REASONABLE GIVEN THE**
12  **LENGTH OF THE CASE AND THE SIGNIFICANT EFFORTS OF**
    **PLAINTIFF FAITH BAUTISTA**

13      Finally, pursuant to the Settlement, Class Counsel respectfully request, and Valero does

14  not oppose, a Service Award for the Class Representative in the amount of $2,000.  Settlement

15  Agreement, ¶4.9.  "[I]ncentive awards that are intended to compensate class representatives for

16  work undertaken on behalf of a class are fairly typical in class action cases."  *Online DVD-Rental*,

17  779 F.3d at 943 (internal quotation omitted).  Such awards "are intended to compensate class

18  representatives for work done on behalf of the class, to make up for financial or reputational risk

19  undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private

20  attorney general."  *Rodriguez*, 563 F.3d at 958-59.  Courts' main concern in approving incentive

21  awards is to make sure that "they do not undermine the adequacy of the class representatives."

22  *Radcliffe v. Experian Info. Sols. Inc.*, 715 F.3d 1157, 1163 (9th Cir. 2013).  "Incentive awards of

23  $5,000 have been deemed 'presumptively reasonable' in this District," *Chen v. Chase Bank USA,*

24  *N.A.*, No. 19-cv-01082-JSC, 2020 WL 2644332, at *7 (N.D. Cal. Jan. 16, 2020), and are within

25  the range of service awards this Court has awarded in other cases.  *See, e.g.*, *Lucero v. Solarcity*

26  *Corp.*, No. 15-cv-05107-RS, 2018 WL 573593, at *2 (N.D. Cal. Jan. 26, 2018) ($2,500); *EK*

27  *Vathana v. Everbank*, No. 09-cv-02338-RS, 2016 WL 3951334, at *3-*4 (N.D. Cal. July 20, 2016)

28

1  ($12,500); *Milligan v. Toyota Motor Sales, U.S.A., Inc.*, No. C 09-05418 RS, 2012 WL 10277179,

2  at *9 (N.D. Cal. Jan. 6, 2012) ($5,000).

3         Here, an incentive award of $2,000 is warranted and does not pose a danger to Plaintiff

4  Bautista's adequacy as a Class Representative.  Class Counsel and Plaintiff Bautista did not enter

5  into any kind of agreement by which the incentive payment is contingent on her support for the

6  Settlement.  In addition, Plaintiff Bautista did substantial work on behalf of the Settlement Class,

7  including gathering documents, preparing and sitting for her deposition, reviewing and

8  understanding correspondence from Class Counsel, and participating in the mediation process.

9  Over four years of litigation, Ms. Bautista spent over 160 hours participating in this case, including

10  attending or being available for three mediation sessions.  Declaration of Faith Bautista, ¶4.

11         Plaintiff's $2,000 Service Award request is appropriate and should be granted.

12  **VIII.  CONCLUSION**

13         For each of the foregoing reasons, (i) the Settlement is fair, adequate and reasonable and

14  should be approved, and (ii) Class Counsel's request for a fee and expense request, as well as

15  Plaintiff's Service Award request are reasonable and should be granted.

16   DATED:  February 4, 2021               Respectfully submitted,

17                                   ROBBINS GELLER RUDMAN

18                                    &amp; DOWD LLP
                                 STUART A. DAVIDSON (*pro hac vice*)

19                                   CHRISTOPHER C. GOLD (*pro hac vice*)

20

                                  */s/ Stuart A. Davidson*

21                                    STUART A. DAVIDSON

22                                   120 East Palmetto Park Road, Suite 500
                                 Boca Raton, FL  33432

23                                   Telephone:  561/750-3000
                                 561/750-3364 (fax)

24

25                                   ROBBINS GELLER RUDMAN
                                 &amp; DOWD LLP

26                                   PATRICK W. DANIELS
                                 655 West Broadway, Suite 1900

27                                   San Diego, CA  92101
                                 Telephone:  619/231-1058

28                                   619/231-7423 (fax)

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ROBBINS GELLER RUDMAN
  & DOWD LLP
ROXANA PIERCE
905 16th Street, N.W., Suite 303
Washington, DC  20006
Telephone:  202/822-6762
202/828-8528 (fax)

HOBSON, BERNARDINO & DAVIS, LLP
RAFAEL BERNARDINO, JR.
JASON A. HOBSON
725 South Figueroa Street, Suite 3230
Los Angeles, CA  90017
Telephone:  213/235-9190
213/235-9197 (fax)

Attorneys for Plaintiff and the Class

CERTIFICATE OF SERVICE

I hereby certify under penalty of perjury that on February 4, 2021, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses on the attached Electronic Mail Notice List, and I hereby certify that I caused the mailing of the foregoing via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

*/s/ Stuart A. Davidson*
STUART A. DAVIDSON (*pro hac vice*)

ROBBINS GELLER RUDMAN
   & DOWD LLP
120 East Palmetto Park Road, Suite 500
Boca Raton, FL  33432
Telephone:  561/750-3000
561/750-3364 (fax)

E-mail: sdavidson@rgrdlaw.com

## Mailing Information for a Case 3:15-cv-05557-RS Bautista v. Valero Energy Corporation et al

### Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Jason Henry Alperstein**
  alperstein@kolawyers.com

- **Matthew James Balotta**
  mbalotta@rgrdlaw.com

- **Rafael Bernardino , Jr**
  rbernardino@hbdlegal.com

- **Ashley Brooke Vinson Crawford**
  avcrawford@akingump.com,dkrasa-
  berstell@akingump.com,WestDocketing@akingump.com,smartinson@akingump.com,jcordero@akingump.com,fcastro@akingump.com,vfydrych@akingump.com

- **Patrick W. Daniels**
  patrickd@rgrdlaw.com

- **Stuart Andrew Davidson**
  sdavidson@rgrdlaw.com,jdennis@rgrdlaw.com,e_file_sd@rgrdlaw.com,e_file_fl@rgrdlaw.com,sdavidson@ecf.courtdrive.com

- **Eric Scott Dwoskin**
  edwoskin@rgrdlaw.com,jdennis@rgrdlaw.com,e_file_sd@rgrdlaw.com,e_file_fl@rgrdlaw.com

- **Kyle DeWitt Foltyn-Smith**
  kfoltyn-smith@cronehawxhurst.com

- **Sharon G. Gelbart**
  sharon@hawxhurstllp.com

- **Christopher Chagas Gold**
  cgold@rgrdlaw.com,CGold@ecf.courtdrive.com,e_file_sd@rgrdlaw.com,e_file_fl@rgrdlaw.com

- **Ellen Anne Gusikoff-Stewart**
  elleng@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **David Solomon Harris**
  david@hawxhurstllp.com

- **Gerald Edward Hawxhurst**
  jerry@hawxhurstllp.com,calendar@hawxhurstllp.com,calendar@cronehawxhurst.com

- **Robert Russell Henssler , Jr**
  bhenssler@rgrdlaw.com

- **Jason A Hobson**
  jhobson@hbdlegal.com

- **Roxana Miller Pierce**
  rpierce@rgrdlaw.com,e_file_sd@rgrdlaw.com

### Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- (No manual recipients)

# EXHIBIT 1

Pages 1 - 15

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

BEFORE THE HONORABLE RICHARD SEEBORG

FAITH BAUTISTA, individually and   )
on behalf of all others similarly  )
situated,                          )
                                   )
                                   )
              Plaintiffs,          )
                                   )
  vs.                              ) No. C 15-05557 RS
                                   )
VALERO MARKETING AND SUPPLY        )
COMPANY,                           )
                                   )  San Francisco, California
              Defendant.           )  Thursday
                                   )  November 5, 2020
_____)  1:30 p.m.

**TRANSCRIPT OF ZOOM VIDEO CONFERENCE PROCEEDINGS**

**APPEARANCES**:

**For Plaintiffs:**          ROBBINS GELLER RUDMAN DOWD LLP
                             120 East Palmetto Park Road
                             Suite 500
                             Boca Raton, Florida 33432
                     BY:  **CHRISTOPHER CHAGAS GOLD, ESQ.**
                          **STUART ANDREW DAVIDSON, ESQ.**


                             ROBBINS, GELLER, RUDMAN & DOWD, LLP
                             655 West Broadway
                             Suite 1900
                             San Diego, California 92101
                     BY:  **THEODORE J. PINTAR, ESQ.**


              **(APPEARANCES CONTINUED ON FOLLOWING PAGE)**


Reported By:    *Debra L. Pas, CSR 11916, CRR, RMR, RPR*
               *Official Reporter - US District Court*
               *Computerized Transcription By Eclipse*

```
1   APPEARANCES:   (CONTINUED)

2

3   For Plaintiffs:          HOBSON BERNARDINO DAVIS LLP
                             725 South Figueroa Street
                             Suite 3230
4                            Los Angeles, California 90017
                        BY:  RAFAEL BERNARDINO, ESQ.
5

6

7   For Defendant:           HAWXHURST HARRIS LLP
                             11111 Santa Monica Boulevard
                             Suite 620
8                            Los Angeles, California 90025
                        BY:  GERALD EDWARD HAWXHURST, ESQ.
9                            DAVID HARRIS, ESQ.

10                              -   -   -

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

<u>**THURSDAY - NOVEMBER 5, 2020**</u>                    <u>**1:29 P.M.**</u>

P R O C E E D I N G S

---oOo---

        THE CLERK:  Calling Case 15-CV-5557, Bautista versus
Valero Energy Corporation.

    Counsel, please state your appearances.

        MR. GOLD:  Good afternoon.  This is Chris Gold from
Robbins Geller Rudman and Dowd for the plaintiffs.

        THE COURT:  Good afternoon.

        MR. DAVIDSON:  Good afternoon, Your Honor.  This is
Stuart Davidson from Robbins Geller, all the way on the other
coast in Florida, on behalf of the plaintiff.

        THE COURT:  Good afternoon.

        MR. HAWXHURST:  Good afternoon, Your Honor.  In the
middle of the country is Gerry Hawxhurst, with Hawxhurst
Harris, on behalf of Valero Marketing and Supply Company.

        THE COURT:  Good afternoon.

        MR. HARRIS:  Good afternoon.  David Harris also on
behalf of defendant Valero.

        THE COURT:  Good afternoon.

        MR. PINTAR:  Good afternoon, Your Honor.  Ted Pintar
of Robbins Geller Rudman and Dowd for plaintiff.

        THE COURT:  Good afternoon.

        MR. BERNARDINO:  Good afternoon, Your Honor.  Rafael
Bernardino on behalf of the plaintiffs.

1        **THE COURT:**  Good afternoon.  So this is on for

2   preliminary approval of the proposed class action settlement.

3   The question is whether or not the proposed settlement falls

4   within the ambit of what is fair, reasonable and adequate.

5        As you all know, I'm very familiar with the long history

6   of this case.  It was intensely litigated.

7        As noted, I think, in your motion papers, at one point

8   there was a reference to the fact that during the course of it

9   each side had at some point gained and then lost the upper

10  hand.  So I am familiar with the intensity of the battle.

11       We can go over the particular parts of the proposed

12  settlement, but let me just sort of is give you my general

13  sense of it.  While I'm sometimes skeptical of injunctive only

14  relief in proposed class action settlements, I do think in this

15  case it is relief that is congruent with what was requested in

16  the case, what the case was all about, and I think that the

17  proposal is -- proposed relief is meaningful and provides some

18  real recovery for the class, proposed class.  So I'm inclined

19  to look favorably upon this.

20       To go over some of the particulars, the notice plan is

21  fine.  We can talk about it in a little more detail.  The

22  release, as I read it, is cabined to the claims.  That's what

23  I'm always looking for.  The incentive fee award is modest and

24  fine.

25       In the attorney's fee request, I know it's a substantial

1   reduction from the overall lodestar.  It's against the

2   background of the fact that I had found some real problems with

3   the -- with the case, which was then going to be reviewed by

4   the circuit.

5        But the long and short of it is I think there was a great

6   deal of good attorney effort in this case and so I think the

7   amount that's being requested is a legitimate amount.

8        So I had a couple of questions for you, but I'm generally

9   content with what I see with respect to the proposed

10   disposition.

11        So I'll turn it back to you.  The one question I do want

12   to ask is just procedurally the -- or maybe more than

13   procedurally.  Substantively we're in the -- we're in a

14   circumstance in which there is an effort to recertify a class

15   that I had decertified, but recertify it for purposes of

16   settlement, and parties are all in agreement with doing that.

17   And in the course of this there is a question that does arise

18   about the standing of the individual plaintiff to -- to seek to

19   represent the class when I effectively had found that couldn't

20   proceed to litigate the injunctive class an individual basis.

21        But you've cited me to some Fourth Circuit law that says

22   that can be done, and my -- one of my questions would be:  Is

23   there Ninth Circuit law that gives us any intel on that

24   subject?  But that's a fairly technical, if you will, concern.

25        As I say, overall I'm satisfied with what I see.  So with

1   that, who would like to say anything, if there is anything to

2   be said?

3            MR. GOLD:   Sure, Your Honor.   Chris Gold for the

4   plaintiffs.

5        We appreciate your opening thoughts.   You know, I think

6   I'll just address Your Honor's questions, to the extent Your

7   Honor wants some responses.   I'll take them in reverse order.

8        So the standing issue is obviously an issue that everyone

9   was paying attention to and we did look at this.   We found that

10  Fourth Circuit case law, which also cited a Supreme Court case

11  that we believe is helpful.   But beyond that, it wasn't an

12  issue we were able to find much law in any circuit, including

13  the Ninth obviously or we would have been happy to cite it.

14  But we don't believe it presents a problem.

15       We believe the way the Fourth Circuit explained the issue

16  and the Supreme Court, it makes sense.   You know, the -- the --

17  the Court held -- although the Court held the plaintiff did not

18  have standing to litigate injunctive relief, the Court held

19  that the plaintiff did have standing to litigate monetary

20  relief by virtue of her out-of-pocket losses in overpaying for

21  gasoline.   So that satisfies the Article III case or

22  controversy requirement; right?

23       So now that we're asking the Court to enter a judgment,

24  and as the case law we cited says, the judgment, you know, by

25  agreement, the Supreme Court said in that *City of Cleveland*

1   case that it's the parties' agreement at this point that's

2   granting the Court the authority to enter the judgment.

3       That means that as the *Barry* case in the Fourth Circuit

4   held, relief in the settlement can include contractual

5   obligations that couldn't be imposed without consent, and it

6   can even include relief under statutes that don't have a

7   private right of action.

8       So we satisfied the, you know, Article III standing

9   inquiry for the -- with a case or controversy for the

10  litigation before the Court.

11      Now Valero is agreeing to do whatever it thinks, you know,

12  may resolve that case or controversy, and its efforts to

13  resolve that case or controversy should not -- cannot or should

14  not deprive the plaintiff of standing to litigate before this

15  Court.

16      One can imagine, you know, extreme circumstances where,

17  you know, a plaintiff has standing in a litigation and, you

18  know, what sort of result would arise if the defendant, you

19  know, can remove that standing from the plaintiff just by

20  virtue of what type of relief it's agreeing to in order to

21  resolve that case or controversy.

22      So for that reason, you know, even though we wish

23  obviously there was some more helpful case law, we do think it

24  is a technical issue, but I do believe it's sound on the law.

25          **THE COURT:**  Okay.  All right.  Yes.  Mr. Hawxhurst.

1          **MR. HAWXHURST:**  Yes, Your Honor.

2     I just wanted to say in addition to the legal arguments

3   that Mr. Gold made, we also would say that there are good

4   policy reasons for this to happen.  It involves cases.  It

5   gets -- as you pointed out, it gives us relief that's congruent

6   with what the whole lawsuit was about.

7          **THE COURT:**  Right, right.

8          **MR. GOLD:**  Great point.  And if Your Honor would like

9   me to answer the class certification question?

10         **THE COURT:**  Yeah.  Go ahead.

11         **MR. GOLD:**  So when Your Honor decertified the class,

12   the main issue is one really of manageability.  You know, how

13   are we going to identify all these stations with the evidence

14   that we had mustered up until that point.

15     So those concerns, manageability --

16         **THE COURT:**  It was a manageability slash B3

17   predominance.  They are related.  They are two related concepts

18   in this case.  But you're right.  You're right.

19         **MR. GOLD:**  Exactly.  It all boiled down to how are we

20   going to do this in a class action, you know?  Whether you're

21   looking at it through the predominance lens or the superiority

22   lens, it really came down to, you know, how are we going to do

23   this at trial?

24     And those concerns -- you know, if you look at the *Hyundai*

25   case out of the Ninth Circuit or the *Amchem* case out of the

1   Supreme Court, those manageability concerns don't exist in the

2   settlement context.  So we believe without those concerns, the

3   class does satisfy the 23(b) predominance and superiority.

4        And obviously Your Honor previously held that the 23(a)

5   requirements were satisfied.  We believe they still are.

6        So for that reason we think, you know, class certification

7   would be appropriate here.

8            THE COURT:  Yeah.  I think that's a fair point and

9   makes sense to me.

10       Shifting slightly to the notice issue, we had had some --

11  ironed that out at a certain point in time, what notice was

12  going to look like in this case when it was a certified class.

13       Run by me now what you're proposing, how you're proposing

14  to notify the class of this injunctive relief disposition.  How

15  is that going to be done?

16           MR. HAWXHURST:  So, Your Honor, as Valero is

17  responsible for the notice part actually monetarily, I thought

18  I would address it, if that's --

19           THE COURT:  Go ahead.

20           MR. HAWXHURST:  -- okay.

21       So, Your Honor, as the Court noted, there was some dispute

22  over notice the first go-around and over our objections, the

23  Court authorized a pretty strict notice provision by the

24  plaintiffs that included just nationwide, not just California.

25           THE COURT:  Right.

1          **MR. HAWXHURST:**  So that went forward, and the Court

2     found that it satisfied due process and all of the other

3     requirements for notice.

4          What Valero did was -- said okay, what was good the first

5     go-around should be good the next go-around.  Let's not try and

6     pinch pennies.  Let's not try and save money.

7          The first go-around was done by, I believe, Garden City,

8     who ultimately was acquired by Epic.  So when we say "Epic,"

9     it's really the same company that did it the first time around.

10    And what we did, Your Honor, is we said give us the same --

11    meet the same criteria that the Court found was acceptable,

12    very reasonable, adequate the first go-around.  And we did

13    that, Your Honor, without regard to cost.  We didn't put it out

14    for bid.  We didn't do any of that.

15         And in addition, that wouldn't matter anyway because none

16    of this comes out of any recovery.  This is something Valero

17    agreed to take on.  So, Your Honor, the notice is substantially

18    identical to what Your Honor approved in the first go-around.

19         And then, of course, they are going to take care of the

20    administration.  They took care of the CAFA notice, which we

21    filed notice.  The CAFA notice went out.

22         I don't believe any of the AGs, General Becerra, no one

23    has responded to any of the CAFA notices.  So we have clear

24    sailing on that part as well.

25              **THE COURT:**  Okay.  The proposal that you -- I have

1    your proposed order that you submitted, and it had -- you know,

2    as it always does, it has some blank dates, and then you gave

3    me some proposal on final approval schedule.

4        I take it it's just all -- all we need to do is once there

5    is a date for final approval, the final approval hearing, then

6    all the other dates will flow fairly easily from what you've

7    given me.

8        Have you discussed when you would like a final approval

9    hearing?

10           **MR. GOLD:**  We have not, Your Honor.  We're happy to

11   do that, or we thought we would leave it to the Court's

12   discretion.

13           **THE COURT:**  Well, either way is fine with me.

14       What's your -- I mean, perhaps you can just tell -- I

15   don't need necessarily a specific date, but, you know, what

16   kind of time frame are you looking at between now and final --

17   the final approval hearing, and then I can just supply it.

18           **MR. GOLD:**  We need at least 100 days from your order

19   on preliminary approval.

20           **THE COURT:**  Okay.  And then beyond that, you don't

21   have any -- the parties don't have any particular preference

22   that, well, we want it to be later or we want it to be as close

23   to 100 as you can be.  It doesn't matter?

24           **MR. GOLD:**  My guess -- I haven't spoken to the other

25   side, but my guess is the sooner the better.

1          **THE COURT:**  Okay.

2          **MR. HAWXHURST:**  We would agree with that, Your Honor.

3    In talking with Epic, they think that 100 days, or whatever the

4    period gives us for notice, is going to be plenty, especially

5    given that people are sitting around just reading stuff all day

6    these days.

7          **THE COURT:**  The only countervailing notion, and it's

8    not a major one, is that because of the circumstances in which

9    we find ourselves, it would be -- in a perfect world it would

10   be nice to have a physical final approval hearing in a

11   courtroom, but none of us know when -- pardon?

12         **MR. HAWXHURST:**  I apologize.  I said, I'm keeping my

13   fingers crossed that we can do that with 100 days.

14         **THE COURT:**  Well, I like the optimism.  We'll see.

15   But, you know, if you -- the further out you move it, probably

16   the better the chances are that you can do it in person.

17         But I hope you're right.  It wouldn't be the end of the

18   world if we have to do it virtually.  It's a little -- as you

19   probably know, I don't know if -- I have had a few approval

20   hearings where I have had objectors, frankly, and when you're

21   using Zoom it's a little bit more complicated if there are

22   objectors who want to appear and sometimes they don't.

23         **MR. DAVIDSON:**  This is Stuart Davidson of Robbins

24   Geller.

25         I've had a couple so far done via Zoom with dozens of

```
 1   objectors showing up.  And it just -- it seemed -- including
 2   one in front of Judge Koh.  And it just seemed to require a
 3   little bit of management at the outset and organization.
 4   Almost like the Supreme Court is doing in their oral arguments
 5   now, where just one at a time.
 6       But it -- I found them helpful, and I have enjoyed the
 7   fact that you seem to get more people from the public, just
 8   interested class members, who might just want to listen in.
 9   Sometimes they -- I seem to enjoy that more public
10   participation.
11           THE COURT:  Right.  And I think every week that goes
12   by people are getting more and more used to doing things this
13   way, so...
14       Okay.  Well, I will -- so I will -- we don't have to -- I
15   don't want to impose on your time to figure out all the dates
16   right now.  I'll just -- with your input in terms of the
17   parameters, I'll just pick some dates and build them in there.
18       Okay.  Anything else we need to -- anything else anyone
19   wants to have on the record in the event of -- I don't know if
20   you have any sense, you probably don't yet, if we're likely to
21   have any objectors.  I suspect there won't be very many, if we
22   have any, but you never know.
23           MR. HAWXHURST:  Nothing from Valero, Your Honor.
24   Thank you for the Court's time and effort in this case.  We
25   appreciate it.
```

1          **MR. GOLD:**  Nothing from plaintiffs as well.  We

2     appreciate your time, Your Honor.

3          **THE COURT:**  Okay.  Very good.  It was an interesting

4     case.  You litigated it with gusto.  So we never did get the

5     benefit of the thoughts from our friends on high in the Ninth

6     Circuit, but that's okay.  I could live with that.  So we'll

7     barrel ahead.

8          So I do find that preliminarily the proposed disposition

9     is fair, reasonable and adequate.  And I'll go ahead and use

10    your proposed order as the jumping off point.  I may tweak it a

11    little bit, but having gone through it before this hearing, I

12    don't anticipate, if I do at all, it will be of any

13    consequence.

14         So we'll go from there.  Be looking for that, and it will

15    have dates set on there and we'll move ahead.

16         **MR. HAWXHURST:**  Your Honor, I'm sorry.  Gerald

17    Hawxhurst.

18         One last thing I just wanted to raise with the Court.

19    There was errata that was filed due to some miscommunication

20    with the notice company, and there was a new proposed order

21    submitted.

22         **THE COURT:**  Okay.

23         **MR. HAWXHURST:**  I just want to make sure the Court --

24    I believe Ms. Lew knows which one that is.  But it's important

25    to know because that is a different Exhibit B-2.

```
 1              THE COURT:  Okay.  I will look for the -- for the
 2    filing subsequent to the initial Exhibit B-2.  And as you say,
 3    Ms. Lew is adept at finding things.  So we'll find it and use
 4    that.
 5              MR. GOLD:  Just for the Court's convenience, it's
 6    docket No. 281.
 7              THE COURT:  Okay.  Good.
 8              MR. HAWXHURST:  That's the errata.  And then the --
 9    the Chambers copy was submitted earlier that morning.
10              THE COURT:  Okay.  On our mailbox?
11              MR. HAWXHURST:  Yes, Your Honor.
12              THE COURT:  Okay.  Okay, good.  I think that's all I
13    need.
14         But congratulations on resolving this, at least on a --
15    preliminarily, and we will go forward.
16              MR. HAWXHURST:  Thank you, Your Honor.
17              MR. GOLD:  Thank you, Your Honor.
18              THE COURT:  Thank you.  Thanks very much.
19              MR. BERNARDINO:  Thank you, Your Honor.  Have a good
20    afternoon.
21              THE COURT:  Thank you.  You too.
22         (Proceedings adjourned.)
23
24
25
```

## CERTIFICATE OF OFFICIAL REPORTER

I certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.

_____

Debra L. Pas, CSR 11916, CRR, RMR, RPR

Thursday, December 10, 2020

EXHIBIT 2

K6BKDEUC

1   UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK
2   ------------------------------x

3   NORBERT G. KAESS, et al,

4                   Plaintiffs,

5            v.                          09 CV 1714 (GHW)(RWL)
                                         Telephone Conference
6   DEUTSCHE BANK AG, et al.,

7                   Defendants.

8   ------------------------------x
                                         New York, N.Y.
9                                        June 11, 2020
                                         4:30 p.m.
10
    Before:
11
                          HON. GREGORY H. WOODS,
12
                                         District Judge
13
                              APPEARANCES
14
    GLANCY PRONGAY & MURRAY LLP
15       Attorneys for Plaintiffs
    BY:  BRIAN P. MURRAY
16       -and-
    ROBBINS GELLER RUDMAN & DOWD LLP
17  BY:  THEODORE J. PINTAR
         ERIC NIEHAUS
18       KEVIN LAVELLE

19  CAHILL GORDON & REINDEL LLP
         Attorneys for Deutsche Bank Defendants
20  BY:  DAVID JANUSZEWSKI
         SAMUEL MANN
21
    SKADDEN ARPS SLATE MEAGHER & FLOM LLP
22       Attorneys for Underwriter Defendants
    BY:  WILLIAM J. O'BRIEN
23       ANDREW BEATTY

24

25

K6BKDEUC

1          (The Court and all parties appearing telephonically)

2          THE COURT:  This is Judge Woods.

3          Is there a court reporter on the line?

4          (Pause)

5          THE COURT:  Let me just say a few words at the outset

6     of today's conference.

7          First, you should conceive of this conference as if it

8     was happening in the courtroom.  As you know, the dial-in

9     information for this call is publicly available; members of the

10    public and the press are welcome to dial in.

11         Second, let me ask you to all keep your phones on mute

12    at all times when you're not speaking on the phone.  I can hear

13    some background noise right now, shuffling some paper.  We

14    should not hear any background noise during the course of the

15    conference.  Please keep your phones on mute at all times when

16    you are not speaking during the conference.  That will help us

17    to keep a clear record of what we say today.

18         Third, I'd like to ask each of the people who will

19    speak during this conference to please identify themselves each

20    time that they speak during this conference.  So, if you speak

21    during this conference, you should say your name each time that

22    you speak.  You should do that regardless of whether or not

23    you've spoken previously during the conference.  That will help

24    us to keep a clear record of today's conference.

25         Last, as you've heard, there is a court reporter on

K6BKDEUC

1    the line.  You should not be surprised if he chimes in at any

2    point.  If he does, and if he asks you to do something to help

3    him to hear or understand what you're saying, please do what he

4    asks.  That will help us to, again, keep a clear record of the

5    conference today.

6           Because there is a court reporter on the line

7    transcribing the conference, I'm ordering that there be no

8    recordings or rebroadcasts of any portion of the conference.

9           So, with those introductory remarks in hand, let me

10   turn to the parties.

11          I'd like to ask for counsel for each side to identify

12   counsel who are on the line for each of the parties and any

13   representatives for each of the parties.  What I'm going to ask

14   is that, if you can, that one person from each side identify

15   herself and the members of her team; that way, we won't have to

16   hear many people chiming in at a time.

17          So let me begin with counsel for plaintiffs.

18          Who's on the line for plaintiffs?

19          MR. PINTAR:  Good afternoon, your Honor.  It's Ted

20   Pintar, and I'm here with Eric Niehaus and Kevin Lavelle, from

21   Robbins Geller Rudman & Dowd, for plaintiffs.

22          THE COURT:  Good.  Thank you very much.

23          Who is on the line for defendants?

24          MR. MURRAY:  Excuse me.  I hate to interrupt, but this

25   is also for plaintiffs, Brian Murray, from Glancy Prongay &

K6BKDEUC

1    Murray.  Sorry to interrupt you.

2              Now the defendants.

3              THE COURT:  Fine.

4              Counsel for defendants?

5              MR. JANUSZEWSKI:  Good afternoon, your Honor.  This is

6    David Januszewski, and I have my colleague, Samuel Mann.  We

7    are both from Cahill Gordon & Reindel, representing Deutsche

8    Bank and the Deutsche Bank defendants.  And on the line, we

9    also have, from Deutsche Bank, Stella Tipi, in-house counsel at

10   Deutsche Bank.

11             THE COURT:  Good.  Thank you very much.

12             So, counsel --

13             MR. O'BRIEN:  I'm sorry.  Good afternoon, your Honor.

14   I just wanted to introduce myself and my colleagues.  William

15   J. O'Brien and Andrew Beatty, from the firm of Skadden Arps

16   Slate Meagher & Flom, on behalf of the underwriter defendants.

17             THE COURT:  Good.  Thank you very much.

18             So, counsel, first, let me thank you all for being on

19   the call.  I scheduled this conference as a settlement hearing

20   or approval hearing with respect to the proposed resolution of

21   this case.  I have reviewed all of the materials that have been

22   submitted on the docket to date in connection with this matter.

23   I'd like to hear, however, from each of the parties, to hear,

24   in particular, if there's anything that any of you would like

25   to add to any of your written submissions in connection with

K6BKDEUC

1    the proposed resolution of the case.

2           Let me begin with counsel for plaintiffs.

3           Counsel?

4           MR. PINTAR:  Again, good afternoon, your Honor.  Ted

5    Pintar, for plaintiffs.

6           I had a number of things I wanted to mention just at

7    the outset.  Obviously, we're here on the final approval of an

8    $18.5 million settlement.  We are very proud of that result.

9    As we have indicated, and I won't repeat all of what's in the

10   papers, but it represents a very significant percentage of

11   reasonably recoverable damages.

12          On February 27, 2020, this Court entered its

13   preliminary approval order.  Pursuant to that order, notice was

14   disseminated.  The claims administrator mailed over 112,000

15   notice packages, published the summary notice in the Wall

16   Street Journal and Business Wire, and set up a settlement

17   website where the notice and other settlement-related documents

18   were posted.

19          And, as a result, there was one objection.  It's not

20   clear to me whether that has been withdrawn.  I won't attempt

21   to characterize Mr. Agay's email.  We submitted it to the

22   Court.  He indicates, however, that he would not be

23   participating today.  There were only four opt-outs.  And I do

24   have some information on claims to date.  Over 11,000 claims

25   have been submitted, and they are still processing claims --

K6BKDEUC

1   the mailed claims, so that number is likely to rise even from

2   there.

3              So, we believe that not only is it a good settlement,

4   that the class has reacted very positively to it, and, as you

5   know, today we're asking the Court to enter three orders:  The

6   final judgment, the order approving plan of allocation, and the

7   order awarding attorneys' fees and expenses and award to class

8   plaintiffs.  Other than that, your Honor, I certainly don't

9   have anything to add to our papers.  I'm happy to address any

10  questions the Court may have, though.

11             THE COURT:  Good.  Thank you very much, counsel.

12             Let me hear from each of the groups of defendants.

13             First, counsel for the Deutsche defendants.

14             MR. JANUSZEWSKI:  Yes, your Honor.  Again, this is

15  David Januszewski, from Cahill Gordon.

16             We have nothing to add to what was submitted, which

17  was designed to address the objection that my friend just

18  addressed.  We have nothing to add to that.

19             THE COURT:  Good.  Thank you very much.

20             Counsel for the remaining defendants, anything that

21  you'd like to add to your written submissions?

22             MR. O'BRIEN:  Yes.  William O'Brien, from the firm of

23  Skadden Arps Slate Meagher & Flom, on behalf of the underwriter

24  defendants.

25             And like Mr. Januszewski, we have nothing further to

K6BKDEUC

1    add.

2              THE COURT:  Good.  Thank you very much.

3              Is there anyone else on the line who wishes to be

4    heard?

5              So, hearing none, counsel, I'm going to approve the

6    proposed resolution of this action, or series of actions.  What

7    I'd like to do is to ask you to place your phones, again, on

8    mute, if you would, please.  I'd like to review the reasoning

9    for my decision.  I'm going to do so now orally.  At the end,

10   I'll take up the two orders and judgment that the parties have

11   proposed.  Let me begin with, first, an overview.

12             So, I. Overview:

13             Plaintiffs brought this securities class action in

14   February 2009 on behalf of all persons who purchased the

15   7.35 percent Noncumulative Trust Preferred Securities of

16   Deutsche Bank Capital Funding Trust X and/or the 7.60 percent

17   Trust Preferred Securities of Deutsche Bank Contingent Capital

18   Trust III securities from Deutsche Bank AG pursuant to public

19   offerings from November 6, 2007, to February 14, 2008.

20   Plaintiffs allege that defendants violated Sections 11,

21   12(a)(2), and 15 of the Securities Act (the "Securities Act")

22   and (15, U.S.C., Section 77k, 77l(a)(2), and 77o) by omitting

23   material facts from the offering documents.  See declaration of

24   Eric I. Niehaus ("Niehaus dec."), Docket No. 308, paragraph 3.

25             Since then, plaintiffs have extensively litigated this

K6BKDEUC

1    case.  The parties have engaged in significant motion practice,

2    and have completed fact discovery.  Niehaus declaration

3    paragraphs 3-4.  Now, plaintiffs seek final approval of the

4    class action settlement and approval of their plan for

5    allocating the net proceeds of the settlement.  Plaintiffs'

6    counsel also seek an award of attorneys' fees and litigation

7    costs, and the lead plaintiffs seek an award for expenses

8    incurred while representing the class.

9            Judge Batts presided over this case for almost the

10   entire time that it has been pending in this court.  The case

11   was reassigned to me on February 20, 2020, after Judge Batts'

12   untimely death.

13           II. Class Certification:

14           On October 2, 2018, pursuant to Rule 23 of the Federal

15   Rules of Civil Procedure, Judge Batts granted plaintiffs'

16   motion to certify a class defined as:  All persons or entities

17   who purchased or otherwise acquired the 7.35 percent

18   Noncumulative Trust Preferred Securities of Deutsche Bank

19   Capital Funding Trust X ("7.35 percent Preferred Securities"),

20   and/or the 7.60 percent Trust Preferred Securities of Deutsche

21   Bank Contingent Capital Trust III ("7.60 percent Preferred

22   Securities"), pursuant or traceable to the public offerings

23   that commenced on or about November 6, 2007, and February 14,

24   2008.  Excluded from the class are defendants, the officers and

25   directors of Deutsche Bank, and the underwriter defendants at

K6BKDEUC

all relevant times, members of their immediate families and
their legal representatives, heirs, successors, or assigns and
any entity in which defendants have or had a controlling
interest.  Docket No. 224 at 10.

III.  Approval of the Settlement Agreement:

Rule 23(e) requires court approval for a class action
settlement to ensure that it is procedurally and substantively
fair, reasonable, and adequate.  Federal Rule of Civil
Procedure 23(e).  To determine procedural fairness, courts
examine the negotiating process leading to the settlement.
Wal-Mart Stores, Inc. v. Visa USA, Inc., 396 F.3d 96, 116
(2d Cir. 2005).  To determine substantive fairness, courts
analyze whether the settlement's terms are fair, adequate, and
reasonable according to the factors set forth in City of
Detroit v. Grinnell Corp., 495 F.2d 448 (2d Cir. 1974).

The court examines procedural and substantive fairness
in light of the "strong judicial policy favoring settlements"
of class action suits.  Wal-Mart Stores, 396 F.3d at 116.  A
"presumption of fairness, adequacy, and reasonableness may
attach to a class action settlement reached in arm's-length
negotiations between experienced capable counsel after
meaningful discovery."  Id.  "Absent fraud or collusion,
[courts] should be hesitant to substitute [their] judgment for
that of the parties who negotiated the settlement."  In re EVCI
Career Colls. Holding Corp. Sec. Litig., 2007 WL 2230177, at *4

K6BKDEUC

1    (S.D.N.Y. July 27, 2007).

2            A. Procedural Fairness:

3            The settlement is procedurally fair, reasonable,

4    adequate and not a product of collusion.  The settlement was

5    reached after the parties had conducted a thorough

6    investigation and evaluated the claims and defenses; the

7    agreement in principle was reached after sessions with the

8    Honorable Judge Layn R. Phillips, a former United States

9    District Judge and an experienced mediator of securities class

10   actions and other complex litigation.  Niehaus declaration

11   paragraph 6, 129.  In advance of the mediation, the parties

12   exchanged detailed mediation statements addressing both

13   liability and damages.  Id.  The parties reached a final

14   resolution on September 12, 2019, with the assistance of Judge

15   Phillips, after formal mediation.  Id.

16           B. Substantive Fairness:

17           The settlement is also substantively fair.  The

18   factors set forth in Grinnell provide the analytical framework

19   for evaluating the substantive fairness of a class action

20   settlement.  The Grinnell factors are:  (1) the complexity,

21   expense, and likely duration of the litigation; (2) the

22   reaction of the class; (3) the stage of the proceedings and the

23   amount of discovery completed; (4) the risks of establishing

24   liability; (5) the risks of establishing damages; (6) the risks

25   of maintaining the class action through the trial; (7) the

K6BKDEUC

1   ability of the defendants to withstand a greater judgment; (8)

2   the range of reasonableness of the settlement fund in light of

3   the best possible recovery; and (9) the range of reasonableness

4   of the settlement fund to a recovery in light of all of the

5   attendant risks of litigation.  Grinnell 295 F.2d at 463.

6   Litigation here through trial will be complex, expensive, and

7   long.  It has been complex, expensive, and long.  Thus, the

8   first Grinnell factor weighs in favor of final approval.  See

9   In re Payment Card Interchange Fee & Merch. Disc. Antitrust

10  Litig., 330 F.R.D. 11, 36 (E.D.N.Y 2019) ("Settlement is

11  favored if settlement results in substantial and tangible

12  present recovery, without the attendant risk and delay of

13  trial.").

14       With respect to the second factor, the class members'

15  reaction to the settlement has been overwhelmingly positive.

16  Of the 112,397 notice packets mailed to potential members of

17  the settlement class, four exclusion requests were received.

18  Supplemental declaration of Ross D. Murray (Supplemental Murray

19  Dec.") Docket No. 324, Paragraphs 4, 6.  Only one class member,

20  Mr. Richard Agay, objected.  See Richard Agay letter ("Agay

21  letter") Docket No. 320-21.

22       That objection did not challenge the settlement, the

23  resolution of this case, the reasons for the settlement, the

24  manner in which class plaintiffs and lead counsel prosecuted

25  the litigation, the work lead counsel performed, or lead

K6BKDEUC

1    counsel's fee and expense application.  Instead, the objection

2    asserted only that Mr. Agay received his copy of the notice

3    late, and that he was confused by certain aspects of the

4    submission, and that the claims administrator did not

5    sufficiently respond to Mr. Agay's telephonic inquiry.  On

6    June 5, 2020, Mr. Agay emailed lead counsel in an email that I

7    construe as him withdrawing his objections, perhaps because he

8    recognized that he was apparently persuaded by the response of

9    the parties showing that he was not entitled to recovery in the

10   suit.  See Docket No. 329.  While Mr. Agay received his notice

11   later than expected, he received it with enough time to submit

12   objections, and the delay was caused by a failure at his

13   broker.  His objection does not suggest that the overall

14   distribution or notice program was ineffective in design or

15   execution.

16        The absence of objections, with the exception of one

17   retail investor, who literally withdrew his objection, coupled

18   with the minimal number of requests for exclusion, strongly

19   supports the finding that the settlement plan of allocation and

20   fee and expense requests are fair, reasonable, and adequate.

21   See In re Citigroup, Inc. Sec. Litig., 965 F. Supp. 2d 369, 382

22   (S.D.N.Y. 2013); In re Bisys Sec. Litig., 2007 WL 2049726, at

23   *1 (S.D.N.Y. July 16, 2007); In re Veeco instruments Inc. Sec.

24   Litig., 2007 U.S. Dist. LEXIS 85629, at *40.

25        In sum, the overall favorable response demonstrates

K6BKDEUC

1    that the class approves of the settlement and supports final

2    approval.

3            The plaintiffs completed fact discovery, so counsel

4    "had an adequate appreciation of the merits of the case before

5    negotiating."  Beckman v. KeyBank, N.A., 293 F.R.D. 467, 475

6    (S.D.N.Y. 2013)(quoting In re Warfarin Sodium Antitrust Litig.,

7    391 F.3d 516, 537 (3rd Cir. 2004); see also Niehaus declaration

8    paragraph 5.  Lead plaintiffs spent significant time and

9    resources analyzing and litigating the legal and factual issues

10   of this case, including an extensive factual and legal

11   investigation into the settlement class's claims and engaging

12   in the detailed formal mediation process.  Niehaus declaration

13   paragraph 5.

14           Turning to the fourth and fifth factors, the risk of

15   establishing liability and damages further weighs in favorable

16   of final approval.  "Litigation inherently involves risks."  In

17   re PaineWebber Ltd. Partnerships Litig., 171 F.R.D. 104, 126

18   (S.D.N.Y. 1997).  Indeed, the primary purpose of settlement is

19   to avoid the uncertainty of a trial on the merits.  See Velez

20   v. Majik Cleaning Serv., Inc., 2007 WL 7232783, at *6 (S.D.N.Y.

21   June 25, 2007).  Here, plaintiffs face significant risks as to

22   both liability and damages; defendants challenged the premise

23   that the allegedly omitted information was material and the

24   notion that plaintiffs could prove that the drop in price was

25   related to the allegedly omitted information.  See Niehaus

K6BKDEUC

declaration paragraphs 106, 115 to 17.  The proposed settlement

eliminates these uncertainties.  These factors, therefore,

weigh in favor of final approval.

        The risk of obtaining class certification is

nonexistent here.  Therefore, the sixth Grinnell factor weighs

in favor of final approval.  Settlement generally eliminates

the risk, expense, and delay inherent in the litigation process

as a whole.

        Turning to the seventh factor, there is nothing to

suggest that Deutsche Bank or the underwriter defendants would

be unable to withstand a greater judgment than the settlement

amount.  "But a defendant is not required to empty its coffers

before a settlement can be found adequate."  Shapiro v.

JP Morgan & Co., 2014 WL 1224666, at *11 (S.D.N.Y. Mar. 24,

2014)(quotation omitted).

        Deutsche Bank's financial circumstances -- or I should

say the defendants' financial circumstances do not ameliorate

the force of the other Grinnell factors, which lead to the

conclusion that the settlement is fair, reasonable, and

adequate.

        Finally, the amount of the settlement, in light of the

best possible recovery and the attendant risks of litigation,

weighs in favor of final approval.  The determination of

whether a settlement amount is reasonable "is not susceptible

of a mathematical equation yielding a particularized sum."  In

K6BKDEUC

1    re Austrian & German Bank Holocaust Litig., 80 F.Supp. 2d 164,

2    178 (S.D.N.Y. 2000).  Instead, "There is a range of

3    reasonableness with respect to a settlement – a range which

4    recognizes the uncertainties of law and fact in any particular

5    case and the concomitant risks and costs necessarily inherent

6    in taking any litigation to completion."  Newman v. Stein, 464

7    F.2d 689, 693 (2d Cir. 1972).

8            Here, lead plaintiffs assert that the settlement would

9    constitute 47 percent of the estimated recoverable damages.

10   Niehaus declaration paragraph 19.  This is a reasonable result

11   when compared to the median ratio of settlement to investor

12   losses of 2.1 percent for securities class action settlements

13   in 2019.  Id.  Therefore, the amount of this immediate recovery

14   is reasonable, and this factor weighs in favor of final

15   approval.

16           Weighing the Grinnell factors, I find that the

17   settlement is substantively fair and weigh in favor of final

18   approval.

19           IV.  Plan of Allocation:

20           "To warrant approval, the plan of allocation must also

21   meet the standards by which the settlement was

22   scrutinized – namely, it must be fair and adequate...an

23   allocation formula need only have a reasonable, rational basis,

24   particularly if recommended by experienced and competent class

25   counsel."  In Re WorldCom, Inc. Sec. Litig., 388 F. Supp. 2d

K6BKDEUC

319, 344 (S.D.N.Y. 2005)(citation and quotation omitted).  "A

plan of allocation need not be perfect," in re EVCI Career

Colleges Holding Corp. Sec. Litig., 2007 WL 2230177, at *11

(S.D.N.Y. July 27, 2007)(collecting cases), or "tailored to the

rights of each plaintiff with mathematical precision,"

PaineWebber, 171 F.R.D. at 133; see also RMed

International, Inc. v. Sloan's Supermarkets, Inc., 2000 WL

420548, at *2 (S.D.N.Y. April 18, 2000) (recognizing that

"aggregate damages in securities fraud cases are generally

incapable of mathematical precision").  Thus, "In determining

whether a plan of allocation is fair, courts look primarily to

the opinion of counsel."  In re EVCI Career Colleges Holding

Corp. Sec. Litig., 2007 WL 2230177, at *11.

        Lead counsel, who are experienced and competent in

complex class actions, prepared the plan of allocation in

connection with plaintiffs' damages expert.  Niehaus

declaration paragraphs 100, 134.  The settlement fund, minus

attorneys' fees and expenses, will be allocated on a pro rata

basis according to the relative size of class members'

"Recognized claims."  Id. at paragraphs 9, 10.  The expert has

calculated an estimated individual class members' claim based

on (i) allegations when the alleged concealed facts and trends

became known (i.e., realization events); (ii) an event study

that estimates price changes in the securities as a result of

realization events; and (iii) the statutory formula used to

K6BKDEUC

1   calculate recoverable damages during the settlement class

2   period.  Declaration of Steven P. Feinstein ("Feinstein dec"),

3   Docket No. 177-1, paragraphs 29-42.

4        Because the plan of allocation has a clear rational

5   basis, equitably treats the class members, and was devised by

6   experienced and estimable class counsel, the Court finds it

7   fair and adequate.  See In re Telik, Inc. Sec. Litig., 576

8   F.Supp. 2d, 570, 581 (S.D.N.Y. 2008).

9        V.  Dissemination of Notice:

10       On February 27, 2020, the Court entered an order

11  granting preliminary approval of the settlement as "fair,

12  reasonable and adequate" to class members.  In accordance with

13  that order, lead counsel retained Gilardi & Co. LLC ("Gilardi")

14  as claims administrator to supervise and administer the notice

15  procedure in connection with the settlement and to process all

16  claims.  Declaration of Ross D. Murray ("Murray dec"), Docket

17  No. 310, paragraph 2.

18       Gilardi sent a copy of the notice to potential members

19  of the settlement class.  First, Gilardi mailed, by first class

20  mail, the notice packet to 283 nominees – banks, brokerage

21  companies, and other institutions – that Gilardi had in its

22  proprietary database.  Id. at paragraph 5.

23       Next, Gilardi mailed the notice packet to 4,643

24  additional institutions or entities on the U.S. Securities and

25  Exchange Commission's ("SEC") list of active brokers and

K6BKDEUC

1    dealers.  Id. paragraph 5.

2         Gilardi also delivered electronic copies of the notice

3    packet to 381 registered electronic filers, primarily

4    institutions and third-party filers, and to the depository

5    trust company ("DTC") on the DTC legal notice system ("LENS"),

6    which enables bank and broker nominees to contact Gilardi for

7    copies of the notice for their beneficial holders.  Id.

8    paragraph 7.  Gilardi received multiple responses and

9    additional names of potential settlement class members from

10   individuals or other nominees, with requests for over 64,000

11   notice packets to be forwarded directly to nominees' customers.

12   Id. paragraph 9.  Gilardi also published the summary notice in

13   the Wall Street Journal and transmitted it over Business Wire.

14   Id. paragraph 11.  Gilardi also posted the date and time of the

15   hearing on the settlement website.  Id. paragraph 12.

16        Gilardi ultimately mailed a total of 112,397 notice

17   packets, including mailing notice packets to persons a second

18   time when the first set were returned as undeliverable.

19   Supplemental Murray declaration paragraph 4.

20        These notices apprised settlement class members, among

21   other things, of: (i) the amount of the settlement; (ii) the

22   reasons why the parties are proposing the settlement; (iii) the

23   maximum amount of attorneys' fees and expenses that will be

24   sought; (iv) the identity and contact information for

25   representatives of lead counsel available to answer questions

K6BKDEUC

concerning the settlement; (v) the right of settlement class

members to object to the settlement; (vi) the right to request

exclusion from the settlement class; (vii) the binding effect

of a judgment on settlement class members; (viii) the dates and

deadlines for certain settlement-related events; and (ix) the

way to obtain additional information about the action and the

settlement by contacting lead counsel and the settlement

administrator.  See Federal Rule of Civil Procedure

23(c)(2)(B).

        I find that these efforts fairly and adequately

advised class members of the terms of the settlement, as well

as the right of Rule 23 class members to opt out of, or to

object to the settlement, and to appear at the final fairness

hearing today.  I find that the notice and its distribution

comported with all constitutional requirements, including those

of due process.

        VI.  Attorneys' Fees, Costs and Expenses:

        Lead counsel requests attorneys' fees in the amount of

what the Court calculates to be $6,166,666.67 plus interest

earned at the same rate as the settlement fund.  This amounts

to one-third of the settlement fund, or 33.3 percent of the

settlement fund.  Lead counsel also seeks reimbursement of:

(i) $1,203,502.39 in litigation expenses in total, with Robbins

Geller Rudman & Dowd LLP ("Robbins Geller") seeking

$1,170,981.31, Glancy Prongay & Murray seeking $28,740.22, and

K6BKDEUC

1    Murray Frank LLP seeking $3,780.86; and (ii) to approve the

2    award to the lead plaintiffs, or class plaintiffs, of "20,000

3    in the aggregate pursuant to 15, U.S.C., Section 77Z-1(a)(4) in

4    connection with their representation of the class."  Niehaus

5    declaration paragraph 17.

6         Now, the trend in the Second Circuit is to use the

7    percentage of the fund method to compensate attorneys in common

8    fund cases, although the Court has discretion to award

9    attorneys' fees based on the lodestar method or the percentage

10   of recovery method.  See Fresno County Employees' Ret.

11   Association v. Isaacson/Weaver Family Trust, 925 F.3d 63, 68

12   (2d Cir. 2019).

13        The notice provided to class members advised that

14   class counsel would apply for attorneys' fees for up to

15   33.3 percent of the settlement fund, in addition to litigation

16   costs not to exceed 1.3 million.  See Gilardi declaration

17   Exhibit A Notice at 2.  No class member objected to the

18   request.

19        A. Goldberger Factors:

20        Reasonableness is the touchstone when determining

21   whether to award attorneys' fees.  In Goldberger v. Integrated

22   Resources, Inc., 209 F.3d 43 (2d Cir. 2000), the Second Circuit

23   set forth the following six factors to determine the

24   reasonableness of a fee application:  (1) the time and labor

25   expended by counsel; (2) the magnitude and complexities of the

K6BKDEUC

litigation; (3) the risk of the litigation; (4) the quality of

representation; (5) the requested fee in relation to the

settlement; and (6) public policy considerations.  Id at 50.

    1.  Class Counsel's Time and Labor:

    Plaintiffs' counsel have expended more than 26,000

hours of attorney time in total over the course of this action,

the vast majority of which was time expended by of counsel at

Robbins Geller.  Declaration of Eric Niehaus in support of lead

counsel's motion for an award of attorneys' fees ("Niehaus fee

declaration"), Docket No. 311 paragraph 5.  Niehaus declaration

paragraph 135.

    2.  Magnitude and Complexity of the Litigation:

    The size and difficulty of the issues in a case are

significant factors to be considered in making a fee award.  In

re Prudential Sec, Inc. Ltd. Partnership Litig., 912 F. Supp.

97, 100 (S.D.N.Y. 1996).  "In evaluating the settlement of a

securities class action, federal courts, including this Court,

have long recognized that such litigation is notably difficult

and notoriously uncertain."  In re Flag Telecom Holdings Ltd.

Sec. Litig., 2010 WL 4537550, at *15 (S.D.N.Y. Nov. 8, 2010)

(quotation omitted).  This case is one of substantial

magnitude.  In addition to all of the complications that are

attendant to any large securities class action, this matter

involved events that happened over ten years ago, extensive

discovery, and litigation.  The amount sought by plaintiffs'

K6BKDEUC

counsel is commensurate with the magnitude and complexity of this litigation.

          3.  The Risk of Litigation:

          As discussed, lead counsel faced significant risk in prosecuting this action and proving the merits of the claims. All of the fact-finding has concluded.  Given the complexity of the case, the risk at summary judgment and trial is significant.  Defendants adamantly denied any wrongdoing, and, in the event that litigation had continued, would have continued to aggressively litigate their defenses through summary judgment, Daubert motions, trial, and any appeals.

          4.  Quality of Representation:

          Lead counsel has considerable expertise in securities litigation.  See Robbins Geller resume, Niehaus fee declaration, Exhibit G; see also declaration of Brian P. Murray filed on behalf of Glancy Prongay & Murray LLP in support of application for award of attorneys' fees and expenses ("Murphy fee declaration").  Robbins Geller attorneys are currently "lead or [are] named counsel in hundreds of securities class action or large institutional-investor cases" and are "responsible for the largest securities class action in history."  Niehaus fee declaration, Exhibit G.  RiskMetrics Group has recognized Glancy Prongay & Murray as one of the top plaintiffs' law firms in the United States in its securities class action services report for every year since the inception

K6BKDEUC

of the report in 2003.  See Murphy fee declaration, Exhibit I.

The high quality of defense counsel opposing plaintiffs' efforts further proves the caliber of representation that was necessary to achieve the settlement. Cahill Gordon & Reindel and Skadden Arps Slate Meagher & Flom are two prominent defense firms, and "the ability of plaintiffs' counsel to obtain a favorable settlement for the class in the face of such formidable opposition confirms the quality of their representation of the class."  In re Marsh ERISA Litig., 265 F.R.D. 128, 148 (S.D.N.Y. 2010).

Accordingly, the Court finds that this Goldberger factor weighs in favor of the requested fee award.

5.  The Requested Fee in Relation to the Settlement:

Generally, courts consider the size of a settlement to ensure that the percentage awarded does not constitute a windfall.  In this case, the requested fee is 33.3 of the settlement, within the range of reasonableness, in light of other class action settlements in this circuit.  See Mohney v. Shelly's Prime Steak, Stone Crab & Oyster Bar, 2009 WL 5851465, at *5 (S.D.N.Y. Mar. 31, 2009)("Class counsel's request for 33 percent of the settlement fund is typical in class action settlements in the Second Circuit.").

6.  Public Policy Considerations:

When determining whether a fee award is reasonable, courts consider the social and economic value of the class

K6BKDEUC

1    action "and the need to encourage experienced and able counsel

2    to undertake such litigation."  In re Sumitomo Copper Litig.,

3    74 F. Supp. 2d 393, 399 (S.D.N.Y. 1999).  "Courts have, as a

4    generic matter, frequently observed that the public policy of

5    vigorously enforcing the federal securities laws must be

6    considered in calculating an award."  In re BioScrip, Inc. Sec.

7    Litig., 273 F.Supp. 3d 474, 502 (S.D.N.Y. 2017)(quotation

8    omitted) affirmed sub nom.  Fresno County Employees Retirement

9    Association v. Isaacson/Weaver Family Trust, 925 F.3d 63

10   (2d Cir. 2019).

11        Vigorous, private enforcement of the federal

12   securities laws can only occur if private investors can obtain

13   some parity in representation with that available to large

14   corporate defendants.  Accordingly, public policy favors

15   granting lead plaintiffs' fee request.

16        After considering all of the Goldberger factors, the

17   requested fee award appears to be reasonable.

18        B.  Lodestar "Cross Check":

19        In Goldberger, the Second Circuit "encouraged the

20   practice of requiring documentation of hours as a 'cross check'

21   on the reasonableness of the requested percentage."

22   Goldberger, 209 F.3d at 50.  "Of course, where used as a mere

23   cross-check, the hours documented by counsel need not be

24   exhaustively scrutinized by the district court."  Id.

25        As of April 17, 2020, plaintiffs' counsel have

K6BKDEUC

1    expended over 26,000 hours in total in this case, resulting in

2    a total lodestar of $16,069,646.  Niehaus fee declaration

3    paragraph 4, Exhibit A; Murphy fee declaration, Exhibit A.

4    Robbins Geller expended 17,356.85 hours with a lodestar of

5    $12,021,477, Glancy Prongay & Murray LLP expended 8,097.8 hours

6    with a lodestar of $3,639,826.50, the Frank Murray LLP expended

7    562.2 hours with a lodestar of $355,902.50.  Id.  Plaintiffs'

8    counsel submitted declarations and time reports in support of

9    their motion for attorneys' fees.  Id.  Counsel submitted a

10   summary time records detailing the billable rate and hours

11   worked by each attorney and professional support staff in this

12   case.  I find that these billable rates based on the

13   timekeeper's title, specific years of experience, and market

14   rates for similar professionals in their fields nationwide and

15   in New York, where Robbins Geller LLP is based, to be

16   reasonable in this context.

17        Based on plaintiffs' counsel's requested

18   fee – one-third of the settlement, or by the Court's

19   calculation, $6,166,666.67 – the lodestar yields a negative

20   "cross-check" multiplier of about 0.38; therefore, the fee is

21   well below the typically awarded multipliers in this circuit.

22   "Courts regularly award lodestar multipliers from 2 to 6 times

23   lodestar in this circuit."  Fleisher v. Phoenix Life Insurance

24   Company, 2015 WL 10847814, at *18 (S.D.N.Y. Sept. 9,

25   2020)(quotation omitted)(collecting cases).  Thus, the lodestar

K6BKDEUC

1    "cross-check" confirmation that plaintiffs' counsel requested

2    fee is reasonable.

3            The Court therefore finds that, based on the

4    Goldberger factors and the lodestar "cross-check," that

5    plaintiffs' counsel's requested fees are reasonable.

6            C.  Litigation Expenses:

7            Plaintiffs' counsel requests $1,203,502.39 total in

8    litigation expenses, including filing fees, process service,

9    mailing expenses, document management and hosting services,

10   investigative and expert witnesses, legal research, travel and

11   mediation.  See Niehaus fee declaration paragraph 5, Exhibit B.

12   Robbins Geller seeks $1,170,981.31, Glancy Prongay & Murray

13   seeks $28,740.22, and Murray Frank LLP seeks $3,780.86.  The

14   largest component of plaintiffs' counsel's expenses was the

15   cost of experts and consultants, amounting to $750,458, or

16   approximately 62 percent of total expenses.  Niehaus fee

17   declaration paragraph 6.  The next largest components of

18   plaintiffs' counsel's expenses were for transportation, hotels,

19   and meals ($227,852.66), court transcripts and deposition

20   materials ($68,030.54), and mediation ($27,210).  See Niehaus

21   fee declaration, Exhibit B.  The notice disclosed that lead

22   counsel would seek up to $1,300,000 in litigation expenses.  No

23   objection to these expenses was received.

24           "It is well-established that counsel who create a

25   common fund are entitled to the reimbursement of expenses that

K6BKDEUC

they advance to a class."  In re Giant Interactive Group, Inc.,

279 F.R.D. 151, 165 (S.D.N.Y. 2011); see also In re Indep.

Energy Holdings, 302 F.Supp. 2d 180, 183 Note 3 (S.D.N.Y.

2003).  "Attorneys may be compensated for reasonable

out-of-pocket expenses incurred and customarily charged to

their clients as long as they were 'incidental and necessary to

the representation of those clients.'" (quotation omitted).

The expenses for which lead counsel seeks payment are the type

of expenses that courts typically approve.  See In re Global

Crossing Sec. & ERISA Litig., 225 F.R.D. 436, 468 (S.D.N.Y.

2004).  Therefore, the Court finds that the requested

litigation expenses are reasonable and necessary to the

representation of the class and are appropriately reimbursed to

class counsel.

          D.  Lead Plaintiffs' Expenses:

          Lead plaintiffs seek an award of $20,000 for both of

them in recognition of the time and expense that they incurred

on behalf of the class.  Motion in support, Docket No. 307, at

31; see also Niehaus declaration paragraph 17.  15, U.S.C.,

Section 77Z-1(a)(4) allows "the award of reasonable costs and

expenses (including lost wages) directly relating to the

representation of the class to any representative party serving

on behalf of a class."

          As set forth in their declaration, lead plaintiffs

dedicated a significant amount of time to the successful

K6BKDEUC

1   prosecution of this action, including by reviewing pleadings

2   and motions, discussing strengths and risks of the case, and

3   consulting with lead counsel regarding settlement.  Kaess and

4   Farrugio declaration paragraphs 2 through 12.  These are the

5   kinds of activities which regularly are found to support awards

6   to class representatives.

7        As set forth in their declaration, lead plaintiffs

8   assert that the value of their time and resources invested in

9   this case is substantially in excess of the $20,000 award that

10   they seek here.  Id.  And the application here is consistent

11   with the notice, which disclosed that "Class plaintiffs may

12   seek an award pursuant to 15, U.S.C., Section 77z-1(a)(4) in

13   connection with their representation of the class in an amount

14   not to exceed $20,000 in the aggregate."  Murphy fee

15   declaration, Exhibit A notice.

16        Thus, I find that the requested award of $20,000 to

17   lead plaintiffs is reasonable.

18        VII.  Conclusion:

19        In conclusion, I approve the class action settlement

20   for $18,500,000 and approve the plan for allocating the net

21   proceeds of the settlement.  I also award plaintiffs' counsel

22   attorneys' fees in the amount of what the Court calculates to

23   be $6,166,666.67, plus interest earned at the same rate as the

24   settlement fund.  This amounts to one-third of the settlement

25   fund, or 33.3 percent of the settlement fund.  I am also

K6BKDEUC

1   awarding $1,203,502.39 in litigation expenses to be divided as

2   outlined by lead counsel.  Finally, I award lead plaintiffs

3   $20,000 in the aggregate for time and expenses incurred while

4   representing the class.

5          So, counsel, thank you very much for your patience as

6   I got through the reasoning for my decision to approve the

7   settlement here.

8          I received the proposed orders and judgment, and I

9   expect to act on those promptly after today's conference.

10         Is there anything else that we should take up now,

11  before we adjourn?

12         First, counsel for plaintiffs?

13         MR. PINTAR:  Not for plaintiffs, your Honor.  Again,

14  Ted Pintar.  Thank you very much.

15         THE COURT:  Thank you.

16         Counsel for the Deutsche Bank defendants?

17         MR. JANUSZEWSKI:  Your Honor, David Januszewski.

18         Nothing else from us.

19         THE COURT:  Good.  Thank you.

20         Counsel for the underwriter defendants?

21         MR. O'BRIEN:  Yes.  William O'Brien, from Skadden Arps

22  Slate Meagher & Flom LLP.

23         Nothing further from us as well.

24         THE COURT:  Good.  Thank you, all.

25         COUNSEL:  Thank you.    * * *